UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

REBECCA KLYMN,

                                                Plaintiff,

    -vs-

MONROE COUNTY SUPREME COURT,
UNIFIED COURT SYSTEM OF THE STATE
OF NEW YORK, OFFICE OF COURT
ADMINISTRATION, OFFICE of the                         21-cv-6488-JLS
MANAGING INSPECTOR GENERAL for
BIAS MATTERS, COSMAS GRANT,
RONALD PAWELCZAK, MARY AUFLEGER,
ANN TADDEO, CAROLYN GRIMALDI,
MARGE ALLEN, AMY FIELDS, and
MATTHEW ROSENBAUM,

                                              Defendants.
_____


# MEMORANDUM OF LAW IN SUPPORT OF
# DEFENDANT ROSENBAUM'S MOTION TO DISMISS


                                                          RESPECTFULLY SUBMITTED:

                                                          David Rothenberg, Esq.
                                                          Michael Rothenberg, Esq.
                                                          ROTHENBERG LAW
                                                          *Attorneys for Defendant Rosenbaum*
                                                          45 Exchange Blvd., Ste. 800
                                                          Rochester, NY 14614

This memorandum of law is submitted in support of a motion by defendant Matthew Rosenbaum, to dismiss plaintiff's complaint against him for failure to state a claim, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

I.  **STATEMENT OF FACTS**

For purposes of this Rule 12 motion to dismiss, the Court is required to accept plaintiff's allegations as true. Accordingly, the following facts are taken from plaintiff's complaint, without any consideration of their credibility or internal consistency. Because the statute of limitations for plaintiff's two causes of action against defendant Rosenbaum are three years for each cause of action, defendant submits that the Court's initial evaluation of plaintiff's allegations should focus on plaintiff's allegations regarding the period from December of 2017 through an unspecified date in late 2019 when plaintiff ceased working with Defendant.

Plaintiff's complaint alleges that she was employed as the secretary for defendant Rosenbaum, who then served as a New York State Supreme Court Justice. According to the complaint:

> Throughout 2018, and during the first ten months of 2019, Defendant ROSENBAUM continued to touch Plaintiff, put his arm around Plaintiff, commented inappropriately upon Plaintiff's clothing, and address her by demeaning and inappropriate names such as 'sweetie' and 'honey'.

Dkt. 1, ¶ 77. In addition, plaintiff alleges that defendant required her to perform personal errands, including work for defendant's house of worship. *Id.*, ¶ 77. The complaint provides no specifics about the touching allegation, other than to say elsewhere that the touching and hugging occurred in the presence of others. *See, e.g., id.*, ¶ 60. Plaintiff does allege that the comments and physical contact were "unwelcome," *id.*, ¶ 78, but does not allege that she ever complained to defendant Rosenbaum, nor ever asked him to stop.

Additionally, plaintiff asserts that similar conduct occurred in earlier years. Paragraph 69 of the complaint alleges that the touching and comments occurred daily from 2009 through 2017. *Id*., ¶ 69. Recognizing that these allegations do not rise to the level of a hostile work environment, plaintiff includes the following salacious and inflammatory allegations regarding conduct from March of 2005 through May of 2009, a period of time 12 to 16 years before this action was commenced.

Plaintiff's complaint states that she worked as defendant Rosenbaum's secretary, starting in March of 2005, shortly after he began serving as a judge, and until the end of 2019. Plaintiff alleges that from 2005 through May of 2009, plaintiff engaged in oral sex with defendant, against her will and in his judicial chambers. *Id*., ¶¶ 24-26. Also, plaintiff claims that on one occasion in the fall of 2006, defendant forced himself on her at her home after work. *Id*., ¶ 34. However, the complaint goes on to allege that once plaintiff refused defendant's demands for oral sex, the sexual behavior ceased. *Id*., ¶ 68. Furthermore, insofar as the other allegations are concerned—the touching, comments, and personal errands—the complaint does not describe any difference in the parties' behavior, or in the terms or conditions of plaintiff's employment. According to plaintiff's complaint, once the sexual conduct ceased in May of 2009, the two parties continued working together for more than another decade, with no change in circumstances until the second half of 2019.

Without any explanation, plaintiff's complaint alleges that in June of 2019, defendant Rosenbaum urged plaintiff to take a leave of absence, *id*., ¶ 80, after which the two stopped speaking to each other. *Id*., ¶ 81. Even though plaintiff claims that she and defendant Rosenbaum stopped speaking, the complaint then contends that for two months afterward, in August and September of 2019, defendant was verbally abusive, although no particulars are provided. *Id*., ¶

84. Plaintiff does not state what defendant Rosenbaum supposedly said in an abusive manner, nor when or how often these comments were made. She does admit, however, that in September of 2019 she requested a leave of absence. *Id.*, ¶ 92.

Based on these allegations, plaintiff has asserted two claims against defendant Rosenbaum. Her second cause of action alleges denial of equal protection, in violation of 42 U.S.C. § 1983. The specific allegations in that second cause of action include coercing plaintiff to engage in sexual activity, *id.*, ¶ 149, subjecting plaintiff to unspecified unwelcomed touching and comments on the basis of sex, *id.*, ¶ 150, and in retaliating against her in an unspecified manner. *Id.*, ¶ 151. The complaint contends that this conduct amounted to sexual harassment that violated Title VII, *id.*, ¶ 154, even though plaintiff has no claim against defendant Rosenbaum under Title VII.[1]

Plaintiff's fourth cause of action alleges a violation of New York's Human Rights Law, again alleging in general terms that defendant Rosenbaum's conduct amounted to sexual harassment and retaliation. *Id.*, ¶ 167.

## II. ARGUMENT

Plaintiff's complaint fails to state a claim against defendant Rosenbaum, because the allegations of conduct within the three-year applicable limitations period do not amount either to a violation of equal protection, nor to an actionable claim of sex discrimination under New York's Human Rights Law. Furthermore, plaintiff's inflammatory allegations about sexual conduct occurring 12 to 16 years before the complaint was filed, are not sufficiently related to the allegations of conduct occurring after December of 2017. Thus, the conduct underlying those allegations does not raise the alleged recent conduct to an actionable level.

---

[1] *See, e.g., Kakarla v. Penakalapati*, No. 6:18-CV-06555 EAW, 2021 WL 3123815, at *8 (W.D.N.Y. July 23, 2021) ("Further, there is no individual liability under Title VII.").

**A. A three-year statute of limitations applies to plaintiff's second and fourth causes of action.**

A claim under Section 1983 is governed by New York's three-year statute of limitations for actions based on a statutory liability. *See Owens v. City of New York Dep't of Educ.*, No. 17-CV-519 (SHS), 2021 WL 3862974, at *8 (S.D.N.Y. Aug. 30, 2021); N.Y. C.P.L.R. § 214(5). Similarly, an action for sex discrimination in violation of Section 296 of New York's Human Rights Law carries the same three-year statute of limitations. *See* N.Y. C.P.L.R § 214(2). However, New York Executive Order 202.8 tolled all statutes of limitations from March 20, 2020, until November 3, 2020, because of the Covid pandemic – 228 days in all. Courts have held that Executive Order 202.8 applies to federal actions brought pursuant to Section 1983. *Bonilla v. City of New York,* No. 20-CV-1704 (RJD), 20 WL 6637214 (Nov. 12, 2020). Accordingly, the first step in determining whether plaintiff's complaint states a cause of action against defendant Rosenbaum is an examination of the conduct within the three years and 228 days prior to July 16, 2021, the date on which this action was commenced – in other words, between December 1, 2017 and July 16, 2021.

**B. Plaintiff's allegations regarding conduct and statements after December 2017 do not state a claim against defendant Rosenbaum.**

Again, accepting all of plaintiff's allegations as true, her complaint alleges that the following occurred after December 1, 2017: defendant touched plaintiff; put his arm around plaintiff; commented inappropriately upon her clothing; addressed her as "sweetie" and "honey" (terms that are alleged to be demeaning and inappropriate), *see* Dkt. 1, ¶ 77; and that defendant required her to perform unspecified personal errands during work hours. *Id.*, ¶ 79.

Plaintiff additionally alleges that the parties stopped speaking in July 2019, after defendant had urged her to take a leave of absence "to get her head on straight." *Id.*, ¶ 80. However, despite claiming that the parties stopped speaking, plaintiff then asserts that defendant was verbally

abusive for the next two months—in August and September of 2019. *Id*., ¶ 84. Defendant also allegedly told his staff to stop speaking to the plaintiff. *Id*., ¶ 85. However, plaintiff then claims that she requested a leave of absence which defendant would not approve. *Id*., ¶¶ 92, 93. No specifics are alleged for this conduct which supposedly occurred during this three month period. Aside from claiming that defendant Rosenbaum called her "sweetie" or "honey", there are no specifics whatsoever in the complaint. There are no details concerning the alleged touching, nor the comments about plaintiff's clothing. Similarly, there are no examples of any alleged verbal abuse. In short, almost all of the allegations about post-December 2017 conduct are not only general and conclusory, but innocuous or casual as well. Furthermore, there is not even an allegation that any of defendant's conduct—whether actions or comments—were related to plaintiff's gender. Nor are any facts alleged from which the Court could find retaliation, aside from the one allegation that defendant Rosenbaum refused plaintiff's request for leave of absence three months after he had urged her to take a leave. *Compare*, Dkt. 1, ¶ 80 *with* ¶ 93.

Different passages in plaintiff's complaint accuse defendant Rosenbaum with sexual harassment, *see*, *id*., ¶ 146, or a hostile work environment, *id*., ¶ 119, or a violation of Title VII, *see*, *id*., ¶ 154. Furthermore, while appearing to use those terms interchangeably, the heading for the second cause of action claims that plaintiff was denied equal protection in violation of 42 U.S.C. § 1983, *id*., ¶ 18, and the fourth cause of action alleges discrimination on the basis of sex in violation of the New York Human Rights Law. *Id*., ¶ 21. However, it is unnecessary to sort out exactly which theory of liability forms the basis for plaintiff's claims. The Second Circuit has evaluated claims of gender-based sexual harassment pursuant to the standards applicable for a hostile work environment claim. *See Perry v. Slensby*, 815 Fed. Appx. 608, 610 (2d Cir. 2020); *see also Williams v. New York City Housing Authority*, No. 16-CV-8193, 2021 WL 2077817, at

*11 (S.D.N.Y. May 24, 2021) ("The standard for showing a hostile work environment under Title VII, Section 1981, Section 1983, and the [NYSHRL] is essentially the same.").

Accordingly, and because the complaint must be construed in the light most favorable to the plaintiff, defendant will analyze plaintiff's claims under the standard applicable to the hostile work environment charge. In short, a review of the allegations in plaintiff's complaint demonstrates that her second and fourth causes of action fail to state a claim against defendant Rosenbaum.[2]

The Second Circuit Court of Appeals has specified what a plaintiff claiming hostile work environment must allege:

> To establish a hostile work environment under Title VII, § 1981, or § 1983, a plaintiff must show that 'the work place is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment'
>
> ****
>
> In determining whether a plaintiff suffered a hostile work environment, we must consider the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'

---

[2] To the extent plaintiff seeks to characterize her claim in terms *quid pro quo* sexual harassment based on the 2005 to 2009 conduct, plaintiff has failed to state a claim. To state a claim of quid pro quo harassment, a "[plaintiff] must show a 'tangible employment action,' i.e., that an 'explicit . . . alteration[ ] in the terms or conditions of employment' resulted from her refusal to submit to [her employer's] sexual advances." *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 604 (2d Cir. 2006). Here, plaintiff does not allege that there was an alteration in the terms or conditions of employment resulting from her refusal to submit to sexual advances; to the contrary, plaintiff explicitly alleges that the sexualized conduct alleged to have occurred from 2005 to 2009 ceased in June 2009 upon refusal.

*Littlejohn v. City of New York*, 795 F.3d 297, 320-21 (2d Cir. 2015) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). Analysis of the four factors cited in *Littlejohn, supra*, demonstrates that plaintiff's complaint fails to state a claim for a hostile work environment.

First of all, although the complaint suggests that defendant Rosenbaum's touching, hugging, and comments were not isolated incidents, there are absolutely no details alleged about the frequency of this conduct from December 2017 through an unspecified date toward the end of 2019, when Plaintiff ceased working with Defendant. Although the complaint alleges that the touching, hugging, and comments occurred "daily" from 2009 to 2017, Dkt. 1, ¶ 77, there is no mention of the frequency of this conduct after December 2017, i.e., within the actionable period. Similarly, there is nothing alleged about how often plaintiff was supposedly required to perform personal errands. Thus, for the time period starting in December 2017, the complaint does not provide any information regarding the first factor—namely, frequency.

Second, case law indicates that the specific allegations pled by the plaintiff do not rise to the level of severity that would create a hostile work environment. In *Cristofaro v. Lake Shore Central School District*, 473 Fed. Appx. 28 (2d Cir. 2012), the Court of Appeals held that the plaintiff's allegations that defendant had commented on plaintiff's appearance, made sarcastic and derogatory comments to the plaintiff, brushed up against the plaintiff's body, and otherwise engaged in demeaning behavior, did not allege an actionable hostile work environment.

> [T]he record indicates only limited, infrequent, and at worse, mildly offensive conduct falling well short of the severity and frequency required to raise a triable issue of fact as to the existence of an objectably hostile work environment.

*Id*. at *30.

Similarly, in *Salvatore v. KLM Royal Dutch Airlines*, No. 98 CIV. 2450 (LAP), 1999 WL 796172 (S.D.N.Y. Sept. 30, 1999), the district court granted some of the defendants' motions to

dismiss, because the alleged conduct, which was clearly worse than the conduct the within plaintiff alleges during the three years preceding this action, did not add up to a hostile work environment. Plaintiff Rota alleged that the defendant had made a series of offensive and misogynistic statements. *Id*., at *10. However, those allegations did not suffice to satisfy the difficult burden of demonstrating a hostile work environment.

> Furthermore, disparaging remarks about the capabilities of working mothers, such as those alleged here, are not sufficiently severe to establish a hostile environment claim … . *Conclusory allegations* of 'unwanted embarrassing sexually charged comments' are also inadequate to state a claim.

*Id*. (emphasis added). Claims asserted by another plaintiff in *Salvatore, supra,* were dismissed because the alleged statements, while admittedly offensive, were not severe enough to create a hostile work environment. Furthermore, claims by plaintiff Conca that defendant had put his arm around plaintiff's shoulder or through her arm while calling her "wife" or "dear" or "hon", did not amount to behavior creating a hostile work environment. Such casual comments and behavior do not suffice to meet plaintiff's burden. *Id*., at *11. *See also Bell v. Baruch Coll.-CUNY*, No. 16-CV-8378 (VSB), 2018 WL 1274782, at *5 (S.D.N.Y. Mar. 9, 2018).

Two cases decided in 2021 reach similar conclusions. In *Bailey v. Nexstar Broad., Inc.*, No. 3:19-CV-00671(VLB), 2021 WL 848787 (D. Conn. Mar. 6, 2021), the defendant's comments about the plaintiff's appearance were insufficient to state a claim of hostile work environment:

> Here, the challenged comments were complementary, innocuous, and never referred to sexual activity, never referred to sexual characteristics, and never used derogatory sexualized language; of note, Plaintiff never seriously told his co-workers to desist comments about his appearance, hair, or relationship status.

*Id*., at *19. Likewise, in *Estevez v. Berkeley Coll.*, No. 18-CV-10350 (CS), 2021 WL 3115452 (S.D.N.Y. July 19, 2021), the court held that the defendant's backhanded compliments, which plaintiffs found offensive, were insufficient to create a hostile work environment.

> But even assuming that [defendant's] comments about Plaintiffs' bodies, clothes, lipstick, and hair were all backhanded compliments, they are too mild and innocuous to create a hostile work environment.

*Id*. at *15.

Here, the allegations in plaintiff's complaint do not even address the third or fourth factors which the court must consider in determining whether a hostile work environment has been alleged. There is no allegation of plaintiff being intimidated or humiliated; nor is there any allegation that defendant Rosenbaum's conduct interfered with plaintiff's job performance.

In sum, the conduct which plaintiff alleges to have occurred after December of 2017 until the end of plaintiff's employment with defendant in late 2019 is insufficient to state a claim of a hostile work environment. Even accepting all of plaintiff's allegations concerning these three plus years as true, calling plaintiff "sweetie" or "honey"; putting his arm around plaintiff or touching her in an unspecified but non-sexual manner; and requiring her to perform errands did not amount to an actionable hostile work environment. Accordingly, when viewing defendant Rosenbaum's alleged conduct during the applicable limitations period, the Court must dismiss plaintiff's complaint against defendant Rosenbaum.

**C. The allegations of sexual conduct from 2005 through 2009 are not sufficiently related to the post-2017 conduct.**

Once the Court finds that plaintiff has failed to allege an actionable hostile work environment after December of 2017, the analysis of plaintiff's complaint turns to the inflammatory and salacious allegations of sexual conduct between 2005 and 2009. Defendant respectfully submits that these allegations are not part of the same hostile work environment alleged after December of 2017, because there is insufficient relatedness between the charges of sexual conduct more than a decade ago, and the claims of recent behavior.

The departure point for this analysis is the Supreme Court's holding in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). The Supreme Court held that acts otherwise barred by Title VII's statute of limitations can be used to prove an actionable recent hostile work environment, if "the acts about which an employee complains are part of the same actionable hostile work environment practice. . . ." *Id.*, at 120.

This test has been articulated by the Second Circuit in terms of relatedness. "Under *Morgan*, a sexually offensive incident within the limitations period permits consideration of an incident preceding the limitations period only if the incidents are sufficiently related." *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 77 (2d Cir. 2010). "*Morgan* requires courts to make an individualized assessment of whether incidents and episodes are related." *Id*. Where "the pre-limitations period incidents are not sufficiently related to the post-limitations incidents of harassment to constitute a single hostile work environment claim. . . ," *Annunziata v. IBEW Local 363,* 15-CV-3363 (NSR), 2018 WL 2416568 at *14 (S.D.N.Y. May 29, 2018), and especially where the pre-limitations conduct is not "temporally proximate," *id.*, to the timely incidents, the older acts are not probative of an actionable hostile work environment. Defendant respectfully submits that there is insufficient relatedness between the alleged sexual conduct occurring 12 to 16 years before this action, and the allegations about events following December 1, 2017.

First of all, these two sets of allegations are separated by a decade or more. Plaintiff alleges that the sexual behavior began in 2005 and ended in 2009. The actionable period for purpose of the statute of limitations, however, does not begin until December of 2017.

Second, there is nothing about the alleged recent behavior that carries any sexual connotation whatsoever. The recent alleged comments—"sweetie" and "honey"—are in themselves innocuous and asexual. Furthermore, there is not a single allegation of disparate

treatment based on gender. Similarly, there is no allegation that plaintiff ever objected to or protested any of the conduct alleged after December 2017. Nowhere does she claim to have told defendant Rosenbaum that she did not want to be called "sweetie" or "honey" or that he should no longer put his arm around her. That is in contrast to the alleged sexual behavior which, according to plaintiff, ceased once plaintiff objected more than twelve years ago. *See* Dkt. 1, ¶ 68.

Third, the absence of relatedness is further demonstrated by Second Circuit case law. In *Fitzgerald v. Henderson*, 251 F.3d 345, 364 (2d Cir. 2001), the plaintiff attempted to apply a continuing violation theory to two distinct courses of conduct that had occurred at her workplace. To simplify the Court's explanation of these actions, the Second Circuit referred to the two courses as "Phase I" and "Phase II," and held that the continuing violation theory was inapplicable:

> We agree, however, with the district court's conclusion that Fitzgerald's claim of sexual harassment in Phase I was not saved by the continuing violation theory. Although Fitzgerald stated that Gerling had subjected her to unwanted sexual overtures daily from the time he arrived in August 1994 until sometime in April 1995, her assertions make it clear that his sexual advances ceased at the end of that period. Though Gerling then proceeded in Phase II to harass Fitzgerald for having rejected his propositions, the Phase II abuse was qualitatively different from his Phase I conduct.

*Id*., at 364. Subsequent cases have noted that "[t]he continuing violation doctrine 'is heavily disfavored in the Second Circuit,' and 'courts have been loath to apply it absent a showing of compelling circumstances.'" *Kennedy v. Bernhardt*, No. 18-CV-647 (JLS), 2020 WL 7399050, at *4 (W.D.N.Y. Dec. 16, 2020).

This is exactly what plaintiff herein has alleged. The complaint alleges conduct between 2005 and 2009 that involved sexual relations. However, the complaint specifically alleges that the sexualized conduct ceased on June 1, 2009, when plaintiff refused. Dkt. 1, ¶ 68. More importantly, there is no allegation that any sexualized conduct of any kind occurred after that date. Therefore, the 'Phase I' conduct alleged herein by plaintiff was "qualitatively different" from the 'Phase II'

conduct, which is alleged to have occurred in or after December 2017. *Fitzgerald*, 251 F.3d at 364; *see also Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 206 (E.D.N.Y. 2014) ("Although Sammarco's actions in 2010 may have been very similar to his actions in 2006, that similarity alone is insufficient to render continuous what is essentially two separate instances of alleged harassment separated by more than three years. His actions are precisely the type of "discrete discriminatory acts" that "are not actionable if time barred, even when they are related to acts alleged in timely filed charges.") (citing *Morgan*, 536 U.S. at 113).

In *Bowen-Hooks*, the Court rejected an effort to use three-year-old conduct to support a claim of hostile work environment under a continuing violation theory. *See Bowen-Hooks*, 13 F. Supp. 3d at 206. In the instant case, the plaintiff is attempting to include 12- to 16-year-old conduct as part of her claim of a hostile work environment. More importantly, the 12- to 16-year-old conduct is "qualitatively different" from the other conduct alleged in plaintiff's complaint, especially the conduct occurring in or after December of 2017. Furthermore, the complaint explicitly alleges that the "qualitatively different" conduct ceased more than 12 years before the commencement of this action. In short, the 12- to 16-year-old 'Phase I' conduct is neither actionable nor a basis for invoking the continuous violation theory.

Accordingly, plaintiff's allegations about unwanted sexual behavior 12 to 16 years before this action—behavior which plaintiff alleges to have ended more than eight years before the earliest day on which any actionable behavior could have occurred—do not serve to elevate her recent allegations to the level of actionable hostile work environment. Because the allegations of sexual conduct occurring many years before the filing of this action are not sufficiently related to plaintiff's hostile work environment claims alleged to have occurred after December 1, 2017, the court should grant defendant Rosenbaum's motion, and dismiss plaintiff's complaint against him.

**III.    CONCLUSION**

For all the above reasons, defendant Rosenbaum's motion to dismiss should be granted in all respects.

Dated: November 12, 2021
       Rochester, NY

                                         *s/ David Rothenberg*
                                         David Rothenberg, Esq.
                                         Michael Rothenberg, Esq.
                                         ROTHENBERG LAW
                                         *Attorneys for Defendant Rosenbaum*
                                         45 Exchange Boulevard, Suite 800
                                         Rochester, New York 14614
                                         Tel:  (585) 232-1946
                                         Fax:  (585) 232-4746
                                         Email:  david@rothenberglawyers.com
                                         Email:  michael@rothenberglawyers.com

To: LINDY KORN, ESQ.
The Law Office of Lindy Korn, LLP
535 Washington Street, Ninth Floor
Buffalo, NY 14203

-AND-

ANNA MARIE RICHMOND, ESQ.
2500 Rand Building
14 Lafayette Square
Buffalo, NY 14203

*Attorneys for Plaintiff*

Heather L. McKay, Esq.
NEW YORK STATE ATTORNEY GENERAL'S OFFICE
*Attorneys for Defendants Cosmas Grant, Ronald Pawelczak, Mary Aufleger, Ann Taddeo, Carolyn Grimaldi, Marge Allen, and Amy Fields*
144 Exchange Blvd., Suite 200
Rochester, NY 14614

Pedro Morales, Esq., Assistant Deputy Counsel
OFFICE OF COURT ADMINISTRATION
*Attorneys for Monroe County Supreme Court, Unified Court System of the State of New York, Office of Court Administration, and Office of the Managing Inspector General for Bias Matters*
25 Beaver Street, 11th Floor
New York, NY 10004