UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

REBECCA KLYMN,

                Plaintiff,

                                                  21-CV-6488-JLS

            vs.

MONROE COUNTY SUPREME COURT,
UNIFIED COURT SYSTEM OF THE STATE
OF NEW YORK, OFFICE OF COURT
ADMINISTRATION, OFFICE of the MANAGING
INSPECTOR GENERAL for BIAS MATTERS,
COSMAS GRANT, RONALD PAWELCZAK,
MARY AUFLEGER, ANN TADDEO,
CAROLYN GRIMALDI, MARGE ALLEN,
AMY FIELDS, and MATTHEW ROSENBAUM,

                Defendants.

# PLAINTIFF'S RESPONSE TO DEFENDANT ROSENBAUM'S MOTION TO DISMISS

**ORAL ARGUMENT REQUESTED**

| | |
|---|---|
| LINDY KORN, ESQ. | ANNA MARIE RICHMOND, ESQ. |
| The Law Office of Lindy Korn, LLP | 2500 Rand Building |
| 535 Washington Street, Ninth Floor | 14 Lafayette Square |
| Buffalo, NY  14203 | Buffalo, NY  14203 |
| 716-856-5676 | 716-854-1100 |
| lkorn@korn-law.com | annamarierichmondesq@gmail.com |

**TABLE OF CONTENTS**

INTRODUCTION ......................................................................................................................... 4

LEGAL ARGUMENT .................................................................................................................. 4

    I.    Standard of Review ........................................................................................................ 4

    I.    The Historical and Social Context ................................................................................. 5

    II.    Defendant Rosenbaum Created a Hostile Work Environment in Violation of 42 USC § 1983 and the New York Human Rights Law .............................................................................. 9

    III.    Plaintiff Klymn has Pleaded a Continuing Violation ..................................................... 13

CONCLUSION ............................................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**

*Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456 (2d Cir. 2001) ............................................ 12
*Alfano v. Costello*, 294 F 3d 365 (2d Cir. 2002). ......................................................................... 12
*Alleva v. N.Y.C. Dep't of Investigation*, 696 F. Supp. 2d 273  (E.D.N.Y. 2010) .......................... 15
*AMTRAK [sub nom. Nat'l R.R. Passenger Corp.] v. Morgan,* 536 U.S. 101 (2002) ................... 10
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................... 4
*Barrows v. Seneca Foods Corp.*, 512 F. App'x 115 (2d Cir. 2013); .............................................. 15
*Blesedell v. Mobil Oil Co.*, 708 F. Supp. 1408  (S.D.N.Y. 1989) .................................................. 15
*Cruz v. Coach Stores, Inc.*, 202 F.3d 560 (2d Cir. 2000). ............................................................. 11
*Davis v. City Univ. of N.Y.*, 94 Civ. 7277 (SHS), 1996 LEXIS 6345 (S.D.N.Y. May 8, 1996) ... 15
*De La Peña v. Metro. Life Ins. Co.*, 953 F. Supp. 2d 393 (E.D.N.Y. 2013) ................................. 15
*Falinski v. Kuntz*, 38 F. Supp. 2d 250 (S.D.N.Y. 1999) ............................................................... 15
*Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) ................................................................. 15
*Gonzalez v. Hasty*, 802 F.3d 212 (2d Cir. 2015) ........................................................................... 15
*Green v. Brennan*, 136 S. Ct. 1769 (2016) ................................................................................... 15
*Harris v. Forklift Sys.*, 510 U.S. 17 (1993) ................................................................................... 16
*James v. Van Blarcum*, 782 F. App'x 83 (2d Cir. 2019) .............................................................. 15
*Jemmott v. Coughlin*, 85 F.3d 61 (2d Cir. 1996) ............................................................................ 9
*Karibian v. Columbia University*, 14 F. 3d 773 (2d Cir 1994) ..................................................... 15
*Kaytor v. Elec. Boat Corp.*, 609 F.3d 537 (2d Cir. 2010) ............................................................. 11
*Lloyd v. WABC-TV*, 879 F. Supp. 394 (S.D.N.Y. 1995); .............................................................. 15
*Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75 (1998) .......................................................... 10
*Petrella v. MGM*, 572 U.S. 663 (2014); ....................................................................................... 15
*Petrosino v. Bell Atl.*, 385 F.3d 210 (2d Cir. 2004) ...................................................................... 13
*Shomo v. City of N.Y.*, 579 F.3d 176 (2d Cir. 2009) ..................................................................... 15
*Sooroojballie v. Port Auth. of N.Y. & N.J.*, 816 F. App'x 536 (2d Cir. 2020). ............................. 15
*Stephens v. Hofstra Univ. Sch. of Law*, No. 01-CV-5388 (DRH) (MLO), 2005 LEXIS 37540
   (E.D.N.Y. June 24, 2005) ........................................................................................................ 15
*Tomka v. Seiler Corp.*, 66 F.3d 1295 (2d Cir. 1995) ...................................................................... 9
*Trinidad v. N.Y.C. Dep't of Corr.*, 423 F. Supp. 2d 151  (S.D.N.Y. 2006) ................................... 15

**Statutes**

N.Y. Exec Law § 296(6). ................................................................................................................. 9

# INTRODUCTION

The Plaintiff, Rebecca Klymn filed the Complaint in this action against, *inter alia*, Matthew Rosenbaum, under 42 USC § 1983, alleging that the Defendant Rosenbaum subjected her to *quid pro quo* and hostile work environment harassment and to retaliation for complaining of sexual harassment. Plaintiff also invoked the Court's supplemental jurisdiction to plead violations of the New York State Human Rights Law.

Defendant Rosenbaum now moves to dismiss Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6), on the grounds that Plaintiff's complaint is time-barred, and that Plaintiff has failed to state a claim. For the reasons discussed below, Defendants' motion should be denied.

# LEGAL ARGUMENT

## I.  Standard of Review

The standard for evaluating a motion to dismiss on the pleadings is well-established:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 556 (2007)). The factual allegations of Plaintiff's complaint, accepted as true, plausibly state that Defendant Rosenbaum subjected Ms. Klymn to discrimination on the basis of her sex from 2005 through 2019.

I.      **The Historical and Social Context**

This is a case about power and the abuse of power. At all times relevant to Ms. Klymn's claim against Defendant Rosenbaum, he was a Justice of the Supreme Court of the State of New York, and Rebecca Klymn was his personal secretary. As is set forth in detail in Plaintiff's complaint, Defendant Rosenbaum subjected Ms. Klymn to a hostile work environment on the basis of her sex for the entire duration of her employment as his secretary. Defendant Rosenbaum created that hostile work environment by publicly touching Ms. Klymn and putting his arm around her, by commenting inappropriately about her clothing, and by addressing her using inappropriate and demeaning names such as "sweetie" and "honey." His comments and touching were unwelcome to Ms. Klymn. Item No. 1, ¶¶ 39, 60, 69, 77. The sexually harassing environment based upon Defendant Rosenbaum's inappropriate public comments and physical contact was a constant of Ms. Klymn's work environment until Judge Rosenbaum's resignation from the bench.

During the first four years of Ms. Klymn's employment as Defendant Rosenbaum's secretary, that hostile work environment was accompanied by *quid pro quo* harassment involving repeated demands for sexual intercourse and at least one outright sexual assault. *Id.*, ¶¶ 24, 31, 34, 56, 62. Defendant Rosenbaum explicitly informed Ms. Klymn that submission to this sexual molestation was a part of her job, and that if she wanted to keep her job, she would comply with his demands. *Id.*, ¶¶ 27-28.

As Defendant Rosenbaum's personal secretary, Ms. Klymn served at Defendant Rosenbaum's pleasure. She was entirely dependent upon Defendant Rosenbaum for her employment, and in 2005, Defendant Rosenbaum expressly conditioned Ms. Klymn's employment upon her acquiescence to his demands for sex. *Id.,* ¶¶ 27-28.

In May of 2007, Ms. Klymn complained about Defendant Rosenbaum's actions to Supreme Court Justice Ann Marie Taddeo. Judge Taddeo told Ms. Klymn that there wasn't much Taddeo could do, and that there was no way to have male judges who engaged in sexual harassment reprimanded. *Id*. ¶¶ 45-47.

In November of 2007, Ms. Klymn complained to Margaret Allen, who was, at the time, the head of Human Resources at Monroe County Supreme Court. Instead of assisting Ms. Klymn, Ms. Allen told her that if Ms. Klymn was complaining about Defendant Rosenbaum, Ms. Allen would "have no choice but to fire her." *Id.*, ¶¶ 48-50. Ms. Allen's response validated and reinforced Defendant Rosenbaum's statements to Ms. Klymn making her submission to his sexual demands a condition of employment. Ms. Allen's response also made it clear to Ms. Klymn that any effort to complain about Defendant Rosenbaum's treatment would result in the loss of her job.

In addition to threatening her livelihood, Defendant Rosenbaum also threatened Ms. Klymn that he would cause her to lose custody of her minor son in pending divorce proceedings if she did not comply with his demands. *Id.,* ¶¶ 29-30. As a soon-to-be single mother, the only threat that was more frightening to Ms. Klymn than the loss of her income was the loss of custody of her child. Whether or not Defendant Rosenbaum had the ability to carry out his threat to deprive her of custody is immaterial; Ms. Klymn believed he was able to do so, and consequently felt she had no choice but to obey Defendant Rosenbaum. She responded to his threats by doing her very best to be the best judicial secretary she could be – and until two years after her divorce was final, by acquiescing to his sexual demands as well.

Defendant Rosenbaum's *quid pro quo* demands for sexual intercourse were made in the context of his subjection of Ms. Klymn to a hostile work environment on the basis of her sex,

6

characterized by addressing Ms. Klymn in demeaning terms, commenting inappropriately on Ms. Klymn's clothing, and touching and hugging her in the presence of others.  *Id.*, ¶ 39, 60.  All of Defendant Rosenbaum's actions described in the Complaint were about Ms. Klymn's sex, motivated by Defendant Rosenbaum's sexual impulses, and because Ms. Klymn is a woman. The climate of intimidation and coercion based upon her sex continued for as long as Ms. Klymn worked for Defendant Rosenbaum – each and every time he engaged in unwelcome sexual behavior Ms. Klymn heard his threats and Ms. Allen's echoing in her head. After that contact ceased, Defendant Rosenbaum's threats and intimidation continued to echo each time he touched her, each time he addressed her in a demeaning sex-stereotyped way, and each time he commented on her clothing and her body.

      On June 1, 2009, Ms. Klymn found the courage to refuse to submit to Defendant Rosenbaum's demands for sexual intercourse, and to tell him she would no longer acquiesce to his demands and threats.  *Id.*, ¶ 68.  For reasons at this time known only to Defendant Rosenbaum, he stopped demanding sexual gratification from Ms. Klymn, and did not fire her. However, his sexually demeaning comments and his inappropriate and unwelcome touching of her continued through October of 2019 when Plaintiff went out on a leave of absence. *Id.*, ¶¶ 69-70, 77-78, 94.

      In 2019, Ms. Klymn complained again to Judge Taddeo (who had told her in 2007 that Ms. Klymn had no choice but to endure Defendant Rosenbaum's abuse).  Ms. Klymn also complained to District Executive Ronald Pawelczak, to Assistant Executive Mary Aufleger, and to Human Resources Representatives Amy Fields.  Each of those persons told Plaintiff they could not help her, and recommended she look for other employment.  *Id.*, ¶¶ 82-83.  Ms. Klymn had been told in 2010 by then Human Resources Representative Robert Barnish  – after Barnish

7

had conducted a three-year search on Ms. Klymn's behalf – that no one in the court system would hire her due to fear of Defendant Rosenbaum *Id.,* ¶¶ 43-44, 73.  Thus, the recommendations in 2019 were stark reminders that if Ms. Klymn did not submit to Defendant Rosenbaum, she would lose her job.

    As Ms. Klymn began to resist Defendant Rosenbaum by increasing the frequency and strength of her complaints, Defendant Rosenbaum retaliated against Ms. Klymn by attempting to silence her  He verbally abused her, ostracized her, encouraged his staff to ostracize her, and denied her a medically necessary leave of absence. *Id.,* ¶¶ 84-85, 88, 91, 93.  Ms. Klymn was ostracized and demeaned by the staff in Defendant Rosenbaum's chambers – as part of Rosenbaum's retaliation against her for her complaints and efforts to remove herself from his zone of influence.

    When Ms. Klymn sought help from other employees of Monroe County Supreme Court, she was told again and again, by a Clerk, a Judge and various Human Resources officials, that there was nothing that could be done to stop Defendant Rosenbaum.  *Id.*, ¶¶ 42, 46-47, 50, 73.  Ms. Klymn's formal written complaints were allegedly "lost" by the Office of the Managing Inspector General for Bias Matters <u>twice</u>.  *Id.*, ¶¶ 54-55, 75-76, 110.  These actions reinforced Ms. Klymn's understanding that Defendant Rosenbaum's power over her was absolute, and that he, and he alone, controlled her experience as an employee of the New York State Unified Court System.

    Defendant Rosenbaum's motion to dismiss attempts to create arbitrary and artificial lines of demarcation in his treatment of Ms. Klymn based upon the cessation of Rosenbaum's demands for sexual gratification after June of 2009.  However, Rosenbaum's treatment of Ms. Klymn must be examined in context.  This is a case of a man with absolute power over his

female assistant abusing that power in a myriad of demeaning and offensive ways based upon her sex. Defendant Rosenbaum created and maintained a hostile work environment for Ms. Klymn for the entire 14-year duration of his term as Justice of the Supreme Court, from 2005 through the end of 2019.

## II.   Defendant Rosenbaum Created a Hostile Work Environment in Violation of 42 USC § 1983 and the New York Human Rights Law

When a public employee is subjected to sexual harassment on the job, that employee may raise claims under Title VII, 42 USC § 1983, and (in New York State) the New York Human Rights Law.  Claims under § 1983 and the Human Rights Law[1] are analyzed pursuant to the same standards that govern Title VII actions.  *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1304 n.4 (2d Cir. 1995) (Human Rights Law); *Jemmott v. Coughlin*, 85 F.3d 61, 67 (2d Cir. 1996) (§ 1983).

The Supreme Court of the United States first articulated the standard for establishing a hostile work environment in 1993:

> When the workplace is permeated with "discriminatory intimidation, ridicule, and insult," 477 U.S. at 65, that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," Title VII is violated.
>
> Moreover, . . . the very fact that the discriminatory conduct was so severe or pervasive that it created a work environment abusive to employees because of their race, gender, religion, or national origin offends Title VII's broad rule of workplace equality.
>
> \* \* \*
>
> This is not, and by its nature cannot be, a mathematically precise test. . . . But **we can say that whether an environment is**

---

[1] . Unlike Title VII which does not allow for suit against individuals, the New York Human Rights Law includes a cause of action against individuals who "aid, abet, incite, compel or coerce the doing of any acts forbidden under this Article."  N.Y. Exec Law § 296(6).

> **"hostile" or "abusive" can be determined only by looking at all the circumstances.** These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. The effect on the employee's psychological well-being is, of course, relevant to determining whether the plaintiff actually found the environment abusive. But while psychological harm, like any other relevant factor, may be taken into account, no single factor is required.

*Harris v. Forklift Sys.*, 510 U.S. 17, 21-23 (1993) (citations omitted) (emphasis added).  Since *Harris* was decided, the Supreme Court has repeatedly reinforced its emphasis on the requirement that a court evaluate a claim of hostile work environment by looking at the totality of the circumstances.  As the Court held in 1998:

> We have emphasized, moreover, that the objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering "all the circumstances."  In same-sex (as in all) harassment cases, that inquiry requires careful consideration of the social context in which particular behavior occurs and is experienced by its target.  A professional football player's working environment is not severely or pervasively abusive, for example, if the coach smacks him on the buttocks as he heads onto the field-even if the same behavior would reasonably be experienced as abusive by the coach's secretary (male or female) back at the office.
>
> The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed. Common sense, and an appropriate sensitivity to social context, will enable courts and juries to distinguish between simple teasing or roughhousing among members of the same sex, and conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive.

*Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 81-82 (1998).  *See also*, *AMTRAK [sub nom. Nat'l R.R. Passenger Corp.] v. Morgan,* 536 U.S. 101, 116 (2002).

Defendant Rosenbaum's private sexual abuse of Ms. Klymn between 2005 and 2009

cannot be separated from his public comments and unwelcome touching throughout her entire employment. His comments include demeaning forms of addressing Ms. Klymn, as well as inappropriate comments on Ms. Klymn's clothing. Defendant Rosenbaum argues that those comments and touching, should be considered in isolation from Rosenbaum's *quid pro quo* harassment described in detail, *above*, and then argues that the public conduct, considered in isolation, cannot establish liability for a hostile work environment. His effort to separate the treatment Ms. Klymn endured through 2019 without considering the context of the egregious sexual abuse she suffered between 2005 and 2009 is a tactic to artificially insulate Defendant Rosenbaum from liability for all of his actions considered in context.

The Court of Appeals for the Second Circuit has repeatedly reaffirmed that a hostile work environment on the basis of a Plaintiff's sex violates Title VII, and that a court must consider the totality of the circumstances in evaluating a hostile work environment claim. In 2000 the Court held: "Determining whether workplace harassment was severe or pervasive enough to be actionable depends on the totality of the circumstances," and emphasized that "the crucial inquiry focuses on the nature of the workplace environment as a whole." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000). *See also*, *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 548 (2d Cir. 2010) ("[T]he question of whether considerations of the plaintiff's sex 'caused the conduct at issue often requires an assessment of individuals' motivations and state of mind,' and 'an invidious discriminatory purpose may often be inferred from the totality of the relevant facts.' Thus, especially in the context of a claim of sexual harassment, where state of mind and intent are at issue, 'the court should not view the record in piecemeal fashion.'")

Defendant Rosenbaum has attempted to characterize his public comments and touching of Ms. Klymn as minor, even neutral, incidents that cannot be construed as sexual harassment.

As has been discussed in detail, *above*, the public harassment and humiliation to which Rosenbaum subjected Ms. Klymn is neither minor nor sexually neutral. However, even if Defendant Rosenbaum's comments and offensive touching of Ms. Klymn, considered out of context, might be deemed to not rise to the level of a hostile work environment, in the context of Defendant Rosenbaum's sexual abuse and *quid pro quo* threats, his actions take on a different character. As the Court of Appeals for the Second Circuit noted: "While it is true that the stray remarks of a decision-maker, without more, cannot prove a claim of employment discrimination, we have held that when 'other indicia of discrimination are properly presented, the remarks can no longer be deemed "stray," and the jury has a right to conclude that they bear a more ominous significance.'" *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 468 (2d Cir. 2001) (citations omitted).

    The *Kaytor* Court also relied upon prior Second Circuit precedent for the proposition that "facially neutral" incidents may be considered as among the totality of circumstances. If, for example, the sexual harasser also engages in non-sexual harassment there is a basis for inferring that the apparently neutral incidents were in fact discriminatory. Specifically, the Court held: "Circumstantial evidence that facially sex-neutral incidents were part of a pattern of discrimination on the basis of gender may consist of evidence that 'the same individual' engaged in 'multiple acts of harassment, some overtly sexual and some not.'" *Kaytor,* 609 F3d at 547-48 citing *Alfano v. Costello*, 294 F 3d 365, 378 (2d Cir. 2002).

    Defendant Rosenbaum seeks to insulate his pre-2009 conduct from examination by this Court by arguing that there is a clear line of demarcation between that conduct and his conduct after June 2009, in reliance on *Fitzgerald v. Henderson*, 251 F3d 345 (2d Cir. 2001); and also by arguing that his conduct between 2018 and 2021 does not rise to the level

of a hostile work environment. Defendant Rosenbaum's arguments must be rejected on both counts: his efforts to separate the pre- and post-2009 conduct ignore the unifying thread of sex-based degradation and abuse that characterizes all of Rosenbaum's conduct toward Ms. Klymn; and viewed in the context of his historical treatment of Ms. Klymn, all of Defendant Rosenbaum's actions described in the Complaint rise to the level of a hostile work environment.

### III. Plaintiff Klymn has Pleaded a Continuing Violation

It is well-established that "in the case of a hostile work environment claim, the statute of limitations requires that only one sexually harassing act demonstrating the challenged work environment occur within 300 days of filing; once that is shown, a court and jury may consider 'the entire time period of the hostile environment in determining liability." *Petrosino v. Bell Atl.*, 385 F.3d 210, 220 (2d Cir. 2004).

Unlike the harasser in *Fitzgerald,* Defendant Rosenbaum's harassment of Plaintiff did not materially change in 2009. Although it is true that Rosenbaum stopped demanding actual sexual intercourse, his public harassing treatment of Ms. Klymn continued to be based upon inappropriate and unwelcome physical contact and comments. Throughout the course of their employer-employee relationship, Defendant Rosenbaum "continued to touch Plaintiff, put his arm around Plaintiff, commented inappropriately upon Plaintiff's clothing, and address her by demeaning and inappropriate names such as 'sweetie' and 'honey'" <u>in the presence of others</u>. Item 1, ¶¶ 39, 60, 66, 69, 77. Defendant Rosenbaum's public harassment of Ms. Klymn lasted until 2019. The cessation of Rosenbaum's demands for sexual intercourse did not change Ms. Klymn's subjective experience of his harassing conduct as demeaning and unwelcome harassment based upon her sex.

By virtue of his authority over Ms. Klymn, his influence in Monroe County Supreme Court, and the fear he inspired in other court employees, Defendant Rosenbaum shut down every process that would have protected her from 2005 until 2019.  Judge Taddeo told Plaintiff she could do nothing.  Human Resources personnel and Court Administrators neither stopped Rosenbaum's abuse; neither did they remove Ms. Klymn from his court until 2019.

Less than four weeks after the Judicial Conduct Commission interviewed Ms. Klymn, Defendant Rosenbaum entered into a stipulation acknowledging that the Commission was investigating a complaint that "from 2005 through 2019, he made improper and at times abusive personal demands of court staff, directly or indirectly conveying that continued employment required submitting to such demands and creating a hostile workplace environment," resigned from office, and promised to neither seek nor accept judicial office in the future.  Complaint, ¶¶ 108; Exhibit A, filed herewith.  Nearly fifteen years after the sexual harassment began, and more than twelve years after she first attempted to complain, Defendant Rosenbaum's abuse of Ms. Klymn finally ended.  She now seeks damages for the harm he inflicted upon her.

Defendant Rosenbaum has argued that the continuing violation doctrine is "heavily disfavored" in the Second Circuit, and that courts in the circuit "have been loath to apply it absent a showing of compelling circumstances." *See* Item No. 19-2, p. 11.  Defendants' citation, when traced to its source, arises from a 1989 decision of the US District Court for the Southern District of New York.  In discussing the continuing violation doctrine as it existed in 1989, the Court wrote:

> The plaintiffs have cited numerous cases from various federal courts but their omission of Second Circuit authority is telling.  The courts of this circuit consistently have looked unfavorably on continuing violation arguments. Indeed, only

14

> "compelling circumstances" will warrant application of the exception to the statute of limitations.

*Blesedell v. Mobil Oil Co.*, 708 F. Supp. 1408, 1415 (S.D.N.Y. 1989) (citations omitted). The *Blesedell* Court cited three prior district court cases for its characterization of the "consistent" position of "the courts of this circuit." *Blesedell's* characterization of the Second Circuit's view of the continuing violation theory was cited *verbatim* by other district courts, in a string of district court cases without reference to decisions of the Second Circuit itself.[2] The line of cases ignores the Second Circuit's repeated invocation of the continuing violation doctrine,[3] including its expansion to Eighth Amendment cases.[4] It also ignores the Supreme Court's jurisprudence as articulated in *AMTRAK, supra*, at 122, and its progeny.[5] The continuing violation doctrine is alive and well in the Second Circuit, and is applicable here.

## CONCLUSION

From 2005 through 2019, Defendant Rosenbaum subjected Ms. Klymn to a discriminatorily abusive work environment by virtue of his complete authority over her, as did the supervisors in *Karibian v. Columbia University*, 14 F. 3d 773 (2d Cir 1994), and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998).

---

[2] . *Lloyd v. WABC-TV*, 879 F. Supp. 394, 399 (S.D.N.Y. 1995); *Davis v. City Univ. of N.Y.*, 94 Civ. 7277 (SHS), 1996 LEXIS 6345, at *29 (S.D.N.Y. May 8, 1996); *Falinski v. Kuntz*, 38 F. Supp. 2d 250, 257 (S.D.N.Y. 1999); *Stephens v. Hofstra Univ. Sch. of Law*, No. 01-CV-5388 (DRH) (MLO), 2005 LEXIS 37540, at *13 (E.D.N.Y. June 24, 2005); *Trinidad v. N.Y.C. Dep't of Corr.*, 423 F. Supp. 2d 151, 165 n.11 (S.D.N.Y. 2006); *Alleva v. N.Y.C. Dep't of Investigation*, 696 F. Supp. 2d 273, 281 (E.D.N.Y. 2010); *De La Peña v. Metro. Life Ins. Co.*, 953 F. Supp. 2d 393, 407 (E.D.N.Y. 2013).

[3] . *See, e.g., Barrows v. Seneca Foods Corp.*, 512 F. App'x 115, 116-17 (2d Cir. 2013); *James v. Van Blarcum*, 782 F. App'x 83, 85 (2d Cir. 2019); *Sooroojballie v. Port Auth. of N.Y. & N.J.*, 816 F. App'x 536, 542 (2d Cir. 2020).

[4] . *Shomo v. City of N.Y.*, 579 F.3d 176, 182 (2d Cir. 2009); *Gonzalez v. Hasty*, 802 F.3d 212, 221 (2d Cir. 2015).

[5] . *See, e.g., Petrella v. MGM*, 572 U.S. 663, 672 n.7 (2014); *Green v. Brennan*, 136 S. Ct. 1769, 1778 (2016).

Rosenbaum's sexual harassment of Ms. Klymn was enabled and reinforced by numerous employees of the Unified Court System of the State of New York who failed in their obligation to provide a work environment free of "'discriminatory intimidation, ridicule, and insult,'. . . 'sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment.'" *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993).  The branch of New York Government that is charged with administering justice prevented Ms. Klymn from seeking justice.  This failure, too, must be considered in evaluating Ms. Klymn's claim.  Her inability to obtain any redress from the Unified Court System, reinforced Ms. Klymn's subjective experience as the powerless victim of a man cloaked with an obscene amount of power – who chose to exercise that power obscenely.

Plaintiff brings her Complaint before this Court seeking justice.  We respectfully request the Court to deny Defendant Rosenbaum's motion, and allow her to proceed toward her proof.


Respectfully submitted,


| /s/ Lindy Korn | /s/ Anna Marie Richmond |
|---|---|
| LINDY KORN, ESQ. | ANNA MARIE RICHMOND, ESQ. |
| The Law Office of Lindy Korn, LLP | 2500 Rand Building |
| 535 Washington Street, Ninth Floor | 14 Lafayette Square |
| Buffalo, NY  14203 | Buffalo, NY  14203 |
| 716-856-5676 | 716-854-1100 |
| lkorn@korn-law.com | annamarierichmondesq@gmail.com |

Dated:      December 23, 2021
                 Buffalo, NY