UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

REBECCA KLYMN

                    Plaintiff,

          vs.                                    21-cv-06488-JLS

                                              AMENDED COMPLAINT

MONROE COUNTY SUPREME COURT,                  JURY TRIAL DEMANDED
UNIFIED COURT SYSTEM OF THE STATE
OF NEW YORK, OFFICE OF COURT
ADMINISTRATION, OFFICE of the MANAGING
INSPECTOR GENERAL for BIAS MATTERS,
COSMAS GRANT, RONALD PAWELCZAK,
MARY AUFLEGER, ANN MARIE TADDEO,
CAROLYN GRIMALDI, MARGARET ALLEN,
AMY FIELDS, and MATTHEW ROSENBAUM,
                    Defendants.

1.       This is a complaint for damages and injunctive relief pursuant to Title VII of the

Civil Rights Act of 1964, as amended, 42 USC §§ 2000e, et seq., and 42 USC § 1983.  Plaintiff

also raises claims under the New York State Human Rights Law, NY Executive Law § 290, et

seq., as amended.

2.       As is set forth in detail below, Defendants discriminated against Plaintiff on the

basis of sex, and retaliated against her in violation of state and federal law.


                    **JURISDICTION AND VENUE**

3.       Jurisdiction is conferred upon this Court by 28 USC § 1331 and 28 USC § 1343;

supplemental jurisdiction over Plaintiff's state law claims is conferred upon this Court by 28

USC § 1367(a).

4.       Venue is properly laid in the Western District of New York under 28 USC §

1

1396(b) because all of the parties are located in the Western District of New York, and

the actions complained of occurred in the Western District of New York

5.      Plaintiff has exhausted administrative remedies.

6.      A copy of the complaint filed before the Equal Employment Opportunity

Commission (EEOC) on or about August 24, 2020 is attached hereto as Exhibit A.

7.      A copy of the Right to Sue letter issued by the EEOC on April 21, 2021, is

attached hereto as Exhibit B.


## PARTIES

8.      Plaintiff, REBECCA KLYMN is a woman.

9.      Defendant UNIFIED COURT SYSTEM OF THE STATE OF NEW

YORK ("UCS") is made up of various levels of trial and appellate courts established by

the Constitution and laws of the State of New York, and is an employer within the

meaning of the relevant statutes.

10.      Defendant OFFICE OF COURT ADMINISTRATION ("OCA") is a

subdivision of Defendant UCS that includes Diversity and Inclusion and Human

Resources, and is an employer within the meaning of the relevant statutes.

11.      Defendant MONROE COUNTY SUPREME COURT is a trial court

located in the Seventh Judicial District of the State of New York, and is an employer

within the meaning of the relevant statutes.

12.      At all times relevant to this Complaint, Plaintiff was an employee of

Defendants UCS, OCA and Monroe County Supreme Court.

13.      Defendants UCS, OCA and Monroe County Supreme Court are legally

obligated to implement adequate sexual harassment training and awareness programs for all employees.

14.     Defendants UCS, OCA and Monroe County Supreme Court are legally obligated to establish adequate avenues for complaints of violations of their sexual harassment policies

15.     Defendant OFFICE of the MANAGING INSPECTOR GENERAL for BIAS MATTERS ("OIG") investigates allegations of bias based upon, *inter alia,* race and sex, and that affect the workplace or the terms and conditions of employment of UCS personnel.

16.     At all times relevant to this Complaint, Defendant COSMAS GRANT ("GRANT") was an employee of Defendant OIG.  He is sued in his personal and official capacities.

17.     Defendant OIG is legally obligated to establish adequate avenues for complaints of violations of the sexual harassment policies promulgated by Defendants UCS, OCA and Monroe County Supreme Court.

18.     Defendant OIG is legally obligated to investigate all claims of sexual harassment submitted to it, and to send a report of its investigation to appropriate administrators including the Administrative Judge overseeing the Complainant, and the appropriate Deputy Chief Administrative Judge for a determination.

19.     At all times relevant to this Complaint, Defendant RONALD PAWELCZAK ("PAWELCZAK") was the District Executive of the Seventh Judicial District of the State of New York.  He is sued in his personal and official capacities.

20.     At all times relevant to this Complaint, Defendant MARY AUFLEGER ("AUFLEGER") was the Assistant District Executive of the Seventh Judicial District of the State of New York.  She is sued in her personal and official capacities

3

21.    At all times relevant to this Complaint, Defendant ANN MARIE TADDEO ("TADDEO") was a Supreme Court Justice in Monroe County, New York. She is sued in her personal and official capacities.

22.    At all times relevant to this Complaint, Defendant CAROLYN GRIMALDI ("GRIMALDI") was head of Human Resources for Defendant OCA.  She is sued in her personal and official capacities.

23.    On information and belief, at all times relevant to this Complaint, Defendant MARGARET ALLEN ("ALLEN") was head of Human Resources at MONROE COUNTY SUPREME COURT.  She is sued in her personal and official capacities.

24.    At all times relevant to this Complaint, Defendant AMY FIELDS ("FIELDS") was a Principal Court Analyst assigned to Human Resources at MONROE COUNTY SUPREME COURT.  She is sued in her personal and official capacities.

25.    At all times relevant to this complaint, Defendant MATTHEW ROSENBAUM ("ROSENBAUM") was a Supreme Court Justice in Monroe County, New York.  He is sued in his personal and official capacities.


**FACTS**

26.    At all times relevant to this Complaint, Plaintiff was employed by Defendants UCS and OCA at Defendant MONROE COUNTY SUPREME COURT.

27.    Defendant ROSENBAUM entered upon judicial office on March 28, 2005.

28.    From March of 2005 until December of 2019, Plaintiff was employed as Secretary to Defendant ROSENBAUM.

29.     Defendant ROSENBAUM compelled Plaintiff to perform fellatio upon him on approximately a monthly basis in 2005.

30.     Plaintiff performed the acts alleged in ¶ 29 against her will.

31.     Each of the instances alleged in ¶ 29 occurred in Defendant ROSENBAUM's judicial chambers.

32.     Defendant ROSENBAUM told Plaintiff that performing fellatio upon him was part of her job, that he was stressed, and she was required to assist him in relieving his stress.

33.     Defendant ROSENBAUM also threatened Plaintiff that if she wanted to keep her job she would comply with his demands for oral sex.

34.     In addition to the incidents alleged in ¶ 29, throughout 2005, Defendant ROSENBAUM also addressed Plaintiff using demeaning terms, commented inappropriately upon Plaintiff's clothing, touched and hugged Plaintiff in the presence of others, and required Plaintiff to perform personal errands for himself and his family during the work day.

35.     Defendant ROSENBAUM's actions described in ¶ 34 were unwelcome to Plaintiff.

36.     In 2005 Plaintiff was engaged in divorce proceedings.

37.     Defendant ROSENBAUM also told Plaintiff that if she wanted to retain custody of her minor son, she would comply with his demands for oral sex.

38.     In 2006, Defendant ROSENBAUM compelled Plaintiff to perform fellatio upon him on at least thirty separate occasions.

39.     Each of the instances alleged in ¶ 38 occurred in Defendant ROSENBAUM's judicial chambers.

40.     Plaintiff performed the acts alleged in ¶ 38 against her will.

41.     In addition to the incidents alleged in ¶¶ 29, 34 and 38, on or about November 14, 2006, Defendant ROSENBAUM vaginally raped Plaintiff in her home after work hours.

42.     In addition to the incidents alleged in ¶¶ 29, 34, 38 and 41, throughout 2006, Defendant ROSENBAUM also addressed Plaintiff using demeaning terms, commented inappropriately upon Plaintiff's clothing, touched and hugged Plaintiff in the presence of others, and required Plaintiff to perform personal errands for himself and his family during the work day.

43.     Defendant ROSENBAUM's actions described in ¶¶ 29, 34, 38 and 41, were unwelcome to Plaintiff.

44.     In 2007 Defendant ROSENBAUM compelled Plaintiff to perform fellatio upon him on at least twenty separate occasions.

45.     Each of the instances alleged in ¶ 44 occurred in Defendant ROSENBAUM's judicial chambers.

46.     Plaintiff performed the acts alleged in ¶ 44 against her will.

47.     In addition to the incidents alleged in ¶¶ 29, 34, 38, 41 and 44 throughout 2007 Defendant ROSENBAUM required Plaintiff to perform personal errands for himself and his family members during the workday.

48.     In addition to the incidents alleged in ¶¶ 29, 34, 38, 41, 44, and 47, throughout 2007 Defendant ROSENBAUM also addressed Plaintiff using demeaning terms, commented inappropriately upon Plaintiff's clothing, and touched and hugged Plaintiff in the presence of others.

49.     Defendant ROSENBAUM's comments and physical contact alleged in ¶¶ 29, 34, 38, 41, 44, 47 and 48 were unwelcome to Plaintiff.

50.     On January 10, 2007, Plaintiff spoke with Lisa Cammilleri, a Court Clerk who had previously worked for Defendant ROSENBAUM, and who was reassigned away from Defendant ROSENBAUM at that time, about the sexual harassment Plaintiff was enduring.

51.     Ms. Cammilleri advised Plaintiff that there was nothing Plaintiff could do because Defendant ROSENBAUM was a judge, and no one would listen to the Plaintiff.

52.     In early 2007, Plaintiff spoke to Robert Barnish in Human Resources about being assigned to another position.

53.     Mr. Barnish advised Plaintiff that he would seek out other assignments for her.

54.     On May 14, 2007, Plaintiff told Defendant TADDEO about Defendant ROSENBAUM's sexual demands.

55.     As a supervisor or manager, Defendant TADDEO was obligated, pursuant to Defendant UCS' sexual harassment policy to provide a copy of Defendant's sexual harassment complaint form, and to send the complaint to the OIG if Plaintiff did not.

56.     Defendant TADDEO did not provide a copy of the complaint form to Plaintiff and did not ensure that her complaint was forwarded to OIG.

57.     Defendant TADDEO told Plaintiff that there wasn't much she (TADDEO) could do, other than conduct sexual abuse training.

58.     Defendant TADDEO also told Plaintiff that, unfortunately, women had to endure sexual harassment from male judges because there was no way to have them reprimanded.

59.     Despite having been authorized to conduct sexual abuse training by the then-Chief Administrative Judge for the Seventh Judicial District, Defendant TADDEO never conducted such training, nor caused such training to be conducted.

60.     On November 20, 2007, Plaintiff met with Defendant ALLEN, who was then

Head of Human Resources at Defendant MONROE COUNTY SUPREME COURT.

61.     Plaintiff told Defendant ALLEN about Defendant ROSENBAUM's conduct, and asked for help.

62.     As a supervisor or manager, Defendant ALLEN was obligated, pursuant to Defendant UCS' sexual harassment policy to provide a copy of Defendant's sexual harassment complaint form, and to send the complaint to the OIG if Plaintiff did not.

63.     Defendant ALLEN did not provide a copy of the complaint form to Plaintiff and did not ensure that her complaint was forwarded to OIG.

64.     Defendant ALLEN told Plaintiff that if Plaintiff was, in fact, complaining about Defendant ROSENBAUM, Defendant ALLEN would have no choice but to fire Plaintiff.

65.     Defendant ALLEN also told Plaintiff that if Plaintiff were merely inquiring about "the process" to help someone else, that Defendant ALLEN would send Plaintiff information.

66.     Plaintiff asked for information about the complaint process.

67.     Defendant ALLEN sent Plaintiff an email with links to information about the Courts' Workforce Diversity Office, and the Office of the Special Inspector General for Bias Matters.

68.     On November 21, 2007, Plaintiff completed a claim of discrimination using the form she had found on the Internet, and mailed it to Defendant OIG.

69.     Plaintiff never received any response to the complaint she mailed on November 21, 2007.

70.     Defendants OIG and GRANT did not investigate Plaintiff's 2007 complaint and did not report her complaint to the appropriate administrative judges.

71.     In 2008 Defendant ROSENBAUM compelled Plaintiff to perform fellatio upon

8

him on at least fifteen separate occasions.

72.     Each of the instances alleged in ¶ 71 occurred in Defendant ROSENBAUM's judicial chambers.

73.     Plaintiff performed the acts alleged in ¶ 71 against her will.

74.     In addition to the conduct alleged in ¶ 71, in 2008, Defendant ROSENBAUM, also required Plaintiff to perform personal errands for himself and his family members during work hours.

75.     In addition to the incidents alleged in ¶¶ 29, 34, 38, 41, 44, 47, 48, 71 and 74, throughout 2008 Defendant ROSENBAUM also addressed Plaintiff using demeaning terms, commented inappropriately upon Plaintiff's clothing, and touched and hugged Plaintiff in the presence of others.

76.     Defendant ROSENBAUM's comments and conduct alleged in ¶¶ 29, 34, 38, 41, 44, 47, 48, 71, 74 and 75 were unwelcome to Plaintiff.

77.     Between January 1 and May 31, 2009 Defendant ROSENBAUM compelled Plaintiff to perform fellatio upon him on at least five separate occasions.

78.     Each of the instances alleged in ¶ 77 occurred in Defendant ROSENBAUM's judicial chambers.

79.     Plaintiff performed the acts alleged in ¶ 77 against her will.

80.     In addition to the conduct alleged in ¶ 29, 34, 38, 41, 44, 47, 48, 71, 74, 75 and 77, in 2009, Defendant ROSENBAUM, also required Plaintiff to perform personal errands for himself and his family members during work hours.

81.     In addition to the incidents alleged in ¶ 29, 34, 38, 41, 44, 47, 48, 71, 74, 75, 77 and 80, throughout 2009 Defendant ROSENBAUM also addressed Plaintiff using demeaning

9

terms, commented inappropriately upon Plaintiff's clothing, and touched and hugged Plaintiff in the presence of others.

82.     Defendant ROSENBAUM's comments and physical contact alleged in ¶¶ 29, 34, 38, 41, 44, 47, 48, 71, 74, 75, 77, 80 and 81 were unwelcome to Plaintiff.

83.     On June 1, 2009, Plaintiff refused Defendant ROSENBAUM's demand for oral sex and told him she would no longer respond to his demands for oral sex, nor acquiesce to his threats.

84.     Thereafter, on a daily basis, in 2009, 2010, 2011, 2012, 2013, 2014, 2015, 2016, and 2017, Defendant ROSENBAUM continued to touch Plaintiff, put his arm around Plaintiff, commented inappropriately upon Plaintiff's clothing, and address her by demeaning an inappropriate names such as "sweetie" and "honey."

85.     Defendant ROSENBAUM's comments and physical contact alleged in ¶ 84 were unwelcome to Plaintiff.

86.     Throughout 2009, 2010, 2011, 2012, 2013, 2014, 2015, 2016 and 2017, Defendant ROSENBAUM also continued to require Plaintiff to perform personal errands for himself and his family, including performing secretarial work for Defendant ROSENBAUM'S Temple during work hours.

87.     Plaintiff continued to seek other positions within Defendant UCS without success.

88.     In 2010 Mr. Barnish told Plaintiff that he believed no one within Defendant UCS would hire her due to fear of Defendant ROSENBAUM.

89.     In January of 2018, Plaintiff received Defendant UCS' updated form for filing a complaint of discriminatory treatment.

90.     Plaintiff submitted a second complaint to Defendant OIG on January 8, 2018.

91.     Plaintiff never received a response to the complaint alleged in ¶ 90.

92.     Defendants OIG and GRANT did not investigate Plaintiff's 2007 and 2018

complaints and did not report her complaints to the appropriate administrative judges.

93.     Throughout 2018, and during the first months of 2019, Defendant ROSENBAUM

continued to touch Plaintiff, put his arm around Plaintiff, commented inappropriately upon

Plaintiff's clothing, and address her by demeaning an inappropriate names such as "sweetie" and

"honey."

94.     Defendant ROSENBAUM's comments and physical contact alleged in ¶ 93 were

unwelcome to Plaintiff.

95.     Throughout 2018, and during the first seven months of 2019, Defendant

ROSENBAUM also continued to require Plaintiff to perform personal errands for himself and

his family during work hours.

96.      Beginning in June 2019, Defendant ROSENBAUM urged Plaintiff to take a

leave of absence "to get her head on straight."

97.     Aside from comments such as those alleged in ¶¶ 93 and 96, Defendant

ROSENBAUM stopped speaking to Plaintiff altogether in July 2019.

98.     On July 31, 2019, Plaintiff met separately with Defendant TADDEO Defendant

PAWELCZAK and Defendant FIELDS.

99.     As a supervisor or manager, Defendant PAWELCZAK was obligated, pursuant to

Defendant UCS' sexual harassment policy to provide a copy of Defendant's sexual harassment

complaint form, and to send the complaint to the OIG if Plaintiff did not.

100.    Defendant PAWELCZAK did not provide a copy of the complaint form to

Plaintiff and did not ensure that her complaint was forwarded to OIG.

101.    Plaintiff was told by each that they could do nothing to help her; each of them recommended that she take time off from work to use up her accrued time off, and apply for other jobs.

102.    In August and September of 2019, Defendant ROSENBAUM was verbally abusive toward Plaintiff.

103.    In August and September of 2019, Defendant ROSENBAUM encouraged or directed his staff to stop speaking to Plaintiff.

104.    In August 2019, Plaintiff sought assistance from Defendants FIELDS and AUFLEGER.

105.    As a supervisor or manager, Defendant AUFLEGER was obligated, pursuant to Defendant UCS' sexual harassment policy to provide a copy of Defendant's sexual harassment complaint form, and to send the complaint to the OIG if Plaintiff did not.

106.    Defendant AUFLEGER did not provide a copy of the complaint form to Plaintiff and did not ensure that her complaint was forwarded to OIG.

107.    After Defendant FIELDS met with Plaintiff, FIELDS sent Plaintiff a follow-up email, with a copy to Defendant ROSENBAUM, referencing the substance of their discussion.

108.    Defendant ROSENBAUM's hostility toward and mistreatment of Plaintiff increased after Defendant FIELDS sent the email alleged in ¶ 107.

109.    Defendants FIELDS and AUFLEGER told Plaintiff they could not assist her.

110.    In September of 2019, Defendant AUFLEGER met with Defendant ROSENBAUM's staff and advised them that they needed to talk to Plaintiff about work.

111.    After Defendant AUFLEGER spoke to Defendant ROSENBAUM's staff, the staff refused to work with Plaintiff.

12

112.    Plaintiff requested a leave of absence.

113.    On September 9, 2019, Defendant ROSENBAUM advised Plaintiff he would not approve her request for leave.

114.    On or about October 29, 2019, Plaintiff submitted a request for a Family & Medical Leave Act (FMLA) leave directly to Human Resources, based upon a note from Plaintiff's doctor excusing her from work due to physical symptoms arising from stress due to a hostile work environment.

115.    Plaintiff has been diagnosed with Complex Post Traumatic Stress Disorder arising from the harassment she endured from 2005 through 2019.

116.    Plaintiff's physician initially approved a leave of absence to end on January 31, 2020.

117.    On information and belief, Human Resources notified Defendant UCS' Work-Safe office of Plaintiff's FMLA leave request on or about October 19, 2019.

118.    On November 8, 2019, Plaintiff received a telephone call from Connor Van Everen at Defendant UCS' Work-Safe office.

119.    On information and belief, the source of such information being the New York Courts' website, the Work-Safe office's mission is to ensure the court system promotes and supports a safe work environment for its employees and members of the public.

120.    Mr. Van Everen asked Plaintiff to submit a written description of her experiences working for Defendant ROSENBAUM.

121.    Plaintiff submitted a detailed description of her situation to Mr. Van Everen.

122.    On information and belief, Mr. Van Everen forwarded Plaintiff's complaint to Defendants PAWELCZAK and OIG.

123.    On information and belief Defendant PAWELCZAK notified Defendant ROSENBAUM of Plaintiff's complaint.

124.    On information and belief, the 2019 submission to Defendant OIG by Work-Safe was the third time a complaint about Plaintiff's harassment by Defendant ROSENBAUM was submitted to Defendant OIG.

125.    On information and belief, Defendant OIG forwarded Plaintiff's Complaint to the New York Commission on Judicial Conduct.

126.    On December 19, 2019, Plaintiff was interviewed by the New York State Commission on Judicial Conduct.

127.    In December 2019, Defendant AUFLEGER notified Plaintiff that Plaintiff's job title was changing from Judicial Secretary to Court Analyst.

128.    On December 28, 2019, Plaintiff was notified by a representative of the New York State Commission on Judicial Conduct that Defendant ROSENBAUM had agreed to resign from his judicial position, and that the resignation would end any further investigation.

129.    On January 15, 2020, Plaintiff was interviewed by Defendant GRANT.

130.    During the interview, Defendant GRANT asserted that Defendant OIG had "lost" Plaintiff's prior complaints.

131.    Also, during the January 15, 2020 interview, Defendant GRANT suggested to Plaintiff that she had "asked for" the treatment she received because of how she dressed.

132.    Plaintiff was on FMLA leave from October 29, 2019 to March 30, 2020.

133.    In February of 2020, Plaintiff spoke to Defendant GRIMALDI.

134.    Defendant GRIMALDI told Plaintiff that she (Grimaldi) would identify a job to which Plaintiff would be reassigned, and get back to Plaintiff.

14

135.     Plaintiff heard back from Defendant GRIMALDI twice, in February and March of 2020.

136.     On each of the occasions alleged in ¶ 136, Defendant GRIMALDI told Plaintiff that Defendant GRIMALDI had not yet located a specific assignment for Plaintiff.

137.     Plaintiff did not hear back from Defendant GRIMALDI after the second call.

138.     Beginning on March 31, 2020, Plaintiff was placed on sick leave pursuant to her doctor's direction.

139.     On August 13, 2020, Deputy Chief Administrative Judge Vito Caruso sent Plaintiff a letter on behalf of Defendant UCS, advising Plaintiff that Defendant OIG "has completed its investigation concerning your hostile work environment complaint . . . have treated this matter very seriously and have taken appropriate action."

140.     On or about August 24, 2020, Plaintiff filed a complaint with the EEOC.

141.     Plaintiff was not provided any information about what "appropriate action" had been taken.

142.     Plaintiff used her accrued time, and was granted discretionary leave by Defendants through April 28, 2021.

143.     By letter dated April 28, 2021, Judge Caruso advised Plaintiff that she was placed on involuntary leave effective April 29, 2021.

144.     On or about April 28, 2021, William Hart, president of Plaintiff's Union advised her that there had been a position for her in her new title in Family Court, Monroe County since March of 2020.

145.     Defendants had not notified Plaintiff of the job in Family Court between March 2020 and April 29, 2021.

146.    Plaintiff's doctor released Plaintiff to return to work on May 17, 2021.

147.    Defendant Pawelczak directed Plaintiff not to report to work on May 17, 2021, as she would not be permitted to return to work until she was cleared in an independent medical exam ("IME")

148.    Plaintiff was scheduled for an IME on June 16 and 21, 2021.

149.    Plaintiff appeared for her IME as scheduled, and was examined.

150.    The original complaint in this action was filed on July 16, 2021.

151.    On August 6, 2021, Judge Caruso sent Plaintiff a letter directing her to report for work at the Monroe County Family Court on August 9, 2021.

152.    Plaintiff reported for work as directed by Judge Caruso.

153.    From August 9, 2021 to the present, Plaintiff has been assigned to a position of Court Analyst in Family Court, Monroe County.

154.    Between 2005 and 2019, all of the Defendants other than Defendant Rosenbaum ignored the sexual discrimination against Plaintiff, discouraged her from complaining about the illegal treatment she endured, and ignored the complaints Plaintiff did submit.

155.    The actions (and inactions) of the Defendants other than Defendant Rosenbaum enabled, condoned and participated in Defendant Rosenbaum's ongoing abuse of Plaintiff, pursuant to a long-standing unwritten policy and practice of Defendants OCA, UCS and Monroe County Supreme Court that acquiesced in the sexual abuse of subordinate employees of judges by judges for the judges' sexual gratification.

156.    In 2019, Defendants OCA, UCS and OIG enabled Defendant ROSENBAUM to retire from his position, and to avoid any further investigation or disciplinary action against him.

157.    From 2019 to August 6, 2021, the remaining Defendants delayed acting on

16

Plaintiff's complaints, and failed to inform Plaintiff of the progress of the investigation, and of efforts to remedy her situation.

158.     From March 2020 to August 6, 2021, Defendants failed to notify Plaintiff of the existence of a position waiting for her in Family Court.

159.     The actions of Defendants MONROE COUNTY SUPREME COURT, UCS, OCA, OIG, GRANT, PAWELCZAK, AUFLEGER, TADDEO, GRIMALDI, ALLEN, and FIELDS alleged herein, extending from 2005 through August 6, 2021, constitute a continuous, integrated violation of Plaintiff's right to be free from discrimination on the basis of her sex in violation of State and Federal law.

160.     In order to make Plaintiff whole, the Court must examine all of the actions of all of the Defendants alleged herein in context, and address the continuing violation of Plaintiff's rights.

161.     Plaintiff continues to suffer the effects of the Complex Post Traumatic Stress Disorder referenced in Paragraph 115, and to receive treatment for that condition to the present day.

**FIRST CAUSE OF ACTION AGAINST DEFENDANTS MONROE COUNTY SUPREME COURT, UNIFIED COURT SYSTEM OF THE STATE OF NEW YORK, OFFICE OF COURT ADMINISTRATION, OFFICE OF THE MANAGING INSPECTOR GENERAL FOR BIAS MATTERS:  DISCRIMINATION ON THE BASIS OF SEX IN VIOLATION OF TITLE VII**

162.     Plaintiff reasserts and realleges the allegations set forth in ¶¶ 1 through 161 as though fully set forth herein.

163.     As an employer, Defendants are responsible for making and enforcing an effective sexual harassment policy in order to protect all UCS and OCA employees from *quid pro quo* and hostile work environment sexual discrimination, and from retaliation for

17

complaining of sexual harassment.

164.    On information and belief, Defendants have established a policy that purports to prevent sexual harassment of employees of Defendants UCS, OCA and MONROE COUNTY SUPREME COURT.

165.    As is set forth in detail herein, Defendants failed to enforce said sexual harassment policy from 2005 until 2019.

166.    Instead, pursuant to an unwritten policy, alleged herein, Defendants condoned, enabled and participated in Defendant Rosenbaum's sexual abuse of Plaintiff

167.    Plaintiff submitted complaints of sexual harassment to Defendant OIG in 2007 and 2018.

168.    As is set forth in detail herein, employees of Defendants who were charged with the responsibility of investigating claims of sexual harassment and stopping sexual harassment when it occurred, failed or refused to take any actions to stop or prevent Plaintiff from being harassed by Defendant ROSENBAUM from 2005 until 2019.

169.    As is set forth in detail herein, employees of Defendants who were charged with the responsibility of investigating claims of retaliation and stopping retaliation when it occurred, failed or refused to take any actions to stop or prevent Plaintiff from being retaliated against by Defendant ROSENBAUM from 2007 until 2019.

170.    As is set forth in detail herein, supervisory and managerial employees of Defendants who were charged with the responsibility of reporting claims of sexual harassment failed to report Plaintiff's claims as required by Defendants' policies.

18

171.    On information and belief, Defendants' actions complained of herein were taken pursuant to an unwritten policy or practice designed and implemented to protect judges from discipline or any other adverse action in response to the judges' violation of laws prohibiting sexual harassment and/or sexual discrimination.

172.    Defendants' actions violated Title VII.

173.    As a result of Defendants' illegal actions, Plaintiff has suffered economic loss, loss of enjoyment of life, damage to her reputation, emotional distress and physical injury.

SECOND CAUSE OF ACTION AGAINST DEFENDANTS COSMAS GRANT, RONALD PAWELCZAK, MARY AUFLEGER, ANN TADDEO, CAROLYN GRIMALDI, MARGE ALLEN, AMY FIELDS, AND MATTHEW ROSENBAUM: DENIAL OF EQUAL PROTECTION OF THE LAWS IN VIOLATION OF 42 USC § 1983

174.    Plaintiff reasserts and realleges the allegations set forth in ¶¶ 1 through 173 as though fully set forth herein.

175.    As an employee of Defendant UCS, Plaintiff was entitled to a workplace free of sexual harassment and retaliation.

176.    At all times relevant to this Complaint Defendants GRANT, PAWELCZAK, AUFLEGER, TADDEO, GRIMALDI, ALLEN, FIELDS, and ROSENBAUM acted under color of state law with respect to the Plaintiff.

177.    Defendants GRANT, PAWELCZAK, AUFLEGER, TADDEO, GRIMALDI, ALLEN, FIELDS, and ROSENBAUM were, at all times relevant to this Complaint, legally obligated to comply with the laws of the United States that prohibit discrimination in the workplace on the basis of sex.

178.    Defendant ROSENBAUM used his status as a high-ranking person acting under color of state law to coerce Plaintiff to engage in sexual acts with him against her will.

19

179.    Defendant ROSENBAUM also subjected Plaintiff to unwelcome touching and inappropriate comments and forms of address on the basis of Plaintiff's sex.

180.    Defendant ROSENBAUM also retaliated against Plaintiff after Plaintiff complained.

181.    Defendants GRANT, PAWELCZAK, TADDEO, GRIMALDI, ALLEN, FIELDS, and AUFLEGER, each of whom was charged with the responsibility to act to prevent sexual harassment in the workplace, failed or refused to take any actions to prevent Defendant ROSENBAUM from sexually harassing Plaintiff and retaliating against her.

182.    On information and belief, Defendants' actions complained of herein were taken pursuant to a policy or practice designed and implemented to protect judges from discipline or any other adverse action in response to the judges' violation of laws prohibiting sexual harassment and/or sexual discrimination.

183.    Defendants' actions violated 42 USC § 1983.

184.    As a result of Defendants' illegal actions, Plaintiff has suffered economic loss, loss of enjoyment of life, damage to her reputation, emotional distress and physical injury.

### THIRD CAUSE OF ACTION AGAINST DEFENDANTS MONROE COUNTY SUPREME COURT, UNIFIED COURT SYSTEM OF THE STATE OF NEW YORK, OFFICE OF COURT ADMINISTRATION, OFFICE OF THE MANAGING INSPECTOR GENERAL FOR BIAS MATTERS: DISCRIMINATION ON THE BASIS OF SEX IN VIOLATION OF THE NEW YORK HUMAN RIGHTS LAW

185.    Plaintiff reasserts and realleges the allegations set forth in ¶¶ 1 through 184 as though fully set forth herein.

186.    As an employer, Defendants are responsible for making and enforcing an effective sexual harassment policy in order to protect all UCS and OCA employees from *quid pro quo* and hostile work environment sexual discrimination, and from retaliation for complaining of sexual harassment.

187.    On information and belief, Defendants have established a policy that purports to prevent sexual harassment of employees of Defendants UCS and MONROE COUNTY SUPREME COURT.

188.    As is set forth in detail herein, Defendants failed to enforce said sexual harassment policy from 2005 until 2019.

189.    Plaintiff submitted complaints of sexual harassment to Defendant OIG in 2007 and 2018.

190.    As is set forth in detail herein, employees of Defendants who were charged with the responsibility of investigating claims of sexual harassment and stopping sexual harassment when it occurred, failed or refused to take any actions to stop or prevent Plaintiff from being harassed by Defendant ROSENBAUM from 2005 until 2019.

191.    As is set forth in detail herein, employees of Defendants who were charged with the responsibility of investigating claims of retaliation and stopping retaliation when it occurred, failed or refused to take any actions to stop or prevent Plaintiff from being retaliated against by Defendant ROSENBAUM from 2007 until 2019.

192.    On information and belief, Defendants' actions complained of herein were taken pursuant to a policy or practice designed and implemented to protect judges from discipline or any other adverse action in response to the judges' violation of laws prohibiting sexual harassment and/or sexual discrimination.

193.    Defendants' actions violated the New York State Human Rights Law.

194.    As a result of Defendants' illegal actions, Plaintiff has suffered economic

loss, loss of enjoyment of life, damage to her reputation, emotional distress and physical

injury.

### FOURTH CAUSE OF ACTION AGAINST DEFENDANTS COSMAS GRANT, RONALD PAWELCZAK, MARY AUFLEGER, ANN TADDEO, CAROLYN GRIMALDI, MARGE ALLEN, AMY FIELDS, AND MATTHEW ROSENBAUM:  DISCRIMINATION ON THE BASIS OF SEX IN VIOLATION OF THE NEW YORK HUMAN RIGHTS LAW

195.    Plaintiff reasserts and realleges the allegations set forth in ¶¶ 1 through

194 as though fully set forth herein.

196.    As an employee of Defendant UCS, Plaintiff was entitled to a workplace

free of sexual harassment and retaliation.

197.    Defendants GRANT, PAWELCZAK, AUFLEGER, TADDEO,

GRIMALDI, ALLEN, FIELDS, and ROSENBAUM were, at all times relevant to this

Complaint, legally obligated to comply with the provisions of the New York Human

Rights Law that prohibit discrimination in the workplace on the basis of sex.

198.    Defendant ROSENBAUM used his status as a high-ranking person acting

under color of state law to coerce Plaintiff to engage in sexual acts with him against her

will.

199.    Defendant ROSENBAUM also subjected Plaintiff to unwelcome touching

and inappropriate comments and forms of address on the basis of Plaintiff's sex.

200.    Defendant ROSENBAUM also retaliated against Plaintiff after Plaintiff

complained.

201.    Defendants GRANT, PAWELCZAK, AUFLEGER, TADDEO,

GRIMALDI, ALLEN and FIELDS, each of whom was charged with the responsibility to act to prevent sexual harassment in the workplace, failed or refused to take any actions to prevent Defendant ROSENBAUM from sexually harassing Plaintiff and retaliating against her.

202.    On information and belief, Defendants' actions complained of herein were taken pursuant to a policy or practice designed and implemented to protect judges from discipline or any other adverse action in response to the judges' violation of laws prohibiting sexual harassment and/or sexual discrimination.

203.    Defendants' actions violated the New York Human Rights Law.

204.    As a result of Defendants' illegal actions, Plaintiff has suffered economic loss, loss of enjoyment of life, damage to her reputation, emotional distress and physical injury.

**WHEREFORE**, Plaintiff respectfully requests this Court to enter Judgment:

a.      Holding that Defendants have violated Plaintiff's rights under 42 USC §§2000e, et seq. and 42 USC §1983, and the New York Human Rights Law;

b.      Holding that the Defendants have engaged in a continuing violation of Plaintiff's rights from 2005 to the present as alleged herein;

c.      Awarding Plaintiff her lost pay;

d.      Awarding Plaintiff compensatory damages;

e.      Awarding Plaintiff punitive damages to the maximum amount permitted by law;

f.      Awarding Plaintiff pre-judgment and post-judgment interest to the maximum amount permitted by law;

g.      Awarding Plaintiff reimbursement for lost pension, and Social Security, in an amount to be proved at trial;

h.      Awarding Plaintiff attorney's fees and costs to the maximum amount permitted by law;

i.      Enjoining Defendants from engaging in further discrimination against the Plaintiff;

j.      Enjoining Defendants from: (i) subjecting employees to discrimination and harassment based on the sex; and (ii) retaliating against employees who engage in activity protected under title VII, and the New York Human Rights Law; and

k.      Providing such other relief as the Court deems just and proper.

**Plaintiff demands a trial by jury on all matters triable by jury.**


Dated: August 30, 2022


_____/s/ Lindy Korn_____          _____/s Anna Marie Richmond_____
LINDY KORN, ESQ.                          ANNA MARIE RICHMOND, ESQ.
The Law Office of Lindy Korn, LLP         2500 Rand Building
535 Washington Street, Ninth Floor        14 Lafayette Square
Buffalo, NY  14203                        Buffalo, NY  14203
716-856-5676                              716-854-1100
lkorn@korn-law.com                        annamarierichmondesq@gmail.com