UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

REBECCA KLYMN,

                Plaintiff,

       -vs-                            **21-CV-6488-JLS**

MONROE COUNTY SUPREME COURT,
UNIFIED COURT SYSTEM OF THE STATE
OF NEW YORK, OFFICE OF COURT
ADMINISTRATION, OFFICE of the MANAGING
INSPECTOR GENERAL for BIAS MATTERS,
COSMAS GRANT, RONALD PAWELCZAK,
MARY AUFLEGER, ANN TADDEO,
CAROLYN GRIMALDI, MARGE ALLEN, AMY
FIELDS, and MATTHEW ROSENBAUM,

                Defendants.
_____

## <u>MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT BY DEFENDANTS GRANT, PAWELCZAK, AUFLEGER, TADDEO, GRIMALDI, ALLEN, AND FIELDS</u>

LETITIA JAMES
*Attorney General*
*State of New York*
*Attorney for Defendants Grant,*
*Pawelczak, Aufleger, Taddeo,*
*Grimaldi, Allen, and Fields*

Michele Romance Crain
Heather L. McKay
Assistant Attorney General of Counsel
NYS Office of the Attorney General
144 Exchange Boulevard, Suite 200
Rochester, New York 14614
Telephone:  (585) 327-3223
Michele.Crain@ag.ny.gov
heather.mckay@ag.ny.gov

# CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ i

PRELIMINARY STATEMENT ............................................................................................... 1

FACTS ALLEGED IN THE COMPLAINT ............................................................................ 2

STANDARD OF REVIEW ...................................................................................................... 5

ARGUMENT ............................................................................................................................. 7

    I.    PLAINTIFF'S SECOND CAUSE OF ACTION AGAINST DEFENDANTS SHOULD BE DISMISSED FOR LACK OF PERSONAL INVOLVEMENT. ......................................... 7

    II.    PLAINTIFF'S FOURTH CAUSE OF ACTION AGAINST DEFENDANTS SHOULD BE DISMISSED FOR LACK OF PERSONAL INVOLVEMENT. ...................................... 10

    III.    PLAINTIFF'S SECOND AND FOURTH CAUSES OF ACTION AGAINST DEFENDANTS SHOULD BE DISMISSED ON THE MERITS. ......................................... 13

    IV.    PLAINTIFF'S CLAIMS AGAINST ALLEN AND JUDGE TADDEO ARE TIME BARRED ............................................................................................................................... 18

    V.    PLAINTIFF'S CLAIMS AGAINST DEFENDANTS IN THEIR OFFICIAL CAPACITIES ARE BARRED UNDER THE ELEVENTH AMENDMENT ......................... 19

CONCLUSION ........................................................................................................................ 20

CERTIFICATE OF SERVICE ............................................................................................... 21

# TABLE OF AUTHORITIES

## Cases

*Annis v. County of Westchester*, 136 F.3d 239 (2d Cir. 1998) ............................................. 13, 18

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................ 5, 7

*Avent v. Keybank*, 2021 WL 1253840 (S.D.N.Y. Apr. 1, 2021) ........................................ 10

*Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107 (2d Cir.2004) ................... 7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................ 6

*Bellamy v. Mount Vernon Hosp.*, 2009 WL 1835939 (S.D.N.Y. June 26, 2009) ................... 8

*Bermudez v. City of New York*, 783 F. Supp. 2d 560 (S.D.N.Y.) .......................................... 18

*Bernstein v. New York*, 591 F. Supp. 2d 448 (S.D.N.Y. 2008) .......................................... 15

*Brown v. Annucci*, 2021 WL 860189 (S.D.N.Y. Mar. 8, 2021) ......................................... 9

*Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998) .................................................. 11

*Burrell v. City Univ. of New York*, 995 F. Supp. 398 (S.D.N.Y. 1998) ............................... 18

*Clare-Lunny v. Soldato*, 2014 WL 3477419 (N.D.N.Y. July 11, 2014) ............................... 15

*Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995) ............................................................ 7

*Crespo v. Hurwitz*, 2020 U.S. Dist. LEXIS 87978 (E.D.N.Y. May 17, 2020) ...................... 6

*Dodds v. Richardson*, 614 F.3d 1185 (10th Cir. 2010) ................................................... 8

*Edwards v. Jericho Union Free Sch. Dist.*, 904 F. Supp. 2d 294 (E.D.N.Y.2012) .................. 11

*Fairchild, Arabatzis & Smith, Inc. v. Sackhheim*, 451 F. Supp. 1189 (S.D.N.Y.1978) ............ 15

*Falls v. Buckeye Community Hope Foundation*, 538 U.S. 188 (2003) ................................... 9

*Fedele v. Harris*, 69 F. Supp. 3d 313 (N.D.N.Y. 2014) ................................................. 19

*Feingold v. New York*, 366 F.3d 138 (2d Cir. 2004) ..................................................... 17

*Gierlinger v. New York State Police*, 15 F.3d 32 (2d Cir. 1994) ...................................... 13

*Goldstein v. Pataki*, 516 F.3d 50 (2d Cir. 2008) .......................................................... 6

*Goonewardena v. New York*, 475 F.Supp.2d 310 (S.D.N.Y. 2007) .................................. 19

*Gregory v. Daly*, 243 F.3d 687 (2d Cir. 2001) ............................................................ 13

*Hauff v. State Univ. of New York*, 425 F. Supp. 3d 116 (E.D.N.Y. 2019) .......................... 15

*Holland v. Morgenstern*, 2013 WL 2237550 (E.D.N.Y. May 20, 2013) .............................. 6

*Jain v. McGraw-Hill Cos., Inc.*, 827 F. Supp. 2d 272 (S.D.N.Y. 2011) ............................. 10

*Jean–Laurent v. Wilkerson*, 438 F.Supp.2d 318 (S.D.N.Y.2006) ..................................... 15

*Makarova v. United States*, 201 F.3d 110 (2d Cir. 2000) ............................................... 6

*Malik v. Meissner*, 82 F.3d 560 (2d Cir. 1996) ........................................................... 6

*Maney v. Corning, Inc.*, 547 F. Supp. 2d 221 (W.D.N.Y. 2007) ..................................... 11

*McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51 (S.D.N.Y. 2020) ....................... 13

*Murphy v. Wappingers Cent. Sch. Dist.*, 2018 WL 1831847 (S.D.N.Y. Apr. 16, 2018) ......... 14

*Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96 (2d Cir. 2005) .................................... 5

*Patane v. Clark*, 508 F.3d 106 (2d Cir. 2007) ............................................................ 13

*Peck v. Cty. of Onondaga*, 2021 WL 3710546 (N.D.N.Y. Aug. 20, 2021) .......................... 10

*Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256 (1979) ............................................ 9

*Ramirez v. Holmes*, 921 F.Supp. 204, 210 (S.D.N.Y.1996) ........................................... 15

*Raspardo v. Carlone*, 770 F.3d 97 (2d Cir. 2014) ....................................................... 7

*Reynolds v. Barrett*, 685 F.3d 193 (2d Cir. 2012) ................................................... 9, 17

*Richardson v. Dep't of Correction*, 2011 WL 710617 (S.D.N.Y. Feb. 28, 2011) ................... 8

i

*Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11 (2d Cir. 2014) .......................................... 14

*Rys v. Grimm*, 2021 WL 827671 (N.D.N.Y. Mar. 4, 2021) .......................................................................... 13

*Sanderson v. Leg Apparel LLC*, 2020 WL 7342742 (S.D.N.Y. Dec. 14, 2020) ......................................... 16

*Saulpaugh v. Monroe Community Hosp.*, 4 F.3d 134 (2d Cir. 1993) .......................................................... 13

*Serrano v. 900 5th Avenue Corp.*, 4 F. Supp. 2d 315 (S.D.N.Y. 1998) ........................................................ 6

*Smith v. Town of Hempstead Dep't of Sanitation Sanitary Dist. No. 2*, 798 F.Supp.2d 443
    (E.D.N.Y.2011) ............................................................................................................................................. 13

*Stevens v. New York*, 691 F. Supp. 2d 392 (S.D.N.Y. 2009) ....................................................................... 11

*Summa v. Hofstra Univ.*, 708 F.3d 115 (2d Cir. 2013) ............................................................................... 13

*Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020) .................................................................................... 8

*Tomka v. Seiler Corp.*, 66 F.3d 1295 (2d Cir.1995) .................................................................................... 11

*Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72 (2d Cir. 2015) .................................................... 17

*Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989) ............................................................................... 9

*Wise v. New York City Police Dep't*, 928 F. Supp. 355 (S.D.N.Y. 1996) ................................................... 13

*Yarrington v. Candor Cent. Sch. Dist.*, 2020 WL 1493920 (N.D.N.Y. Mar. 27, 2020) ............................ 14

## Statutes

42 U.S.C. § 1983 ................................................................................................................................ 1, 13, 19

42 U.S.C. § 2000e ...................................................................................................................................... 13

42 U.S.C. § 2000e (f) ................................................................................................................................. 10

FED. R. CIV. P. 56(e) .................................................................................................................................. 6

N.Y. C.P.L.R. 214(2) ................................................................................................................................. 18

N.Y. Exec. Law § 296 ................................................................................................................................ 11

## Other Authorities

McKinney's Judiciary Law § 36(1) ........................................................................................................... 11

## Regulations

22 NYCRR § 80.1 (b) (3) ..................................................................................................................... 11, 17

Judiciary Law § 36(1) ................................................................................................................................ 17

<h1 style="text-align: center">PRELIMINARY STATEMENT</h1>

Seven of the individual defendants in this action, Cosmas Grant, Ronald Pawelczak, Mary Aufleger, Ann Marie Taddeo,[1] Carolyn Grimaldi, Margaret Allen,[2] and Amy Fields (hereinafter, "Defendants"), submit this memorandum of law in support of their motion to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6). The plaintiff, Rebecca Klymn (hereinafter, "Plaintiff"), was the secretary of defendant former Supreme Court Justice Matthew Rosenbaum (hereinafter, "former Judge Rosenbaum"), for approximately fifteen years until his resignation, and now claims to have endured sexual harassment in his chambers during that time, up to and including forced oral sex on more than seventy occasions. Defendants are current and former employees of the defendants Monroe County Supreme Court, New York State Unified Court System ("UCS"), Office of Court Administration ("OCA") and Office of the Managing Inspector General for Bias Matters ("OMIG") (collectively, the "Entity Defendants").

As explained below, Plaintiff's claims against Defendants should be dismissed because (I) Defendants were not personally involved in the alleged sexual discrimination pursuant to 42 U.S.C. § 1983; (II) Defendants were not personally involved in sexual harassment under the New York State Human Rights Law ("NYSHRL"); (III) Plaintiff cannot state valid claims on the merits under § 1983 or the NYSHRL; (IV) Plaintiff's claims against Defendants Allen and Judge Taddeo are time-barred; and (V) Plaintiff's claims against Defendants in their official capacities

---

[1] Justice Taddeo is mistakenly referred to in the Complaint as "Ann Taddeo"; her first name is "Ann Marie." Defendants respectfully request that her name be corrected in the caption and via the CM/ECF system.

[2] Ms. Allen's first name is Margaret, not Marge as the Complaint indicates. Defendants respectfully request that her name be corrected in the caption and via the CM/ECF system.

are barred under the Eleventh Amendment.  Accordingly, the claims against Defendants should be dismissed and they should be terminated from this action.

## FACTS ALLEGED IN THE COMPLAINT

From March 2005 to December 2019, Plaintiff was employed as secretary to former Judge Rosenbaum.  *See* Dkt. No.  49 at ¶ 27.  Plaintiff alleges that former Judge Rosenbaum "compelled [her] to perform fellatio upon him on approximately a monthly basis in 2005," "on at least thirty separate occasions" in 2006, "on at least twenty separate occasions" in 2007, "on at least fifteen separate occasions" in 2008, and "on at least five separate occasions" between January 1 and May 31, 2009.  *See id.* at ¶¶ 28, 37, 43, 70, 72.  Former Judge Rosenbaum allegedly told Plaintiff that performing fellatio was "part of her job," and threatened to fire her and cause her to lose custody of her minor son if she refused. *Id.* at ¶ 31, 32, 36.  Plaintiff further alleges that former Judge Rosenbaum raped her in her home on November 14, 2006, "required Plaintiff to perform personal errands for himself and his family members during the workday" between 2005 and 2008, and "addressed Plaintiff using demeaning terms, commented inappropriately upon Plaintiff's clothing, and touched and hugged Plaintiff in the presence of others" between 2005 and 2009. *See id.* at ¶¶ 40, 46, 47, 73, 74, 79, & 80.

Finally, on June 1, 2009, Plaintiff alleges that she refused former Judge Rosenbaum's "demand for oral sex and told him she would no longer respond to his demands for oral sex, nor acquiesce to his threats."  *Id.* at ¶ 82.  All overt sex acts ended at that time.  Yet, thereafter, "on a daily basis, in 2009 [through the first ten months of 2019]," Plaintiff alleges that former Judge Rosenbaum "continued to touch Plaintiff, put his arm around Plaintiff, commented inappropriately upon Plaintiff's clothing, and address her by demeaning and inappropriate names such as 'sweetie' and 'honey.'"  *Id.* at ¶ 83 & 92.

Plaintiff claims to have told Judge Taddeo about former Judge Rosenbaum's sexual demands on May 14, 2007, and Judge Taddeo allegedly told her "there wasn't much she (Taddeo) could do, other than conduct sexual abuse training." *Id.* at ¶ 53, 56. Plaintiff alleges Taddeo, as a purported supervisor or manager, was obligated to provide her with a copy of the Defendants' sexual harassment complaint form and failed to do so. Further, she alleges she had a duty to send a complaint to OIG if Plaintiff failed to do so. *Id* at ¶ 54-55. Lastly, she alleges Judge Taddeo had been authorized to conduct sexual abuse training and failed to do so. *Id.* at 58. On November 20, 2007, Plaintiff claims to have met with Allen, then head of Human Resources at the Monroe County Supreme Court and told her about Rosenbaum's conduct and asked for help. *Id* at 59-60. Plaintiff alleges Allen, who Plaintiff claims is a supervisor or manager, was also allegedly obligated to provide her with a sexual harassment complaint form and failed to do so. Further, she alleges Allen had a duty to send a complaint to OIG if Plaintiff failed to do so. *Id* at 61-62. Plaintiff alleges that Allen told Plaintiff that she "would have no choice but to fire Plaintiff" if she complained to Allen about former Judge Rosenbaum, but "if Plaintiff were merely inquiring about 'the process," Allen would send her the information, which she then did. Specifically, Allen sent Plaintiff "an email with links to information about the Courts' Workforce Diversity Office, and the Office of the Special Inspector General for Bias Matters." *Id.* at ¶ 63-66. Plaintiff claims to have submitted complaints to OMIG on November 21, 2007, and January 8, 2018, but never received any response. *Id.* at ¶¶ 67-68, 89-90.

Without any explanation, Plaintiff further alleges that, beginning in June 2019, former Judge Rosenbaum "urged [her] to take a leave of absence 'to get her head on straight," and by July 2019, he stopped speaking to her altogether. *Id.* at ¶ 95-96. Plaintiff claims to have again met with Judge Taddeo on July 31, 2019, followed by Defendants Pawelczak and Fields for the first time; it is unclear what Plaintiff claims to have told them, but she alleges that each of them

told her they were unable to help, and she should use up her accrued time off and apply for other jobs. *See Id.* at ¶ 97, 100

In August and September 2019, Plaintiff alleges that former Judge Rosenbaum became "verbally abusive toward Plaintiff," and "encouraged or directed his [other] staff to stop speaking to" her. *Id.* at ¶ 101-102. In August 2019, Plaintiff allegedly sought assistance for the first time from Defendants Fields and Aufleger, who "told Plaintiff they could not assist her." *Id.* at ¶¶ 103, 10886 & 89. Plaintiff alleges that both Aufleger and Fields are supervisors or managers who allegedly had a duty to provide her with a sexual harassment complaint form and failed to do so. Further, she alleges they had a duty to send a complaint to OIG if Plaintiff failed to do so. *Id* at 104-105 Thereafter, Aufleger "advised" the other chambers staff "that they needed to talk to Plaintiff about work," but they still refused to work with Plaintiff, who then requested a leave of absence. *Id.* at ¶¶109-111 .

On or about October 19, 2019, Plaintiff submitted a request for leave under the Family & Medical Leave Act ("FMLA") directly to human resources ("HR"), "based upon a note from Plaintiff's doctor excusing her from work due to physical symptoms arising from stress due to a hostile work environment." *Id.* at ¶ 113. On or about October 29, 2019, Plaintiff filed a complaint with the EEOC. *Id.* at ¶ 116. On November 8, 2019, Plaintiff received a call from Connor Van Everen at UCS's Work Safe Office, who asked her to submit a written description of her experiences working for former Judge Rosenbaum, which she did and the description was then forwarded to Defendant OMIG. *Id.* at ¶ 117-123.

In December 2019, Defendant Aufleger notified Plaintiff that her job title was changing from Judicial Secretary to Court Analyst. *Id*. at ¶ 126. On December 28, 2019, Plaintiff was notified by a representative of the New York State Commission on Judicial Conduct that former Judge Rosenbaum had resigned from his judicial position. *Id.* at ¶ 127. On January 15, 2020,

Defendant Grant interviewed Plaintiff, asserted that "O[M]IG had 'lost' Plaintiff's prior complaints," and "suggested to Plaintiff that she had 'asked for' the treatment she received because of how she dressed." *Id.* at ⸺ 128-130.

Plaintiff alleges that she spoke to Defendant Grimaldi for the first time in February 2020. *Id.* at ⸺ 113. Plaintiff heard back from Grimaldi twice in February and March 2020 but was told that Grimaldi had not yet located a new specific assignment for Plaintiff. *Id.* at ⸺ 134-135. Beginning on March 31, 2020, Plaintiff was placed on sick leave. *Id.* at ⸺ 118. Once her accrued time was used up, Plaintiff was granted discretionary leave through April 28, 2021, and then placed on involuntary leave effective April 29, 2021. *Id.* at ⸺ 141-142. On or about April 28, 2021, William Hart, the president of Plaintiff's union "advised her that there had been a position for her in her new title in Family Court, Monroe County since March of 2020." *Id.* at ⸺143. Plaintiff's doctor approved her return to work on May 17, 2021. *Id.* at ⸺ 146. From August 9, 2021 to the present Plaintiff has been assigned to the position of Court Analyst in Family Court. *Id.* at 149-151.

Plaintiff, citing no facts in support, alleges that the actions and inactions of the defendants other than Rosenbaum enabled, condoned, and participated in Rosenbaum's ongoing abuse of Plaintiff pursuant to an alleged long-standing, unwritten policy that acquiesced in the sexual abuse of subordinate employees of judges by Judges. Id. At 153,

**STANDARD OF REVIEW**

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must accept "all well-pleaded factual allegations" in the Complaint as true and draw all reasonable inferences in favor of the Plaintiff. *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009),

quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The factual allegations in the complaint must permit the court "to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (internal quotations and citations omitted). Thus, "at a bare minimum, the operative standard requires the plaintiff [to] provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (alteration in original) (internal quotations and citations omitted).

Meanwhile, "[u]nder Rule 12(b)(1), the court must accept as true all material factual allegations in the complaint, but will not draw inferences favorable to the party asserting jurisdiction." *Crespo v. Hurwitz*, 2020 U.S. Dist. LEXIS 87978, *14-15 (E.D.N.Y. May 17, 2020). When determining whether subject matter jurisdiction exists, a court may properly refer to evidence beyond the pleadings to resolve disputed jurisdictional facts. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "Thus, the standard used to evaluate a Rule 12(b)(1) claim is akin to that for summary judgment under FED. R. CIV. P. 56(e)." *Serrano v. 900 5th Avenue Corp.*, 4 F. Supp. 2d 315, 316 (S.D.N.Y. 1998). Therefore, plaintiff bears the burden of establishing the court's jurisdiction by a preponderance of the evidence. *See Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996).

**ARGUMENT**

**I.      PLAINTIFF'S SECOND CAUSE OF ACTION AGAINST DEFENDANTS SHOULD BE DISMISSED FOR LACK OF PERSONAL INVOLVEMENT.**

Preliminarily, under § 1983, each Defendant can only be liable for their own actions, and none of them personally violated Plaintiff's constitutional rights.  Although Title VII-based hostile work environment claims by government employees may be actionable under § 1983, the Second Circuit has recognized that "hostile work environment claims that may readily be brought against employers under Title VII do not always fit easily within the context of individual liability under § 1983."  *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014). Indeed, "[t]he Title VII framework often requires courts to consider the workplace conduct of multiple employees and supervisors in determining whether the plaintiff has experienced a hostile work environment," whereas:

> Section 1983, however, applies by its terms only to individual "persons" responsible for violating plaintiffs' rights.  In order to overcome a government official's claim to qualified immunity and "establish individual liability under § 1983, a plaintiff must show . . . that the defendant caused the plaintiff to be deprived of a federal right." *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122 (2d Cir.2004); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). If a defendant has not personally violated a plaintiff's constitutional rights, the plaintiff cannot succeed on a § 1983 action against the defendant.

*Id.* at 115.  Furthermore, "[i]ndividual liability under § 1983 in hostile work environment claims may also involve supervisory liability," whereas "vicarious liability is inapplicable to § 1983 suits."  *Id.* at 116, quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).  "Thus, 'a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'"  *Id.*  In other words, "each Government official is only liable for his or her own misconduct."  *Id.*

Prior to *Iqbal*, the Second Circuit identified five factors for assessing supervisory liability

in *Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995). Specifically:

> The personal involvement of a supervisory defendant may be shown by evidence
> that: (1) the defendant participated directly in the alleged constitutional violation,
> (2) the defendant, after being informed of the violation through a report or appeal,
> failed to remedy the wrong, (3) the defendant created a policy or custom under
> which unconstitutional practices occurred, or allowed the continuance of such a
> policy or custom, (4) the defendant was grossly negligent in supervising
> subordinates who committed the wrongful acts, or (5) the defendant exhibited
> deliberate indifference to the rights of [plaintiffs] by failing to act on information
> indicating that unconstitutional acts were occurring.

*Id.* at 873. After *Iqbal*, however, many courts in this Circuit enforced only the first and third

*Colon* factors, *see Richardson v. Dep't of Correction*, 2011 WL 710617, at *2 (S.D.N.Y. Feb.

28, 2011) ("Accordingly only the first and third Colon factors have survived the Supreme

Court's decision in *Iqbal*."); *Bellamy v. Mount Vernon Hosp.*, 2009 WL 1835939, at *6

(S.D.N.Y. June 26, 2009), *aff'd*, 387 F. App'x 55 (2d Cir. 2010) ("Only the first and part of the

third *Colon* categories pass *Iqbal'*s muster), while courts in other circuits simply rejected a

separate test for supervisory liability. *See Dodds v. Richardson*, 614 F.3d 1185, 1204 (10th Cir.

2010).

Finally, last year, the Second Circuit made its agreement known, explaining:

> We join these circuits in holding that after *Iqbal*, there is no special rule for
> supervisory liability. Instead, a plaintiff must plead and prove "that each
> Government-official defendant, through the official's own individual
> actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. "The factors
> necessary to establish a [§ 1983] violation will vary with the constitutional
> provision at issue" because the elements of different constitutional
> violations vary. The violation must be established against the supervisory
> official directly.

*Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020).

In this case, Plaintiff relies almost exclusively on the second *Colon* factor, arguing that

Defendants "failed or refused to take any actions to prevent Defendant Rosenbaum from sexually

harassing Plaintiff and retaliating against her," *see* Docket No. 1 ⁋ 152, but that factor is no

longer in effect.  Notably, in *Tangreti*, the Second Circuit reversed the lower court's finding that

the defendant "was conceivably personally involved" because she was either "grossly negligent

in supervising the officers" (the fourth *Colon* factor) or "she failed to act on information

indicating that Tangreti was at substantial risk of sexual abuse" (the second factor).  In the wake

of *Iqbal*, then, the Second Circuit does not recognize the second factor upon which Plaintiff

exclusively relies.

Even setting that aside, Plaintiff does not come close to demonstrating that any Defendant

had a discriminatory purpose in their treatment of her.  It is well settled that "[p]roof of

discriminatory intent is required to show a violation of the Equal Protection Clause." *Reynolds v.*

*Barrett*, 685 F.3d 193, 204 (2d Cir. 2012), quoting *City of Cuyahoga Falls v. Buckeye*

*Community Hope Foundation*, 538 U.S. 188, 194 (2003).  Further, "[b]ecause neither a state nor

a state official in his official capacity is a 'person' within the meaning of § 1983, the requisite

discriminatory intent must be held by the state official in his individual capacity." *Id.*, citing *Will*

*v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989).  Hence, "liability for an Equal Protection

Clause violation under § 1983 requires personal involvement by a defendant, who must act with

discriminatory purpose." *Id.*, citing *Iqbal,* 556 U.S. at 676.

Simply put, Defendants here are not themselves alleged to have taken any actions or

inactions *based on Plaintiff's sex*.  "[P]urposeful discrimination requires more than 'intent as

volition or intent as awareness of consequences. . . . It instead involves a decisionmaker's

undertaking a course of action 'because of, not merely in spite of, the action's adverse effects

upon an identifiable group.' " *Id.*, quoting *Personnel Adm'r of Mass. v. Feeney,* 442 U.S. 256,

279 (1979).  Specifically, Plaintiff does not allege that Defendants' purported failure to

investigate, report, or act "was a result of intentional or purposeful discrimination." *Brown v.*

*Annucci*, 2021 WL 860189, at *9 (S.D.N.Y. Mar. 8, 2021).  If anything, Plaintiff alleges that

Defendants failed to act due to defendant Rosenbaum's high status as a judge, which, even if

presumed true for purposes of this motion, has no relation to Plaintiff being a woman.  To put it

differently, if employees within the court system were reluctant to pursue disciplinary action

against a judge for sexual misconduct, it would hardly matter whether the accuser was male or

female.  Thus, "[t]he complaint is devoid of any facts supporting Plaintiff's assertion that

Defendants discriminated against [her] or otherwise acted unlawfully." *Avent v. Keybank*, 2021

WL 1253840, at *3 (S.D.N.Y. Apr. 1, 2021).  Accordingly, Plaintiff's equal protection claims

against Defendants should be dismissed for their lack of personal involvement in sex

discrimination.

## II.     PLAINTIFF'S FOURTH CAUSE OF ACTION AGAINST DEFENDANTS SHOULD BE DISMISSED FOR LACK OF PERSONAL INVOLVEMENT.

The fourth cause of action arising under the NYSHRL likewise fails because Plaintiff

does not plead facts showing Defendants have an ownership interest in the state agencies, could

hire or fire Plaintiff on their own, or "actually participate[d]" in discrimination.

As a preliminary matter, in order for the fourth cause of action to even possibly proceed,

a valid Title VII claim would have to have been found against the State.  Indeed, "a coworker

cannot aid and abet the employer if the employer itself cannot be held liable."  *Peck v. Cty. of

Onondaga,* 2021 WL 3710546, at *14 (N.D.N.Y. Aug. 20, 2021), *reconsideration denied,* 2021

WL 4394603 (N.D.N.Y. Sept. 27, 2021), citing *Jain v. McGraw-Hill Cos., Inc.*, 827 F. Supp. 2d

272, 277 (S.D.N.Y. 2011) ("[L]iability must first be established as to the employer/principal

before accessorial liability can be found as to an alleged aider and abettor.").  As explained in the

Entity Defendants' motion to dismiss, however, Plaintiff's Title VII claims are time-barred and

fail for Plaintiff's lack of standing.  *See* Dkt. No. 17-10 at p. 4-8; 42 U.S.C. § 2000e (f)

(exempting from definition of employee "any person chosen" by a "person elected to public

office in any state" to be on said elected official's personal staff, provided appointee is not "subject to civil service laws of a State government.").  Thus, to the extent Plaintiff's claim against the Entity Defendants fails, so too does her state law claim against Defendants.

Regardless, even if a claim were to go forward against the State, Defendants should be dismissed, since their alleged inaction is insufficient to show sufficient personal involvement. Claims of discrimination in violation of New York's Human Rights Law can be brought against individuals. *See Stevens v. New York*, 691 F. Supp. 2d 392, 400–01 (S.D.N.Y. 2009), citing N.Y. Exec. Law § 296.  Under this provision, an individual can be liable if he has an "ownership interest or . . . power to do more than carry out personnel decisions made by others," or if he "actually participates in the conduct giving rise to a discrimination claim." *Id.*; *see Edwards v. Jericho Union Free Sch. Dist.*, 904 F. Supp. 2d 294, 304 (E.D.N.Y.2012) (quoting T*omka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir.1995), abrogated on other grounds by *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998).

Here, "[c]learly, none of the individual defendants could have an ownership interest in a state agency." *Stevens*, 691 F. Supp. 2d at 401.  Nor has Plaintiff alleged that any of Defendants "had the power to hire or fire [her] on their own." *Id.*  Indeed, under the Judiciary Law, only judges are empowered with the authority to appoint and remove their personal assistants. *See* McKinney's Judiciary Law § 36(1); 22 NYCRR § 80.1 (b) (3) (Chief Administrator of state courts can appoint and remove all nonjudicial officers except "personal assistants who serve as law clerks . . . secretaries to judges and justice").  Nor can Plaintiff plausibly claim to have been in an employment relationship with Judge Taddeo, since she is not the judge who appointed her. As a separate, publicly elected judge, Judge Taddeo clearly had no supervisory role over former Judge Rosenbaum, let alone his chambers staff. Neither did she have authority, as is alleged by

Plaintiff, to cause sexual abuse training to be conducted for an entire State Agency. *See* Dkt. No. 49 at 58. Regardless, this allegation is irrelevant.

Finally, in the original complaint Plaintiff did not allege "that 'the employer encourage[d], condone[d], or approve[d] of the conduct,'" *Peck*, 2021 WL 3710546, at *14, quoting *Maney v. Corning, Inc.*, 547 F. Supp. 2d 221, 230 (W.D.N.Y. 2007), let alone any of the overt sexual acts that allegedly took place between 2005 and June 1, 2009. *See* Dkt. No. 124, 31, 35, 56, 62. It is only in the Amended Complaint, served in response to Defendants' Motion to Dismiss the original Complaint, that Plaintiff makes her first allegation that the Defendants enabled, condoned or participated in Rosenbaum's alleged ongoing abuse of Plaintiff pursuant to an unwritten policy of OCA, UCS and Monroe County Supreme Court that acquiesced in the sexual abuse of subordinate employees by judges. *See also*, Dkt. No. 49 at ¶¶ 28, 37, 43, 70, 76, 153. The Amended Complaint is devoid of any specific allegations to support this conclusory claim.

Plaintiff's allegations against Defendants primarily concern their alleged failures to act, i.e., "not remedying discrimination once it was brought to [their] attention." *Peck*, 2021 WL 3710546, at *14. "But there is a world of difference between not addressing discrimination and actively condoning it," such that "holding [Defendants] liable without that affirmative step is impermissible, even under the NYSHRL." *Id.* Not to mention, the bulk (if not all) of the alleged sex discrimination occurred months and years before Plaintiff reported it to Defendants. According to the complaint, Plaintiff's sexual relationship with former Judge Rosenbaum ended on June 1, 2009, Dkt. No.49 at ¶ 82, yet she did not even report anything to Pawelczak and Fields until July 31, 2009, Aufleger until August 2019, Grant until January 2020, and Grimaldi until February 2020. *See* Dkt. No.49 at ¶¶ 97, 128, 132.

### III. PLAINTIFF'S SECOND AND FOURTH CAUSES OF ACTION AGAINST DEFENDANTS SHOULD BE DISMISSED ON THE MERITS.

Plaintiff's § 1983 and NYSHRL claims against Defendants fail on the merits. Besides their lack of personal involvement and the invalidity of Plaintiff's Title VII claim against the State, as discussed in Sections I and II above, Defendants are not alleged to have failed to act in response to sexual harassment rising to the level of sex discrimination under § 1983 or a hostile work environment under the New York State Human Rights Law. Plaintiff's retaliation claims against Defendants likewise fail as a matter of law.

Although "[s]exual harassment in the workplace is actionable under 42 U.S.C. § 1983 as a violation of the Fourteenth Amendment right to equal protection," *Wise v. New York City Police Dep't*, 928 F. Supp. 355, 364 (S.D.N.Y. 1996), citing *Annis v. County of Westchester*, 36 F.3d 251, 254 (2d Cir. 1994); *Gierlinger v. New York State Police*, 15 F.3d 32, 34 (2d Cir. 1994), "[n]ot all sexual harassment equals sex discrimination." *Annis*, 36 F.3d at 254. Only "harassment that transcends coarse, hostile and boorish behavior can rise to the level of a constitutional tort." *Id.* Section 1983 may be utilized "against a public official for improper sexual conduct toward an employee that create[s] a hostile work environment." *Saulpaugh v. Monroe Community Hosp.*, 4 F.3d 134, 143–44 (2d Cir. 1993), cert. denied, 510 U.S. 1164, 114 S.Ct. 1189, 127 L.Ed.2d 539 (1994).

"The standard for showing a hostile work environment under Title VII, . . . Section 1983, and the New York State Human Rights Law is essentially the same." *Smith v. Town of Hempstead Dep't of Sanitation Sanitary Dist. No. 2*, 798 F.Supp.2d 443, 451 (E.D.N.Y.2011); *see also McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 65 (S.D.N.Y. 2020), citing 42 U.S.C. § 2000e *et seq.*; *Summa v. Hofstra Univ.*, 708 F.3d 115, 123–24 (2d Cir. 2013). Under Title VII, "a gender-based hostile work environment claim requires the plaintiff to plead facts

showing that the complained-of conduct (1) 'is objectively severe or pervasive to constitute a hostile or abusive environment in the eyes of a reasonable person,' (2) creates an environment "'that the plaintiff perceives as hostile or abusive,' " and (3) " 'creates such an environment because of the plaintiff's sex.' " *Rys v. Grimm*, 2021 WL 827671, at \*3 (N.D.N.Y. Mar. 4, 2021), quoting *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007); *Gregory v. Daly*, 243 F.3d 687, 691-92 (2d Cir. 2001). "Whether the work environment is objectively severe or pervasive requires the court to evaluate the totality of the circumstances, including (a) the frequency of the discriminatory conduct, (b) the severity of the conduct, (c) whether it involves physical threats or humiliation, as opposed to a mere offensive utterance, and (d) whether it unreasonably disrupts the employee's performance." *Rys*, 2021 WL 827671, at \*3, citing *Yarrington v. Candor Cent. Sch. Dist.*, 2020 WL 1493920, \*6 (N.D.N.Y. Mar. 27, 2020) (quotation omitted); *see also Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014).

Here, the alleged actions of Defendants fall far short of the severe and pervasive discrimination required to state a claim. Plaintiff alleges that she met with Defendant Allen in HR on November 20, 2007, at which time Allen allegedly told Plaintiff that she "had no choice but to fire her" if Plaintiff complained to her, while simultaneously giving Plaintiff instructions on how to submit a complaint to the Inspector General's Office, including links to the appropriate form. Dkt. No.49 1 at ¶ 59, 67 . This single exchange falls far short of creating a hostile or abusive work environment. Any perceived threat in Allen's alleged statement was negated by her willingness to provide instructions about submitting a complaint through the proper channels. "'[E]mpty verbal threats,' while perhaps unprofessional, 'are not materially adverse actions, where they are unsupported by any other actions.'" *Murphy v. Wappingers Cent. Sch. Dist.*, 2018 WL 1831847, at \*9 (S.D.N.Y. Apr. 16, 2018) (internal quotation omitted). In any event, Plaintiff does not allege that Allen's statement was in any way related to Plaintiff's

sex, nor did it dissuade her—in fact, she claims to have submitted a complaint immediately thereafter.

Similarly, Plaintiff admits that Defendant Grant investigated her complaint by interviewing her on January 15, 2020, though Plaintiff alleges that he suggested "she had 'asked for' the treatment she received because of how she dressed." *Id.* at ¶ 128-130. . As a general matter, there is no "affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual"; therefore, "[c]ourts within the Second Circuit have determined that 'there is no constitutional right to an investigation by government officials.'" *Bernstein v. New York*, 591 F. Supp. 2d 448, 460 (S.D.N.Y. 2008). Additionally, Grant's alleged suggestion that Plaintiff "'asked for' the treatment she received," Dkt No. 49 at ¶ 130, falls far short of a constitutional violation. *See Clare-Lunny v. Soldato*, 2014 WL 3477419, at *3 (N.D.N.Y. July 11, 2014) ("Verbal harassment, and even threats, no matter how unprofessional, do not rise to the level of constitutional violations."), quoting *Holland v. Morgenstern*, 2013 WL 2237550 (E.D.N.Y. May 20, 2013) (citing *Jean–Laurent v. Wilkerson*, 438 F.Supp.2d 318, 324–25 (S.D.N.Y.2006) (claim of verbal abuse not cognizable under § 1983 because verbal intimidation did not rise to the level of a constitutional violation); *Ramirez v. Holmes*, 921 F.Supp. 204, 210 (S.D.N.Y.1996) (threats and verbal harassment without physical injury or damage not cognizable in claim filed under section 1983); *Fairchild, Arabatzis & Smith, Inc. v. Sackhheim*, 451 F. Supp. 1189, 1192 (S.D.N.Y.1978) ("screaming" and "demanding" did not rise to the level of constitutional violation)). Finally, there is no allegation that Grant was involved in or had anything to do with Plaintiff's prior complaints allegedly having been "lost." Dkt. No. 49 at ¶ 129.

Meanwhile, Plaintiff's sole allegations against Defendant Aufleger show that, if anything, she attempted to alleviate the tension in former Judge Rosenbaum's chambers. Specifically, far

from contributing to any alleged hostile work environment, Aufleger allegedly told the chambers staff "that they needed to talk to Plaintiff about work." *Id.* at ¶¶ 109-110.

Next, Defendant Grimaldi is accused of speaking to Plaintiff about trying to find another position on three occasions between January and March 2020. *Id.* at ¶ 132. This is not conduct that could possibly be construed as discriminating against Plaintiff on the basis of sex, nor creating a hostile work environment. Even crediting Plaintiff's union president's hearsay statement that there was a position available since March 2020, there is no indication that Grimaldi was even involved beyond March 2020, let alone hid this information from Plaintiff.

Finally, Plaintiff's claims against Defendants Taddeo, Pawelczak, and Fields likewise fail. To the extent Plaintiff alleges that Pawelczak and Fields informed former Judge Rosenbaum about Plaintiff's complaints about her work environment in chambers, Plaintiff does not claim that they had any intention other than to help. And Judge Taddeo is not alleged to have contributed to Plaintiff's work environment *in any way*, which is unsurprising given that she has no authority over another judge's chambers.

Ultimately, Defendants are accused of, at most, failing to act, despite many of them not even knowing about the alleged harassment until many years after any overt sex acts had ended, if they ever found out about those overt sex acts at all, which Plaintiff does not plead. Indeed,— with the exception of Defendants Allen and Taddeo, the claims against whom are time barred, as explained in Section IV below—the only purported "discrimination" allegedly occurring by the time Plaintiff told Defendants was unidentified chambers staff not speaking to her and Plaintiff's conclusory allegations of former Judge Rosenbaum "touching" her, "put[ting] his arm around" her, "comment[ing] inappropriately upon Plaintiff's clothing, and "address[ing] her by demeaning and inappropriate names such as 'sweetie' and 'honey.'" *See* Dkt. No. 49 at ¶ 83. Even if these actions could be imputed to Defendants (which they cannot), such vague

allegations do not transcend "course, hostile and boorish behavior" as required for a constitutional tort, *Annis*, 36 F.3d at 254, nor are they "severe" or "pervasive" enough to state an objectively hostile work environment. *See Sanderson v. Leg Apparel LLC*, 2020 WL 7342742, at *6 (S.D.N.Y. Dec. 14, 2020). Notably, Plaintiff neglects to mention whether she told *any* of Defendants about the sexual relationship between 2005 and June 1, 2009. Regardless, if she had, Defendants would know that she had been able to put a stop to it many years prior with little, if any, repercussions; if she did not, Defendants would have no idea that the situation had ever become so sexually explicit. Either way, Plaintiff fails to allege that she suffered a hostile work environment because of inaction by Defendants.

Briefly, Plaintiff's second cause of action contains one conclusory allegation that "Defendants' actions complained of here were taken pursuant to a policy or practice designed and implemented to protect judges from discipline or any other adverse action in response to the judges' violation of laws prohibiting sexual harassment and/or sexual discrimination." *See* Dkt. No. 49 at ¶ 181. However, the Second Circuit has held that the "pattern-or-practice framework is ill-suited to the task of identifying which individual defendants engaged in purposeful discrimination." *Reynolds v. Barrett*, 685 F.3d 193, 204 (2d Cir. 2012). Thus, in addition to not being based on Plaintiff's sex, this sole allegation of a "policy or practice" of protecting judges cannot salvage her otherwise invalid claims against Defendants.

Finally, Plaintiff fails to state a valid retaliation claim against Defendants. In order to survive a motion to dismiss retaliation claims brought under § 1983 and the NYSHRL, Plaintiff must plausibly allege that "(1) [D]efendants acted under the color of state law, (2) [D]efendants took adverse employment action against [her], (3) because [s]he complained of or otherwise opposed discrimination." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 91 (2d Cir. 2015). "An adverse employment action is one which is more disruptive than a mere

inconvenience or an alteration of job responsibilities." *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004). Again, because Plaintiff was a personal appointee of former Judge Rosenbaum, Defendants lacked any employment authority over her. *See* Judiciary Law § 36(1); 22 NYCRR § 80.1 (b) (3). In any event, Plaintiff does not allege that any of Defendants took adverse employment action against her, let alone because of complaints against former Judge Rosenbaum.

## IV. PLAINTIFF'S CLAIMS AGAINST ALLEN AND JUDGE TADDEO ARE TIME BARRED

Because Defendants Allen and Judge Taddeo are accused of failing to stop the sexual harassment when it was reported to them in 2007, Plaintiff's claims against them are untimely. The statute of limitations under Section 1983 and the NYSHRL is three years, *see Bermudez v. City of New York*, 783 F. Supp. 2d 560, 611 (S.D.N.Y.); *see also* N.Y. C.P.L.R. 214(2), and a hostile work environment claim is not rendered timely by an ongoing failure to remediate. *Burrell v. City Univ. of New York*, 995 F. Supp. 398, 407 (S.D.N.Y. 1998).

Here, Plaintiff alleges that she told Judge Taddeo about former Judge Rosenbaum's sexual demands on May 14, 2007, and met with Margaret Allen in HR on November 20, 2007, yet Plaintiff did not commence this lawsuit until approximately fourteen years later. *See* Dkt. No. 49 at ¶¶ 45 & 48. Plaintiff claims to have had one more meeting with Judge Taddeo on July 31, 2019, whereas she does not allege any further contact with Allen. Regardless, the twelve-year gap between Plaintiff's conversations with Judge Taddeo extinguishes any possible claim of a continuing violation. *Annis v. County of Westchester*, 136 F.3d 239, 246 (2d Cir. 1998) (holding that "[t]he discrimination Annis suffered before and after [six-year] gap cannot be joined as a 'continuing violation'"). Thus, any claims regarding the alleged events in 2007 are time-barred.

## V. PLAINTIFF'S CLAIMS AGAINST DEFENDANTS IN THEIR OFFICIAL CAPACITIES ARE BARRED UNDER THE ELEVENTH AMENDMENT

Plaintiff's claims against Defendants in their official capacities are barred by the Eleventh Amendment.

The Eleventh Amendment bars federal jurisdiction over suits against nonconsenting states; hence, whether sovereign immunity bars a claim is properly decided on a motion to dismiss for lack of subject matter jurisdiction. *See Goonewardena v. New York*, 475 F.Supp.2d 310 (S.D.N.Y. 2007). Courts have routinely held that sovereign immunity shields states from constitutional claims pursuant to 42 U.S.C. § 1983. *See id.*; *Fedele v. Harris*, 69 F. Supp. 3d 313, 318-19 (N.D.N.Y. 2014). Likewise, "New York State has not waived its Eleventh Amendment immunity and consented to suit in federal court under the NYSHRL." *Hauff v. State Univ. of New York*, 425 F. Supp. 3d 116, 128 (E.D.N.Y. 2019). "This bar applies to suits against state officials for money damages when sued in their official capacities." *Fedele*, 69 F. Supp. 3d at 319.

Accordingly, to the extent Plaintiff is suing Defendants in their official capacities, her monetary damages claims under § 1983 and the NYSHRL must be dismissed.

## CONCLUSION

For the reasons set forth above, Defendants respectfully submit that the claims against

them should be dismissed, and they should be terminated from this action.

Dated: September 23, 2022                    LETITIA JAMES
                                             Attorney General for the State of New York
                                             *Attorney for Defendants Grant, Pawelczak,*
                                             *Aufleger, Taddeo, Grimaldi, and Allen*


                                             s/Michele Romance Crain
                                             MICHELE ROMANCE CRAIN
                                             HEATHER L. MCKAY
                                             Assistant Attorney General of Counsel
                                             NYS Office of the Attorney General
                                             144 Exchange Boulevard, Suite 200
                                             Rochester, New York 14614
                                             Telephone:  (585) 327-3223
                                             Michele.Crain@ag.ny.gov
                                             heather.mckay@ag.ny.gov

**CERTIFICATE OF SERVICE**

I certify that on September 23, 2023, I electronically filed the foregoing Memorandum of Law on behalf of Defendants with the Clerk of the District Court using CM/ECF system, which sent notification of such filing to the following:

1.    Lindy Korn, Esq.
      *Attorney for Plaintiff*
      Electric Tower
      535 Washington Street
      9th Floor
      Buffalo, NY 14203

2.    Anna Marie Richmond, Esq.
      *Attorney for Plaintiff*
      2500 Rand Building
      14 Lafayette Square
      Buffalo, NY 14203

3.    Pedro Morales, Esq.
      *Attorney for Entity Defendants*
      NYS Office of Court Administration
      25 Beaver Street
      11th Floor
      New York, NY 10004

4.    David Rothenberg, Esq.
      *Attorney for Defendant Rosenbaum*
      Rothenberg Law
      45 Exchange Boulevard
      Suite 800
      Rochester, NY 14614

LETITIA JAMES
Attorney General of the State of New York
*Attorney for Defendants Grant, Pawelczak,*
*Aufleger, Taddeo, Grimaldi, and Allen*

 *s/Michele Romance Crain*
MICHELE ROMANCE CRAIN
HEATHER L. MCKAY
Assistant Attorney General of Counsel
NYS Office of the Attorney General
144 Exchange Boulevard, Suite 200
Rochester, New York 14614
Telephone:  (585) 327-3223

Michele.Crain@ag.ny.gov
Heather.McKay@ag.ny.gov