UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

REBECCA KLYMN,

                       Plaintiff,

                                                              21-CV-6488-JLS

vs.

MONROE COUNTY SUPREME COURT,
ET AL,

                       Defendants.

PLAINTIFF'S RESPONSE TO THE SUPPLEMENTAL MOTION TO DISMISS OF
DEFENDANTS GRANT, PAWELCZAK, AUFLEGER, TADDEO, GRIMALDI, ALLEN AND
FIELDS[1]

LINDY KORN, ESQ.
The Law Office of Lindy Korn, LLP
535 Washington Street, Ninth Floor
Buffalo, NY  14203
716-856-5676
lkorn@korn-law.com

ANNA MARIE RICHMOND, ESQ.
2500 Rand Building
14 Lafayette Square
Buffalo, NY  14203
716-854-1100
annamarierichmondesq@gmail.com

---

[1].      Defendants have requested that the caption of this action be amended to properly name as defendants ANN
MARIE TADDEO and MARGARET ALLEN.  Plaintiff has no objection, and joins in the Defendants' request.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ 3

INTRODUCTION ............................................................................................................... 4

LEGAL ARGUMENT ........................................................................................................ 4

    A.   The Complaint Against the Individual Defendants Should Not be Dismissed ................................ 6

   1.   Defendant Taddeo ............................................................................................ 10

      2.   Defendant Allen ......................................................................................... 11

      3.   Defendant Grant ........................................................................................ 13

      4.    Defendants Pawelczak, Aufleger and Fields ................................................. 15

      5.   Defendant Grimaldi ................................................................................... 16

    B.   Adult Victims Act .......................................................................................... 17

CONCLUSION ............................................................................................................... 17

## TABLE OF AUTHORITIES

**Cases**

*AMTRAK [sub nom. Nat'l R.R. Passenger Corp.] v. Morgan,* 536 U.S. 101, 116 (2002) ............ 5

*Ananiadis v. Mediterranean Gyros Prods., Inc.*, 151 A.D.3d 915, 917-18, 54 N.Y.S.3d 155, 159 (2d Dept. 2017) ............................................................................................................................ 6

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................................... 4, 5

*Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995). ............................................................................ 7

*Harris v. Forklift Sys.*, 510 U.S. 17, 23 (1993) ............................................................................ 4

*Jemmott v. Coughlin*, 85 F.3d 61 (2d Cir. 1996) ........................................................................ 5

*Mykytyn v. Hannaford Bros. Co.*, 141 A.D.3d 1153, 1155, 34 N.Y.S.3d 856, 859 (4th Dept. 2016)............................................................................................................................................ 6

*Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75 (1998)........................................................ 5

*Owens v. Okure*, 488 U.S. 235 (1989) ........................................................................................ 6

*Small v. Caiola,* 96 Civ. 7945 (LMM), 2000 LEXIS 8542  (SDNY June 15, 2000)..................... 5

*Tangreti v. Bachmann*, 983 F 3d 609 (2d Cir. 2020) ............................................................... 7, 8

*Tomka v. Seiler Corp.*, 66 F.3d 1295 (2d Cir. 1995) ................................................................. 5

**Statutes**

N.Y. CPLR § 214(2) .................................................................................................................... 6

N.Y. Exec Law § 296(6). ........................................................................................................ 5, 6

## INTRODUCTION

Rebecca Klymn's Amended Complaint in this action alleges that she has spent her entire career as an employee of the New York State Courts in a hostile work environment created and maintained by Defendant Matthew Rosenbaum, and by Defendants Grant, Pawelczak, Aufleger, Taddeo, Grimaldi, Allen and Fields.  Defendant Rosenbaum sexually assaulted Ms. Klymn scores of times, and addressed her in demeaning sexual terms, commented on her clothing, and touched and hugged her in the presence of others.  When Ms. Klymn sought help from Defendants Grant, Pawelczak, Aufleger, Taddeo, Grimaldi, Allen and Fields, they either ignored, dismissed, placated, or lied to her.

Defendants Grant, Pawelczak, Aufleger, Taddeo, Grimaldi, Allen and Fields have moved to dismiss Ms. Klymn's complaint against them.  Item 51.  They assert 1) they were not personally involved in the violation of Ms. Klymn's rights; 2) her claims against them do not rise to the level of sex discrimination or a hostile work environment, and 3) her claims against Defendants Allen and Taddeo are time-barred.  Item 51-1.  Defendants' arguments ignore Supreme Court precedent requiring a reviewing Court to "draw on its judicial experience and common sense" in evaluating a complaint, *Ashcroft v. Iqbal*, 556 U.S. 662, 679, (2009), and to "look[ ] at all the circumstances" in evaluating a claim of hostile work environment. *Harris v. Forklift Sys.*, 510 U.S. 17, 23 (1993).  When all of the circumstances alleged by the Ms Klymn are viewed from a common-sense perspective, it is clear that she has adequately pleaded a claim upon which relief may be granted.

## LEGAL ARGUMENT

The standard for evaluating a motion to dismiss on the pleadings is well-established:

> To survive a motion to dismiss, a complaint must contain sufficient
> factual matter, accepted as true, to "state a claim to relief that
> is plausible on its face."  A claim has facial plausibility when the
> plaintiff pleads factual content that allows the court to draw the
> reasonable inference that the defendant is liable for the misconduct
> alleged.

*Ashcroft, supra* 556 U.S at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 556

(2007)).

Public employees subjected to sexual harassment on the job may raise claims under Title

VII, 42 USC § 1983, and (in New York State) the New York Human Rights Law.  Claims under

§ 1983 and the Human Rights Law[2] are analyzed pursuant to the same standards that govern

Title VII actions.  *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1304 n.4 (2d Cir. 1995) *abrogated on

other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998) (Human Rights Law);

*Jemmott v. Coughlin*, 85 F.3d 61, 67 (2d Cir. 1996) (§ 1983).  A plaintiff has been subjected to a

hostile work environment, "[w]hen the workplace is permeated with 'discriminatory

intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions

of the victim's employment and create an abusive working environment."  *Harris, supra*, 510 US

at 21.  A court is required to look at the totality of the circumstances when evaluating a claim of

hostile work environment.  *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 81-82 (1998).

*See also*, *AMTRAK [sub nom. Nat'l R.R. Passenger Corp.] v. Morgan,* 536 U.S. 101, 116 (2002)

("In determining whether an actionable hostile work environment claim exists, we look to 'all

the circumstances' . . . ")

---

[2] .  Unlike Title VII which does not allow for suit against individuals, the New York Human Rights Law includes a
cause of action against individuals who "aid, abet, incite, compel or coerce the doing of any acts forbidden under
this Article."  N.Y. Exec Law § 296(6).  A Human Rights Law claim against individual state-employee defendants
will survive if the Court has jurisdiction over those defendants under another ground that the Human Rights Law,
and even the Human Rights Law claims against the State are dismissed.  *Small v. Caiola,* 96 Civ. 7945 (LMM),
2000 LEXIS 8542, at *21 (SDNY June 15, 2000).

Under § 296(6) of the New York Human Rights Law:

> a supervisor need not make derogatory comments or unwelcome
> sexual advances to subject himself or herself to liability . . . Rather,
> . . . a supervisor's failure to take adequate remedial measures can
> rise to the level of 'actual participation' under [the NYSHRL]"
> Indeed, a failure to conduct a proper and thorough investigation or
> to take remedial measures upon a plaintiff's complaint of
> discriminatory conduct is sufficient to impose liability on an aiding
> and abetting theory

*Ananiadis v. Mediterranean Gyros Prods., Inc.*, 151 A.D.3d 915, 917-18, 54 N.Y.S.3d 155, 159

(2d Dept. 2017)  Where an employee complains to a manager of sexual harassment, and the

manager takes no action and does not report the harassed employees complaints to upper

management, the managerial employee who failed to act may be held liable as an aider or abettor

under Human Rights Law § 296(6). *Mykytyn v. Hannaford Bros. Co.*, 141 A.D.3d 1153, 1155, 34

N.Y.S.3d 856, 859 (4th Dept. 2016)

Finally, a claim of hostile work environment discrimination is timely if an EEOC charge

is filed within 300 days of "any act that is part of the hostile work environment. *Amtrak supra,*

536 US at 118.  The statute of limitations for both Section 1983 actions and claims under § 296

of the Human Rights Law is three years.  *Owens v. Okure*, 488 U.S. 235, 251 (1989)); N.Y.

CPLR § 214(2).

## A.    The Complaint Against the Individual Defendants Should Not be Dismissed

It is undisputed that "'[A] continuing violation may be found where there is proof of

specific ongoing discriminatory policies or practices, *or* where specific and related instances of

discrimination are permitted by the employer to continue unremedied for so long as to amount to

a discriminatory policy or practice.'"  ).  *Coleman v. B.G. Sulzle, Inc.*, 402 F. Supp. 2d 403, 411-

12 (NDNY 2005) (citing *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 765 (2d Cir. 1998)).

Here, Defendants Grant, Pawelczak, Aufleger, Taddeo Grimaldi, Allen and Fields are the people

who implemented the unwritten policy of Monroe County Supreme Court, the Unifie Court System the Office of Court Administration and the Office of the Managing Inspectgor General for Bias Manners that ignored violations by sitting judges, and defendant Rosenbaum in particular, of the anti-discrimination laws and the Courts' own written policy.  Ms. Klymn seeks to hold these people liable for their  deliberate and intentional participation in the sex-based discrimination against her throughout the years that she has described in detail in her Complaint.

Defendants Grant, Pawelczak, Aufleger, Taddeo, Grimaldi, Allen and Fields have relied on *Tangreti v. Bachmann*, 983 F 3d 609 (2d Cir. 2020) to argue that the claim against the individual Defendants must be dismissed because Ms. Klymn has impermissibly relied upon the second *Colon*[3] factor in pleading her claims against them.  The *Tangreti* Court's analysis does not seamlessly transfer from a claim of Eighth Amendment excessive force to a claim of hostile work environment in the employment context.

Initially, it is important to note that *Tangreti* was a summary judgment case.  Thus, the Court had the benefit of a fully-developed record, and was able to base its decision upon undisputed facts that had been elicited during the discovery process.

Secondly, the claim against Counselor Bachmann in *Tangreti* was brought under 42 USC § 1983 alleging a violation of Tangreti's right to be free from cruel and unusual punishment under the Eighth Amendment.  Tangreti argued that eight supervisory defendants were deliberately indifferent to a substantial risk that Tangreti would be subjected to sexual abuse by three correctional officers.  Defendant Bachmann raised a qualified immunity defense in her motion for summary judgment, and the issue before the Second Circuit was an interlocutory appeal from the District Court's denial of Bachmann's motion for summary judgment.

---

[3] . *Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995).

Tangreti had alleged that Bachmann, although aware of the threat to Tangreti's safety at the hands of corrections officers, failed to act to protect her.  By the summary judgment stage it had been established that when Bachmann learned about the sexual abused inflicted upon Tangreti she acted immediately and properly.  *Tangreti, supra*, 983 F.3d at 614. The Court held: "Even considering only Tangreti's version of the facts, the pretrial record does not support the inference that Bachmann had subjective knowledge that Tangreti was at a substantial risk of sexual abuse."  *Id.*, at 612.  Moreover, Bachman was sued in her capacity as a prison supervisor, and accused of "displaying deliberate indifference to the substantial risk of sexual abuse by the three correctional officers."  *Id.*  The Court held:  "for deliberate-indifference claims under the Eighth Amendment against a prison supervisor, the plaintiff must plead and prove that the supervisor had subjective knowledge of a substantial risk of serious harm to an inmate and disregarded it."  *Id.* at 616.

This is not a deliberate indifference case, nor, as Defendants Grant, Pawelczak, Aufleger, Taddeo, Grimaldi, Allen and Fields argue, is it a case in which a Plaintiff merely claims that Defendants with supervisory authority are liable due to their failure to adequately supervise Defendant Rosenbaum.  Here, in contrast, Ms. Klymn has alleged that the hostile work environment to which she was subjected was underlined created by all of the individually named Defendants, including, but not limited to Defendant Rosenbaum.

Viewing all of the circumstances of Ms. Klymn's complaint in totality, she has alleged that she was:

- Required by her direct supervisor, who held the power to hire and fire her, to submit to his sexual abuse of her for four years while being threatened not only with the loss of her job, but the loss of custody of her son;

- Simultaneously with being required to act as Defendant Rosenbaum's sex slave, required to submit to his humiliating and offensive touching and comments in the presence of other court employees, attorneys, and litigants on a daily basis;

- Advised by all of the Court personnel to whom she turned for help that she had no recourse, and must either submit to all of Defendant Rosenbaum's mistreatment of her, or lose her job.

Ms. Klymn has also alleged that each time she complained, whether by following her employer's published procedures and complaining to OIG, or informally complaining to a judge, Human Relations staff, and Court Administrative staff, her complaints were either rejected or ignored. Each action of each named Defendant described in the Complaint, contributed another bar to the cage in which Ms. Klymn was imprisoned.  Defendants cannot escape liability by arguing that their individual contributions were insignificant.

Defendant Rosenbaum was, indeed, the sole individual who sexually abused Ms. Klymn, and subjected her to a daily barrage of offensive comments and touching.  But Defendant Rosenbaum could not have continued to engage in that misconduct for 14 years without the cooperation, support, and endorsement of the other named Defendants.  Rather than acknowledging the totality of the circumstances in which Ms. Klymn was trapped, the Defendants have isolated each individual component of her circumstances, and argued that, in isolation, that component does not rise to the level of a hostile work environment.

This analysis ignores the totality of Plaintiff's circumstances and defies common sense. As is discussed in detail below, none of the Defendants can pretend that they were unaware of the totality of Plaintiff's circumstances.  Their refusal to act, in the face of Plaintiff's need is necessarily a deliberate participation in Defendant Rosenbaum's abuse.   Moreover, all but one

of these Defendants were specifically charged by virtue of their positions in the Courts with heightened responsibility for preventing sexual harassment.  Defendants Pawelczak, Aufleger, Taddeo, Grimaldi and Allen, by virtue of their roles, were obligated to assist Ms. Klymn in complaining, and to report Defendant Rosenbaum's abuse of Ms. Klymn to OIG if Ms. Klymn did not.  Defendant Grant's role within the Court system was to investigate (and presumably, identify) sexual abuse and harassment, so that it could be stopped.  To argue that these Defendants failed to act with the requisite intent, or did not participate in the creation of the hostile work environment to which Ms. Klymn was subjected, ignores the totality of circumstances pleaded in Ms. Klymn's complaint.

1.     **Defendant Taddeo**

Defendant Taddeo was the first named Defendant to whom Ms. Klymn complained. Defendant Taddeo was a peer of Defendant Rosenbaum's, an independently elected judicial officer, and presumably in no way subject to Rosenbaum's control.  Although, as Defendants argue, Defendant Taddeo had no authority over either Defendant Rosenbaum or Ms. Klymn, Defendant Taddeo did have a responsibility as a supervisor to assist Ms. Klymn in complaining or to file a complaint on Ms. Klymn's behalf.  Defendant Taddeo did neither – not in 2007 when Ms. Klymn complained of actual sexual abuse, nor in 2019 when Ms. Klymn complained of the ongoing hostile work environment in which she was trapped.  Item 43 ¶¶ 54-59, 98, 101. Defendant Taddeo is second only to Defendant Rosenbaum in her sustained temporal participation in the creation and maintenance of that hostile work environment.

Defendants have focused their discussion of Defendant Taddeo's potential liability on the allegations concerning Taddeo's actions in 2019.  Item No. 51-1, p. 16.  Their arguments ignore

Ms. Klymn's contention that she has been subjected to a hostile work environment, beginning in 2005.  Moreover, their discussion fails to acknowledge that Defendant Taddeo's actions in 2019 were undertaken in the context of Defendant Taddeo's 2007 discussions with Ms. Klymn, when Ms. Klymn initially sought Defendant Taddeo's assistance, and Defendant Taddeo told Ms. Klymn she had no choice but to accept the abuse.  Item No. 49, ¶ 58.

To argue that Defendant Taddeo has not acted based on Ms. Klymn's sex ignores the reality of the situation:  Defendant Rosenbaum abused Ms. Klymn based upon her sex.  That abuse created a hostile work environment based upon her sex. Defendant Taddeo's refusal to dismantle that sex-based hostile work environment was, necessarily, based upon Ms. Klymn's sex.  Had it not been for sex, Ms. Klymn would not have been in a hostile work environment. Defendant Taddeo's advice to Ms. Klymn that she endure Defendant Rosenbaum's sexual harassment explicitly articulated Defendant Taddeo's participation in the creation of the sex-based hostile work environment of which Ms. Klymn complains – a participation that continued as least as late as July 31, 2019.

### 2.    **Defendant Allen**

Defendant Allen was the second named Defendant to whom Ms. Klymn complained.  At the time of Ms. Klymn's complaint, Defendant Allen was the Head of Human Resources for Monroe County Supreme Court. Not only did Defendant Allen refuse to help Ms. Klymn, but Defendant Allen advised Ms. Klymn that Allen "would have no choice" but to fire Ms. Klymn if Ms. Klymn pursued her complaint against Defendant Rosenbaum.  *Id.* ¶¶ 61-64.  Defendants have argued that. "Any perceived threat in Allen's alleged statement was negated by her willingness to provide instructions about submitting a complaint through the proper channels."

Item No. 51-1, p. 14.  Defendants' argument flies in the face of reason.

Notwithstanding that she had no authority to do so, Defendant Allen informed Ms. Klymn that she (Defendant Allen) would be compelled to fire Ms. Klymn if Ms. Klymn complained about Defendant Rosenbaum's sexual abuse.  Defendant Allen's statement was clearly false:  Judiciary Law § 36(1) vested authority to fire Ms. Klymn solely in Defendant Rosenbaum, and Defendant Allen had an infinite array of choices at the point in time.  Defendant Allen could have filed a complaint on Ms. Klymn's behalf.  Defendant Allen could have assisted Ms. Klymn in filing a complaint.  Defendant could have simply declined to assist Ms. Klymn. Instead, Defendant Allen contributed to the creation of the hostile work environment by reinforcing Defendant Rosenbaum's threat to fire Ms. Klymn. The hostile work environment was created because of Ms. Klymn's sex.  The sex based nature of the hostile work environment was explicitly communicated to Ms. Allen by Ms. Klymn. Ms. Allen's participation in the establishment of that hostile work environment irrefutably contributed to the illegal discrimination that Ms. Klymn endured for the next fifteen years.

To argue that Defendant Allen did not act based on Ms. Klymn's sex ignores the reality of the situation:  Defendant Rosenbaum abused Ms. Klymn based upon her sex.  That abuse created a hostile work environment based upon her sex. Defendant Allen's refusal to dismantle that sex-based hostile work environment was, necessarily, based upon Ms. Klymn's sex.  Had it not been for sex, Ms. Klymn would not have been in a hostile work environment.  Defendant Allen's statement that she would have to fire Ms. Klymn if Ms. Klymn complained about Defendant Rosenbaum's abuse explicitly articulated Defendant Allen's participation in the creation of the sex-based hostile work environment of which Ms. Klymn complains.  Although discovery is required to determine how long Defendant Allen participated in the creation and

maintenance of the hostile work environment, because she participated in a continuing violation, her 2007 actions are actionable to the present day.

3.  **Defendant Grant**

Defendant Grant is an Investigator with the Office of the Managing Inspector General for Bias Matters – the entity legally obligated to investigate allegations of bias that affect the workplace or terms and conditions of employment of Court personnel.  As an investigator for the OIG, Defendant Grant owes his employer and the subjects of his investigations a duty of impartiality while engaged in the fact-finding process.  Because Plaintiff has not had the benefit of discovery at this point in the litigation, it is unknown how many investigators are employed by Defendant OIG, what those investigators' role is in processing complaints, and whether Defendant Grant was employed as an OIG investigator when Ms. Klymn submitted her complaints in 2007 and 2018.

However, in January of 2020, Defendant Grant reported to Ms. Klymn that OIG had "lost" her prior complaints about Defendant Rosenbaum.  Assuming that Defendant Grant's statement to Ms. Klymn was accurate, his knowledge about the fate of her prior complaints suggests that he was employed by OIG when Ms. Klymn complained, and aware of the complaints' arrival.  If that is the case, which only discovery can ascertain, then Defendant Grant, like Defendant Taddeo bears ongoing responsibility for the hostile work environment to which Ms. Klymn was subjected from 2007 to the present.

Equally as important, Defendant Grant interviewed Ms. Klymn in 2020 – after Defendant Rosenbaum resigned his judicial position pursuant to a stipulation with the Commission on Judicial Conduct's ("CJC").  During that interview, Grant told Ms. Klymn that she had "asked

for" Defendant Rosenbaum's treatment of her.  Item No. 40. ¶¶ 128-131.  At the time Ms. Klymn

met with Defendant Grant, she had been informally notified that Defendant Rosenbaum was

resigning, but not that his resignation had taken effect.  The CJC case against Defendant

Rosenbaum did not formally conclude until January 23, 2020.  Item No. 27-1.

   Thus, Ms. Klymn was in a liminal status with respect to her position – although she had

been notified that he job title was changing to Court Analyst, she had no information about her

assignment. Item No. 49, ¶ 127.  Additionally, she was suffering the physical and emotional

effects of years of subsistence within the hostile work environment created in Rochester by the

actions of the individual Defendants other than Defendant Grant.  *Id.* ¶¶ 114-116. Defendant

Grant's comment explicitly focused on Defendant Rosenbaum's sexual abuse of Ms. Klymn and

attributed that conduct to Ms. Klymn's choice of attire – blaming the victim for the abuse.

Grant's comments to Ms. Klymn while she was in the vulnerable state described in the

Complaint constituted yet another component of the hostile work environment to which she has

been subjected.

   To argue that Defendant Grant did not act based on Ms. Klymn's sex ignores the reality

of the situation:  Defendant Rosenbaum abused Ms. Klymn based upon her sex.  That abuse

created a hostile work environment based upon her sex. Defendant Grant's refusal to dismantle

that sex-based hostile work environment was, necessarily, based upon Ms. Klymn's sex.  Had it

not been for sex, Ms. Klymn would not have been in a hostile work environment.  Defendant

Grant's statement to Ms. Klymn that she had asked for Defendant Rosenbaum's sexual

harassment explicitly articulated Defendant Grant's participation in the creation of the sex-based

hostile work environment of which Ms. Klymn complains – a participation that continued as

least as late as January 15, 2020.

4.       **Defendants Pawelczak, Aufleger and Fields**

At all times relevant to this action, Defendant Pawelczak was the District Executive for the Seventh Judicial District of the State of New York – the highest-ranking administrative employee in in the New York Court system in Rochester.  Defendant Aufleger was Defendant Pawelczak's Assistant District Executive, and Defendant Fields was a Principal Court Analyst assigned to Human Resources at Monroe County Supreme Court.

Ms. Klymn has alleged that the hostile work environment to which she was subjected exacerbated beginning in June 2019.  Defendant Rosenbaum stopped speaking to her except to verbally abuse her and urge her to take a leave of absence, and he encouraged or directed his staff to stop speaking to her.  *Id.*, ¶¶ 96-97, 102-103.  Ms. Klymn sought assistance from Defendants Pawelczak, Aufleger and Fields on several occasions between the end of July and the end of September, 2019.  Each time, she was told they could do nothing to help her, and encouraged her to take time off and apply for other jobs.  *Id.*, ¶¶ 98, 101, 109. Additionally, Defendant Fields copied Defendant Rosenbaum on a follow-up email to Ms. Klymn, causing Defendant Rosenbaum to intensify his hostility and abuse.  *Id.*, ¶¶ 107-108.  Defendant Aufleger spoke to Defendant Rosenbaum's staff, intensifying their hostility to the point that they refused to work with Ms. Klymn altogether. *Id.*, ¶¶ 110-111.

Rather than reporting Ms. Klymn's complaint through the proper channels, Defendants Pawelczak, Aufleger and Fields opted to evade their obligations and engage in ineffectual actions that served to worsen Ms. Klymn's situation rather than improve it.

To argue that Defendant Pawelczak, Aufleger and Fields did not act based on Ms. Klymn's sex ignores the reality of the situation:  Defendant Rosenbaum abused Ms. Klymn based upon her sex.  That abuse created a hostile work environment based upon her sex.

Defendants Pawelczak's, Aufleger's and Fields' refusal to dismantle that sex-based hostile work environment was, necessarily, based upon Ms. Klymn's sex.  Had it not been for sex, Ms. Klymn would not have been <u>in</u> a hostile work environment.  Defendant Pawelczak's Aufleger's and Fields' advice to Ms. Klymn that find another job explicitly articulated their participation in the creation of the sex-based hostile work environment of which Ms. Klymn complains – a participation that continued as least through September of 2019.

      5.    **Defendant Grimaldi**

At all times relevant to this action Defendant Grimaldi was head of Human Resources for the New York Courts.  In February of 2020 she told Ms. Klymn that she would identify a new assignment for her. Although a record submitted by the State Court Defendants indicates that a position was identified as early as February 18, 2020, Item No. 17-6, Defendant Grimaldi never advised Ms. Klymn that a position had been identified for her.  Item No. 49, ¶¶ 133-137.  It was not until more than fourteen months later that Ms. Klymn learned from her Union president that she had been assigned to a position in Family Court, Monroe County.  *Id.,* ¶ 144.  Defendant Grimaldi's failure to notify Ms. Klymn of the new assignment left Ms. Klymn uncertain of her status, economically insecure, and still at the mercy of the same forces that had allowed her to be subjected to the hostile work environment in the first place.

To argue that Defendant Grimaldi did not act based on Ms. Klymn's sex ignores the reality of the situation:  Defendant Rosenbaum abused Ms. Klymn based upon her sex.  That abuse created a hostile work environment based upon her sex. Defendants Grimaldi's refusal to dismantle that sex-based hostile work environment by placing Ms. Klymn into a new position away from the hostile environment she had endured, was, necessarily, based upon Ms. Klymn's

sex.  Had it not been for sex, Ms. Klymn would not have been <u>in</u> a hostile work environment.  By failing to place Ms. Klymn in a new position Defendant Grimaldi's maintained the hostile work environment to which Ms. Klymn had been subjected through 2021.

### B. Adult Victims Act

On May 22, 2022, Governor Hochul signed into law the Adult Survivors Act, which provides for an eighteen month long revival period for claims by adult victims of conduct that would violate Penal Law § 130 where the statute of limitations to bring such action might otherwise have elapsed.  N.Y. C.P.L.R. § 214-j.  Such actions may be filed beginning November 24, 2022.  Plaintiff intends to seek permission to file a supplemental complaint pursuant to this statute, promptly after the effective date.

### CONCLUSION

Rebecca Klymn was trapped in a hostile work environment from 2005 through 2021. Her bodily integrity was invaded by Defendant Rosenbaum alone, but her economic security and peace of mind at work were shredded by Defendants Grant, Pawleczak, Aufleger, Taddeo, Allen Fields, and Grimaldi.  None of these Defendants took any action to dismantle the hostile work environment from 2007 when she first complained until 2021 when she was finally placed in her current position.  Defendants Taddeo and Allen told her she had no choice but to take whatever abuse Defendants Rosenbaum chose to inflict upon her.  Even after an independent investigation by the CJC resulted in Defendant Rosenbaum's removal from the judicial office to which he had been elected, Defendant Grant told her the abuse was her own fault.

The actions of Defendants Taddeo, Pawelczak, Aufleger, Fields, allen, Grimaldi and Grant must be viewed in the context of the hostile working environment itself:  the unrelenting

messages that she had no choice but to endure the abuse or lose her job – and that she had somehow brought the abuse upon herself.  Considering all the circumstances, and taking the allegations of the complaint in the light most favorable to Ms. Klymn, the Complaint must be said to state a plausible claim against these Defendants, and their motion to dismiss must be denied.

Respectfully Submitted,

_____/s/ Lindy Korn_____                        _____/s/ Anna Marie Richmond__
LINDY KORN, ESQ.                                    ANNA MARIE RICHMOND, ESQ.

October 14, 2022