UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

REBECCA KLYMN

           Plaintiff,

   v.

      21-CV-6488 (JLS)

MONROE COUNTY SUPREME
COURT, UNIFIED COURT SYSTEM
OF THE STATE OF NEW YORK,
OFFICE OF COURT
ADMINISTRATION, OFFICE OF THE
MANAGING INSPECTOR GENERAL
FOR BIAS MATTERS, COSMAS
GRANT, RONALD PAWELCZAK,
MARY AUFLEGER, ANN MARIE
TADDEO, CAROLYN GRIMALDI,
MARGARET ALLEN, AMY FIELDS,
AND MATTHEW ROSENBAUM

           Defendants.



## DECISION AND ORDER

Plaintiff Rebecca Klymn brings this action pursuant to Title VII of the Civil

Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), 42 U.S.C. § 1983, and the

New York State Human Rights Law, N.Y. Exec. L. § 290 *et seq.* ("NYHRL"). She

asserts various claims under those statutes against Defendants Monroe County

Supreme Court, Unified Court System of the State of New York ("UCF"), Office of

Court Administration ("OCA"), Office of the Managing Inspector General for Bias

Matters ("OIG"), Cosmas Grant, Ronald Pawelczak, Mary Aufleger, Ann Marie

Taddeo, Carolyn Grimaldi, Margaret Allen, Amy Fields, and Matthew Rosenbaum.

*See* Dkt. 49.  Plaintiff sues Grant, Pawelczak, Aufleger, Taddeo, Grimaldi, Allen, Fields and Rosenbaum in their personal and official capacities.  *See id.* ¶¶ 16, 19-25.

Before the Court are three motions to dismiss: one filed by Rosenbaum (Dkt. 19); one filed by Grant, Pawelczak, Aufleger, Taddeo, Grimaldi, Allen, and Fields (collectively, the "Individual Defendants") (Dkt. 21);[1] and one filed by UCS, OCA, and OIG (collectively, the "State Court Defendants") (Dkt. 17).

For the reasons discussed below, Rosenbaum's motion (Dkt. 19) is DENIED. As a result, Plaintiff's claims against Rosenbaum under the NYHRL and Section 1983 for retaliation and harassment may proceed.

The Individual Defendants' motion (Dkt. 21) is GRANTED in part and DENIED in part.  All of Plaintiff's official-capacity claims against the Individual Defendants for money damages are dismissed as barred by the Eleventh Amendment without leave to amend.  Plaintiff's NYHRL claims otherwise survive. Plaintiff's claims against the Individual Defendants under Section 1983 are dismissed as insufficiently pleaded.  Plaintiff is granted leave to leave amend her Section 1983 claims against the Individual Defendants, to the extent they are not barred by Eleventh Amendment immunity, if she can allege the requisite personal involvement.

---

[1] The Individual Defendants filed an additional motion to dismiss at Dkt. 51.  As discussed further below, the Court construes this motion as a supplemental submission in support of their motion filed at Dkt. 21.

The State Court Defendants' motion (Dkt. 17) is GRANTED in part and DENIED in part. Plaintiff's Title VII claims against the State Court Defendants may proceed to the extent that they post-date December 2019, but are otherwise dismissed without leave to amend.

## PROCEDURAL HISTORY

Plaintiff commenced this action on July 16, 2021. Dkt. 1. The State Court Defendants filed their motion to dismiss (Dkt. 17) pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) on November 10, 2021. Plaintiff opposed the motion, and the State Court Defendants replied. Dkt. 26, 30. The Individual Defendants filed their motion to dismiss (Dkt. 21) pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) on November 12, 2021. Plaintiff opposed the motion, and the Individual Defendants replied. Dkt. 27, 29. Rosenbaum filed his motion to dismiss (Dkt. 19) pursuant to Fed. R. Civ. P. 12(b)(6) on November 12, 2021. Plaintiff opposed the motion, and Rosenbaum replied. Dkt. 25, 28.

On August 4, 2022, while Defendants' motions to dismiss (Dkt. 17, 19, 21) were pending, Plaintiff filed a motion to amend the Complaint, and attached a Proposed Amended Complaint. Dkt. 42. The Individual Defendants and Rosenbaum filed submissions stating that they take no position with respect to Plaintiff's motion. Dkt. 44, 45. The State Court Defendants, however, opposed the motion on the grounds that the proposed amendments are futile, and Plaintiff replied. Dkt. 46, 47.

On August 29, 2022, this Court granted Plaintiff's motion (Dkt. 42) and ordered Plaintiff to file the Amended Complaint. Dkt. 48. The Court stated that it will consider the pending motions to dismiss (Dkt. 17, 19, 21) in light of the facts alleged in the Amended Complaint. *Id.* The Court also stated that it will consider the State Court Defendants' futility arguments when deciding the pending motions to dismiss. *Id.* Further, the Court ordered that "Defendants may file supplemental papers, as necessary, in support of their pending motions to dismiss" and "Plaintiff may file responding papers." *Id.* Plaintiff filed an Amended Complaint on August 30, 2022. Dkt. 49.

On September 23, 2022, Defendant Rosenbaum and the State Court Defendants filed supplemental memoranda in support of their pending motions to dismiss. Dkt. 50, 52, 53. The Individual Defendants, however, filed a new motion seeking dismissal of the Amended Complaint. Dkt. 51.[2] On October 14, 2022, Plaintiff replied to the supplemental submissions. Dkt. 54, 55, 56.

## THE AMENDED COMPLAINT[3]

Plaintiff alleges that she was previously "employed as a Secretary" to Matthew Rosenbaum, a "Supreme Court Justice in Monroe County, New York" who assumed office on March 28, 2005. Dkt. 49, ¶¶ 25, 27-28. She was employed in that

---

[2] In light of the Court's August 29, 2022 Order (Dkt. 48), the Court construes the Individual Defendants' new motion (Dkt. 51) as a supplemental submission in support of their pending motion to dismiss (Dkt. 21).

[3] This section contains a summary of the Amended Complaint. For a full recitation of the facts alleged in the Amended Complaint, *see* Dkt. 49.

position from "March of 2005 until December of 2019," when Rosenbaum resigned from his judicial position. *Id.* ¶¶ 28, 128.

According to Plaintiff, Rosenbaum compelled Plaintiff to perform numerous unwanted sexual acts between 2005 and 2009. Specifically, she claims he repeatedly forced her to "perform fellatio" upon him in his judicial chambers. *See id.* ¶¶ 29, 31, 38-39, 44-45, 71-72, 77-78. This supposedly occurred dozens of times each year. *See id.* Rosenbaum also allegedly "addressed Plaintiff using demeaning terms," commented "inappropriately" on Plaintiff's clothing, "touched and hugged Plaintiff in the presence of others" and sometimes required Plaintiff "to perform personal errands" for himself and his family members during work hours over the approximately four-year period. *See id.* ¶¶ 34, 42, 48, 75. In addition, on one occasion in 2006, Rosenbaum "raped Plaintiff in her home after work hours." *Id.* ¶ 41. Even though Rosenbaum's advances were unwanted, he allegedly "threatened" that Plaintiff must comply "if she wanted to keep her job." *Id.* ¶ 33.

On May 14, 2007, Plaintiff allegedly informed Judge Ann Marie Taddeo —another Supreme Court Justice in Monroe County—about Rosenbaum's "sexual demands." *Id.* ¶¶ 21, 54. Taddeo then told Plaintiff there "wasn't much" she could do about it, and that, "unfortunately, women [have] to endure sexual harassment from male judges because there [is] no way to have them reprimanded." *Id.* ¶¶ 57, 58. On November 20, 2007, Plaintiff met with Defendant Margaret Allen—head of Human Resources at Monroe County Supreme Court—about Rosenbaum's "conduct" and "asked for help." *Id.* ¶¶ 23, 61. According to Plaintiff, both Taddeo

and Allen were "obligated" pursuant to internal policy to provide Plaintiff with a copy of the relevant "sexual harassment complaint form" and then "send the complaint to OIG," but neither of them did so. *Id.* ¶¶ 56-57, 62-63.

The forced sexual encounters between Plaintiff and Rosenbaum allegedly ceased on June 1, 2009, when Plaintiff refused a demand from Rosenbaum for oral sex "and told him she would no longer respond" to such demands or "acquiesce to his threats." *Id.* ¶ 83. Nevertheless, on a "daily basis" from 2009 to 2017, Rosenbaum "continued to touch Plaintiff, put his arm around" her, comment "inappropriately" on her clothing, and address her "by demeaning" and "inappropriate" names such as "sweetie" and "honey." *Id.* ¶ 84. This behavior was "unwelcome" to Plaintiff. *Id.* ¶ 85. During this same period of time, Rosenbaum also "continued to require Plaintiff to perform personal errands" for Rosenbaum and his family. *Id.* ¶ 86. The touching and comments continued "[t]hroughout 2018, and during the first months of 2019." *Id.* ¶ 93.

In January 2018, Plaintiff received "UCS' updated form for filing a complaint and discriminatory treatment." *Id.* ¶ 89. She "submitted a second complaint" to "OIG" on January 8, 2018, but received no response. *Id.* ¶¶ 89-91. She claims that "OIG" and Grant "did not investigate" either of her 2007 or 2018 complaints and failed to report them "to the appropriate administrative judges." *Id.* ¶ 92.

In June 2019, Rosenbaum allegedly "urged" Plaintiff to "take a leave of absence" to "get her head on straight" and then "stopped speaking to Plaintiff altogether in July 2019." *Id.* ¶¶ 96-97. On July 31, 2019, Plaintiff met separately

- 6 -

with Taddeo, Defendant Pawelczak (District Executive of the Seventh Judicial District of the State of New York), and Defendant Fields (a Principal Court Analysist assigned to Human Resources at Monroe County Supreme Court). *Id.* ¶ 98. Plaintiff was "told by each that they could do nothing to help her." *Id.* ¶ 101. She claims that, although Pawelczak was "obligated" to provide a copy of the relevant sexual harassment complaint form," he did not do so. *See id.* ¶¶ 19, 24, 99-100.

In August and September of 2019, Rosenbaum was "verbally abusive" toward Plaintiff and "encouraged or directed his staff to stop speaking" to her. *Id.* ¶¶ 102-03. Plaintiff "sought assistance" from Fields and Defendant Aufleger (Assistant District Executive of the Seventh Judicial District of the State of New York) in August 2019, who "told Plaintiff they could not assist her." *See id.* ¶¶ 104, 109. After this conversation, Fields "sent Plaintiff a follow-up email, with a copy to" Rosenbaum, which prompted Rosenbaum's "hostility toward and mistreatment of Plaintiff to increase." *Id.* ¶¶ 107-08. In September 2019, Aufleger met with Rosenbaum's staff and "advised them that they needed to talk to Plaintiff about work." *Id.* ¶ 110. The staff, however, "refused to work with Plaintiff." *Id.* ¶ 111.

On October 29, 2019, Plaintiff requested leave pursuant to the Family and Medical Leave Act ("FMLA"),[4] and her physician "initially approved a leave of

---

[4] Plaintiff also alleges that, at an unspecified time, she "requested a leave of absence," but Rosenbaum "advised Plaintiff he would not approve her request for leave." *Id.* ¶ 112-13.

absence to end on January 31, 2020." *Id.* ¶¶ 114, 116. Plaintiff "was on FLMA lave from October 29, 2019 to March 30, 2020." *Id.* ¶ 132.

On November 8, 2019, Plaintiff was contacted by Connor Van Everen from "UCS' Work-Safe office" who asked Plaintiff "to submit a written description of her experiences working with" Rosenbaum. *Id.* ¶¶ 118-120. Plaintiff submitted a "detailed description of her situation to Mr. Van Everen," who then "forwarded" the "complaint" to Pawelczak and OIG. *Id.* ¶¶ 121-22. Pawelczak allegedly "notified" Rosenbaum of the complaint. *Id.* ¶ 123. OIG also "forwarded" Plaintiff's complaint "to the New York Commission on Judicial Conduct" who "interviewed" Plaintiff on December 19, 2019. *Id.* ¶¶ 125-26.

In December 2019, Aufleger notified Plaintiff that her "job title was changing from Judicial Secretary to Court Analyst." *Id.* ¶ 127. Plaintiff also learned on December 28, 2019 that Rosenbaum "had agreed to resign from his judicial position" and that "the resignation would end any further investigation." *Id.* ¶ 128.

On January 15, 2020, Plaintiff was interviewed by Grant. *Id.* ¶ 129. During the interview, Grant told Plaintiff that he had "lost" her prior complaints and "suggested" to Plaintiff that she had "asked for" the treatment she received "because of how she dressed." *Id.* ¶¶ 130-31. Plaintiff then met with Defendant Grimaldi, head of Human Resources for OCA, in February 2020 so that Grimaldi could "identify a job" to which Plaintiff could be reassigned. *Id.* ¶¶ 22, 134.

On August 13, 2020, Plaintiff received a letter from Deputy Chief Administrative Judge Vito Caruso "on behalf of" UCS advising Plaintiff that OIG

had "completed its investigation" regarding the alleged hostile work environment and had "taken appropriate action." *Id.* ¶ 139.

After using her "accrued time," Plaintiff was granted "discretionary leave" through April 28, 2021. *Id.* ¶ 142. She was then "placed on involuntary leave effective April 29, 2021." *Id.* ¶ 143. After completing an independent medical exam, Plaintiff "reported for work" at Monroe County Family Court. *See id.* ¶¶ 148-152. From August 9, 2021, to the present, Plaintiff "has been assigned to a position of Court Analyst in Family Court, Monroe County." *Id.* ¶¶ 153.

According to Plaintiff, between "2005 and 2019" Defendants Monroe County Supreme Court, UCS, OCA, OIG, Grant, Pawelczak, Aufleger, Taddeo, Grimaldi, Allen, and Fields "ignored" the sexual harassment Plaintiff endured, "discouraged her from complaining" about it, and "ignored" the complaints she did submit. *Id.* ¶ 154. In 2019, OCA, UCS and OIG "enabled" Rosenbaum to "retire" from his position such that he could "avoid any further investigation or disciplinary action against him." *Id.* ¶ 156. Then, from "2019 to August 6, 2021," the "remaining Defendants" delayed acting on Plaintiff's complaints, "failed to inform" her of the "progress of the investigation, and of efforts to remedy her situation." *Id.* ¶ 157. Plaintiff believes she was subject to "a continuous, integrated violation" of her "right to be free from discrimination on the basis of her sex in violation of State and Federal law." *Id.* ¶ 159.

The Amended Complaint sets forth four causes of action: (1) Discrimination on the basis of sex in violation of Title VII against the State Court Defendants; (2)

Denial of Equal Protection of the Laws in violation of Section 1983 against the

Individual Defendants and Rosenbaum; (3) Discrimination on the basis of sex in

violation of the NYHRL against the State Court Defendants;[5] and (4)

Discrimination on the basis of sex in violation of the NYHRL against the Individual

Defendants and Rosenbaum.  *Id.* ¶¶ 162-204.  Plaintiff seeks both monetary and

injunctive relief.

## DISCUSSION

### I.    LEGAL STANDARDS FOR RULE 12(b)(1) AND 12(b)(6) MOTIONS

A case is properly dismissed for lack of subject matter jurisdiction under Rule

12(b)(1) when "the district court lacks the statutory or constitutional power to

adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); Fed. R.

Civ. P. 12(b)(1).  A plaintiff asserting subject matter jurisdiction "has the burden of

proving by a preponderance of the evidence that it exists."  *Makarova*, 201 F.3d at

113.

On a motion pursuant to Fed. R. Civ. P. 12(b)(6), "the court's task is to assess

the legal feasibility of the complaint."  *Lynch v. City of New York*, 952 F.3d 67, 75

(2d Cir. 2020).  In doing so, the Court "must take the facts alleged in the complaint

as true, drawing all reasonable inferences in [the plaintiff's] favor."  *In re NYSE*

*Specialists Sec. Litig.*, 503 F.3d 89, 91 (2d Cir. 2007).  To survive a Rule 12(b)(6)

motion to dismiss, a complaint must contain sufficient factual matter, accepted as

true, to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556

---

[5] Plaintiff has withdrawn this cause of action.  Dkt. 55, at 4-5.

U.S. 662, 678 (2009). Courts "are not bound to accept as true a legal conclusion couched as a factual allegation," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Plausibility "depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) (quoting *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011)).

## II.   LEGAL STANDARDS FOR TITLE VII, NYHRL, AND § 1983 CLAIMS

A Section 1983 claim has two main elements: (1) that the plaintiff suffered a deprivation of a right secured by the Constitution and laws of the United States; and (2) that deprivation was at the hands of a person acting under color of state law. *Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004). The Equal Protection clause prohibits disparate treatment by a public employer on the basis of race, gender, or religion. *See, e.g., Greene v. Brentwood Union Free Sch. Dist.*, 966 F. Supp. 2d 131, 145 (E.D.N.Y. 2013) (considering Section 1983 claim sounding in equal protection based on race, gender, and religion). Title VII and the NYHRL "provide alternate bases of liability for employers who engage in discrimination." *Peck v. Cnty. of Onondaga, New York*, No. 5:21-CV-651, 2021 WL 3710546, at *7

(N.D.N.Y. Aug. 20, 2021), *reconsideration denied*, 563 F. Supp. 3d 18 (N.D.N.Y.

2021) (citing *Zarda v. Altitude Express, Inc.*, 883 F.3d 100, 149 n.15 (2d Cir. 2018)).

At the pleading stage, the same elements apply to claims brought under

Section 1983, Title VII, and the NYHRL. *Id.* (citing *Guity v. Uniondale Union Free

Sch. Dist.*, 2017 WL 9485647, at *13 (E.D.N.Y. Feb. 23, 2017)).  To that end,

"discrimination claims under Title VII, § 1983, or the NYSHRL come in at least

three varieties: (1) disparate treatment; (2) hostile work environment; and (3)

retaliation." *Id.* (citing *Demoret v. Zegarelli*, 451 F.3d 140, 144 (2d Cir. 2006)).

Title VII claims "can only be brought against an employer," but a Section

1983 "discrimination claim can be brought against 'any individual responsible for

the discrimination.'" *Id.* (quoting *Naumovski v. Norris*, 934 F.3d 200, 212 (2d Cir.

2019)).  Further, under the NYSHRL, "an individual may be liable for employment

discrimination" as either an employer or an aider and abettor.  *Popat v. Levy*, 328 F.

Supp. 3d 106, 126 (W.D.N.Y. 2018).

## III.   ROSENBAUM'S MOTION TO DISMISS

Plaintiff asserts two causes of action against Rosenbaum: denial of equal

protection in violation of Section 1983 (*see* Dkt. 49, ¶¶ 174-184) (second cause of

action), and sex discrimination in violation of the NYHRL. *Id.*, ¶¶ 195-204 (fourth

cause of action).  In support of both causes of action, Plaintiff alleges that

Rosenbaum "used his status as a high-ranking person acting under color of state

law to coerce Plaintiff to engage in sexual acts with him against her will," *id.*

¶¶ 178, 198, "subjected Plaintiff to unwelcome touching and inappropriate

comments and forms of address on the basis of Plaintiff's sex," *id.* ¶¶ 179, 199, and "retaliated against Plaintiff after Plaintiff complained." *Id.* ¶¶ 180, 200. The Court construes Plaintiff's claims against Rosenbaum pursuant to Section 1983 and the NYHRL as claims of sexual harassment and retaliation.

Rosenbaum argues that Plaintiff fails to state a claim against him "because the allegations of conduct within the three-year applicable limitations period do not amount to a violation of equal protection, nor to an actionable claim of sex discrimination under" the NYHRL. Dkt. 19-2, at 4. He further argues that Plaintiff's "inflammatory allegations about sexual conduct occurring 12 to 16 years before" the Complaint was filed "are not sufficiently related to the allegations of conduct occurring after December 2017." *Id.* Thus, "the conduct underlying those allegations does not raise the alleged recent conduct to an actionable level." *Id.*

In opposition, Plaintiff argues that all of Rosenbaum's actions "described in the Complaint rise to the level of a hostile work environment," *see* Dkt. 25, at 13, and that he subjected her to a "discriminatorily abusive work environment" from "2005 through 2019." *Id.* at 15.

For the reasons discussed below, Plaintiff's harassment and retaliation claims against Rosenbaum under Section 1983 and the NYHRL may proceed. Further, as discussed below, the scope of the timely alleged hostile work environment includes Rosenbaum's alleged misconduct dating back to 2005.

### A. Harassment Claims

A plaintiff seeking relief for sexual harassment "may proceed under two theories: 1) *quid pro quo* harassment; and 2) hostile work environment." *Torres v. Pisano*, 116 F.3d 625, 630 (2d Cir. 1997). As discussed below, the Amended Complaint contains sufficient allegations to state a timely harassment claim against Rosenbaum under a hostile work environment theory. But it does not contain sufficient allegations to state a claim under a *quid pro quo* theory.

1. <u>Hostile Work Environment</u>

a. *Applicable Legal Standards*

Hostile work environment claims "are different in kind from discrete acts." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002). Their "very nature involves repeated conduct." *Id.* The unlawful employment practice "therefore cannot be said to occur on any particular day." *Id.* Rather, it "occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." *Id.* (internal citations omitted). When the workplace is "permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' Title VII is violated.'" *Id.* at 116 (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993)).

In determining "whether an actionable hostile work environment claim exists," courts "look to all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or

- 14 -

humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (internal citations omitted). Provided that "an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.* at 117.

A hostile work environment claim "is timely so long as one act contributing to the claim occurred within the statutory period." *Patterson v. County of Oneida*, 375 F.3d 206, 220 (2d Cir. 2004) (quoting *Morgan*, 536 U.S. at 117). If it did, "the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id. See also Hanfland v. Donahoe*, No. 10-CV-6106, 2015 WL 4930582, at *9 (W.D.N.Y. Aug. 18, 2015) ("The *Morgan* Court stated that hostile work environment claims, for purposes of assessing liability, are not time barred, provided that an act contributing to the hostile environment takes place within the relevant statutory time-period") (citing *Morgan*, 536 U.S at 105, 117).

### b. *Whether Plaintiff has Alleged a Timely Hostile Work Environment Claim*

Rosenbaum asserts, and Plaintiff does not dispute, that the applicable limitations period allows for claims between December 1, 2017 and July 16, 2021. *See* Dkt. 19-2, at 5. Plaintiff alleges that, "throughout 2018, and during the first months of 2019" Rosenbaum "continued to touch" Plaintiff, "put his arm around" her, comment "inappropriately upon" her clothing, and address her by "demeaning" and "inappropriate" names such as "sweetie" and "honey." Dkt. 49, ¶ 93.

Because this conduct may be construed as contributing to a hostile environment based on Plaintiff's sex, Plaintiff's hostile work environment claim is timely. *See Rodriguez v. Calace, No.* 3-07-CV-200, 2007 WL 3355397, at *3 (D. Conn. Nov. 7, 2007) (finding that, even though the plaintiff alleged that the defendant engaged in conduct contributing to a sexually hostile environment "during the entire period of her employment," her claim was not time-barred because the plaintiff alleged that an "incident occurred" within the limitations period, and this conduct "may be construed as contributing to a hostile environment based on plaintiff's sex"); *Rosioreanu v. NYC Dep't of Env't Prot., No.* 07-CV-2925, 2010 WL 11627229, at *14n.7 (E.D.N.Y. Sept. 20, 2010) (concluding that "Plaintiff's filings—construed liberally—allege incidents contributing to a hostile work environment after" the relevant cutoff date such that the "Court will consider all relevant conduct when evaluating Plaintiff's hostile work environment claim"); *O'Quinn v. City of New York, No.* 19-CV-9663, 2021 WL 4429787, at *5 (S.D.N.Y. Sept. 27, 2021) (denying motion to dismiss harassment claim where Plaintiff alleged that he was subject to offensive comments "until termination," because, construed "in the light most favorable to the Plaintiff," those "allegations plausibly frame[d] a claim that at least one act contributing to Plaintiff's alleged hostile work environment claims occurred within the statutory period"). As such, Plaintiff has alleged a timely claim.[6]

_____

[6] The Court is not persuaded by Rosenbaum's argument that Plaintiff fails to allege a timely claim because "the conduct which plaintiff alleges to have occurred *after December 2017* until the end of plaintiff's employment with defendant in late 2019

### c. *Continuing Violation*

Having concluded that Plaintiff has alleged a timely claim because she sets forth that at least "one act contributing to the claim occurred within the statutory period," the Court next must determine the period of time that constitutes "the entire time period of the hostile environment" for purposes of determining liability. *See Patterson,* 375 F.3d at 220. For the reasons discussed below, the scope of the timely alleged hostile work environment includes Rosenbaum's alleged misconduct dating back to the sexual acts in 2005.

In deciding whether alleged sexual harassment "that occurs both before and after the time-barred date are part of the same violation, courts are required 'to make an individualized assessment of whether incidents and episodes are related' such that they can be considered 'part of the same actionable hostile work environment practice.'" *Torres v. New York Methodist Hosp.,* 2016 WL 3561705, at *8 (E.D.N.Y. Jan. 7, 2016) (quoting *McGullam,* 609 F.3d at 75).

To determine whether incidents of harassment are related, "courts have considered factors such as (1) whether the timely and untimely harassment is of a similar nature, (2) whether the same individuals perpetuated the harassment, (3) the frequency and temporal proximity of the acts, and (5) whether the employer

---

is insufficient to state a claim of a hostile work environment." Dkt. 19-2, at 10 (emphasis added). Because a "hostile work environment is a continuing violation . . . the viability of Plaintiff's claim does not hinge on whether or not 'the within-limitations period incident satisfied the severe or pervasive standard of a hostile work environment claim.'" *Dikambi v. City Univ. of New York,* No. 19-CV-9937, 2021 WL 4198252, at *4 (S.D.N.Y. Sept. 14, 2021) (quoting *McGullam,* 609 F.3d at 77).

took any intervening remedial action." *Annunziata v. Int'l Bhd. of Elec. Workers Loc. Union # 363*, No. 15-CV-03363, 2018 WL 2416568, at *13 (S.D.N.Y. May 29, 2018) (citing *McGullam*, 609 F.3d at 77). These considerations, however, "are not exhaustive, dispositive, or particularly rigid." *Id.* Rather, "as the Second Circuit has explained, 'flexibility is useful in a context as fact-specific and sensitive as employment discrimination and as amorphous as hostile work environment.'" *Id.* (quoting *McGullam*, 609 F.3d at 77). If the incidents are "sufficiently related, then the acts that took place outside of the limitations period may be considered on the merits as part of the hostile work environment claim." *Batista v. Waldorf Astoria*, No. 13-CV-3226, 2015 WL 4402590, at *6 (S.D.N.Y. July 20, 2015).

Here, Plaintiff alleges that, "on a daily basis" from 2009 to 2017 Rosenbaum "continued to touch" Plaintiff," put his arm around" her, comment "inappropriately" upon her clothing, and address her by "demeaning" and "inappropriate" names such as "sweetie" and "honey." Dkt. 49, ¶ 93. Although these alleged acts fall outside the limitations period (*i.e*, before December 2017), they are part of the timely hostile work environment because Plaintiff alleges that that the exact same behavior by the same individual—Rosenbaum—occurred after December 2017. *See id.* ¶ 93. The alleged acts are therefore clearly related.

The next question is whether the conduct alleged to have occurred between 2005 and 2009 (*i.e.*, that Rosenbaum compelled Plaintiff to "perform fellatio" on him numerous times and raped her in her home on one occasion (*see id* ¶¶ 29-82)) is sufficiently related to the acts within the limitations period such that it is part of

the same hostile work environment.  Rosenbaum argues that Plaintiff's

"inflammatory and salacious allegations of sexual conduct between 2005 and 2009"

are "not part of the same hostile work environment alleged after December of 2017"

because "there is insufficient relatedness between the charges of sexual conduct

more than a decade ago, and the claims of recent behavior."  Dkt. 19-2, at 10.  The

Court disagrees.

Having considered the factors discussed above, *see Annunziata*, 2018 WL

2416568, at *13, *supra,* while bearing in mind that these factors are not

"exhaustive, dispositive, or particularly rigid," Plaintiff has alleged sufficient facts

to demonstrate that the conduct that occurred between 2005 and 2009 is sufficiently

related to the conduct that occurred within the limitations period such that it is

part of the same hostile work environment.

Significantly, the same individual—Rosenbaum—is alleged to have

perpetrated all of the acts to which Plaintiff was subjected.  In addition, while the

harassment alleged to have taken place between 2005 and 2009 differed in form and

severity from acts within the limitations period, all of the acts can be fairly

construed as sexual in nature and took place on a consistent basis.  Further, there

are no alleged facts to suggest that an employer took intervening remedial action.

To the contrary, Plaintiff repeatedly alleges that *no* action was taken to stop the

ongoing harassment.  *See, e.g.*, Dkt. 49, ¶ 92 (alleging that "Defendants OIG and

GRANT did not investigate Plaintiff's 2007 and 2018 complaints and did not report

her complaints to the appropriate administrative judges").

Rosenbaum's attempt to separate the alleged harassing acts into distinct "phases" is unavailing. He ignores the continuity among the acts. The early acts give color and context to the later acts. Moreover, Plaintiff alleges that once she refused Rosenbaum's sexual advances on June 1, 2009, he thereafter subjected her to comments and physical contact *on a daily basis* from 2009 to 2017. *See id.* ¶¶ 83-84.

Indeed, the cases upon which Rosenbaum relies are distinguishable. For example, in both *Fitzgerald v. Henderson*, 251 F.3d 345, 364–65 (2d Cir. 2001), and *Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 206 (E.D.N.Y. 2014), the courts found it significant that periods of *years* elapsed where *no* instances of harassment occurred—which is not the case here. *See Fitzgerald*, 251 F.3d at 365 ("None of Fitzgerald's evidence suggests that during the 2 ½-year period after April 1995 Gerling either made any further sexually suggestive comments to Fitzgerald or offered to abate his abuse and unwarranted criticisms of her work if she would relent and become intimate with him"); *Bowen-Hooks*, 13 F. Supp. 3d at 206 ("Plaintiff cannot show that the hostile work environment allegedly caused by Sammarco's sexual harassment in 2006 was 'ongoing' when there was undisputedly a three-year period where no harassing acts were being committed"). Here, given that Plaintiff's allegations demonstrate ongoing harassment without any such gaps, there is no basis to separate the alleged harassment into distinct hostile work environments.

Nor is the Court persuaded by Rosenbaum's attempt to characterize the alleged pre-2009 sexual conduct as "discrete acts" that cannot be aggregated into one continuing violation.  His reliance on *Roches-Bowman v. City of Mount Vernon*, No. 21-CV-5572, 2022 WL 3648394, at *5 (S.D.N.Y. Aug. 24, 2022), is misplaced. There, the Court determined that a harassment claim based on a sexual assault that occurred outside of the applicable limitations period was time-barred because the plaintiff did not allege any further misconduct by the perpetrator.  In fact, the court based its decision on *Williams v. N.Y.C. Dep't of Educ.*, No. 19-CV-1353, 2019 WL 4393546, at *7 (S.D.N.Y. Aug. 28, 2019), which determined that while a sexual overture is a discrete act, a sexual harassment claim could proceed where it did not depend exclusively on the unwanted sexual advance but, rather, *starting with that incident*, the defendant made the work environment hostile over a multi-year period as part of an ongoing practice of harassment.  The court considered this conduct "by its very nature" a "continuing violation." *Id.*[7]

For these reasons, the scope of the timely alleged hostile work environment includes Rosenbaum's alleged misconduct dating back to the sexual acts in 2005.

---

[7] The Court notes that even if a jury were to find that there was no continuing violation, a discriminatory act that is not made the basis for a timely charge "can still be relevant background evidence in a Title VII proceeding." *Maxton v. Underwriter Lab'ys, Inc.*, 4 F. Supp. 3d 534, 545 (E.D.N.Y. 2014) (internal citations omitted). *See Berger v. Port Auth. of N.Y. and N.J.*, 150 F. Supp. 2d 504, 507 (E.D.N.Y.2001) (considering evidence of time-barred claims even where continuing violation exception did not apply to save those claims, on the theory that it was relevant background to the plaintiff's timely claim) (citing *Fitzgerald v. Henderson*, 251 F.3d 345, 365 (2d Cir. 2001).

### d. *Sufficiency of the Allegations*

Lastly, having concluded that Plaintiff's allegations regarding Rosenbaum's conduct dating back to 2005 constitutes a single hostile work environment, and that the claim is timely, the Court must determine whether Plaintiff's allegations are sufficient to state a claim that can survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

Plaintiff's allegations that, between 2005 and 2009, Rosenbaum repeatedly forced her to perform fellatio on him and raped her on one occasion clearly meets the requisite level of severity to make out a harassment claim. *See Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 177 (2d Cir. 2012) ("Direct contact with an intimate body part constitutes one of the most severe forms of sexual harassment"); *Roches-Bowman v. City of Mount Vernon*, No. 21-CV-5572, 2022 WL 3648394, at *5 (S.D.N.Y. Aug. 24, 2022) ("Plaintiff's alleged sexual assault is, on its own, sufficient to state a claim for hostile work environment").

Rosenbaum's argument that "caselaw indicates that the specific allegations pled by the plaintiff do not rise to the level of severity that would create a hostile work environment," Dkt. 19-2, at 8, is unavailing because it ignores half of the relevant legal standard. The requirement is that "the harassing conduct was 'severe *or* pervasive'—not severe *and* pervasive." *Dillon v. Ned Mgmt., Inc.*, 85 F. Supp. 3d 639, 655 (E.D.N.Y. 2015) (emphasis in original) (quoting *Pa. State Police v. Suders*, 542 U.S. 129 (2004)). The standard "is disjunctive." *Id.*

As noted above, Plaintiff alleges that, on a *daily* basis from 2009 to the beginning of 2019, Rosenbaum subjected Plaintiff to unwanted touching and comments.  Dkt. ¶¶ 84, 93.  The conduct is clearly pervasive.  And although Rosenbaum attempts to characterize the comments as "innocuous or casual" and not "related to plaintiff's gender" (Dkt. 19-2, at 6), a reasonable person could certainly consider them to be sexual in nature, especially in the context of what allegedly occurred earlier, namely, the overtly sexual acts between 2005 and 2009.

Thus, given the frequency and nature of the alleged conduct, the facts alleged in the Amended Complaint are sufficient to state a plausible harassment claim against Rosenbaum.  *See Reynoso v. All Foods, Inc.*, 908 F. Supp. 2d 330, 340 (E.D.N.Y. 2012) (employee stated a Title VII harassment claim by alleging that a supervisor leered at her on a daily basis, commented on her buttocks, made inappropriate sexual comments about women in her presence, sat behind her staring at her backside and, on one occasion, forcibly grabbed her from behind, put his arms around her, and pressed his body against her); *Horvath v. American Tissue Corp.*, 210 F. Supp. 2d 189, 194 (E.D.N.Y. 2002) (concluding that sexual harassment occurred when the Defendant "constantly stared at" the Plaintiff's "breasts, asked her to go for walks, commented about her looks, and on one instance, took" her "hand and kissed it").

### 2.    Quid Pro Quo

Rosenbaum argues that Plaintiff fails to state a claim under a *quid pro quo* theory because "plaintiff does not allege that there was an alteration in the terms or

conditions of employment resulting from her refusal to submit to sexual advances."
Dkt. 19-2, at 7n.2.  It not clear whether Plaintiff intends to pursue a harassment
claim under a *quid pro quo* theory.  Although Plaintiff does not specifically
reference *quid pro quo* harassment in the Second or Fourth causes of action, she
makes passing reference to the theory throughout her submissions.  *See, e.g.*, Dkt.
25, at 6 (alleging that Rosenbaum's "*quid pro quo* demands for sexual intercourse
were made in the context of his subjection" of Plaintiff "to a hostile work
environment on the basis of her sex . . . ."); *id.* at 12 (alleging that "in the context of"
Rosenbaum's "sexual abuse and *quid pro quo* threats, his actions take on a different
character").

 To the extent Plaintiff seeks to assert a claim under a *quid pro quo* theory of
harassment, the claim does not survive.  To state a claim under a *quid pro quo*
theory, a plaintiff "must show a tangible employment action" resulted from "her
refusal to submit" to the defendant's "sexual advances."  *Schiano v. Quality Payroll
Sys., Inc.*, 445 F.3d 597, 604 (2d Cir. 2006) (internal citations omitted).  A tangible
employment action "usually constitutes a significant change in employment status,
such as hiring, firing, failing to promote, reassignment with significantly different
responsibilities, or a decision causing a significant change in benefits."  *Id.* (internal
citations omitted).

 Here, Plaintiff alleges that, on "June 1, 2009," she "refused" Rosenbaum's
"demand for oral sex and told him she would no longer respond to his demands for
oral sex, nor acquiesce to his threats."  Dkt. 49, ¶ 83.  However, in searching the

Amended Complaint, the Court locates no allegation of a tangible employment action resulting from the alleged refusal to further engage in sexual acts with Rosenbaum. In fact, Plaintiff admits that when Rosenbaum "stopped demanding sexual gratification" from her, he "did not fire her." Dkt. 25, at 7. Accordingly, Plaintiff's attempted harassment claim cannot proceed under a *quid pro quo* theory.

## B. Retaliation Claims

As noted above, Plaintiff alleges in the Second and Fourth Causes of Action that Rosenbaum "also retaliated against Plaintiff after Plaintiff complained." Dkt. 49, ¶¶ 180, 200. More specifically, Plaintiff argues that Rosenbaum "attempt[ed] to silence her," as well as "verbally abused her, ostracized her, encouraged his staff to ostracize her, and denied her a medically necessary leave of absence." Dkt. 25, at 8.

Rosenbaum argues that Plaintiff fails to plead any facts "from which the Court could find retaliation, aside from the one allegation that defendant Rosenbaum refused plaintiff's leave of absence three months after he had urged her to take a leave." Dkt. 19-2, at 6. For the reasons discussed below, Plaintiff's allegations are sufficient to state a claim of retaliation against Rosenbaum.

To state a retaliation claim, a plaintiff must plead facts showing "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Torre v. Charter Commc'ns, Inc.*, 493 F. Supp. 3d 276, 289 (S.D.N.Y. 2020) (internal citations omitted). Protected activities "include 'action[s] taken to protest or oppose statutorily

prohibited discrimination.'" *Buchanan v. City of New York*, 556 F. Supp. 3d 346, 365 (S.D.N.Y. 2021) (*quoting Natofsky v. City of New York*, 921 F.3d 337, 354 (2d Cir. 2019).

Here, Plaintiff alleges that she took numerous actions in connection with Rosenbaum's alleged conduct. *See, e.g.*, Dkt. 49, ¶¶ 50, 54, 60-61, 68, 90, 98, 104, 120-21. She allegedly met with Defendants Fields and Aufleger in August 2019 to seek "assistance" from them. *Id.* ¶ 104. These allegations are sufficient to satisfy the first element of the test. *See Buchanan*, 556 F. Supp. 3d at 365 ("'Opposition' includes not only the filing of formal complaints, but also 'informal protests of discrimination, including making complaints to management . . . and expressing support of co-workers who have filed formal charges'") (quoting *Summa v. Hofstra Univ.*, 708 F.3d 115, 127 (2d Cir. 2013)).

Plaintiff also alleges facts to demonstrate that Rosenbaum was aware of the alleged protected activity. Specifically, Plaintiff alleges that after a meeting, Defendant Fields "sent Plaintiff a follow-up email, with a copy to" Rosenbaum, "referencing the substance of their discussion." Dkt. 49, ¶ 107.

Plaintiff also alleges that she suffered an actionable adverse employment action. Courts in the Second Circuit "have taken a 'generous' view of retaliatory acts at the motion to dismiss stage." *Arbouin v. Bob's Disc. Furniture, LLC*, No. 20-CV-1893, 2021 WL 4813228, at *8 (E.D.N.Y. June 30, 2021), *report and recommendation adopted*, No. 20-CV-1893, 2021 WL 4458932 (E.D.N.Y. Sept. 29, 2021). Plaintiff alleges that Rosenbaum's "hostility toward and mistreatment of

Plaintiff increased" after the e-mail was sent, and then refused to approve her request for a leave of absence on September 9, 2019. *Id.* ¶¶ 108, 113. At the motion to dismiss stage, these allegations are sufficient to demonstrate that Plaintiff suffered an actionable adverse employment action for purposes of a retaliation claim. *See Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 43 (2d Cir. 2019) ("The harm element of a retaliation claim is not to be analyzed in the same way as the harm from an alleged substantive act of discrimination. . . . Instead, the proper question for a retaliation claim is whether the alleged adverse action to which the plaintiff was subjected could well have dissuaded a reasonable employee in his position from complaining of unlawful discrimination") (internal citations omitted).

Lastly, the Court infers causation between the alleged protected activity and adverse employment actions based on the temporal proximity between them. *See Kraiem v. JonesTrading Institutional Servs. LLC*, 571 F. Supp. 3d 53, 59–60 (S.D.N.Y. 2021) ("Indirect evidence of causation may include a showing that the protected activity was closely followed in time by the adverse action. There is no firm outer limit to the temporal proximity required, but most courts in the Second Circuit have held that a lapse of time beyond two or three months will break the causal inference") (internal citations omitted).

For these reasons, Rosenbaum's motion to dismiss (Dkt. 19) is DENIED. Plaintiff's harassment claims against Rosenbaum pursuant to Section 1983 and the NYHRL may proceed under a hostile work environment theory based on Rosenbaum's alleged misconduct dating back to 2005. Plaintiff's harassment claims

may not proceed under a *quid pro quo* theory.  Plaintiff's retaliation claims against

Rosenbaum under Section 1983 and the NYHRL may proceed.

## IV.   THE INDIVIDUAL DEFENDANTS' MOTION TO DISMISS

Plaintiff asserts two causes of action against the Individual Defendants:

denial of equal protection in violation of Section 1983*, see* Dkt 49, ¶¶ 174-184

(second cause of action), and sex discrimination in violation of the NYHRL.  *See id.*

¶¶ 195-204 (fourth cause of action).  In support of both causes of action, Plaintiff

alleges that the Individual Defendants, "each of whom was charged with the

responsibility to act to prevent sexual harassment in the workplace, failed or

refused to take any actions to prevent" Rosenbaum "from sexually harassing

Plaintiff and retaliating against her." *Id.* ¶¶ 181, 201.  Further, Plaintiff alleges

that their actions "were taken pursuant to a policy or practice designed and

implemented to protect judges from discipline or any other adverse action in

response to the judges' violation of laws preventing sexual harassment and/or

sexual discrimination." *Id.* ¶¶ 182, 202.[8]

The Individual Defendants argue that Plaintiff's claims against them are

barred by the Eleventh Amendment to the extent she seeks monetary damages from

---

[8] Based on the allegations in the Amended Complaint, it does not appear that
Plaintiff asserts retaliation claims against Grant, Pawelczak, Aufleger, Taddeo,
Grimaldi, Allen, or Fields.  Plaintiff also does not address retaliation in her
responses to the Individual Defendants' motion to dismiss. *See generally* Dkt. 27,
54.  To the extent Plaintiff alleges individual liability for retaliation, it is against
Rosenbaum only. *See* Dkt. 49, ¶¶ 180, 200 (alleging that "Defendant ROSENBAUM
also retaliated against Plaintiff after Plaintiff complained").

them in their official capacities.  Dkt. 21-1, at 1, 22; Dkt. 51-1, at 5, 23.  They also

argue that Plaintiff's claims against Allen and Taddeo are time-barred.  Dkt. 21-1,

at 20-21; Dkt. 51-1, at 22.  Lastly, they argue that the Individual Defendants were

not personally involved in the alleged sexual discrimination pursuant to Section

1983 or the NYHRL, and Plaintiff "cannot state valid claims on the merits" under

those statutes.  Dkt. 21-1, at 5; Dkt. 51-1, at 5.

For the reasons discussed below, Plaintiff's official-capacity claims against

the Individual Defendants for money damages are dismissed as barred by the

Eleventh Amendment without leave to amend.  Plaintiff's NYHRL claims otherwise

survive.  Plaintiff's claims against the Individual Defendants under Section 1983

are dismissed as insufficiently pleaded.  Plaintiff is granted leave to amend her

Section 1983 claims against the Individual Defendants to the extent they are not

barred by Eleventh Amendment immunity.

### A. Eleventh Amendment Immunity

Eleventh Amendment immunity "is properly decided under a Rule 12(b)(1)

motion." *Goonewardena v. New York*, 475 F. Supp. 2d 310, 321 (S.D.N.Y. 2007)

(internal citations omitted).  Where, as here, defendants move for dismissal under

Rule 12(b)(1), as well as on other grounds, the court should consider the Rule

12(b)(1) challenge first.  *See Frederick v. State*, 232 F. Supp. 3d 326, 331 (W.D.N.Y.

2017) ("A motion questioning the Court's subject matter jurisdiction must be

considered before other challenges since the Court must have jurisdiction before it

can properly determine the merits of a claim").

The Eleventh Amendment bars actions for damages against states unless the state has consented to the suit or waived this immunity, or Congress has abrogated it. *See* U.S. Const. amend. XI; *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006). This immunity "extends beyond the states themselves to state agents . . . ." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (internal citation omitted). Because there has been no waiver of immunity or consent to suit here, the Individual Defendants, in their official capacities, are not subject to suit under the immunity granted by the Eleventh Amendment. Consequently, Plaintiff's official-capacity claims against the Individual Defendants for money damages are dismissed.[9]

## B. Whether Plaintiff's Claims Against Allen and Taddeo are Time-Barred

Taddeo and Allen argue that Plaintiff's claims against them are time-barred. *See* Dkt. 21-1, at 20-21; Dkt. 51-1, at 22. They explain that, although Plaintiff alleges she met with Taddeo and Allen in 2007 to discuss Rosenbaum's sexual demands, she fails to allege any further contact with Allen and only claims to have had one additional meeting with Taddeo in 2019. Dkt. 51-1, at 22.

This argument is unavailing. These Defendants fail to account for Plaintiff's allegation that, "[b]etween 2005 and 2019, *all of the Defendants* other than

---

[9] Plaintiff does not directly address the Individual Defendants' argument that "to the extent Plaintiff is suing [them] in their official capacities, her monetary damages claims under § 1983 and the NYHRL must be dismissed." Dkt. 21-1, at 22; 51-1 at 23 (emphasis added). Rather, she argues that Plaintiff's *personal capacity* claims for *injunctive relief* should survive. Dkt. 27, at 17.

Defendant Rosenbaum ignored the sexual discrimination against Plaintiff, discouraged her from complaining about the illegal treatment she endured, and ignored the complaints Plaintiff did submit." Dkt 49, ¶ 154 (emphasis added). This paragraph can be fairly read as alleging violations against Allen and Taddeo during the applicable limitations period—*i.e.*, between December 1, 2017, and July 16, 2021. Thus, construing the Amended Complaint liberally and drawing, as the Court must, "all reasonable inferences" in Plaintiff's favor, *Ginsburg v. City of Ithaca*, 839 F. Supp. 2d 537, 540 (N.D.N.Y. 2012) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)), Plaintiff's claims against Taddeo and Allen are not time-barred. *See Hanfland*, 2015 WL 4930582, at *9 ("The *Morgan* Court stated that hostile work environment claims, for purposes of assessing liability, are not time barred, provided that an act contributing to the hostile environment takes place within the relevant statutory time-period") (citing *Morgan*, 536 U.S at 105, 117).

## C. Sufficiency of Plaintiff's Section 1983 Claims Against the Individual Defendants

Plaintiff's claims against each of the Individual Defendants under Section 1983 are, nevertheless, insufficiently alleged. As noted above, a Section 1983 discrimination claim can be brought against "any individual responsible for the discrimination." *Peck*, 2021 WL 3710546, at *7 (quoting *Naumovski*, 934 F.3d at 212). To establish liability "against an official under § 1983, a plaintiff must allege that individual's personal involvement in the alleged constitutional violation."

*McCarrick v. Owens*, No. 21-CV-6227, 2022 WL 446638, at *2 (W.D.N.Y. Feb. 14, 2022) (citing *McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004)).

In the Second Circuit, "there is no special rule for supervisory liability" under Section 1983. *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). Instead, "a plaintiff must plead and prove that each [g]overnment-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* (citations omitted). Thus, the "violation must be established against the supervisory official directly." *Id.* A plaintiff cannot rely "on a separate test of liability specific to supervisors." *Id.* at 619. Rather, to "hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official." *Id.* at 620.

Here, Plaintiff fails to state a claim against any of the Individual Defendants. Although Plaintiff alleges that these defendants "failed or refused to take any actions to prevent" Rosenbaum "from sexually harassing Plaintiff and retaliating against her," Dkt. 49, ¶¶ 181, 201, and that their actions "were taken pursuant to a policy or practice" meant to protect judges, *id.* ¶¶ 182, 202, that alone is not enough to state a claim under the standard articulated in *Tangreti*. *See Young America's Foundation v. Stenger,* No. 320-CV-0822, 2021 WL 3738005, at *9 (N.D.N.Y. Aug. 24, 2021) (rejecting argument that creation and enforcement of allegedly unconstitutional policy is sufficient to satisfy *Tangreti*).

Beyond that, the Amended Complaint does not otherwise contain alleged facts pertaining to any particular Individual Defendant that would be sufficient to

state a claim under *Tangreti*. With respect to each of the Individual Defendants, Plaintiff alleges the following:

- <u>Grant</u>: Grant did not investigate Plaintiff's 2007 and 2018 complaints or report her complaints to the appropriate administrative judges, and told Plaintiff during an interview in 2020 that Plaintiff's prior complaints were lost and that Plaintiff had "asked for" the treatment she received because of how she dressed. Dkt. 49, ¶¶ 70, 92, 129-131.

- <u>Pawelczak</u>: Pawelczak did not provide Plaintiff with a copy of an appropriate complaint form or forward one of her complaints to OIG; told her he "could do nothing to help her"; notified Rosenbaum of a complaint Plaintiff had made to UCS's Work-Safe office; and directed Plaintiff not to report to work on May 17, 2021, because she would not be permitted to return to work until she was cleared in an IME. *Id.* ¶¶ 98-101, 122-123, 147.

- <u>Aufleger</u>: Aufleger did not provide Plaintiff with a copy of the appropriate complaint for or forward one of her complaints to OIG; told Plaintiff she could not assist her; advised Rosenbaum's staff that "they needed to talk to Plaintiff about work," which prompted the staff to refuse to work with Plaintiff; and notified Plaintiff in December 2019 that her job title was changing from Judicial Secretary to Court Analyst. *Id.* ¶¶ 104-106, 109, 110-111, 127.

- <u>Taddeo</u>: In 2007, after Plaintiff told Taddeo about Rosenbaum's "sexual demands," Taddeo did not provide Plaintiff with a copy of an appropriate complaint form or forward her complaint to OIG; told Plaintiff that there wasn't much she could do other than conduct sexual abuse training—which Taddeo never conducted despite being authorized to do so—and that "unfortunately, women had to endure sexual harassment from male judges because there was no way to have them reprimanded"; and told Plaintiff there was "nothing [she] could do to help her" in 2019 and recommended that she take time off from work or apply for other jobs. *Id.* ¶¶ 54-59, 98, 101.

- <u>Grimaldi</u>: After Plaintiff spoke with Grimaldi in February of 2020, Grimaldi told Plaintiff Grimaldi "would identify a job to which Plaintiff would be reassigned, and get back to Plaintiff," and then twice followed up with Plaintiff to inform her that she had not located a specific assignment for Plaintiff. *Id.* ¶¶ 133-137.

- <u>Allen</u>: In 2007, after Plaintiff informed Allen about Rosenbaum's conduct and asked for help, Allen did not provide Plaintiff with a copy of the appropriate complaint form or ensure that her complaint was forwarded to OIG; told Plaintiff that if Plaintiff was, in fact, complaining about Rosenbaum, Allen would have "no choice" but to fire Plaintiff, but if she were inquiring about "the process," Allen would

send Plaintiff the pertinent information; and provided the information to Plaintiff after Plaintiff asked for it.  *Id.* ¶¶ 61-67.

- <u>Fields</u>: After Plaintiff met with Fields in July 2019, Fields told her there was nothing Fields could do to help her and recommended taking time off from work or applying for other jobs; Plaintiff thereafter sought further assistance from Fields in August 2019 after which Fields sent a follow up e-mail to Plaintiff—copying Rosenbaum—which allegedly prompted Rosenbaum's "hostility and mistreatment" of Plaintiff to increase; and then fields told Plaintiff she "could not assist her." *Id.* ¶¶ 98, 101, 104-107, 109.

These allegations are insufficient under *Tangreti.  See* 983 F.3d at 618 (defendant must have personally contributed to a constitutional violation for Section 1983 liability to attach).  In fact, most of Plaintiff's allegations describe inaction by the Individual Defendants.  After *Tangreti,* "mere inaction in resolving plaintiff's complaint[s] does not meet the requisite level of personal involvement for § 1983 liability to attach." *Peck,* 2021 WL 3710546 at *12 (citing *Tangreti,* 983 F.3d at 618).  For these reasons, Plaintiff's claims against the Individual Defendants under Section 1983 are dismissed with leave to amend to the extent the claims are not barred by Eleventh Amendment immunity, if she can allege the requisite personal involvement.

### D. Sufficiency of Plaintiff's NYHRL Claims against the Individual Defendants

In contrast, the facts alleged in the Amended Complaint are sufficient to state a claim against the Individual Defendants under the NYHRL.  There are two "pathways to individual liability" under the NYHRL.  *Peck*, 2021 WL 3710546, at *13.  First, an individual may be held liable as an "employer."  *See* NYHRL § 296(1); *Gorman v. Covidien, LLC*, 146 F. Supp. 3d 509, 521-22 (S.D.N.Y. 2015).  To qualify as an "employer," an individual must have "an ownership interest in the relevant organization or the power to do more than carry out personnel decisions made by others."  *Townsend v. Benjamin Enterprises, Inc.*, 679 F.3d 41, 57 (2d Cir. 2012) (internal citations omitted).

Second, an individual may be liable as an "aider and abettor" if he or she personally participates in the conduct giving rise to a discrimination claim.  NYHRL § 296(6); *Feingold v. New York*, 366 F.3d 138, 158 (2d Cir. 2004).  Liability must "first be established as to the employer/principal before an individual may be considered an aider and abettor."  *Mondelo v. Quinn, Emanuel, Urquhart & Sullivan, LLP*, No. 21-CV-02512, 2022 WL 524551, at *13 (S.D.N.Y. Feb. 22, 2022) (internal citations omitted).  Additionally, "aiding and abetting liability does not attach to a supervisor unless the facts alleged demonstrate that the aider and abettor shared the intent or purpose of the principal actor."  *Mondelo*, 2022 WL 524551, at *13.  *See also Warren v. Ultimate Fitness Grp., LLC*, No. 19-CV-10315, 2021 WL 4239246, at *5 (S.D.N.Y. Sept. 17, 2021) ("there can be no partnership in an act where there is no community of purpose") (internal citations omitted).

1. <u>Employer Theory</u>

Plaintiff fails to state a claim against the Individual Defendants under an "employer" theory.[10]  Plaintiff does not allege any facts indicating that the Individual Defendants had an ownership in a relevant organization. *See Stevens v. New York*, 691 F. Supp. 2d 392, 401 (S.D.N.Y. 2009) ("Clearly, none of the individual defendants could have an ownership interest in a state agency").

Plaintiff also does not allege facts demonstrating that the Individual Defendants "had the power to hire or fire [her] on their own." *Id.  See also Peck*, 2021 WL 3710546, at *12 (the NYHRL "seems to define [employer] narrowly to *only* include those with authority to hire, fire, and discipline") (citing *Hoit v. Cap. Dist. Transp. Auth.*, 2018 WL 2324050, at *12 (N.D.N.Y. May 22, 2018)).  Under the Judiciary Law, only *judges* are empowered with the authority to appoint and remove their personal assistants. *See* N.Y. Jud. L. § 36(1); 22 NYCRR § 80.1(b)(3).[11]  Moreover, Plaintiff fails to allege any facts to suggest that any of the Individual Defendants were her "employer" within the meaning of the NYHRL after Rosenbaum resigned from his judicial position.  For these reasons, Plaintiff fails to state a NYHRL claim against any of the Individual Defendants under an "employer" theory.

---

[10] Plaintiff does not appear to dispute the Individual Defendants' argument that they are not her employer. *See generally* Dkt. 27, 54.

[11] While Taddeo is alleged to be "a Supreme Court Justice in Monroe County, New York," Dkt. 49, ¶ 21, Plaintiff does not allege that she was ever employed as Taddeo's secretary.  Rather, to the extent she served as a judicial secretary, it was only to Rosenbaum. *See id.* ¶ 28 (alleging that from "March of 2005 until December of 2019, Plaintiff was employed as a secretary to Defendant ROSENBAUM").

2.  Aiding and Abetting Theory

Plaintiff does, however, allege sufficient facts to state a claim against the Individual Defendants under an aiding and abetting theory.  Even though Plaintiff does not allege that any of the Individual Defendants directly participated in Rosenbaum's alleged misconduct—which is fatal to her Section 1983 claims—that alone does not preclude liability under the NYHRL.

The law "is clear that a supervisor need not make derogatory comments or unwelcome sexual advances to subject himself or herself to liability" under the NYHRL.  *Lewis v. Triborough Bridge & Tunnel Auth.*, 77 F. Supp. 2d 376, 384 (S.D.N.Y. 1999).  Rather, "the case law establishes beyond cavil that a supervisor's failure to take adequate remedial measures can rise to the level of actual participation under [NY]HRL § 296(6)."  *Id.  See also Mondelo*, 2022 WL 524551, at *13 ("A supervisor's failure to take adequate remedial measures in response to a complaint of discrimination can, with proper factual allegations, constitute actual participation") (internal citations omitted); *Whipple v. Reed Eye Associates,* 213 F. Supp. 3d 492, 498 (W.D.N.Y. 2016) ("it is well settled that managers or supervisors who fail to investigate or take appropriate remedial measures despite being informed of the discriminatory conduct may be held individually liable for aiding and abetting discrimination by an employer . . . .") (internal citations omitted).

Here, the Amended Complaint alleges sufficient facts to state a claim against the Individual Defendants based on aiding and abetting.  Plaintiff alleges that, "[b]etween 2005 and 2019, all of the Defendants other than Defendant Rosenbaum

ignored the sexual discrimination against Plaintiff, discouraged her from complaining about the illegal treatment she endured, and ignored the complaints Plaintiff did submit." Dkt. 49, ¶ 154. She further alleges that "[f]rom 2019 to August 6, 2021" the individual defendants "delayed acting on Plaintiff's complaints, and failed to inform Plaintiff of the progress of the investigation, and of efforts to remedy her situation." *Id.* ¶ 157.

In addition, the Amended Complaint is replete with allegations of specific instances of the Individual Defendants failing to take appropriate remedial or investigative measures in response to Plaintiff's complaints about Rosenbaum's conduct. *See, e.g., id.* ¶ 92 (alleging that OIG and Grant "did not investigate Plaintiff's 2007 and 2018 complaints and did not report her complaints to the appropriate administrative judges"); ¶ 100 (alleging that Pawelczak "did not provide a copy of the complaint form to Plaintiff and did not ensure that her complaint was forwarded to OIG"); ¶ 101 (alleging that "Plaintiff was told by [Taddeo and Pawelczak] that they could do nothing to help her; each of them recommended that she take time off from work to use up her accrued time off, and apply for other jobs"); ¶¶ 104, 106 (alleging that in "August 2019, Plaintiff sought assistance from" Fields and Aufleger, but Aufleger "did not provide a copy of the complaint form to Plaintiff and did not ensure that her complaint was forwarded to OIG").

Lastly, construing the Amended Complaint liberally and drawing "all reasonable inferences" in Plaintiff's favor, *see Ginsburg v. City of Ithaca,* 839 F. Supp. 2d at 540, Plaintiff has sufficiently alleged that the Individual Defendants

shared the intent or purpose of Rosenbaum. Specifically, Plaintiff alleges that the Individual Defendants' actions "were taken pursuant to a policy or practice designed and implemented to protect judges from discipline or any other adverse action in response to the judges' violation of laws preventing sexual harassment and/or sexual discrimination." *Id.* ¶ 182. As such, the allegations in the Amended Complaint are sufficient at this juncture to state a claim against the Individual Defendants under then NYHRL pursuant to § 296(6) based on aiding and abetting.[12]

For the reasons discussed above, the Individual Defendants' motion to dismiss (Dkt. 21) is GRANTED in part and DENIED in part. All of Plaintiff's official-capacity claims against the Individual Defendants for money damages are dismissed as barred by the Eleventh Amendment. Plaintiff's NYHRL claims otherwise survive solely under an aiding and abetting theory. Plaintiff's claims against the Individual Defendants under Section 1983 are dismissed as insufficiently pleaded. Plaintiff is granted leave to leave amend her Section 1983

---

[12] The Court is not persuaded by the Individual Defendants' argument that, "in order for the fourth cause of action to even possibly proceed, a valid Title VII claim would have to have been found against the State." *See* Dkt. 21-1, at 13, Dkt. 51-1, at 14. This argument is, at best, incomplete. The Individual Defendants fail to address whether *Rosenbaum* is an "employer" within the meaning of the NYHRL. Moreover, at least one other court in this district has allowed NYHRL claims against an individual defendant to proceed while dismissing corresponding Title VII claims against the State. *See, e.g., Kennedy v. New York*, 167 F. Supp. 3d 451, 461 (W.D.N.Y. 2016) (denying motion to dismiss NYHRL claim against individual defendant and granting motion to dismiss Title VII claims against New York State and New York State Assembly because personal staff exemption to Title VII applied to Plaintiff).

claims against the Individual Defendants (to the extent they are not barred by Eleventh Amendment immunity) in order to show the requisite personal involvement.

## V.    THE STATE COURT DEFENDANTS' MOTION TO DISMISS

Plaintiff claims that the State Court Defendants are liable for discrimination on the basis of sex in violation of Title VII.  Dkt. 49, ¶¶ 162-173 (first cause of action).  The State Court Defendants argue that that Plaintiff's Title VII claims predating "October 30, 2019, are time-barred."  Dkt. 53, at 9.  They further argue that the claims based on acts alleged to have occurred "on or after October 30, 2019," should be dismissed because Plaintiff, as a "personal appointee" of Rosenbaum, "has no standing to assert" such claims against the State Court Defendants.  *Id.*[13]

For the reasons discussed below, Plaintiff's Title VII claims against the State Court Defendants may proceed to the extent that they post-date December 2019 —which is when Plaintiff ceased serving as Rosenbaum's personal secretary—but are otherwise dismissed without leave to amend.

### A.  "Personal Staff" Exemption from Title VII

Under Title VII, it is "unlawful for an employer to discriminate against an employee because of her sex."  *Butler v. New York State Dept. of Law*, 211 F.3d 739,

---

[13] The Court does not address the State Court Defendants' arguments regarding dismissal of Plaintiff's NYHRL claim against them because Plaintiff has withdrawn that claim.  *See* Dkt. 55, at 5-6.

746 (2d Cir. 2000); 42 U.S.C. § 2000e–2(a).  However, Title VII expressly exempts

from the definition of "employee" any person "elected to public office in any state or

political subdivision of any State by the qualified voters thereof," and, relevant here,

"any person chosen by such officer to be on such officer's personal staff."  42 U.S.C.

§ 2000e(f).

Plaintiff, while serving as Rosenbaum's secretary, fit the definition of

"personal staff" set forth in the statute.  Rosenbaum "was a Supreme Court Justice

in Monroe County."  Dkt. 49, ¶ 25.  Under New York law, he was entitled to

"appoint at pleasure and remove one law clerk and secretary."  N.Y. Jud. L.

§ 36(1).[14]  Rosenbaum selected Plaintiff to serve as his secretary at the time he

entered office in March 2005, and she remained in that position until his

resignation in December 2019.  *See* Dkt. 49, ¶¶ 27, 28.  At least one other district

court in this Circuit has found that the position at issue here qualifies for the

personal staff exemption from Title VII.  *See Bland v. New York*, 263 F. Supp. 2d

526, 539 (E.D.N.Y. 2003) (dismissing Title VII hostile work environment claim

brought by former secretary against New York Supreme Court Justice because,

"based on the language of the statute, its structure, and its legislative history,

---

[14] The powers of the Chief Administrative expressly exclude the ability to appoint
and remove "personal assistants who serve as law clerks and personal secretaries to
judges and justices." 22 N.Y.C.R.R. § 80.1(b)(3).

plaintiff falls within the terms of the exemption for an elected official's personal staff").[15]

As such, Plaintiff's Title VII claims against the State Court Defendants are dismissed to the extent they arise out of her employment as a secretary to Rosenbaum. *See Kennedy,* 167 F. Supp. 3d at 459 (dismissing Title VII claims against the State of New York and the New York State Assembly because a "review of the allegations of the Amended Complaint" showed that Plaintiff "falls within the personal-staff exemption to Title VII").[16]

## B. Plaintiff's Employment After Rosenbaum's Resignation

Plaintiff's employment as Rosenbaum's secretary ceased in December 2019, when Rosenbaum resigned. *See* Dkt. 49, ¶¶ 28, 128. Although N.Y. Jud. L. § 36(2) provides that a judge's "personal assistants shall continue in office" upon the judge's

---

[15] Indeed, Plaintiff does not dispute the applicability of the personal staff exemption "insofar as she was" Rosenbaum's "personal secretary." Dkt. 26, at 8. *See also* Dkt. 55, at 7 (stating that it is "undisputed" that Plaintiff's "position as a judicial secretary falls within" the personal staff exemption to Title VII).

[16] The Court rejects Plaintiff's argument that—notwithstanding the personal staff exemption—the State Court Defendants can be liable under Title VII for failing "to implement adequate sexual harassment training programs" or establishing "adequate avenues for complaint." *See* Dkt. 55, at 7 (quoting *Bland,* 263 F. Supp. 2d at 546.) In *Bland,* the Court expressly stated that, "[b]ecause plaintiff falls within the personal staff exemption, and therefore cannot bring suit under Title VII" the Court "need not discuss the parties' various alternative arguments relating to their potential liability under Title VII." *Bland,* 263 F. Supp. 2d at 545. The Court addressed those arguments only "for the sake of completeness." *Id.* Because Plaintiff cannot bring suit under Title VII insofar as she was Rosenbaum's secretary, it is irrelevant whether the State Court Defendants were joint employers with Rosenbaum before he resigned.

resignation until a successor fills the vacancy, Plaintiff alleges that, at the time of
Rosenbaum's resignation, she was "notified" that her "job title was changing from
Judicial Secretary to Court Analyst." Dkt. 49, ¶ 127. Plaintiff then "continued to be
employed to the present day, more than two years. . . ." Dkt. 47, at 4. *See also* Dkt.
49, ¶¶ 129-161. The Amended Complaint is devoid of alleged facts to suggest that
the personal staff exemption applied to Plaintiff after Rosenbaum resigned in
December 2019. Thus, the Court must assess whether Plaintiff states a viable Title
VII claim based on her employment after that point.

In the Second Circuit, a "primary element of Title VII claims" is "the
existence of an employer-employee relationship." *Felder v. United States Tennis
Ass'n*, 27 F.4th 834, 838 (2d Cir. 2022) (quoting *Gulino v. N.Y.S. Educ. Dep't*, 460
F.3d 361, 370 (2d Cir. 2006)). The Court, therefore, first considers which, if any, of
the State Court Defendants had an employment relationship with Plaintiff after
December 2019.

An entity is an employer under Title VII where the entity "significantly
affects the access of the individual to employment opportunities" through the
"authority to hire or fire [the plaintiff], to supervise her work or conditions of
employment, to determine her rate or method of pay, or to maintain records of her
employment." *Kern v. City of Rochester*, 93 F.3d 38, 45 (2d Cir. 1996). The
"principal guidepost" is the "common-law element of control." *Girard v. Int'l Ass'n
of Approved Basketball Offs., Inc.*, 840 F. App'x 635, 638 (2d Cir. 2021) (quoting
*Clackamas Gastroenterology Assocs., P.C. v. Wells*, 538 U.S. 440 (2003)).

According to Plaintiff, she "was an employee of Defendants UCS, OCA and Monroe County Supreme Court." Dkt. 49, ¶ 12. She does not explicitly allege that she was an employee of OIG. *See generally id.*[17] However, the Amended Complaint contains allegations that, construed liberally, indicate that Plaintiff had an employment relationship with UCS, OCA, Monroe County Supreme Court, and OIG after December 2019. For example, in February 2020, Grimaldi, the head of Human Resources of OCA, told Plaintiff she would "identify a job to which Plaintiff would be reassigned." Dkt. 49, ¶¶ 133-34. In addition, Judge Caruso allegedly "sent Plaintiff a letter on behalf" of UCS, advising her that OIG had investigated, and taken appropriate action with respect to, Plaintiff's hostile work environment complaint. *Id.* ¶ 139. Ultimately, Plaintiff alleges, she was assigned to work "in Family Court, Monroe County." *Id.* ¶ 154. Moreover, Plaintiff alleges that UCS, OCA, and Monroe County Supreme Court are "legally obligated to implement adequate sexual harassment training and awareness programs for all employees" and "establish adequate avenues for complaints of violations of their sexual harassment policies." *Id.* ¶¶ 13, 14. OIG, she alleges, is "legally obligated to

---

[17] The State Court Defendants do not appear to claim that they lacked an employment relationship with Plaintiff *after* Rosenbaum's resignation. *See, e.g.,* Dkt. 53, at 10 (arguing that Plaintiff fails to "plausibly allege facts showing that UCS or any of the other State Court Defendants conducted themselves as plaintiff's employer *during the period of 2005 through 2019* . . . .) (emphasis added); Dkt. 46, at 12 (arguing that the proposed amended complaint "fails to allege any facts indicating that UCS or any other of the State Court Defendants significantly controlled plaintiff's work and working condition *as Secretary to a Judge from 2005 through 2019*") (emphasis added).

establish adequate avenues for complaints" pursuant to those policies and must "investigate all claims of sexual harassment submitted to it, and to send a report of its investigation to appropriate administrators" for a "determination." *Id.* ¶¶ 17, 18. For purposes of this motion, these allegations sufficiently allege that Plaintiff was an employee of each of the State Court Defendants starting in December 2019.

Lastly, the Amended Complaint contains sufficient allegations to state a Title VII claim against the State Court Defendants. The Second Circuit has held that the employer can be liable for harassment when the employer "provided no reasonable avenue for complaint or knew of the harassment but did nothing about it." *Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.*, 957 F.2d 59, 63 (2d Cir. 1992). *See also Bland*, 263 F. Supp. 2d at 546 (noting that if "OCA failed to implement adequate sexual harassment training and awareness programs, or failed to establish adequate avenues for complaint, it could be held liable in the same manner as an employer for co-worker or third-party harassment") (citing *Karibian v. Columbia Univ.*, 14 F.3d 773, 779 (2d Cir. 1994)).

Here, as noted above, Plaintiff alleges that UCS, OCA, and Monroe County Supreme Court are "legally obligated to implement adequate sexual harassment training and awareness programs" and "establish adequate avenues" for harassment complaints, *id.* ¶¶ 13, 14, and OIG is "legally obligated to establish adequate avenues for complaints" pursuant to those policies and "investigate" all claims of sexual harassment and submit a report to appropriate administrators for determination. *Id.* ¶¶ 17, 18. She further alleges that, in "2019, Defendants OCA,

UCS and OIG enabled" Rosenbaum "to retire from his position, and to avoid any further investigation or disciplinary action against him" and, from "2019 to August 6, 2021, the remaining Defendants delayed acting on Plaintiff's complaints, and failed to inform Plaintiff of the progress of the investigation, and of efforts to remedy her situation." *Id.* ¶¶ 156-57.  These allegations are sufficient to state a Title VII claim here.[18]

For the reasons discussed above, the State Court Defendants' motion to dismiss (Dkt. 17) is GRANTED in part and DENIED in part:  Plaintiff's Title VII claims against the State Court Defendants may proceed to the extent that they post-date Rosenbaum's resignation in December 2019.[19]

---

[18] The Court need not address whether the alleged acts predating October 30, 2019, are time-barred under the "300-day" rule that applies to Title VII claims (*see* Dkt. 17-10, at 9 (citing 42 U.S.C. § 2000e-5(e)(1); *Valtchev v. City of New York*, 400 Fed. Appx. 586, 588 (2d Cir. Nov. 15, 2010) (summary order)).  As discussed above, the earliest that Plaintiff was covered by Title VII was December 2019. *See Young v. Covington & Burling LLP*, 740 F. Supp. 2d 17, 22 (D.D.C. 2010) (declining to consider timeliness of Title VII claim where plaintiff lacked standing to bring such claims).

[19] In opposition to Plaintiff's Motion for Leave to Amend the Complaint, the State Court Defendants argued that Plaintiff's motion for leave to amend the Complaint should be denied because the proposed amendment is futile. *See* Dkt. 46.  The Court decided to consider the State Court Defendants' futility arguments when deciding the pending motions to dismiss. *See* Dkt. 48.  The "standard for denying leave to amend based on futility is the same as the standard for granting a motion to dismiss." *IBEW Loc. Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC*, 783 F.3d 383, 389 (2d Cir. 2015).  Therefore, for the reasons discussed above, Plaintiff's proposed amendments are not futile to the extent that they assert Title VII claims that post-date December 2019.

## CONCLUSION

For the reasons discussed above, it is:

ORDERED that Rosenbaum's motion (Dkt. 19) is DENIED. Plaintiff's harassment claims against Rosenbaum pursuant to Section 1983 and the NYHRL may proceed under a hostile work environment theory based on Rosenbaum's alleged misconduct dating back to 2005. Plaintiff's harassment claims against Rosenbaum may not proceed under a *quid pro quo* theory. In addition, Plaintiff's retaliation claims against Rosenbaum under Section 1983 and the NYHRL may proceed. It is further:

ORDERED that the Individual Defendants' motion (Dkt. 21) is GRANTED in part and DENIED in part. All of Plaintiff's official-capacity claims against the Individual Defendants for money damages are dismissed as barred by the Eleventh Amendment without leave to amend. Plaintiff's NYHRL claims otherwise survive. Plaintiff's claims against the Individual Defendants under Section 1983 are dismissed as insufficiently pleaded. Plaintiff is granted leave to leave amend her Section 1983 claims against the Individual Defendants (to the extent they are not barred by Eleventh Amendment immunity) in order to show any requisite personal involvement. It is further:

ORDERED that the State Court Defendants' motion (Dkt. 17) is GRANTED in part and DENIED in part.  Plaintiff's Title VII claims against the State Court Defendants may proceed to the extent that they post-date Rosenbaum's resignation in December 2019, but are otherwise dismissed without leave to amend.

SO ORDERED.

Dated:      November 15, 2022
            Buffalo, New York

JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE