UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

REBECCA KLYMN,

                         Plaintiff,

          v.

MONROE COUNTY SUPREME COURT,
UNIFIED COURT SYSTEM OF THE STATE OF
NEW YORK, OFFICE OF COURT
ADMINISTRATION, OFFICE OF THE MANAGING
INSPECTOR GENERAL FOR BIAS MATTERS,
COSMAS GRANT, RONALD PAWELCZAK,
MARY AUFLEGER, ANN MARIE TADDEO,
CAROLYN GRIMALDI, MARGARET ALLEN,
AMY FIELDS, and MATTHEW ROSENBAUM,

                         Defendants.
_____

|  |  |  |
|---|---|---|
|  |  | DECISION |
|  |  | and |
|  |  | ORDER |
|  |  |  |
|  |  | 21-CV-6488-JLS-LGF |

APPEARANCES:        ANNA MARIE RICHMOND, ESQ.
                        Attorney for Plaintiff
                        2500 Rand Building
                        14 Lafayette Square
                        Buffalo, New York  14203

                        LINDY KORN, ESQ.
                        Attorney for Plaintiff
                        Electric Tower
                        535 Washington Street
                        9th Floor
                        Buffalo, New York  14203

                        LETITIA A. JAMES
                        ATTORNEY GENERAL, STATE OF NEW YORK
                        Attorney for Defendants Monroe County Supreme Court,
                          Unified Court System, Office of Court Administration,
                          Office of the Managing Inspector General, Grant,
                          Pawelczak, Aufleger, Taddeo, Grimaldi, Allen and Fields
                        HEATHER LYNN McKAY, and
                        MICHELE ROMANCE CRAIN
                        Assistant Attorneys General, of Counsel
                        144 Exchange Boulevard
                        Rochester, New York  14614

and
PEDRO MORALES
Assistant Deputy Counsel
Office of Court Administration of the State of New York
25 Beaver Street
11th Floor
New York, New York  10004

ROTHENBERG LAW
Attorneys for Defendant Rosenbaum
DAVID ROTHENBERG, of Counsel
45 Exchange Boulevard
Suite 800
Rochester, New York  14614

## JURISDICTION

This case was referred to the undersigned by Honorable John L. Sinatra, Jr. on November 16, 2022, for all pretrial matters including preparation of a report and recommendation on dispositive motions. (Dkt. 59).  The matter is presently before the court on Plaintiff's motion for leave to file a second amended complaint (Dkt. 65), filed December 21, 2022.[1]

## BACKGROUND

On July 16, 2021, Plaintiff Rebecca Klymn ("Plaintiff") commenced this employment discrimination action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. ("Title VII"), 42 U.S.C. § 1983, and the New York State Human Rights Law, N.Y. Exec. L. § 290 *et seq*. ("NYHRL"), asserting claims against Defendants Monroe County Supreme Court ("the Court"), Unified Court System of the

---

[1] Motions to amend a pleading are non-dispositive.  *See Fielding v. Tollaksen*, 510 F.3d 175, 178 (2d Cir. 2007) (motion to amend pleadings is non-dispositive).

State of New York ("UCS"), the New York State Office of Court Administration ("OCA"), Office of the Managing Inspector General for Bias Matters ("OIG") (together, "State Court Defendants"), Cosmas Grant ("Grant"), Ronald Pawelczak ("Pawelczak"), Mary Aufleger ("Aufleger"), Ann Marie Taddeo ("Taddeo"), Carolyn Grimaldi ("Grimaldi"), Margaret Allen ("Allen"), Amy Fields ("Fields") (together, "Individual Defendants"), and Matthew Rosenbaum ("Rosenbaum").  On July 19, 2021, Plaintiff filed an amended complaint as of right (Dkt. 2) ("First Amended Complaint"), which State Court Defendants moved to dismiss on November 10, 2021 (Dkt. 17), and both Rosenbaum and the Individual Defendants separately moved to dismiss on November 12, 2021 (respectively, Dkts. 19 and 21).  While Defendants' motions to dismiss were pending, Plaintiff, on August 4, 2022, moved for leave to file a further amended complaint (Dkt. 42).  By Text Order entered August 29, 2022 (Dkt. 48), the court granted Plaintiff's motion to file a further amended complaint, stating after it was filed, the court would consider the pending motions to dismiss.  On August 30, 2022, Plaintiff filed the further amended complaint (Dkt. 49) ("FAC").  In a Decision and Order filed November 15, 2022 (Dkt. 58) ("D&O"), the motions to dismiss were denied as to Rosenbaum, and granted in part and denied in part as to the Individual Defendants and the State Court Defendants.

On December 21, 2022, Plaintiff filed her second motion for leave to file an amended complaint (Dkt. 65) ("Plaintiff's Motion"), attaching the Attorney's Affirmation [of Anna Marie Richmond, Esq.][2] in Support of Motion for Permission to File an Amended Complaint (Dkt. 65-1) ("Richmond Affidavit"), with Exhibits A and B,

---

[2] Unless otherwise indicated, bracketed material has been added.

respectively, the Proposed Second Amended Complaint ("Proposed SAC") (Dkt. 65-2), and a "redline" copy of the Proposed SAC for comparison (Dkt. 65-3), and Plaintiff's Memorandum of Law in Support of Motion to File an Amended Complaint (Dkt. 65-4) ("Plaintiff's Memorandum").  On February 27, 2023, Rosenbaum filed Defendant Rosenbaum's Memorandum of Law in opposition to Motion for Leave to File Second Amended Complaint (DKt. 69) ("Rosenbaum's Response"), and the Declaration [of David Rothenberg, Esq.] on Behalf of Defendant Rosenbaum in Opposition to Motion for Leave to File Second Amended Complaint (Dkt. 69-1) ("Rothenberg Declaration"). On February 28, 2023, the State Court Defendants filed the State Court Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Leave to Amend the Complaint (Dkt. 70) ("State Court Defendants' Response"), and the Declaration of [Assistant Deputy Counsel in the Office of Court Administration of the State of New York] Pedro Morales[, Esq.] in Opposition to Plaintiff's Motion to Amend the Complaint (Dkt. 71) ("Pedro Declaration"), attaching exhibits A through C (Dkts. 71-1 through 71-3) ("State Court Defendants' Exh(s). __").  Also filed on February 28, 2023 was the Individual Defendants' Memorandum of Law (Dkt. 72) ("Individual Defendants' Response").  On March 28, 2023, Plaintiff filed Plaintiff's Reply to Defendants' Responses to Plaintiff's Motion for Permission to File an Amended Complaint (Dkt. 73) ("Plaintiff's Reply").  Oral argument was deemed unnecessary.

Based on the following, Plaintiff's Motion is GRANTED in part and DENIED in part.

**FACTS**[3]

In this action, Plaintiff Rebecca Klymn ("Plaintiff" or "Klymn"), sues to recover damages for sexual harassment and abuse she allegedly endured while employed as a judicial secretary to former New York Supreme Court, Monroe County, Justice Matthew Rosenbaum.  Plaintiff served as Rosenbaum's judicial secretary upon Rosenbaum's appointment to judicial office on March 28, 20005,[4] until his resignation on December 31, 2019.  In addition to Rosenbaum, Defendants to this action include several entities within the New York State court system including Unified Court System of the State of New York ("UCS"), Office of Court Administration ("OCA"), Office of the Managing Inspector General for Bias Matters ("OIG"), and Monroe County Supreme Court ("the Court") (together, "State Court Defendants").[5]  Also sued in their personal capacity are Ronald Pawelczak, Chief Clerk, Monroe County Family Court ("Family Court") and Executive of the Seventh Judicial District of the State of New York ("Pawelczek"), OIG employee Cosmas Grant ("Grant"), Ann Marie Taddeo, New York State Supreme Court Justice, Monroe County ("Justice Taddeo"), Carolyn Grimaldi, head of Human Resources for UCS and OCA ("Grimaldi"), Margaret Allen, head of Human Resources for Monroe County Supreme Court ("Allen"), and Amy Fields, Principal Court Analyst

---

[3] Taken from the Proposed SAC and motion papers filed in this action.

[4] Rosenbaum "was first appointed to a judicial vacancy in 2005, then elected to a full term that year in the Seventh Judicial District . . . ."  Gary Craig, W*ho is Justice Matthew Rosenbaum, Why Has He Stepped Down and What Happens Next?*, Rochester Democrat and Chronicle, Dec. 30, 2019, http://www. democratandchronicle.com/story/news/2019/12/30/justice-matthew-rosenbaum-why-he-stepped-down-state-supreme-court-rochester-ny/2773266001/.

[5] UCS is comprised of trial and appellate courts established by the New York State Constitution and state laws.  OCA is the administrative arm of UCS that includes, as relevant here, the UCS's department of human resources.  OIG investigates allegations of bias based on, *inter alia*, sex including sexual harassment, affecting the workplace or the terms and conditions of employment of UCS personnel.  The Court is a trial court within the UCS located in the Seventh Judicial District of the State of New York.

with Monroe County Supreme Court Human Resources ("Fields") (together, "Individual Defendants").  Plaintiff alleges that while working as Rosenbaum's judicial secretary, she was an employee of the Court, OCA, and UCS.

Plaintiff maintains that between 2005 and 2009, while working as Rosenbaum's secretary, Rosenbaum compelled Plaintiff to perform numerous and unwanted sexual acts, including fellatio, in Rosenbaum's judicial chambers.  Rosenbaum insisted Plaintiff's compliance with the sexual demands was a condition of Plaintiff's employment and threatened that if Plaintiff, who was then engaged in divorce proceedings and seeking custody of her minor son, did not accede to his demands, Rosenbaum would contact the Family Court judge handing the custody proceedings pertaining to Plaintiff's son and ensure Plaintiff was not granted custody.  Plaintiff alleges that on November 14, 2006, Rosenbaum went, uninvited, to Plaintiff's home after work hours, demanded to be let in lest he cause a scene, and once inside raped Plaintiff.  Rosenbaum repeatedly addressed Plaintiff in demeaning terms, commented that Plaintiff's clothing was inappropriate, touched and hugged Plaintiff, frequently screamed at Plaintiff when Rosenbaum was dissatisfied with her work, and repeatedly required Plaintiff perform personal errands for himself and his family members during work hours.  Rosenbaum also required Plaintiff accompany him to medical appointments at which Plaintiff was required to be in the examination room with Rosenbaum.

While Plaintiff worked for Rosenbaum, the judicial chambers of Justice Taddeo, the only female Supreme Court Justice in the Court, were located next to Rosenbaum's chambers.  Justice Taddeo frequently met privately with Rosenbaum.  Defendant Pawelczak, Chief Clerk of Family Court, also frequently met privately with Rosenbaum

in Rosenbaum's chambers.  Plaintiff alleges both Justice Taddeo and Pawelczak personally observed Rosenbaum's inappropriate contact and use of demeaning language toward Plaintiff, and also observed Plaintiff's visible discomfort with Rosenbaum's conduct.  Both Justice Taddeo and Pawelczak were supervisors within UCS's organizational structure and, although neither supervised Plaintiff, were obligated to provide employees who complained of sexual harassment with UCS's sexual harassment complaint form and to forward the complaint to OIG.

Shortly after Plaintiff commenced working for Rosenbaum, Plaintiff spoke with Justice Taddeo about Rosenbaum's unwanted sexual demands and other objectionable behavior.  Despite holding a supervisory position, Justice Taddeo neither reported Plaintiff's complaint to the OIG, nor provided Plaintiff with a copy of UCS's sexual harassment complaint form which Plaintiff maintains she later learned was a supervisory obligation.  Justice Taddeo also failed to inform Plaintiff of the existence of the Commission on Judicial Conduct; rather, Justice Taddeo encouraged Plaintiff to come to Justice Taddeo's chambers to "get away" from Rosenbaum and "to enable Plaintiff to compose herself," Proposed SAC ¶¶ 81,[6] ensuring Plaintiff her door was "always open."  *Id*. ¶ 83.

On January 10, 2007, Plaintiff spoke with one Lisa Cammilleri ("Cammilleri"), who had previously worked for Rosenbaum but was then working as a Court Clerk, about the sexual harassment Plaintiff was enduring as Rosenbaum's secretary.  Cammilleri advised Plaintiff nothing could be done about the harassment because Rosenbaum was a judge and no one would listen to Plaintiff.  Also in 2007, Plaintiff spoke to Robert

---

[6] Specific references to the "Proposed SAC" are provided for factual allegations of particular significance.

Barnish ("Barnish"), in Human Resources and inquired about the possibility of being transferred to another position within the Court.  Barnish advised he would seek another assignment for Plaintiff, but in 2010, Barnish told Plaintiff he did not believe anyone within UCS would hire Plaintiff out of fear of repercussions by Rosenbaum.

On May 3, 2007, Rosenbaum told Plaintiff the suit she was wearing made Plaintiff look "hot" and then grabbed Plaintiff's arm and forced Plaintiff to touch his penis, telling Plaintiff he was falling in love with her and that Plaintiff should be "honored."  Proposed SAC ¶ 101. At lunch with Justice Taddeo outside the courthouse on May 14, 2007, Plaintiff described Rosenbaum's recent conduct and sexual demands, and Justice Taddeo responded there was not much that could be done other than conducting sexual abuse training.  The next day, Justice Taddeo informed Plaintiff she had received permission from Judge Van Strydonck ("Judge Van Strydonck"), then Chief Administrative Judge for the Seventh Judicial District, to conduct sexual abuse training, but no such training was ever conducted.

According to Plaintiff, Defendant Allen, as the head of the Court's Human Resources department, was the "linchpin" for enforcing the sexual harassment policy of OCA and UCS, and was obligated to report complaints of sexual harassment to appropriate authorities even if an employee did not report the harassment on her own behalf.  During 2007, Allen frequently met privately with Rosenbaum either in Allen's officer or in Rosenbaum's chambers.  On November 20, 2007, Plaintiff met with Allen, informed Allen of Rosenbaum's conduct, and requested Allen's help.  Allen, however, did not provide Plaintiff with the UCS's sexual harassment complaint form and, thus, also did not forward such completed complaint form to OIG; rather, Allen advised that if

Plaintiff were in fact complaining about Rosenbaum, Allen had no choice but to terminate Plaintiff's employment.  Plaintiff maintains when Allen made this statement, Allen was aware she lacked the authority to fire Plaintiff, yet Allen, rather than complying with her mandated job duties, thwarted Plaintiff's efforts to file a complaint accusing Rosenbaum of sexual harassment by threatening to terminate Plaintiff's employment.  Allen also advised that if Plaintiff were merely inquiring about the complaint process to assist someone else, Allen would provide the information.  Plaintiff then asked for information about the complaint process which Allen provided by sending Plaintiff an e-mail with links to information about OCA's Workforce Diversity Office and the OIG.  Because Allen had threatened to terminate Plaintiff's employment, Plaintiff did not again seek Allen's assistance.

Using the information forwarded by Allen, Plaintiff located on the internet a discrimination complaint form which Plaintiff completed ("the discrimination complaint"), and mailed to OIG on November 21, 2007, but never received any response to the discrimination complaint.  Neither OIG nor OIG employee Grant investigated the discrimination complaint nor reported the discrimination complaint to the appropriate administrative judges.

On June 1, 2009, Plaintiff refused Rosenbaum's demand for oral sex and told Rosenbaum she would never again comply with such demands nor acquiesce to Rosenbaum's threats.  Plaintiff attributes her ability to oppose Rosenbaum's demands and threats to years of intense psychological counseling with a therapist in whom Plaintiff had confided the details of Rosenbaum's behavior.  After Plaintiff refused Rosenbaum's demands, Rosenbaum argued with Plaintiff and for years thereafter

attempted to cajole and pressure Plaintiff into performing oral sex in his chambers, and also continued the other harassing conduct, but Plaintiff did not again acquiesce to Rosenbaum's demands.  Rosenbaum often commented to others in Plaintiff's presence that he would "never get rid of" Plaintiff because "she knows too much."  Proposed SAC ¶ 140.

In March 2011, Rosenbaum was appointed the Supervising Judge of the Seventh Judicial District, which is the second-highest judicial administrator position in the Seventh Judicial District ("the District").  In October 2011, Rosenbaum was appointed head of the Commercial Division of the District, a position Plaintiff maintains is prestigious and powerful, and in which Rosenbaum remained until the end of 2019, which was unprecedented given no other judge had previously served in that position for more than three years.  Throughout this time, Plaintiff continued to seek other employment positions within the District, but was repeatedly told she would not be hired because she worked for Rosenbaum, leaving Plaintiff feeling trapped in a bad situation.

In November 2017, UCS and OCA issued a revised Sexual Harassment Policy and Procedure ("the harassment policy") which provides it is a "zero-tolerance policy for any form of sexual harassment," Proposed SAC ¶ 147, and "applies to all judges and court employees."  *Id*. ¶ 148.  The harassment policy instructs that employees who believe they are victims of "sexual behavior in the workplace" have several options for redress including discussing the problem with a supervisor or manager to whom the employee does not report or making a formal complaint of sexual harassment to the OIG.  *Id*. ¶ 149.  On January 8, 2018, Plaintiff completed and submitted to OIG the updated UCS discriminatory treatment complaint form ("second discrimination

complaint").  Plaintiff alleges the second discrimination complaint was never investigated or reported by OIG or Grant to the appropriate administrative judges, nor did Plaintiff ever receive a response to the second discrimination complaint.

Sometime during the first half of 2019, Pawelczak became the District Executive. In late June 2019, Rosenbaum urged Plaintiff to take a leave of absence "to get her head on straight," Proposed SAC ¶ 155, but Plaintiff did not comply with the request.  In July 2019, Rosenbaum stopped speaking to Plaintiff.  On July 31, 2019, Plaintiff separately met with Justice Taddeo, Pawelczak, and Fields to discuss the sexual harassment by Rosenbaum, and to seek their assistance.  Although Justice Taddeo, Pawelczak, and Fields each assured Plaintiff their conversations would be kept confidential, both Pawelczak and Fields discussed their conversations with Rosenbaum. Pawelczak, Fields, and Justice Taddeo did not provide any further complaint form to Plaintiff, nor ensure Plaintiff's second discrimination complaint was forwarded to OIG. Instead, both Pawelczak and Fields separately advised Plaintiff they could not help her and recommended Plaintiff take time off from work and use her accrued leave time to apply for other jobs.  In August and September 2019, Rosenbaum learned from Pawelczak and Fields of Plaintiff's complaints about Rosenbaum's behavior, at which time Rosenbaum became verbally abusive toward Plaintiff in retaliation for the complaints.  In particular, Rosenbaum repeatedly told Plaintiff to "get [her][7] head on straight," and accused Plaintiff of not performing her job duties, complaining to everyone in the building, and on August 5, 2019, threw papers onto Plaintiff's desk.  Proposed SAC ¶ 166.  In August and September 2019, Rosenbaum directed the rest of his staff to

---

[7] Brackets in original.

cease speaking with Plaintiff.  Rosenbaum's conduct caused Plaintiff to suffer severe stress and anxiety.

In August 2019, Plaintiff again sought Fields's assistance with the situation, after which Fields followed up with an e-mail ("the e-mail") to Plaintiff referencing the substance of their discussion.  Fields copied Rosenbaum on the e-mail, subsequent to which Rosenbaum's hostility toward and mistreatment of Plaintiff increased.  Fields told Plaintiff she could not assist her and encouraged Plaintiff to use up her accrued leave and to resign from her position.

On September 3, 2019, Plaintiff was medically excused from work because of stress and anxiety.  Upon the advice of her primary care physician, Plaintiff requested a leave of absence.  Plaintiff was diagnosed with Complex Post Traumatic Stress Disorder ("Complex PTSD"), which was attributed to the harassment Plaintiff endured from 2005 through 2019.  On September 5, 2019, Plaintiff met with Fields and learned that Fields had prepared paperwork to process Plaintiff's resignation, which Fields attempted to persuade Plaintiff to sign and, thereby resign, but Plaintiff refused.  On September 9, 2019, Rosenbaum advised Plaintiff he would not approve Plaintiff's request for a leave of absence.

On October 29, 2019, Plaintiff submitted directly to Fields at Human Resources, thereby bypassing Rosenbaum, a request for a leave of absence ending on January 31, 2020, pursuant to the Family and Medical Leave Act ("FMLA") ("FMLA leave request"), based on a physician's note excusing Plaintiff from work because of physical symptoms attributed to stress from a hostile work environment.  Fields again tried to persuade Plaintiff to resign, but when Plaintiff refused, Fields submitted the FMLA leave request

"through Human Resources channels for medical leaves," but the FMLA leave request was "intercepted" by UCS's "Work-Safe office" because of the "hostile work environment" language.  Proposed SAC ¶¶ 184-85.  According to Plaintiff, "[t]he Work-Safe office's mission is to ensure the court system promotes and supports a safe work environment for its employees and members of the public."  *Id*. ¶ 186.  On November 8, 2019, Plaintiff received a telephone call from one Connor Van Everen ("Van Everen") at UCS's Work-Safe office.  Van Everen requested Plaintiff submit a written description of her experiences working for Rosenbaum, and Plaintiff promptly complied with the request, submitted a detailed description of the alleged abusive behavior ("Plaintiff's statement").  Van Everen forwarded Plaintiff's statement, now considered a complaint ("third discrimination complaint") to Pawelczak and OIG, and Pawelczak then notified Rosenbaum of the third discrimination complaint.  On December 11, 2019, Grant telephone Plaintiff and advised he would review the third discrimination complaint and then contact her again.  Less than four hours later, Grant again called Plaintiff, advising that because the contents went "above" OIG's authority, Grant was forwarding the third discrimination complaint to the Commission on Judicial Conduct ("CJC").  On December 19, 2019, Plaintiff was interviewed by CJC, and on December 28, 2019, Plaintiff was notified by a representative of CJC that Rosenbaum had agreed to resign from his judicial position, and that Rosenbaum's resignation would end any further investigation by the CJC.  Also in December 2019, Plaintiff was notified that her job title was changing from Judicial Secretary to Court Analyst, although Plaintiff was not then advised of her new assignment.

On January 13, 2020, Rosenbaum and the CJC entered into a stipulation ("the stipulation") [8] that provided Rosenbaum vacated his judicial office on December 31, 2019, and agreed to never again seek judicial office.  On January 15, 2020, Plaintiff, who had yet to be advised of her new assignment, was interviewed by Grant who initially stated Plaintiff had never complained about Rosenbaum's conduct.  When Plaintiff responded by sharing the dates of her first and second discrimination complaints, Grant asserted OIG "lost" the prior complaints.  Grant then suggested Plaintiff had "asked for" the sexually harassing treatment by Rosenbaum because of the way Plaintiff dressed even though Plaintiff was dressed in conservative business attire and Grant had never previously met Plaintiff.  Plaintiff maintains that for Grant to interview Rosenbaum before interviewing Plaintiff was a violation of OIG's protocol. Grant then interviewed, as a witness to the abuse Plaintiff reported in the third discrimination complaint, Plaintiff's elderly mother who was driven to tears by Grant's demeanor during the interview.  Grant also interviewed Plaintiff's second witness[9] to the abuse who reported to Plaintiff that Grant persisted in twisting the witness's words and substituting his own version of the events of which Plaintiff complained.  Plaintiff maintains Grant was attempting to intimidate and attack Plaintiff in retaliation for bringing the third discrimination complaint against Rosenbaum.

On January 23, 2020, the CJC entered an order making the stipulation public and thereby concluding the investigation of Plaintiff's third discrimination complaint.  On January 29, 2020, the CJC issued a press release publicizing the stipulation and

---

[8] Filed as State Court Defendants' Exh. C (Dkt. 71-2) at 3-4.
[9] Plaintiff's second witness is not identified.

describing in general terms Plaintiff's allegations against Rosenbaum in the third discrimination complaint.

Meanwhile, Plaintiff was on leave pursuant to the FMLA ("FMLA leave"), between October 29, 2019 and March 30, 2020, during which time Defendants State Court, UCS, OCA, OIG, Grant and Grimaldi had access to Plaintiff's then current contact information, yet no Defendant contacted Plaintiff either to advise Plaintiff of the investigation into her third discrimination complaint, or Plaintiff's future assignment within the UCS in light of Rosenbaum's resignation.  In February 2020, UCS and OCA Head of Human Resources Grimaldi telephoned Plaintiff and advised Grimaldi would identify a job to which Plaintiff would be assigned.  In February and March 2020, Plaintiff heard from Grimaldi who told Plaintiff Grimaldi had yet to locate a specific assignment for Plaintiff, advising Grimaldi did not believe Plaintiff would be "safe" working in the Hall of Justice and that an assignment to the Criminal Division of Rochester City Court in the Public Safety Building was being considered.  Plaintiff did not again hear from Grimaldi or anyone else regarding her new position and on March 31, 2020, Plaintiff's physician placed Plaintiff on sick leave.

On August 13, 2020, Deputy Chief Administrative Judge Vito Caruso ("Judge Caruso") sent Plaintiff a letter on behalf of Defendant UCS advising Plaintiff OIG had completed its investigation of Plaintiff's third discrimination complaint, seriously treated the matter and taken appropriate action, but did not inform Plaintiff what action was taken.  As of April 28, 2021, Plaintiff had exhausted all of her accrued leave time and was granted discretionary leave.[10]  By letter dated April 28, 2021, Judge Caruso

---

[10] The record does not state whether Plaintiff was paid while on discretionary leave.

advised Plaintiff she was being placed on involuntary leave effective April 29, 2021, but

that same day, one William Hart ("Hart"), President of Plaintiff's union, advised Plaintiff

that Hart had learned that since March 2020, there was a new Court Analyst position

available for Plaintiff in Family Court which was located in the Hall of Justice.  Upon

learning of the available Court Analyst position, Plaintiff contacted her doctor who

provided Plaintiff with formal release to return to work which Plaintiff submitted to

Defendants in early May 2021.  On May 17, 2021, however, Pawelczak directed Plaintiff

not to report to work until Plaintiff underwent an independent medical examination

("IME").  Plaintiff underwent the IME on June 16 and 21, 2021.  On July 16, 2021,

Plaintiff filed the original complaint in this action, which was served on several of the

Defendants on July 28, 2021.  On August 6, 2021, Judge Caruso directed Plaintiff to

report to work in Family Court as a Court Analyst on August 9, 2021.  Plaintiff has

worked as a Court Analyst in Family Court since August 9, 2021.

## **DISCUSSION**

### 1.    **Motion for Leave to Amend**

Plaintiff moves for leave to file a third amended complaint, denominated as a

second amended complaint, to eliminate claims dismissed by the D&O, to replead the §

1983 claims against the Individual Defendants, to assert new claims against

Rosenbaum that are revived under New York's Adult Survivors Act, codified at N.Y.

C.P.L.R. § 214(j), and to newly assert a conspiracy claim pursuant to 42 USC § 1985(3)

based upon the facts pleaded in support of the § 1983 claims.  Plaintiff further seeks to

discontinue the claims against Defendant Mary Aufleger, and to allege additional and

clarifying facts particularly with regard to events occurring since the original complaint was filed.  "The ability of a plaintiff to amend the complaint is governed by Rules 15 and 16 of the Federal Rules of Civil Procedure which, when read together, set forth three standards for amending pleadings that depend on when the amendment is sought." *Sacerdote v. New York Univ.*, 9 F.4th 95, 115 (2d Cir. 2021), *cert. denied*, __ U.S. __; 142 S. Ct. 1112 (2022).  "At the outset of the litigation, a plaintiff may freely amend her pleadings pursuant to Rule 15(a)(1) as of right without court permission."  *Id*.  "After that period ends - either upon expiration of a specified period in a scheduling order or upon expiration of the default period set forth in Rule 15(a)(1)(A) - the plaintiff must move the court for leave to amend, but the court should grant such leave 'freely . . . when justice so requires' pursuant to Rule 15(a)(2)."  *Id*.  Where, however, a scheduling order has been entered pursuant to Fed.R.Civ.P. 16(b) ("Rule 16(b)"), a party seeking leave to amend beyond the cut-off date for such motions must show good cause for the delay. *See Parker v. Columbia Pictures Industries,* 204 F.3d 326, 340 (2d Cir. 2000) (citing, *inter alia, Carnrite v. Granada Hosp. Group, Inc.*, 175 F.R.D. 439, 446 (W.D.N.Y. 1997)).  In the instant case, discovery has yet to commence and to date, no scheduling conference has been held nor any scheduling order entered pursuant to Fed.R.Civ.P. 16(b).  Accordingly, the court's decision as to whether to permit Plaintiff to further amend the complaint is governed solely by Fed.R.Civ.P. 15 ("Rule 15__").

The standard for filing amended pleadings pursuant to Rule 15(a)(2) "is a 'liberal' and 'permissive' standard, and the only 'grounds on which denial of leave to amend has long been held proper' are upon a showing of 'undue delay, bad faith, dilatory motive, [or] futility.'"  *Sacerdote*, 9 F.4th at 115 (quoting *Lorely Fin. (Jersey) No. 3 Ltd. v. Wells*

*Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (internal quotation marks and citation omitted)).  In the instant case, Defendants do not argue that Plaintiff's motion to amend is intended to unduly delay the proceedings, made in bad faith, or a dilatory motive and, thus, the motion will be granted unless the proposed amendments are futile.  An amendment is futile where, if granted, it would be necessarily subject to dismissal pursuant to a subsequent motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6).  *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 604 (2d Cir. 2005).  *See El-Shabazz v. State of New York Committee on Character and Fitness for the Second Judicial Department*, 428 Fed.Appx. 95, at *1 (July 5, 2011) ("'When the plaintiff has submitted a proposed amended complaint, the district judge may review that pleading for adequacy and need not allow its filing if it does not state a claim upon which relief can be granted.'") (quoting *Ricciuti v. N.Y.C. Transit Authority*, 941 F.2d 119, 123 (2d Cir. 1991)).  *See also Jones v. New York Div. of Military & Naval Affairs,* 166 F.3d 45, 55 (2d Cir. 1999) (An amendment is futile "if the proposed amended complaint would be subject to 'immediate dismissal' for failure to state a claim or on some other ground.").  As such, a determination that a proposed claim is futile is made under the same standards that govern a motion to dismiss under Rule 12(b)(6).  *A.V. By Versace, Inc. v. Gianni Versace, S.p.A.,* 160 F.Supp.2d 657, 666 (S.D.N.Y. 2001).

The Supreme Court requires application of "a 'plausibility standard . . . .'"  *Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009) (citing *Twombly*, 550 U.S. at 570, and quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  In ruling on a motion under Rule 12(b)(6), and, thus, in considering the plausibility of a proposed amended pleading, the court may

consider only "the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated into the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).  A complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (rejecting longstanding precedent of *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  On a motion to dismiss under Rule 12(b)(6), the court looks to the four corners of the complaint and is required to accept the plaintiff's allegations as true and to construe those allegations in the light most favorable to the plaintiff.  *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (court is required to liberally construe the complaint, accept as true all factual allegations in the complaint, and draw all reasonable inferences in the plaintiff's favor).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  *Id.*  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Id.* (quoting *Twombly*, 550

U.S. at 557).  Further, it is well settled that in determining whether a proposed amended complaint is futile, the court must assume the truth of the specific allegations set forth therein.  *Panther Partners Inc. v. Ikanos Communications, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012).  The court thus addresses in turn each of the claims in the Proposed SAC.

In the instant case, insofar as Plaintiff's claims are asserted pursuant to 42 U.S.C. § 1983 ("§ 1983"), which permits imposing civil liability upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws of the United States, *Patterson v. County of Oneida, New York*, 375 F.3d 206, 225 (2d Cir. 2004) (quoting 42 U.S.C. § 1983), § 1983 "'is not itself a source of substantive rights.'"  *Id.* (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)).  Rather, § 1983 "merely provides 'a method for vindicating federal rights elsewhere conferred' . . . ."  *Id.*  To succeed on a § 1983 claim, a plaintiff must establish the challenged conduct "(1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States."  *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997).

As stated, Plaintiff's Proposed SAC seeks to incorporate the changes directed by Judge Sinatra in the D&O, to add tort claims that would be time-barred but for New York's Adult Survivors' Act, to add a § 1985(3) conspiracy claim, and to discontinue the action as against Defendant Aufleger.  Preliminarily, Rosenbaum's Motion challenges only the newly Proposed Third Claim asserting a conspiracy pursuant to 42 U.S.C. § 1985(3) which Rosenbaum maintains is futile for lack of any alleged agreement among

any Defendants to deprive Plaintiff of any rights of benefits.[11]  Rosenbaum's Response, *passim*.  Accordingly, the court's consideration of Rosenbaum's Motion is limited to whether Plaintiff has adequately alleged a conspiracy against Rosenbaum.  Further, none of the Defendants oppose Plaintiff's Motion insofar as the Proposed SAC discontinues all claims against Augleger and, accordingly, Plaintiff's Motion is GRANTED with regard to the dismissal of the claims against Augleger.

State Court Defendants argue in opposition to Plaintiff's Motion that the Proposed SAC is futile because it fails to allege the requisite facts to impute liability under Title VII to an employer for the harassing conduct of non-supervisory personnel, including that the employer provided no reasonable avenue for the employee to make a complaint, State Court Defendants' Response at 11-12, or that the employer knew of such harassing conduct but took no action to stop it.  *Id*. at 13-17.  The Individual Defendants argue in opposition to Plaintiff's Motion that the allegations of the Proposed SAC fail to cure the deficiencies of Plaintiff's claims pursuant to § 1983 requiring Plaintiff allege each Defendants' own personal involvement in the alleged violations, Individual Defendants' Response at 3-10, Plaintiff's Motion is futile as to all claims against Defendant Allen, none of which are alleged to have occurred after November 20, 2007 and, thus, are time-barred, *id*. at 10-11, Plaintiff's claims pursuant to NYHRL are futile as against Defendants Grant and Grimaldi, neither of whom is alleged to have been made aware of the discrimination while it was occurring and before it ended, *id*. at 11-

---

[11] Defendant Rosenbaum does not challenge either the Proposed SAC's Fifth Cause of Action asserting retaliation in violation of § 1983 and NYSHRL, the Sixth Cause of Action asserting battery, or the Seventh Cause of Action asserting intentional infliction of emotional distress, all three claims alleged only against Defendant Rosenbaum.  Proposed SAC §§ 286-90 ("Proposed Fifth Claim"), §§ 291-98 ("Proposed Sixth Claim"), and §§ 299-304 ("Proposed Seventh Claim").  Accordingly, the Proposed Fifth, Sixth, and Seventh Claims are not further addressed.

12, and Plaintiff has failed to allege facts establishing the requisite agreement to support her § 1985(3) conspiracy claim. *Id*. at 12-15. In further support of Plaintiff's Motion, Plaintiff argues that several viable claims were already identified in the D&O, Plaintiff's Reply at 2-5, Plaintiff has adequately pleaded a conspiracy claim pursuant to § 1985(3), *id*. at 5-8, and that the newly asserted facts in the Proposed SAC sufficiently allege Defendants' direct involvement in her §1983 claims against the Individual Defendants. *Id*. at 8.

**2.     Employment Discrimination Claims under Title VII, NYHRL, and § 1983**

Plaintiff's employment discrimination claims are brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII"), New York State Human Rights Law, NY. Exec. Law § 296 ("NYSHRL"), and 42 U.S.C. § 1983 ("§ 1983") for a Fourteenth Amendment Equal Protection Clause violation. Although there are differences in the claims, at the pleading stage, the same elements apply to employment discrimination claims brought pursuant to Title VII, NYSHRL, and § 1983. *See Guity v. Uniondale Union Free Sch. Dist.*, 2017 WL 9485647, at *13 (E.D.N.Y. Feb. 23, 2017) (citing cases), *report and recommendation adopted*, 2017 WL 1233846 (E.D.N.Y. Mar. 31, 2017). Further, discrimination claims under Title VII, § 1983, and NYSHRL, as relevant here, can be for disparate treatment based on sex, hostile work environment, or retaliation for complaining about discrimination. *Demoret v. Zagarelli*, 451 F.3d 140, 144 (2d Cir. 2006) (listing types of discrimination actionable under all three statutes), *overruled on other grounds by Burlington N. &. Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).

In the D&O (Dkt. 58), Judge Sinatra addressed motions to dismiss filed by Defendants with regard to the FAC (Dkt. 49).  In particular, with regard to Rosenbaum, Judge Sinatra found Plaintiff's claims for sexual harassment based on a hostile work environment, and retaliation, both asserted pursuant to § 1983 and NYSHRL could proceed, D&O at 22-23, 25-28, and that the scope of the hostile work environment included Rosenbaum's alleged misconduct dating back to 2005,[12] *id*.  at 17-21, but that Plaintiff failed to state a claim under a *quid pro quo* theory because Plaintiff did not allege she was subjected to a change in the terms or conditions of her employment for refusing to submit to Rosenbaum's sexual demands.  *Id*. at 23-25.  In opposing Plaintiff's Motion, Rosenbaum does not assert any challenge to such claims, but only to the newly asserted conspiracy claim.  With regard to State Court Defendants, Judge Sinatra found the Title VII claims for sex-based employment discrimination claims could continue to the extent the claims are based on conduct after Rosenbaum's resignation on December 31, 2019, but prior to that date, such claims are barred by Title VII's "personal staff" exemption.  D&O at 41-47.  Here, State Court Defendants argue in opposition to Plaintiff's Motion that as stated in the Proposed SAC, the claims asserted against State Court Defendants are barred because UCS, on behalf of itself and the other State Court Defendants, provided Plaintiff with a reasonable avenue of complaint, to wit, an anti-discrimination policy for the reporting and redress of employees' discrimination complaints, and the allegations of the Proposed SAC establish State

---

[12] The court notes that in determining that all of the alleged sexually harassing conduct to which Defendant Rosenbaum subjected Plaintiff were part of the same hostile work environment even though the sexually harassing conduct to which Rosenbaum allegedly subjected Plaintiff between 2005 and 2009 differed in form and severity form the sexually harassing conduct between 2009 and 2019, the court found that all of the acts were sexual in nature and occurred on a consistent basis thereby constituting a continuing violation of Plaintiff's rights.  D&O at 19.

Court Defendants timely responded to Plaintiff's complaints of a hostile work environment.  As regards the Individual Defendants, in the FAC, Plaintiff asserted claims for a denial of equal protection in violation of § 1983, and sex discrimination in violation of NYSHRL.  In the D&O, Plaintiff's claims for money damages were dismissed against the Individual Defendants in their official capacities as barred by Eleventh Amendment immunity, D&O at 29-30, Plaintiff's § 1983 claims against the Individual Defendants were dismissed, without prejudice and with leave to replead, as insufficiently pleaded because Plaintiff alleged only a failure to act rather than that such Defendants were personally involved in the alleged harassment and retaliation, *id*. at 31-35, but that Plaintiff's NYSHRL claims seeking to hold Individual Defendants liable not as employers, but for aiding and abetting Rosenbaum in his alleged discriminatory conduct toward Plaintiff were sufficiently pleaded and, thus, were not dismissed.  *Id*. at 36-41.  Here, Individual Defendants argue in opposition to Plaintiff's Motion that the deficiencies of the FAC are not cured by the Proposed SAC which fails to allege the personal involvement of the Individual Defendants in any constitutional violation necessary to state a § 1983 claim, Individual Defendants' Response at 4-10, Allen opposes all proposed claims against her as time-barred, *id*. at 10-11, and Grant and Grimaldi argue no viable NYSHRL claim is alleged against them, *id*. at 11-12, despite the D&O's holding that the NYSHRL claims were viable against the Individual Defendants.  D&O at 36-41.

3.    **Title VII**

The First Cause of Action in the Proposed SAC asserts discrimination on the basis of sex in violation of Title VII against State Court Defendants and retaliation for

complaining about Rosenbaum's alleged sexually harassing conduct.  Proposed SAC

¶¶ 253-59 ("First Proposed Claim").[13]  In the D&O, the court dismissed this claim insofar

as it was based on allegations concerning Rosenbaum's behavior toward Plaintiff while

Plaintiff was employed as Rosenbaum's judicial secretary as such conduct fell within the

so-called "personal-staff" exemption to Title VII, pursuant to which the definition of

"employee" exempts "any person 'elected to public office in any state or political

subdivision of any state by the qualified voters thereof,'" as well as "'any person chosen

by such officer to be on such officer's personal staff.'"  D&O at 42 (quoting 42 U.S.C. §

2000e(f)).  Because Plaintiff, until Rosenbaum's resignation of his judicial position on

December 31, 2019, worked on Rosenbaum's personal staff as a judicial secretary

while Rosenbaum served in an elected public office as a New York State Supreme

Court Justice, the D&O found Plaintiff fit the definition of "personal staff" for purposes of

42 U.S.C. § 2000e(f) and, as such, was barred from bringing her Title VII claims against

the State Court Defendants while she remained employed in that position, *i.e.*, prior to

Rosenbaum's resignation from his judicial position on December 31, 2019, at which

time Plaintiff's job as Rosenbaum's secretary ended.  D&O at 47.  Plaintiff's claims

pertaining to allegations after Rosenbaum's resignation on December 31, 2019,

however, were allowed to proceed.  *Id*.

In opposing Plaintiff's Motion seeking leave to file the Proposed SAC, State Court

Defendants newly argue that the UCS maintained a sexual harassment policy and

procedure ("the anti-discrimination policy"), which provided a reasonable avenue of

---

[13] Although the caption of Plaintiff's First Proposed Claim does not indicate that the claim is for retaliation as well as for sex-based discrimination, because Plaintiff alleges with regard to the claim that "[a]s an employee of Defendant UCS, Plaintiff was entitled to a workplace free of sexual harassment and retaliation," the court construes Plaintiff's First Proposed Claim as alleging such actionable misconduct.

relief so as to insulate State Court Defendants from Plaintiff's Title VII claim. State Court Defendants' Response at 12. The cases on which State Court Defendants rely in support of their argument are, however, inapposite.

In particular, the instant case is before the court on Plaintiff's motion seeking leave to file a second amended complaint for which leave is to be granted unless the Proposed SAC could not withstand a motion to dismiss because the claim Plaintiff seeks to assert against the State Court Defendants would be futile. In contrast, in *Polo v. Xerox*, 2014 WL 317171 (W.D.N.Y. Jan. 28, 2014) ("*Polo*"), on which State Court Defendants rely, State Court Defendants' Response at 12, an employment discrimination action also was before the court on summary judgment. The court dismissed the plaintiff's employment harassment claim alleging harassment based on gender against the employer because there was no basis to impute the alleged harassment to the employer where the undisputed evidence established both that the employer "had an anti-discrimination policy in place and enforced that policy." *Polo*, 2014 WL 317171, at * 6. In contrast, in the instant case, although Plaintiff alleges in the Proposed SAC that Defendant UCS maintained the anti-discrimination policy that is applicable to each of the State Court Defendants, Morales Declaration ¶¶ 2-5, and filed a copy of the anti-discrimination policy, State Court Defendants' Exh. A (Dkt. 71-1), there is no evidence that State Court Defendants enforced the policy. In fact, the essence of Plaintiff's claims against the State Court Defendants is that despite the existence of the anti-discrimination policy, it was not enforced. *See*, *e.g.*, Proposed SAC ¶ 6 ("It was not until Plaintiff went outside the formally established complaint procedures in 2019, and information concerning her complaint reached the Office of

Court Administration's Work Safety Office, that the complaint was finally forwarded to the Commission on Judicial Conduct, which promptly investigated and arranged the removal of Defendant Rosenbaum from his judicial office."). Accordingly, *Polo* does not support State Court Defendants' contention.

Similarly, *Andrus v. Corning, Inc.*, 2016 WL 5372467 (W.D.N.Y. Sept. 26, 2016) ("Andrus"), on which State Court Defendants also rely, State Court Defendants' Response at 12, was a sex-based employment discrimination case before the court on summary judgment. In dismissing the plaintiff's employment discrimination claims against the defendant employer, the court held not only that it was undisputed that the employer maintains a code of conduct that provided several avenues of redresss for the type of workplace discrimination for which the plaintiff was suing, but that the plaintiff was also aware of the code of conduct having attended training on the policy and admitted she understood the policy's terms and conditions. *Andrus*, 2016 WL 5372467, at * 6. In contrast, in the instant case, Plaintiff alleges she was unaware of State Court Defendants' antidiscrimination policy at least until 2009, *see*, *e.g.*, Proposed SAC ¶ 75 ("Plaintiff was not aware of the existence nor of the mandates [concerning the anti-discrimination policy] of Defendant OIG, nor of the Commission on Judicial Conduct when she was hired."); ¶ 76 ("Plaintiff was not provided training on sexual harassment and complaining about sexual harassment by Defendants UCS and OCA from 2005 through 2008."), ¶ 79 ("Defendant Taddeo did not inform Plaintiff of the existence of the Commission on Judicial Conduct nor did Defendant Taddeo advise Plaintiff during the period 2015 to October 29, 2019, that Plaintiff had the right to complain to the Judicial Conduct Commission about Defendant Rosenbaum's conduct"), and thereafter, even if

Plaintiff were aware of the anti-discrimination policy, the employer did nothing about the alleged harassment. *See*, *e.g.*, Proposed SAC ¶ 72 ("Defendant Taddeo and Defendant Pawleczak did not report Defendant Rosenbaum's conduct described [by Plaintiff] to Defendant OIG or to the Commission on Judicial Conduct at any time between 2005 and 2019."). Accordingly, *Andrus* does not support State Court Defendants' argument.

State Court Defendants' further reliance on *Lewis v. Snow*, 2003 WL 22077457 (S.D.N.Y. Sept. 8, 2003) ("*Lewis*"), State Court Defendants' Response at 12, is also to unavailing. Specifically, the undisputed evidence in *Lewis*, which was also before the court on summary judgment, showed not only that the defendant employer provided a reasonable avenue for complaints about hostile work environments, but that the employer took corrective action pursuant to the policy based on the plaintiff's complaints. *Lewis*, 2003 WL 22077457, at * 9. Because the Proposed SAC alleges that neither Defendant Justice Taddeo nor Pawelczak took any action in response to Plaintiff's complaint, *Lewis* thus fails to support State Court Defendants' argument.

State Court Defendants alternatively argue that the facts alleged in the Proposed SAC fail to establish a viable hostile work environment claim insofar as Plaintiff, on October 29, 2019, reported to UCS about the hostile work environment to which Plaintiff was subjected while working for Rosenbaum, following which UCS requested additional information from Plaintiff which was forwarded to OIG and the CJC, both of which immediately commenced investigations including interviewing Plaintiff in December 2019, after which Rosenbaum agreed to resign from judicial office and never again seek judicial office. State Court Defendants' Response at 12-16. Because the personal staff

exemption prohibits Plaintiff from establishing Title VII liability against State Court Defendants prior to December 31, 2019, State Court Defendants maintain Plaintiff has essentially pleaded herself out of court on the Title VII claim.  *Id*.  State Court Defendants, however, ignore that Plaintiff's claims following December 31, 2019, are not predicated on Rosenbaum's sexually harassing behavior but, rather, on the conduct of various State Court Defendants' employees in failing to locate for Plaintiff an assignment as a Court Analyst, including initially telling Plaintiff she should not work in the Hall of Justice where Plaintiff worked for Rosenbaum, insisting instead Plaintiff work in Rochester City Court, for which there were no available Court Analyst positions. Meanwhile, Plaintiff remained on leave, not all of which was paid, until August 2021 when Plaintiff was finally assigned to a Court Analyst position in Family Court, which was located in the Hall of Justice.

Therefore, the record establishes State Court Defendants maintained a policy against sex-based employment discrimination, which policy, if enforced, would have been a reasonable avenue to redress Plaintiff's complaints about the alleged conduct for which Plaintiff sues.  Nevertheless, Plaintiff alleges both that she initially was unaware of the policy and, further, that once Plaintiff complained in 2007 about Rosenbaum's conduct, no action was taken to correct the alleged offensive conduct such that the policy was not enforced plausibly constituting continuing retaliation by State Court Defendants.  Plaintiff's Motion is thus GRANTED with regard to her Title VII claim asserted against State Court Defendants.

**4.   § 1983**

The Second Cause of Action in the Proposed SAC asserts against the Individual Defendants § 1983 claims based on a denial of equal protection under the Fourteenth Amendment and the right to petition the government for the redress of grievances in violation of the First Amendment.  Proposed SAC ¶¶ 260-71 ("Second Proposed Claim").  In opposing Plaintiff's Motion, Individual Defendants argue that Plaintiff has failed to allege the requisite personal involvement of each of the Individual Defendants in the asserted denial of equal protection as required for a viable § 1983 claim. Individual Defendants' Response at 3-10.  In Plaintiff's Reply filed in further support of her motion to amend, Plaintiff argues only that the newly asserted factual allegations set forth in the Proposed SAC sufficiently allege the Individual Defendants' direct involvement in the violation of Plaintiff's right to equal protection.  Plaintiff's Reply at 8.

Insofar as Plaintiff presents her § 1983 claim as a violation of the Fourteenth Amendment's Equal Protection Clause, in the realm of employment discrimination, a claimed equal protection violation is equivalent to a Title VII disparate treatment claim. *Naumovski v. Norris*, 934 F.3d 200, 212 (2d Cir. 2019).  *See Annis v. Cnty. of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998) ("An employee is denied her equal protection right to be free from gender discrimination when she is treated differently from other similarly situated employees, thus suffering 'disparate treatment because of gender.'") (quoting *Saulpaugh v. Monroe Community Hosp.,* 4 F.3d 134, 144 (2d Cir.1993)).  "A plaintiff who claims sex discrimination in public employment in violation of the Fourteenth Amendment may bring suit pursuant to § 1983." *Naumovski*, 934 F.3d at 212.

"To state a claim under § 1983, a plaintiff must allege two elements: (1) 'the violation of a right secured by the Constitution and laws of the United States,' and (2) 'the alleged deprivation was committed by a person acting under color of state law.'" *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87–88 (2d Cir. 2015) (quoting *Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004) (further internal quotation omitted)). A state employee acting in his official capacity is acting "under color of state law." *Id.* at 88 (quoting *Feingold*, 366 F.3d at 159). Assuming, *arguendo*, the color of law requirement is met, a plaintiff's equal protection claim then parallels a Title VII claim, except that instead of a Title VII claim, a § 1983 claim can be brought against an individual. *Id.* "Thus, for a § 1983 discrimination claim to survive a motion for judgment on the pleadings or a motion to dismiss, a plaintiff must plausibly allege a claim under the same standards applicable to a Title VII claim - and that the adverse action was taken by someone acting 'under color of state law.'" *Id.* In particular, like Title VII, a § 1983 equal protection claim "requires a plaintiff asserting a discrimination claim to allege two elements: (1) the employer discriminated against him (2) because of his race, color, religion, sex, or national origin." *Vega*, 801 F.3d at 85.

As relevant here, "an employer discriminates against a plaintiff by taking an adverse employment action against him." *Vega*, 801 F.3d at 85. "'A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment.'" *Id.* (quoting *Galabya v. N.Y.C. Bd. of Educ.,* 202 F.3d 636, 640 (2d Cir.2000) (*opinion superseded on other grounds by Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 45 (2d Cir. 2019) (internal quotation marks omitted)). "'An adverse employment action is one which is more disruptive than a mere

inconvenience or an alteration of job responsibilities.'" *Id*. (quoting *Terry v. Ashcroft,* 336 F.3d 128, 138 (2d Cir.2003) (internal quotation marks omitted). "'Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation.'" *Id*. (quoting *Terry*, 336 F.3d at 138). *See also Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 71-72 (2d Cir. 2019) (accord). The second element requires the adverse employment action occur because of the plaintiff's protected characteristic including, *inter alia*, sex. *Id*. "[A]n action is "because of" a plaintiff's race, color, religion, sex, or national origin where it was a "substantial" or "motivating" factor contributing to the employer's decision to take the action. *Id*. (citing cases).

Here, it is undisputed that Plaintiff alleges she was subjected to unlawful conduct in her employment because of her sex, satisfying the second required element to state a disparate treatment claim in violation of the Fourteenth Amendment Equal Protection Clause. With regard to the first element, however, Plaintiff has failed to allege the requisite adverse employment action because none of the objectionable conduct of which Plaintiff complains resulted in any disciplinary action, reduction in salary or benefits, or other job responsibilities. *See Fox*, 918 F.3d at 72 (granting summary judgment in favor of defendant on the plaintiff's disparate treatment claim where the plaintiff failed to establish he suffered any adverse employment action). Accordingly, the Proposed SAC does not plausibly allege against Individual Defendants a Fourteenth Amendment equal protection claim based on disparate treatment because of her sex.

Plaintiff also asserts her § 1983 employment discrimination claim based on Individual Defendants' retaliating against her for complaining of Rosenbaum's sexually harassing conduct in violation of the First Amendment.  Although no Defendants argue in opposition to this portion of Plaintiff's Motion, the court addresses it in the interest of completeness.

Pursuant to § 1983, a plaintiff may "sue municipal entities (and municipal officials in their personal capacities) for deprivations of constitutional rights."   *Quinones v. City of Binghamton*, 997 F.3d 461, 466 (2d Cir. 2021) (citing 42 U.S.C. § 1983 and *Nagle v. Marron*, 663 F.3d 100, 116 (2d Cir. 2011)).  "One right enforceable through section 1983 is the First Amendment's guarantee of freedom of speech, which 'prohibits [the government] from punishing its employees in retaliation for the content of their protected speech.'"  *Id.* (quoting *Locurto v. Safir*, 264 F.3d 154, 166 (2d Cir. 2001)).  Speech by a public employee "is protected by the First Amendment when 'the employee spoke as a private citizen and . . . the speech at issue addressed a matter of public concern.'"  *Id.* (quoting *Montero v. City of Yonkers*, 890 F.3d 386, 393 (2d Cir. 2018)).  "'To constitute speech on a matter of public concern, an employee's expression must be fairly considered as relating to any matter of political, social, or other concern to the community.'"  *Id.* (quoting *Montero*, 890 F.3d at 399).  Significantly, "speech that is 'calculated to redress personal grievances - even if touching on a matter of general importance - does not qualify for First Amendment protection.'"  *Id.* (quoting *Montero*, 890 F.3d at 400).  "Likewise, the First Amendment does not protect speech that 'principally focuses on an issue that is personal in nature and generally related to the speaker's own situation.'"  *Id.* at 467 (quoting *Montero*, 890 F.3d at 399).  In the instant

case, Plaintiff asserts her First Amendment retaliation claim based on speech that was intended to redress her own personal grievances, rather than for a "broader public purpose" such as to call into question Rosenbaum's fitness for judicial office, thereby confirming that Plaintiff "did not speak on a matter of public concern." *Quinones*, 997 F.3d at 467 (dismissing First Amendment retaliation claim against the plaintiff who alleged claims of employment discrimination based on race, because the speech on which the plaintiff relied in asserting his retaliation claim was made during a meeting with his superiors regarding the plaintiff's employment discrimination claims and their asserted effects on the plaintiff's career).  Plaintiff Second Proposed Claim thus fails to state a First Amendment retaliation claim.

Plaintiff's Motion is DENIED as to Plaintiff's § 1983 claims.

**3.    NYSHRL**

The Fourth Cause of Action in the Proposed SAC asserts sex discrimination and sexual harassment in violation of NYSHRL by Rosenbaum and the Individual Defendants.  Proposed SAC §§ 277-85 ("Fourth Proposed Claim").  The allegations of the Proposed SAC particularly assert the Individual Defendants violated the NYSHRL by aiding and abetting Rosenbaum in sexually harassing Plaintiff, Proposed SAC ¶ 282, and that such conduct was "taken pursuant to a policy or practice designed and implemented to protect judges from discipline or any other adverse action in response to the judges' violation of laws prohibiting sexual harassment and/or sexual discrimination."  *Id*. ¶ 283.  Claims for sexual harassment in the workplace violate claims brought under a hostile work environment theory under the NYSHRL are judged by the same standard as federal Title VII federal counterparts, *Summa v. Hofstra Univ.*, 708

F.3d 115, 123–24 (2d Cir. 2013), with "[o]ne notable exception" that unlike a Title VII claim where an individual defendant may not be held personally liable, "an individual defendant may be held liable under the aiding and abetting provision of the NYSHRL if he actually participates in the conduct giving rise to a discrimination claim."  *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 107 n.10 (2d Cir. 2011) (quoting *Torres v. Pisano*, 116 F.3d 625, 629 n. 1 (2d Cir. 1997).  *See* N.Y.Exec.Law § 296(6) (providing that it shall be an unlawful discriminatory practice "for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or attempt to do so.").  "[T]his language allow[s] a co-worker who 'actually participates in the conduct giving rise to a discrimination claim' to be held liable under the NYSHRL even though that co-worker lacked the authority to either hire or fire the plaintiff." *Feingold*, 366 F.3d at 158 (quoting *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1317 (2d Cir. 1995)).  Further, "for a defendant to be liable as an aider and abettor under § 296(6) of the NYSHRL, a plaintiff must first establish the existence of a primary violation of the NYSHRL by an employer or principal."  *Alvarado v. United Hospice, Inc.*, ___ F.Supp.3d ___, 2022 WL 4485379, at *21 (S.D.N.Y. Sept. 27, 2022) (citing *Forrest v. Jewish Guild for the Blind*, 819 N.E.2d 998, 1013 (N.Y. 2004).

Workplace sexual harassment claims violate NYSHRL's prohibition against sex discrimination when such harassment constitutes either a hostile work environment or *quid pro quo* sexual harassment.  Here, the Proposed SAC alleges only hostile work environment.[14]  "To establish a hostile work environment . . ., a plaintiff must show that

---

[14] In the D&O, it was determined that the FAC did not sufficiently allege sexual harassment on a theory of *quid pro quo* harassment because Plaintiff failed to allege any tangible adverse employment action for refusing to submit to Rosenbaum's sex demands.  D&O at 14, 23-25.  The allegations of the Proposed SAC also do not allege *quid pro quo* sexual harassment which requires that "the supervisor used the

'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Littlejohn v. City of New York*, 795 F.3d 297, 320 (2d Cir. 2015) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)).  The hostile work environment test has both objective and subjective elements.  "[T]he conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive."  *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014) (citing *Harris*, 510 U.S. at 21–22).  To survive a motion to dismiss, a plaintiff must allege facts showing "she was faced with 'harassment . . . of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse.'" *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (quoting *Terry*, 336 F.3d at 148).

The NYSHRL claim asserted in the Proposed SAC are not challenged by Rosenbaum but only by three of the Individual Defendants including Allen who maintains such claim is time-barred because Allen is not alleged to have been involved after November 20, 2007, with Plaintiff's requests for assistance in dealing with Rosenbaum's conduct toward Plaintiff, Individual Defendants' Response at 10-11, and by Grant and Grimaldi who argue the Proposed SAC does not allege that either of them was aware of the alleged discrimination while it was ongoing, such that neither can be

---

employee's acceptance or rejection of his advances as the basis for a decision affecting the compensation, terms, conditions or privileges of the employee's job."  *Karibian v.Columbia Univ.*, 14 F.3d 773, 777-78 (2d Cir. 1994) (citing cases).  The parties do not argue otherwise.

held liable as an aider and abettor.[15]  *Id*. at 11-12.  In further support of her motion,

Plaintiff argues her NYSHRL claim is not time-barred as asserted against Allen because

in the D&O, Judge Sinatra found Plaintiff adequately pleaded a continuing violation

based on a hostile work environment theory.  Plaintiff's Reply at 4.  With regard to

Individual Defendants Grant and Grimaldi, Plaintiff argues the alleged unlawful conduct

in violation of the NYSHRL continued insofar as both Grant and Grimaldi continued after

Rosenbaum's resignation to stonewall Plaintiff's efforts to be reassigned within the UCS

as a form of actionable retaliation.  *Id*. at 4-5.

As stated, *see* Discussion, *supra*, at 36, in the D&O, Plaintiff was found to have

sufficiently alleged against Individual Defendants a hostile work environment claim

under the NYSHRL based on a theory of aiding and abetting the hostile work

environment created by Rosenbaum's alleged sexually harassing behavior toward

Plaintiff.  D&O at 38-39.  Further, the D&O specifies that the sufficiently alleged aiding

and abetting employment discrimination claim extended to the hostile work environment

which existed "'[b]etween 2005 and 2019,'" D&O at 38 (quoting FAC ¶ 154; brackets in

FAC), as well as "'[f]rom 2019 to August 6, 2021,'" *id*. at 39 (quoting FAC ¶ 157;

brackets in FAC), during which time Individual Defendants "'delayed acting on Plaintiff's

complaints, and failed to inform Plaintiff of the progress of the investigation, and of

efforts to remedy her situation,'" *id*., which alleged actions "'were taken pursuant to a

policy or practice designed and implemented to protect judges from discipline or any

other adverse action in response to the judges' violation of laws preventing sexual

harassment and/or sexual discrimination.'"  *Id*. at 40 (quoting FAC ¶ 182.).  This time-

---

[15] The court notes these challenges to the NYSHRL Claim were not previously raised and, thus, were not before Judge Sinatra and therefore not addressed in the D&O.

frame encompasses Plaintiff's NYSHRL claim against Defendant Allen, even though Plaintiff alleges no incidents of unlawful conduct with regard to Allen after November 20, 2007.  *See* Proposed SAC ¶¶ 115-29 (alleging Plaintiff met with Allen, the Court's Head of Human Resources, on November 20, 2007, and complained about Rosenbaum's conduct and requested Allen's assistance, but although Allen was obligated pursuant to the sex discrimination policy to provide Plaintiff with a complaint form, Allen did not do so but instead threatened to fire Plaintiff if the complaints continued even though Allen had no authority to fire Plaintiff).  Accordingly, Plaintiffs' Motion should be GRANTED as to Allen.

With regard to Defendant Grant, in the Proposed SAC, Plaintiff alleges her contact with Grant commenced on November 21, 2007, when Plaintiff filed her first discrimination complaint with OIG, which Grant never investigated.  Proposed SAC ¶¶ 131-34.  Similarly, Plaintiff's second discrimination complaint was submitted to OIG on January 8, 2018, which Grant again failed to investigate.  *Id.* ¶¶ 151-53.  As Individual Defendants concede, Individual Defendants' Response at 11-12, it is alleged in the Proposed SAC that Grant first contacted Plaintiff by telephone on December 11, 2019, at which time Grant advised Plaintiff the third discrimination complaint which Plaintiff submitted to OIG in November 2019, was being forwarded to the CJC.  Proposed SAC ¶¶ 193-94.  On January 15, 2020, after Rosenbaum's resignation, Plaintiff met in person with Grant who initially denied Plaintiff had previously complained about Rosenbaum but, after Plaintiff provided Grant with the dates of her complaints, stated OIG "had 'lost' Plaintiff's prior complaints."  *Id.* ¶¶ 200-04.  Grant then "suggested to Plaintiff that she had 'asked for' the treatment she received because of how she dressed."  *Id.* ¶ 205.

Plaintiff further alleges Grant failed to file proper procedures by interviewing Rosenbaum before Plaintiff and her witnesses, *id.* ¶ 208, and when Grant did interview Plaintiff's witnesses, which included Plaintiff's elderly mother and a second, unidentified witness, Grant attempted to twist the witnesses' words so as to substitute his own version of the events for Plaintiff's and to intimidate Plaintiff for bringing the third discrimination complaint against Rosenbaum.  *Id.* ¶¶ 209-12.

With regard to Grimaldi, the Proposed SAC fails to allege any unlawful conduct involving Grimaldi until February 2020, after Rosenbaum's resignation, when Grimaldi telephoned Plaintiff and advised Grimaldi would identify a job to which Plaintiff would be reassigned, and Grimaldi would contact Plaintiff with the new job assignment. Proposed SAC ¶¶ 219-20.  Grimaldi again contacted Plaintiff in February and March 2020, but only to advise a specific assignment for Plaintiff had yet to be located and that because Grimaldi did not believe Plaintiff would be "safe" working in the Hall of Justice, Grimaldi was seeking a position for Plaintiff in the Criminal Division of Rochester City Court.  *Id.* ¶¶ 221-23.  After the March 2020 telephone conversation, Plaintiff did not again hear from Grimaldi even though Plaintiff later learned the Court Analyst position in Family Court to which Plaintiff was assigned in August 2021, was available in March 2020.  *Id.* ¶¶ 224, 232-33, 342.

Prior to December 31, 2019, Rosenbaum was the only one with the authority to make decisions affecting Plaintiff's employment.  After Rosenbaum's resignation on December 31, 2019, Rosenbaum ceased to be Plaintiff's employer and thus had no authority to hire or fire Plaintiff, yet Plaintiff remained within the employ of Defendant UCS.  Insofar as Plaintiff has stated a plausible employment discrimination claim

against Defendant Rosenbaum, while Plaintiff remained in Rosenbaum's employ, until December 31, 2019, when Rosenbaum resigned, Grant can be liable for aiding and abetting Rosenbaum.  After Defendant's resignation on December 31, 2019, however, none of the Individual Defendants can be liable for aiding and abetting the hostile work environment created by Rosenbaum.  Further, although the alleged conduct of both Grant and Grimaldi following Rosenbaum's resignation, specifically, in failing to advise Plaintiff of an available Court Analyst position in Family Court for more than one year after Rosenbaum resigned, requiring Plaintiff to exhaust all accrued leave and eventually be placed on unpaid, involuntary leave, all to the detriment of Plaintiff, can be plausibly construed as aiding and abetting the State Court Defendants, because no NYSHRL claim is alleged against the State Court Defendants as principal actors, none of the Individual Defendants can be held liable for aiding and abetting such conduct. *See Boonmalert v. City of New York*, 721 Fed.Appx. 29, 34 (2d Cir. 2018) ("Since there is no underlying NYSHRL . . . violation, there was no aiding or abetting of acts forbidden by the NYSHRL . . .") (citing *Feingold*, 366 F.3d at 158).  Accordingly, the Proposed SAC fails to state a claim under NYSHRL for aiding and abetting the creation of a hostile work environment after December 31, 2019, by Individual Defendants.

Plaintiff's Motion is GRANTED as to the request to file the Proposed SAC asserting the NYSHRL claims against Rosenbaum and the Individual Defendants as aiders and abettors for conduct occurring prior to Rosenbaum's resignation from judicial office position on December 31, 2019, but is DENIED as to the Individual Defendants' liability as aiders and abettors after December 31, 2019.

6.      **Conspiracy - § 1985**

The Third Cause of Action in the Proposed SAC asserts Defendants

Rosenbaum, Pawelczak, Justice Taddeo, Allen, and Fields[16] conspired to violate

Plaintiff's civil rights in violation of 42 U.S.C. § 1985(3).  Proposed SAC ¶¶ 272-76

("Third Proposed Claim").  In opposition to Plaintiff's Motion, Defendant Rosenbaum

argues the Proposed SAC fails to allege the requisite agreement, either explicit or tacit,

to establish a conspiracy to deprive Plaintiff of any federal rights or benefits.

Rosenbaum Response at 1-1.  Individual Defendants likewise argue the newly

proposed conspiracy claim is too conclusory and speculative and, thus, fails to allege

the requisite agreement, Individual Defendants' Response at 12-14, as well as that even

if an agreement is sufficiently alleged, the claim violates the so-called "intra-corporate

conspiracy doctrine."  *Id*. at 14-15.  In further support of her motion, Plaintiff argues the

Proposed SAC adequately alleges Defendants Rosenbaum, Pawelczak, Justice

Taddeo, Allen, Fields, Grant and Grimaldi had a "tacit understanding" that they would

prevent Plaintiff from complaining about Rosenbaum's sexually harassing conduct and

carried out numerous acts in furtherance of that goal, Plaintiff's Reply at 6-7, and that

the alleged conduct of Defendants Pawelczak, Justice Taddeo, Allen, Fields, Grant, and

Grimaldi establish their conduct qualifies for the "personal interest" exception to the

intra-corporate conspiracy doctrine.[17]  *Id*. at 7-8.

Pursuant to 42 U.S.C. § 1985(3) ("§ 1985(3)"), it is unlawful for "two or more

persons in any state . . . [to] conspire . . . for the purpose of depriving, either directly or

---

[16] The Third Proposed Claim is not asserted against the State Court Defendants or Grant and Grimaldi.
[17] It is not clear from the record why Plaintiff, in further support of her motion, argues the Proposed SAC adequately alleges a § 1985(3) conspiracy claim against Defendants Grant and Grimaldi when the Proposed Third Claim is not asserted against them.  *See* Proposed SAC ¶¶ 272-76.

indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." *Herrmann v. Moore*, 576 F.2d 453, 456–57 (2d Cir. 1978).  The elements of a claim under § 1985(3) include: "'(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, . . . ; (3) an act in furtherance of the conspiracy; (4) whereby a person is . . . deprived of any right of a citizen of the United States.'" *Brown v. City of Oneonta, New York*, 221 F.3d 329, 341 (2d Cir. 2000) (quoting *Mian v. Donaldson, Lufkin, & Jenrette Securities Corp.,* 7 F.3d 1085, 1087 (2d Cir. 1983)) (alterations in *Brown*).  "[T]he conspiracy must also be motivated by 'some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action.'" *Mian*, 7 F.3d at 1088 (quoting *United Bhd. of Carpenters, Local 610 v. Scott,* 463 U.S. 825, 828–29 (1983)).  "Establishment of a § 1985(3) claim requires proof of a conspiracy between 'two or more persons.'" *LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 427 (2d Cir. 1995) (quoting 42 U.S.C. § 1985(3)).  "A conspiracy, for these purposes, need not be shown by proof of an explicit agreement but can be established by showing that the 'parties have a tacit understanding to carry out the prohibited conduct.'" *Id*. (quoting *United States v. Rubin*, 844 F.2d 979, 984 (2d Cir. 1988), and citing cases).  Further, to sufficiently allege a conspiracy, the Plaintiff must "provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb v. Goord,* 340 F.3d 105, 110 (2d Cir. 2003)).   The Second Circuit instructs that "a plaintiff alleging a conspiracy under § 1985(3) must allege, with at least some degree of particularity, overt acts which defendants engaged in which were reasonably related to

the promotion of the claimed conspiracy." *Thomas v. Roach*, 165 F.3d 137, 147 (2d Cir.

1999) (citing *Powell v. Workmen's Compensation Board,* 327 F.2d 131, 137 (2d

Cir.1964).  Otherwise, the allegations are too vague and conclusory and fail to establish

the existence of an agreement among the defendants to deny the plaintiff a

constitutional right.  *Id*.  In the instant case, the Proposed SAC sufficiently alleges the

requisite agreement and overt acts for a conspiracy to deprive Plaintiff of her

constitutional rights so as to state a § 1985(3) conspiracy claim.

In particular, the Proposed SAC alleges that Rosenbaum, "frequently met" in

private with Defendants Pawelczak, Allen, and Justice Taddeo, *see* Proposed SAC ¶ 66

(Justice Taddeo), ¶ 68 (Pawelczak), ¶ 114 (Allen), that Defendants Pawelczak and

Fields discussed with Rosenbaum and reported their conversations with Plaintiff, *id*. ¶¶

160, 162, and that after meeting with Plaintiff to discuss Plaintiff's complaints about

Rosenbaum, Fields memorialized the conversation in an e-mail to Rosenbaum.  *Id*. ¶

170.  Without more, these allegations would be too conclusory to satisfy the required

element of an "agreement."  *See Butcher v. Wendt*, 975 F.3d 236, 241 (2d Cir. 2020)

(conclusory and speculative claims of an agreement are insufficient to support § 1983

conspiracy claim).  Nevertheless, the Proposed SAC also contains a plethora of

allegations providing a factual basis supporting there was a meeting of the minds that

such Defendants entered into either an explicit or tacit agreement to violate Plaintiff's

rights.  *See Webb,* 340 F.3d at 110.  Specifically, Plaintiff alleges that when she

complained about the sexual harassing conduct to which Rosenbaum repeatedly

subjected Plaintiff, the Individual Defendants repeatedly refused to recommend Plaintiff

use the available avenues of relief, *see, e.g.*, Proposed SAC ¶¶ 74-81 (alleging when

Plaintiff reported Rosenbaum's sexually harassing conduct to Justice Taddeo, Justice

Taddeo failed to either inform Plaintiff of the existence of OIG or to advise Plaintiff had a

right to complain about such conduct), and ¶¶ 114-24 (alleging Defendant Allen was the

"gatekeeper" of access to the State Courts' complaint process, yet failed to provide

Plaintiff with information necessary to file a complaint regarding Rosenbaum), actively

discouraged Plaintiff from pursuing such complaints, *id*. ¶¶ 84-85 (rather than assisting

Plaintiff in complaining about Rosenbaum's sexually harassing conduct, Justice Taddeo

encouraged Plaintiff to go to her chambers "any time Plaintiff needed to 'get away' from

Rosenbaum and to 'compose' herself"), deliberately delayed in following up on or

forwarding the complaints to OIG and OCA, Plaintiff did file, *id*. ¶¶ 124-29 (alleging Allen

thwarted Plaintiff's efforts to file a complaint regarding Rosenbaum and even threatened

to fire Plaintiff if Plaintiff persisted in her efforts to file such complaint), and refused to

assist Plaintiff in securing another position within the UCS, *id*. ¶¶ 219-33 (alleging

Defendant Grimaldi, for more than 15 months, failed to inform Plaintiff of a court analyst

position available in Family Court, during which time Plaintiff exhausted her leave and

had to take involuntary leave).  *Id*. ¶¶ 81, 84, 103.  *See Lalonde v. City of Ogdensburg*,

2023 WL 2537626, at * 17 (N.D.N.Y. Mar. 16, 2023) (denying defendants' motion to

dismiss the plaintiff's § 1985(3) conspiracy claim against the defendant police officers

who allegedly acted in concert in "intentionally and mockingly" refusing to accommodate

the plaintiff's disability, blindness and without certain muscles resulting from a flesh-

eating bacteria infection, in arresting the plaintiff, escorting the plaintiff to the police

department, ridiculing the plaintiff, and again refusing to accommodate the plaintiff's

disability by requiring him to stand facing the wall with his hands outstretched and

touching the wall while the defendants interrogated and booked him); and *Warburton v. Underwood*, 2 F.Supp.2d 306, 319 (W.D.N.Y. 1998) (finding the inmate plaintiff stated a conspiracy claim under § 1985(3) by alleging the defendants, employees of correctional facility, withheld the plaintiff's earned time allowance unless the plaintiff participated in Narcotics Anonymous program in violation of the First Amendment's Establishment Clause).  Significantly, in the instant case, none of the nefarious actions alleged in the Proposed SAC can be said to have been undertaken in furtherance of the employer's legitimate goals, particularly where, as here, Defendants Allen, Fields, Pawelczak, and Justice Taddeo had knowledge of the serious sexual abuse Plaintiff alleged against Rosenbaum.  Accordingly, Plaintiff has stated a plausible § 1985(3) conspiracy claim against Defendants Rosenbaum, Allen, Fields, Pawelczak, and Justice Taddeo.

Defendants Allen, Fields, Pawelczak, and Justice Taddeo alternatively argue that if the Proposed SAC states a § 1985(3) conspiracy claim, then such claim is barred by the "intra-corporate conspiracy doctrine."  Individual Defendants' Response at 14-15.  In reply, Plaintiff argues her § 1985(3) conspiracy claim qualifies for the "personal stake" or "personal interest" exception to the intra-corporate conspiracy doctrine.  Plaintiff's Reply at 7-8.

The "intra-corporate conspiracy doctrine" provides that the "officers, agents, and employees of a single corporate entity are legally incapable of conspiring together." *Hartline v. Gallo*, 546 F.3d 95, 99 n.3 (2d Cir. 2008) (internal citations and quotation marks omitted).  The Second Circuit routinely applies the intra-corporate conspiracy doctrine to § 1985 claims, *see Ali v. Connick*, 136 F. Supp. 3d 270, 282 (E.D.N.Y. 2015) (citing *Herrmann v. Moore,* 576 F.2d 453, 459 (2d Cir. 1978); and *Girard v. 94th St. &*

*Fifth Ave. Corp.,* 530 F.2d 66, 72 (2d Cir.1976)), and courts within the Second Circuit have applied the intra-corporate conspiracy doctrine where the corporate entity is a government entity.  *See Medina v. Hunt*, 2008 WL 4426748, at * 7-8 (N.D.N.Y. Sept. 25, 2008) (citing cases).  Because a conspiracy must involve at least two actors, if each of the actors involved in the conspiracy were acting as an agent of the same entity, then the acts complained of were not borne out by a conspiracy of individuals, but by a single corporate actor, thereby negating a conspiracy.  *Chamberlain v. City of White Plains*, 986 F.Supp.2d 363, 388 (S.D.N.Y. 2013).  An exception to the intra-corporate conspiracy doctrine, however, exists if all the alleged conspirators are "motivated by an improper personal interest separate and apart from that of their principal."  *Chamberlain*, 986 F. Supp. 2d at 388.  "For example, 'where law enforcement allegedly exercises official duties in unconstitutional ways . . . to secure personal benefit,' those law enforcement officers can enter a conspiracy."  *Id*. (citing *Alvarez v. City of N.Y.*, 2012 WL 6212612, at *3 (S.D.N.Y. Dec. 12, 2012)).  Fittingly enough, this exception is commonly referred to as the "personal stake" exception, and requires a plaintiff allege the defendants acted in their own interest and for reasons other than in the course of their regular job duties.  *Ali*, 136 F. Supp. 3d at 282-83.

In the instant case, the Proposed SAC alleges conduct which, if true, was in violation of the applicable policies, as well as contradictory to the interests of the State Court Defendants, and, as such, could not have been undertaken in furtherance of the relevant Defendants' job duties.  Plaintiff's allegations that when she spoke in 2007 to non-party Barnish in Human Resources about being assigned to another position, Barnish responded that no one within UCS would hire Plaintiff out of fear of

Rosenbaum, Proposed SAC ¶¶ 97-99, which reflected Barnish's awareness of the conspiracy, *id*. ¶ 100, *i.e.*, that the Individual Defendants were afraid of personal repercussions if they investigated Plaintiff's complaints about Rosenbaum.  Plaintiff alleges that in March of 2011, Rosenbaum was appointed the Supervising Judge of the Seventh Judicial District, the second-highest judicial administrator within the district, *id*. ¶ 142, and in October 2021, was appointed head of the Seventh Judicial District Commercial Division, which Plaintiff maintains was a "prestigious and powerful appointment."  *Id*. ¶ 143.  During the first half of 2019, subsequent to Rosenbaum's appointment as head of the Seventh Judicial District Commercial Division, Defendant Pawelczak became District Executive for the Seventh Judicial District.  *Id*.  ¶ 157. Plaintiff further alleges Defendants' actions in failing to investigate her complaints about Rosenbaum were intended to protect Rosenbaum from being removed from judicial office and adverse publicity.  *Id*.  ¶ 133.  Liberally construed, the Proposed SAC also alleges that Allen, Fields, Pawelczak, and Justice Taddeo acted to Plaintiff's detriment in order to avoid incurring adverse repercussions from Rosenbaum.  The Proposed SAC thus plausibly alleges Defendants acted out of a personal interest in protecting Rosenbaum against adverse consequences stemming from his sexual misconduct directed to Plaintiff.

Accordingly, the Proposed SAC states valid conspiracy claims pursuant to § 1985(3) against Defendants Rosenbaum, Allen, Fields, Pawelczak, and Justice Taddeo, and Plaintiff's motion is therefore GRANTED with regard to Plaintiff's Proposed Third Claim.

7.     **With Prejudice and Without Leave to Replead**

The court has denied Plaintiff's Motion with regard to Plaintiff's proposed § 1983 claims, and the NYSHRL claim based on conduct occurring after Rosenbaum's resignation from his judicial position on December 31, 2019.  Plaintiff's Motion does not seek leave to further amend should Plaintiff's Motion not be granted in its entirety and, upon its filing in accordance with this Decision and Order, the Proposed SAC will be the fourth complaint filed by Plaintiff in this action.  As Plaintiff does not dispute that Rosenbaum's resignation on December 31, 2019 ended the NYSHRL's aiding and abetting an employer requirement, Plaintiff cannot overcome this element of the NYSHRL claim.  Nor does it appear likely that Plaintiff can overcome the requirement regarding a similarly situated individual for the equal protection claim.  Accordingly, the denial of Plaintiff's Motion as to the proposed § 1983 equal protection claim and the NYSHRL claim based on conduct after December 31, 2019 is with prejudice and without leave to replead.  *See Board-Tech Electronic Co., Ltd. v. Eaton Corporation*, 737 Fed.Appx. 556, 561 (2d Cir. 2018) (citing *In re Am. Express Co. Shareholder Litig.*, 39 F.3d 395, 402 (2d Cir. 1994) (finding district court did not abuse discretion in denying leave to amend where the appellants had twice before amended the complaint before it was dismissed and did not seek leave to further replead in opposing the defendants' motion to dismiss)).  With regard to Plaintiff's newly alleged § 1983 First Amendment retaliation claim, however, Plaintiff may be able to allege sufficient facts to overcome the deficiency as found in the Proposed SAC.  The denial of Plaintiff's Motion with regard to the newly proposed § 1983 First Amendment retaliation claim is therefore without prejudice and with leave to replead.

## CONCLUSION

Based on the foregoing, Plaintiff's Motion (Dkt. 65), is GRANTED in part and DENIED in part.  Plaintiff's Motion is GRANTED as to the Title VII claim asserted against State Court Defendants, the NYSHRL claim against Rosenbaum and the Individual Defendants based on conduct occurring prior to Rosenbaum's resignation from his judicial position on December 31, 2019, and the § 1985 conspiracy claim, as well as to Plaintiff's request to discontinue the claims against Defendant Mary Aufleger; Plaintiff's Motion is DENIED as to Plaintiff's proposed § 1983 claims, and the NYSHRL claim based on conduct occurring after Rosenbaum's resignation from his judicial position on December 31, 2019.  The denial of Plaintiff's § 1983 Fourteenth Amendment equal protection claim and the NYSHRL claim based on conduct occurring after December 31, 2019 is with prejudice and without further leave to amend, but the denial of Plaintiff's § 1983 First Amendment retaliation claim is without prejudice and with leave to amend.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      May 30, 2023
                    Buffalo, New York