UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────────────

REBECCA KLYMN,

                Plaintiff,

vs.

MATTHEW ROSENBAUM,
MONROE COUNTY SUPREME COURT,
UNIFIED COURT SYSTEM OF THE STATE
OF NEW YORK, OFFICE OF COURT
ADMINISTRATION, OFFICE OF THE
MANAGING INSPECTOR GENERAL FOR
BIAS MATTERS, COSMAS GRANT,
RONALD PAWELCZAK, ANN MARIE
TADDEO, CAROLYN GRIMALDI,
MARGARET ALLEN, and AMY FIELDS,

                Defendants.

───────────────────────────────────────

INDIVIDUAL DEFENDANTS' RESPONSE
TO PLAINTIFF'S OBJECTIONS TO
DECISION AND ORDER

**21-CV-6488-JLS-LGF**

## PRELIMINARY STATEMENT

In a Decision and Order, filed May 30, 2023, Magistrate Judge Foschio granted in part and denied in part Plaintiff's motion to amend her complaint a second time. *See* Docket No. 74. The parties submitted objections. *See* Docket Nos. 78, 80, 81, & 82. Defendants Allen, Aufleger, Fields, Grant, Grimaldi, Pawelczak, and Taddeo ("Individual Defendants" or "Defendants" herein) now respectfully submit this memorandum of law in opposition to Plaintiff's objections. *See* Docket No. 82. As explained below, the Magistrate Judge did not err in denying on futility grounds Plaintiff's request to amend her complaint to include legally insufficient equal protection and retaliation claims against the Individual Defendants. And, as a preliminary matter, the Magistrate Judge did not exceed the authority granted by this Court in ruling on Plaintiff's motion to amend.

1

## ARGUMENT

**I.     The Magistrate Judge did not exceed his authority in ruling on Plaintiff's motion to amend.**

28 USC § 636(b)(1)(A) provides that this Court "may designate a magistrate judge to hear and determine any pretrial matter pending before the court," except for the eight listed types of dispositive motions.  Motions to amend are not listed.  Plaintiff's assertion, without citing any legal authority, that "Magistrate Judge Foschio's rulings denying Plaintiff's motion to amend her § 1983 claims are, in essence, rulings dismissing those causes of action for failure to state a claim upon which relief can be granted, and are thus dispositive rulings that he lacked authority to make," Docket No. 82 at p. 7, is inaccurate in more ways than one.  First, it ignores the fact that defendants may still move to dismiss an amended complaint under Federal Rule of Civil Procedure 12(b)(6), should they believe there is a legal basis to do so.  Second, as explained in Individual Defendants' objections, *see* Docket No. 81-1 at p. 2-4, to the extent the Second Circuit has characterized motions to amend, it has said characterized them as "nondispositive." *See Fielding v. Tollaksen*, 510 F.3d 175, 178 (2d Cir. 2007).  The Magistrate Judge was wholly within its authority in denying, in part, Plaintiff's motion to amend on the basis of futility.

**II.    The Magistrate Judge did not err in concluding that it would be futile to allow Plaintiff to amend her complaint to add legally insufficient equal protection claims against the Individual Defendants.**

This Court previously dismissed Plaintiff's § 1983 claims for lack of personal involvement, and the Magistrate Judge correctly determined that Plaintiff's proposed SAC still fails to state valid equal protection claims against the Individual Defendants.

At the outset, it bears brief mention that Plaintiff mischaracterizes certain "new allegations" in support of this claim.  To the extent she purports to rely on "new allegations about

2

Family Court and custody" to attack the Magistrate Judge's decision, she is mistaken, since her prior pleadings contained precisely those same allegations. *See* Docket No. 42-3.

Regardless, as this Court has already held, unlike aiding and abetting claims under the NYHRL, Plaintiff's § 1983 claims require her to show each Defendants' own personal involvement in equal protection violations. *See Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020); *see also Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014); *Reynolds v. Barrett*, 685 F.3d 193, 204 (2d Cir. 2012). That is, Plaintiff must "plead and prove that each [g]overnment-official defendant, through the official's own individual actions, has violated the Constitution." *Peck v. Cnty. of Onondaga, New York*, No. 5:21-CV-651, 2021 WL 3710546, at *10 (N.D.N.Y. Aug. 20, 2021), *reconsideration denied*, 563 F. Supp. 3d 18 (N.D.N.Y. 2021), quoting *Tangreti*, 983 F.3d at 618. Because Plaintiff has not plausibly pled that the individuals discussed below, through his or her own actions, violated the Constitution, her proposed amendment was properly deemed futile.

    a. **Grant**

This Court already found insufficient the following claims against Grant:

> Grant did not investigate Plaintiff's 2007 and 2018 complaints or report her complaints to the appropriate administrative judges, and told Plaintiff during an interview in 2020 that Plaintiff's prior complaints were lost and that Plaintiff had "asked for" the treatment she received because of how she dressed.

Docket No. 58 at 33.

In the proposed second amended complaint, Plaintiff further alleges that: Grant called Plaintiff on December 11, 2019, and told her he would forward her complaint to the Commission on Judicial Conduct; the complaint was forwarded; Grant's comment on Plaintiff's clothing repeated comments regularly made by Rosenbaum, and Grant should not have interviewed Rosenbaum before Plaintiff; Grant "drove . . . to tears" Plaintiff's "elderly mother," and an

3

unnamed witness he interviewed "reported to Plaintiff that Grant persisted in twisting the witnesses' words, and substituting his own version of events"; Grant "intended to intimidate and attack Plaintiff for having brought the complaint against a Judge"; and between October 29, 2019 and January 31, 2020, none of the Defendants advised her of the outcome of the investigation. *See* Docket No. 65-2 ¶¶ 36, 133, 153-54, 193-95, 205-212, 217-18.

These additional allegations do not rise to the level of demonstrating Grant's personal involvement in a constitutional violation. Plaintiff admits that his investigation culminated in the forwarding of her complaint to the Commission on Judicial Conduct. That put in place the process by which Rosenbaum was ultimately removed from office. Simply put, Grant's alleged conduct during interviews of Plaintiff, her mother, and another witness does not rise to the level of a constitutional violation. *See Clare-Lunny v. Soldato*, 2014 WL 3477419, at *3 (N.D.N.Y. July 11, 2014) (verbal harassment/abuse does not violate constitutional rights); *Holland v. Morgenstern*, 2013 WL 2237550 (E.D.N.Y. May 20, 2013) (same); *Jean–Laurent v. Wilkerson*, 438 F.Supp.2d 318, 324–25 (S.D.N.Y.2006) (same).

Finally, Plaintiff's claim that Grant was trying to protect Rosenbaum is speculative, belied by Grant's apparent forwarding of the complaint for further action, and, in any event, insufficient to show the requisite personal involvement by Grant himself in the discrimination. While the Court must accept a complaint's factual allegations as true, in assessing its facial validity, that principle does not apply to purely conjectural allegations." *Zembiec v. Cnty. of Monroe*, 766 F. Supp. 2d 484, 495 (W.D.N.Y. 2011), aff'd, 468 F. App'x 39 (2d Cir. 2012) (holding, under *Twombly* and *Iqbal*, "[t]o the extent that the complaint implies that Caiola was responsible, the complaint offers nothing more than surmise and speculation.").

4

### b. Pawelczak

This Court already found insufficient the following claims against Pawelczak:

Pawelczak did not provide Plaintiff with a copy of an appropriate complaint form or forward one of her complaints to OIG; told her he "could do nothing to help her"; notified Rosenbaum of a complaint Plaintiff had made to UCS's Work-Safe office; and directed Plaintiff not to report to work on May 17, 2021, because she would not be permitted to return to work until she was cleared in an IME.

Docket No. 58 at 33.

Plaintiff now additionally alleges that, in 2005, Pawelczak was the Chief Clerk in Family Court and "frequently met privately with Rosenbaum in Rosenbaum's chambers"; Pawelczak observed Rosenbaum treat Plaintiff in ways that made her uncomfortable; Pawelczak was a supervisor of individuals other than Plaintiff; as District Executive, Pawelczak was aware of vacancies within the Seventh Judicial District but failed to notify Plaintiff of the open position between March 2020 and April 2021; and, in 2019, Pawelczak attempted to persuade Plaintiff to resign. Docket No. 65-2 at ¶¶ 67-73, 85-86, 141, 158-65, 234, 250.

These allegations still fail to establish Pawelczak's personal involvement in a constitutional violation.  The fact that Pawelczak's position as Chief Clerk caused him to meet frequently with Rosenbaum is of little, if any, relevance.  The allegation that Pawelczak attempted to persuade Plaintiff to resign, while perhaps the only allegation of "action," is unavailing given the absence of discriminatory animus, not to mention the fact that Pawelczak lacked authority to terminate her.  "[L]ight burden or no, the plaintiff must still allege facts supporting a facially plausible inference that the defendants' actions were motivated by discriminatory animus.'" *Peck*, 2021 WL 3710546, at *8, quoting *Bidot v. Cty. of Suffolk*, 2020 WL 6385072, at *6 (E.D.N.Y. Aug. 20, 2020). "Bald assertions of discrimination . . . , unsupported by any comments, actions, or examples of similarly-situated individuals outside of

5

[the plaintiff's] protected class being treated differently" to allow an inference of discriminatory motive "are implausible and insufficient to survive a motion to dismiss." *Id.*, quoting *Jackson v. Cty. of Rockland*, 450 F. App'x 15, 19 (2d Cir. 2011).

Plaintiff's remaining allegations against Pawelczak are of the same nature as those already found insufficient by this Court, i.e., alleged failures to act, rather than discriminatory actions taken by Pawelczak himself. *See id.* at *11 (dismissing claims that "amount only to inaction," because "disparate treatment and retaliation claims require plaintiff to allege—and eventually prove—an adverse action" and "a hostile work environment claim requires plaintiff to prove [the individual defendant's] participation in an extreme and ongoing abusive environment").

### c. Judge Taddeo

This Court already found insufficient the following claims against Judge Taddeo:

> In 2007, after Plaintiff told Taddeo about Rosenbaum's "sexual demands," Taddeo did not provide Plaintiff with a copy of an appropriate complaint form or forward her complaint to OIG; told Plaintiff that there wasn't much she could do other than conduct sexual abuse training—which Taddeo never conducted despite being authorized to do so—and that "unfortunately, women had to endure sexual harassment from male judges because there was no way to have them reprimanded"; and told Plaintiff there was "nothing [she] could do to help her" in 2019 and recommended that she take time off from work or apply for other jobs.

Docket No. 58 at 34.

Plaintiff's new allegations include that Judge Taddeo was first elected to Supreme Court in 2005, and was a Supervising Judge in Family Court between 1995 and 2005; Judge Taddeo's chambers were located near Rosenbaum's and she could hear Rosenbaum "screaming" at Plaintiff; between 2005 and 2019, Taddeo frequently met privately with Rosenbaum; Taddeo observed Rosenbaum treat Plaintiff in ways that made Plaintiff uncomfortable; Taddeo was a supervisor of individuals other than Plaintiff; Taddeo did not report Rosenbaum to the

6

Commission on Judicial Conduct, nor suggest that Plaintiff do so; and Taddeo told Plaintiff she could come to her chambers to "get away" from Rosenbaum and visited Plaintiff's work station multiple times per week. Docket No. 65-2 at ¶¶ 28-31, 62-66, 69-70, 75-83, 110-111.

These new allegations still do not demonstrate any discriminatory actions personally taken by Judge Taddeo. She is accused only of *failing* to act. Plaintiff's assertions that Judge Taddeo should have done more to assist her do not meet the constitutional standard.

### d. Grimaldi

This Court already found insufficient the following claims against Grimaldi:

> After Plaintiff spoke with Grimaldi in February of 2020, Grimaldi told Plaintiff Grimaldi "would identify a job to which Plaintiff would be reassigned, and get back to Plaintiff," and then twice followed up with Plaintiff to inform her that she had not located a specific assignment for Plaintiff.

Docket No. 58 at 34.

The additional allegations against Grimaldi include: while Plaintiff was on FMLA leave, Grimaldi had access to Plaintiff's then-current contact information; during their conversations in February and/or March 2020, Grimaldi informed Plaintiff that Grimaldi did not believe Plaintiff would be "safe" in the Hall of Justice; and Grimaldi never informed Plaintiff of the opening in Family Court, which Plaintiff currently holds. Docket No. 65-2 at ¶¶ 217, 223, 233.

These allegations are wholly insufficient to state a claim of Grimaldi's personal involvement in discrimination against Plaintiff. Grimaldi is still accused only of inaction. Plaintiff's allegation that Grimaldi failed to inform her of the opening when it became available sounds like a negligence claim, not one amounting to a constitutional violation.

### e. Allen

This Court already found insufficient the following claims against Allen:

7

> In 2007, after Plaintiff informed Allen about Rosenbaum's conduct and asked for help, Allen did not provide Plaintiff with a copy of the appropriate complaint form or ensure that her complaint was forwarded to OIG; told Plaintiff that if Plaintiff was, in fact, complaining about Rosenbaum, Allen would have "no choice" but to fire Plaintiff, but if she were inquiring about "the process," Allen would send Plaintiff the pertinent information; and provided the information to Plaintiff after Plaintiff asked for it.

Docket No. 58 at 34-35.

Plaintiff has added the following factual allegations against Allen: In 2007, Allen "frequently met privately with" Rosenbaum in Allen's office or Rosenbaum's chambers; Allen knew that she lacked authority to fire Plaintiff, but Plaintiff believed that Allen could fire her; Allen was the "linchpin" and "gatekeeper" of the employee complaint process; and Allen "attempted to thwart Plaintiff's efforts to file a complaint by threatening Plaintiff with termination." Docket No. 65-2 at ¶¶ 114, 120-25.

Again, Plaintiff's elaborations are insufficient as a matter of law. Without some evidence of discriminatory intent, the fact that Allen allegedly met with Rosenbaum because of her position in human resources in 2007 is entirely unavailing. Even if Plaintiff's allegation that she believed Allen could fire her is credited at this pleading stage, this single alleged interaction, during which Allen undisputedly provided Plaintiff with the necessary information to submit her complaint, does not rise to the level of constitutional significance. *See Clare-Lunny*, 2014 WL 3477419, at *3 ("Verbal harassment, and even threats, no matter how unprofessional, do not rise to the level of constitutional violations."), quoting *Holland*, 2013 WL 2237550, citing *Jean–Laurent v. Wilkerson*, 438 F.Supp.2d 318, 324–25 (S.D.N.Y.2006).

### f. Fields

This Court already found insufficient the following claims against Fields:

> After Plaintiff met with Fields in July 2019, Fields told her there was nothing Fields could do to help her and recommended taking time off from work or applying for

8

other jobs; Plaintiff thereafter sought further assistance from Fields in August 2019 after which Fields sent a follow up e-mail to Plaintiff—copying Rosenbaum—which allegedly prompted Rosenbaum's "hostility and mistreatment" of Plaintiff to increase; and then Fields told Plaintiff she "could not assist her."

Docket No. 58 at 35.

Plaintiff additionally alleges that Fields was "obligated to protect [her] from retaliation for complaining, and instead she insured that Defendant Rosenbaum would retaliate against Plaintiff when [he] learned of Plaintiff's ongoing complaints"; "[o]n September 5, 2019, Plaintiff met with Defendant Fields, and learned that Defendant Fields had prepared paperwork for processing Plaintiff's resignation," which Fields "attempted to persuade Plaintiff to sign"; and Fields submitted Plaintiff's FMLA leave request paperwork. Docket No. 65-2 at ¶¶ 171, 176-77, 184.

This Court has already declared insufficient Plaintiff's allegation that Fields included Rosenbaum on an email communication with Plaintiff. The fact that Fields assisted Plaintiff in taking FMLA leave is hardly suggestive of discriminatory intent or a hostile work environment. Finally, the vague allegation of "attempt[ing] to persuade Plaintiff" to resign is of little consequence in the absence of discriminatory intent, intimidation tactics, and any authority whatsoever over Plaintiff's employment.

For all these reasons, the Magistrate Judge did not err insofar as he concluded that Plaintiff failed to state valid equal protection claims against the Individual Defendants.

**III. The Magistrate Judge did not err in concluding it would be futile to allow Plaintiff to amend her complaint to add legally insufficient retaliation claims against the Individual Defendants.**

Preliminarily, Individual Defendants disagree that the proposed SAC contains a retaliation claim against them. In reviewing Plaintiff's FAC, this Court explained: "It does not appear that Plaintiff asserts retaliation claims against Grant, Pawelczak, Aufleger, Taddeo, Grimaldi, Allen,

9

or Fields. Plaintiff also does not address retaliation in her responses to the Individual Defendants' motion to dismiss. To the extent Plaintiff alleges individual liability for retaliation, it is against Rosenbaum only." Docket No. 58 at p. 28 n.8. Comparing Plaintiff's FAC to the proposed SAC, Plaintiff has made only three new factual allegations against Individual Defendants, none of which state valid retaliation claims.

The only cause of action for retaliation contained in the proposed SAC is the Fifth Cause of Action against Rosenbaum alone. In fact, only seven substantive paragraphs in Plaintiff's 304-paragraph SAC contain the word "retaliation." *See* Docket No. 65-2 ¶¶ 161, 162, 165, 171, 254, 261, 278. Of those, paragraph 165 contains an allegation against Rosenbaum only, paragraphs 254 and 278 were previously numbered paragraphs 163 and 196 in the FAC, and paragraph 261 remained the same between both versions.

The remaining new paragraphs 161, 162, and 171 still fail to state retaliation claims against the Individual Defendants. For starters, Plaintiff refers only to Pawelczak and Fields in them. And Plaintiff's allegation that Pawelczak and Fields "discussed their conversations with Plaintiff with" Rosenbaum is vague and conclusory, particularly as to Pawelczak about whose so-called discussion Plaintiff provides literally no other information. *See Petitpas v. Griffin*, 2020 WL 6826723, at *4 (D. Conn. Nov. 21, 2020) (granting motion to dismiss plaintiff's claim that Captain retaliated against him by telling other inmates he was an informant). Moreover, rather than alleging that Pawelczak and Fields personally took adverse action against her, Plaintiff alleges only that they "had a duty to protect" her from adverse action *committed by Rosenbaum*, *see* Docket No. 65-2 ¶ 161, namely, Rosenbaum's alleged "increased hostility and mistreatment," and later refusal to approve Plaintiff's request for a leave of absence on September 9, 2019. *See* Docket No. 58 p. 26-27. These alleged actions are ones that Pawelczak and Fields did not themselves

take, however, and Plaintiff's reliance upon a "failure to protect" theory has no significance in this context. *Cf. Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (discussing origins of failure to protect claims under the Eighth Amendment since "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners.").

Plaintiff further failed to allege the requisite causation between any alleged conduct by the Individual Defendants and protected speech by Plaintiff. For instance, Plaintiff's assumption that Fields included Rosenbaum on her email discussing Plaintiff's complaints about the chambers environment for the purpose of getting Rosenbaum to retaliate against her is entirely speculative. Accordingly, Plaintiff's allegations are insufficient to state a retaliation claim against even Pawelczak and Fields, and certainly the other Individual Defendants. *See Conklin v. Cnty. of Suffolk*, 859 F. Supp. 2d 415, 438 (E.D.N.Y. 2012) ("In the Second Circuit, personal involvement of the defendants in the alleged . . . retaliation is a prerequisite to an award of damages under section 1983.").

Even if Plaintiff managed to state a retaliation claim against any Individual Defendant (which she did not), she abandoned it in the briefing on her motion to amend. After the Individual Defendants concluded that the proposed SAC still did not contain retaliation claims against them, they put Plaintiff on notice of same in their opposition papers. *See* Docket No. 72 at p. 12 n.3. Yet, in her reply papers, Plaintiff still did not make clear any intent to bring such additional claims; she mentioned retaliation only once therein, solely in the context of her new conspiracy claim. *See* Docket No. 73 at p. 5 ("Plaintiff seeks to add a claim of conspiracy to deprive Plaintiff of equal protection of the laws, to deny her the right to petition the government for redress of grievances, and to retaliate against her."). "When a party fails adequately to present arguments in a brief, a court may properly consider those arguments abandoned, . . . especially in the case of a counseled

11

party where a court may . . . infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned." *A.S.A.P. Logistics, Ltd. v. UPS Supply Chain Sols., Inc.*, 629 F. Supp. 3d 42, 48 (E.D.N.Y. 2022) (internal quotations and citations omitted).

For all these reasons, the Magistrate Judge did not err in concluding that the proposed SAC failed to state a valid retaliation claim against the Individual Defendants.

## CONCLUSION

For the reasons set forth above, Individual Defendants respectfully oppose Plaintiff's objections to the Magistrate Judge's Decision and Order (Docket No. 74), and request that this Court affirm that decision as not clearly erroneous, except to the extent that Individual Defendants have filed their own objections (*see* Docket No. 81).

Dated:  July 17, 2023

                LETITIA JAMES
                Attorney General for the State of New York
                Attorney for Individual Defendants

                *s/Heather L. McKay*
                HEATHER L. MCKAY
                Assistant Attorney General of Counsel
                NYS Office of the Attorney General
                144 Exchange Boulevard, Suite 200
                Rochester, New York 14614
                Telephone:  (585) 546-7430
                heather.mckay@ag.ny.gov

# CERTIFICATE OF SERVICE

I certify that, on July 17, 2023, I electronically filed the foregoing Individual Defendants' Response to Plaintiff's Objections to Decision and Order on behalf of the Individual Defendants with the Clerk of the District Court using CM/ECF system, which sent notification of such filing to the following:

1. Lindy Korn, Esq.
   *Attorney for Plaintiff*
   Electric Tower
   535 Washington Street
   9th Floor
   Buffalo, NY 14203

2. Anna Marie Richmond, Esq.
   *Attorney for Plaintiff*
   2500 Rand Building
   14 Lafayette Square
   Buffalo, NY 14203

3. Pedro Morales, Esq.
   *Attorney for Entity Defendants*
   NYS Office of Court Administration
   25 Beaver Street
   11th Floor
   New York, NY 10004

4. David Rothenberg, Esq.
   *Attorney for Defendant Rosenbaum*
   Rothenberg Law
   45 Exchange Boulevard
   Suite 800
   Rochester, NY 14614

LETITIA JAMES
Attorney General for the State of New York
Attorney for State Defendants
 s/Heather L. McKay
HEATHER L. MCKAY
Assistant Attorney General of Counsel
NYS Office of the Attorney General
144 Exchange Boulevard, Suite 200
Rochester, New York 14614
Telephone:  (585) 546-7430