UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

REBECCA KLYMN

                          Plaintiff,

                vs.                                    21-cv-06488-JLS

                                                       SECOND AMENDED
                                                       COMPLAINT

MATTHEW ROSENBAUM, MONROE COUNTY            JURY TRIAL DEMANDED
SUPREME COURT, UNIFIED COURT SYSTEM
OF THE STATE OF NEW YORK, OFFICE OF
COURT ADMINISTRATION, OFFICE of the
MANAGING INSPECTOR GENERAL for BIAS
MATTERS, COSMAS GRANT, RONALD
PAWELCZAK, ANN MARIE TADDEO,
CAROLYN GRIMALDI, MARGARET ALLEN,
and AMY FIELDS,
                          Defendants.

## INTRODUCTION

1.      This is a complaint for damages and injunctive relief pursuant to Title VII of the

Civil Rights Act of 1964, as amended, 42 USC §§ 2000e, et seq., 42 USC § 1983, and 42 USC §

1985(3).  Plaintiff also raises claims under the New York State Human Rights Law, NY

Executive Law §§ 290, et seq., as amended, and the Common Law of the State of New York

pursuant to the New York Adult Survivors Act, Civil Practice Law and Rules § 214-j.

2.      As is set forth in detail below, Defendants discriminated against Plaintiff on the

basis of sex in violation of state and federal law; denied Plaintiff her right to petition the

government for redress of grievances; conspired to discriminate against her and deny her equal

protection of the law on the basis of her sex; conspired to deny her right to petition the

Government for redress of grievances; retaliated against her in violation of state and federal law;

and, with respect to Defendant ROSENBAUM, battered her, and intentionally inflicted

emotional distress upon her in violation of state law.

      3.     As is set forth in detail below, the Defendants herein engaged in a conspiracy

involving many high-ranking employees of the Seventh Judicial District, as well as the Office of

the Managing Inspector General for Bias Matters and the Human Resources Department of the

Unified Court System.

      4.     Initially the goal of the conspiracy was to prevent the Plaintiff from effectively

complaining about, and stopping the sexual extortion to which she was subjected by Defendant

ROSENBAUM.

      5.     For more than ten years, the co-conspirators prevented Plaintiff from being heard

by any agency or entity empowered to stop the sexual harassment which Plaintiff endured.

      6.     It was not until Plaintiff went outside the formally established complaint

procedures in 2019, and information concerning her complaint reached the OFFICE OF COURT

ADMINISTRATION's Work Safety Office, that the complaint was finally forwarded to the

Commission on Judicial Conduct, which promptly investigated and arranged the removal of

Defendant ROSENBAUM from his judicial office.

      7.     Thereafter members of the conspiracy continued their efforts to silence Plaintiff

and drive her out of the Court system, until after the filing of the Complaint in this action.

      8.     Upon review of the allegations of the original Complaint in this action, Docket

No. 1, Chief Judge Wolford *sua sponte* entered an order recusing herself pursuant to 28 USC §

455(a) and further holding that, "Given the nature of the matter and the identities of the parties it

is anticipated that all other judges in this District whose duty stations are in Rochester would similarly recuse themselves," and directing the Clerk of Court to assign this case to a judge whose duty station is in Buffalo."  Docket No. 5

## JURISDICTION AND VENUE

9.      Jurisdiction is conferred upon this Court by 28 USC § 1331 and 28 USC § 1343; supplemental jurisdiction over Plaintiff's state law claims is conferred upon this Court by 28 USC § 1367(a).

10.      Venue is properly laid in the Western District of New York under 28 USC § 1391(b) because all of the parties are located in the Western District of New York, and the actions complained of occurred in the Western District of New York

11.      Plaintiff has exhausted her administrative remedies.

12.      A copy of the complaint filed before the Equal Employment Opportunity Commission (EEOC) on or about August 24, 2020 is attached hereto as Exhibit A.

13.      A copy of the Right to Sue letter issued by the EEOC on April 21, 2021, is attached hereto as Exhibit B.

## PARTIES

14.      Plaintiff, REBECCA KLYMN is a woman, and a citizen of the United States. Plaintiff is referred to herein as "Rebecca" when quoting Defendant ROSENBAUM's remarks about her.

15.      Defendant UNIFIED COURT SYSTEM OF THE STATE OF NEW YORK ("UCS") is made up of various levels of trial and appellate courts established by the Constitution and laws of the State of New York, and is an employer within the meaning of the relevant statutes.

3

16.     Defendant OFFICE OF COURT ADMINISTRATION ("OCA") is a subdivision of Defendant UCS that includes Human Resources, and is an employer within the meaning of the relevant statutes.

17.     Defendant MONROE COUNTY SUPREME COURT is a trial court located in the Seventh Judicial District of the State of New York, and is an employer within the meaning of the relevant statutes.

18.     At all times relevant to this Complaint, Plaintiff was an employee of Defendants UCS, OCA and Monroe County Supreme Court.

19.     From March 28, 2005 until on or about December 31, 2019, Plaintiff was an employee of Defendant ROSENBAUM.

20.     Defendants UCS, OCA and Monroe County Supreme Court are legally obligated to implement adequate sexual harassment training and awareness programs for all employees.

21.     Defendants UCS, OCA and Monroe County Supreme Court are legally obligated to establish adequate avenues for complaints of violations of their sexual harassment policies

22.     Defendant OFFICE of the MANAGING INSPECTOR GENERAL for BIAS MATTERS ("OIG") was established in 1998.

23.     Defendant OIG investigates allegations of bias based upon, *inter alia,* sex, that affect the workplace or the terms and conditions of employment of UCS personnel.

24.     Defendant OIG is legally obligated to investigate all claims of sexual harassment submitted to it, and to send a report of its investigation to appropriate administrators including the Administrative Judge overseeing the Complainant, and the appropriate Deputy Chief Administrative Judge for a determination.

25.     At all times relevant to this complaint, Defendant MATTHEW ROSENBAUM

4

("ROSENBAUM") was a Supreme Court Justice in Monroe County, New York.  He is sued in his personal capacity, and, under the New York Human Rights Law as an Employer.

26.     At all times relevant to this Complaint, Defendant COSMAS GRANT ("GRANT") was an employee of Defendant OIG.  He is sued in his personal capacity.

27.     At all times relevant to this Complaint, Defendant RONALD PAWELCZAK ("PAWELCZAK") was the Chief Clerk of Monroe County Family Court or the District Executive of the Seventh Judicial District of the State of New York.  He is sued in his personal capacity.

28.     At all times relevant to this Complaint, Defendant ANN MARIE TADDEO ("TADDEO") was a Supreme Court Justice in Monroe County, New York.  She is sued in her personal capacity.

29.     Defendant TADDEO was first elected to the Supreme Court bench in 2005.

30.     Prior to her election as a Supreme Court Justice, Defendant Taddeo was a judge in Monroe County Family Court beginning in 1991, and she served as an Acting Supreme Court Justice before being elected in 2005.

31.     Defendant TADDEO served as a Supervising Judge in Family Court between 1995 and 2005.

32.     At all times relevant to this Complaint, Defendant CAROLYN GRIMALDI ("GRIMALDI") was head of Human Resources for Defendants UCS and OCA.  She is sued in her personal capacity.

33.     At all times relevant to this Complaint, Defendant MARGARET ALLEN ("ALLEN") was head of Human Resources at MONROE COUNTY SUPREME COURT.  She is sued in her personal capacity.

34.     At all times relevant to this Complaint, Defendant AMY FIELDS ("FIELDS") was a Principal Court Analyst assigned to Human Resources at MONROE COUNTY SUPREME COURT.  She is sued in her personal capacity.

35.     At all times relevant to this Complaint, high-ranking employees of the Seventh Judicial District joined together in a unified group whose goal was to protect Supreme Court Justices, especially male Justices, from any and all challenges to their autonomy and their ability to treat their personal assistants and secretaries, as defined by Judiciary Law § 36(1), with complete impunity to demand any and all "services" from such employees as the male justices wished, irrespective of the laws that protected other employees.

36.     Alternatively, at all times relevant to this Complaint Defendants TADDEO, ALLEN, PAWELCZAK, FIELDS, GRANT, and GRIMALDI conspired with Defendant ROSENBAUM to aid and abet Defendant ROSENBAUM's discrimination against Plaintiff under New York law, to deny Plaintiff the right to petition the Government for redress of grievances, and to retaliate against Plaintiff for having filed a complaint, pursuant to their personal interests in protecting Defendant ROSENBAUM from repercussions as he engaged in sexual abuse and sexual harassment of Plaintiff in violation of state and federal law.

37.     After Defendant ROSENBAUM was removed from office, the members of the conspiracy continued to silence Plaintiff and attempt to drive her from her employment in order to cover up the prior acts they had taken in furtherance of the conspiracy.

**FACTS**

38.     At all times relevant to this Complaint, Plaintiff was employed by Defendants UCS, OCA and ROSENBAUM at Defendant MONROE COUNTY SUPREME COURT.

39.     Defendant ROSENBAUM entered upon judicial office on March 28, 2005.

40.     From March of 2005 until December of 2019, Plaintiff was employed as Secretary to Defendant ROSENBAUM.

41.     In 2005 Plaintiff was engaged in divorce proceedings.

42.     When she was hired by Defendants UCS/OCA and ROSENBAUM in March of 2005, Plaintiff was living as the single mother of one minor son who had been born in 1997.

43.     Between March of 2005 and the June of 2009, Defendant ROSENBAUM compelled Plaintiff to perform fellatio upon him more than 80 times.

44.     Each of the instances alleged in ¶ 43 occurred in Defendant ROSENBAUM's judicial chambers in the Hall of Justice in Rochester, NY, typically in the late afternoon, when there were fewer people in the building.

45.     Plaintiff performed the acts alleged in ¶ 43 against her will.

46.     Plaintiff attempted to avoid fellating Defendant ROSENBAUM by telling him that she had to perform specific tasks that were part of her regular work duties.

47.     Defendant ROSENBAUM told Plaintiff that performing fellatio upon him was part of her job, that he was stressed, and she was required to assist him in relieving his stress.

48.     Defendant ROSENBAUM also threatened Plaintiff that if she wanted to keep her job she would comply with his demands for oral sex.

49.     Defendant ROSENBAUM also told Plaintiff that if she wanted to retain custody of her minor son, she would comply with his demands for oral sex.

50.     Plaintiff believed that Defendant ROSENBAUM would influence the judge who was presiding over her divorce case to rule against her with respect to custody of her son if she did not acquiesce to Defendant ROSENBAUM's demands for oral sex.

51.     Plaintiff felt compelled and coerced to comply with Defendant ROSENBAUM's demands for oral sex, and did comply.

52.     In addition to the incidents alleged in ¶ 43, between March of 2005 and July of 2019, Defendant ROSENBAUM also routinely addressed Plaintiff using demeaning, sexually charged terms, such as "Honey" and "Sweetie," in the presence of court staff and members of the public.

53.     Defendant ROSENBAUM also required Plaintiff to drive him to his doctor's appointments and go into the exam room with him.

54.     Plaintiff was uncomfortable accompanying Defendant ROSENBAUM at his medical exams but believed that she was not able to refuse under penalty of losing her job.

55.     In addition to the incidents alleged in ¶¶ 43, 52 and 53, between March of 2005 and July of 2019, Defendant ROSENBAUM commented inappropriately upon Plaintiff's clothing, frequently telling her that particular clothing was "sexy" or "hot."

56.     Plaintiff dressed in professional attire, appropriate for her workplace.

57.     Defendant ROSENBAUM's comments alleged in ¶¶ 52 and 55 were unwelcome to Plaintiff.

58.     Each time Defendant ROSENBAUM commented that he thought a particular garment or outfit was "sexy," Plaintiff would never wear the items again, and dispose of them.

59.     In addition to the incidents alleged in ¶¶ 43, 52, 53 and 55, between March of 2005 and July of 2019, Defendant ROSENBAUM several times each week touched and hugged Plaintiff both in and out of the presence of others.

60.     Defendant ROSENBAUM's actions described in ¶ 59 were unwelcome to Plaintiff.

8

61.     In addition to the incidents alleged in ¶¶ 43, 52, 53, 55, and 59, Defendant ROSENBAUM frequently screamed at Plaintiff when he was dissatisfied with some aspect of her work, and also required Plaintiff to perform personal errands for himself and his family during the work day.

62.     Plaintiff often would cry at her work station because of the actions described in ¶¶ 43, 52, 53, 55, 59 and 61, and because of her fear of losing her job, and losing custody of her son.

63.     Between 2005 and the end of 2019, Defendant TADDEO's judicial chambers were located adjacent to the chambers of Defendant ROSENBAUM.

64.     Defendant TADDEO could hear Defendant ROSENBAUM screaming at Plaintiff from TADDEO's chambers.

65.     In 2005, Defendant TADDEO was the only woman serving as a Supreme Court Justice in Rochester, NY.

66.     Between 2005 and the end of 2019, Defendant TADDEO frequently met privately with Defendant ROSENBAUM.

67.     In 2005, Defendant PAWELCZAK was the Chief Clerk of Family Court in Monroe County.

68.     Between 2005 and the end of 2019, Defendant PAWELCZAK frequently met privately with Defendant ROSENBAUM in Defendant ROSENBAUM's chambers.

69.     Defendant ROSENBAUM's conduct described in ¶¶ 52 and 59 was personally observed by Defendants TADDEO and PAWELCZAK, who also observed Plaintiff's visible discomfort with Defendant ROSENBAUM's conduct.

70.     Both Defendants TADDEO and PAWELCZAK were supervisors within

Defendant UCS' organizational structure although neither of them supervised Plaintiff prior to

2019 when Defendant PAWELCZAK became District Executive for the Seventh Judicial

District.

71.     As supervisors or managers, Defendants TADDEO and PAWELCZAK were

obligated, pursuant to Defendant UCS' sexual harassment policy to provide a copy of

Defendant's sexual harassment complaint form to Plaintiff, and to send a complaint of sexual

harassment to the OIG if Plaintiff did not.

72.     Defendant TADDEO and Defendant PAWELCZAK did not report Defendant

ROSENBAUM's conduct described in ¶¶ 52 and 59 to Defendant OIG or to the Commission on

Judicial Conduct at any time between 2005 and 2019.

73.     Defendant PAWELCZAK and Defendant TADDEO did not report Defendant

ROSENBAUM's conduct described in ¶¶ 52 and 59 in support of the conspiracy alleged in ¶¶ 3-

5, 7, 36 and 37, to protect Defendant ROSENBAUM, from any and all repercussions that might

occur to Defendant ROSENBAUM if his sexual harassment of Plaintiff were reported to the

appropriate state agencies.

74.     Shortly after Defendant ROSENBAUM's conduct described in ¶¶ 43, 52, 55, 59

and 61 began, Plaintiff spoke to Defendant TADDEO about Defendant ROSENBAUM's sexual

demands and his other conduct that Plaintiff found offensive.

75.     Plaintiff was not aware of the existence nor of the mandates of Defendant OIG,

nor of the Commission on Judicial Conduct when she was hired.

76.     Plaintiff was not provided training on sexual harassment and complaining about

sexual harassment by Defendants UCS and OCA from 2005 through 2008.

77.     Based upon her prior employment by Defendant UCS, Defendant TADDEO knew

of the existence of both Defendant OIG and the Commission on Judicial Conduct, and of

Plaintiff's right to complain of Defendant ROSENBAUM's conduct described in ¶¶ 43, 52, 55,

59 and 61.

78.    Defendant TADDEO did not inform Plaintiff of the existence of Defendant OIG,

nor did defendant TADDEO advise Plaintiff that Plaintiff had the right to complain to Defendant

OIG about Defendant ROSENBAUM's conduct.

79.    Defendant TADDEO did not inform Plaintiff of the existence of the Commission

on Judicial Conduct nor did Defendant TADDEO advise Plaintiff that Plaintiff had the right to

complain to the Commission on Judicial Conduct about Defendant ROSENBAUM's conduct.

80.    Defendant TADDEO did not file a complaint on Plaintiff's behalf, nor did

Defendant TADDEO offer to file a complaint on Plaintiff's behalf at any time from 2005

through 2019.

81.    Instead, Defendant TADDEO encouraged Plaintiff to go to Defendant

TADDEO's chambers anytime Plaintiff need to "get away" from Defendant ROSENBAUM, and

to enable Plaintiff to compose herself.

82.    Shortly after Defendant ROSENBAUM's conduct alleged in ¶¶ 43, 52, 53, 55, 59

and 61 began, and throughout the years from 2005 through 2019, Defendant TADDEO visited

Plaintiff at Plaintiff's work station several times each week, monitoring Plaintiff's

circumstances, and Plaintiff's reactions to Defendant ROSENBAUM's conduct.

83.    In response to Plaintiff's complaints to Defendant TADDEO about Defendant

ROSENBAUM's conduct as alleged in ¶¶ 43, 52, 53, 55, 59 and 61, Defendant TADDEO

repeatedly assured Plaintiff that Defendant TADDEO's door was "always open" to Plaintiff.

84.    Defendant TADDEO's actions described in ¶¶ 82 through 83 were undertaken in

furtherance of the goals of the conspiracy alleged in ¶¶ 3-5, 7, and 36-37: specifically, by encouraging Plaintiff to "get away" and "compose" herself, Defendant TADDEO prevented Plaintiff from complaining about Defendant ROSENBAUM's conduct to Defendant OIG, the Judicial Conduct Commission, or any other agency or entity.

85.    Defendants TADDEO's and PAWELCZAK's failure to report Defendant ROSENBAUM's conduct described in ¶¶ 43, 52, 55, 59, and 61 was undertaken in support of the conspiracy alleged in ¶¶ 3-5, 7, and 36-37: specifically, to protect Defendant ROSENBAUM, from any and all repercussions that might occur to Defendant ROSENBAUM if his sexual harassment of Plaintiff were reported to the appropriate state agencies.

86.    On November 14, 2006, Defendant ROSENBAUM went to Plaintiff's home after work hours and demanded to be let into the house, or else he would cause a scene for Plaintiff's neighbors.

87.    After Plaintiff allowed Defendant ROSENBAUM to enter the house, Defendant ROSENBAUM told her he liked the burgundy suit she had worn to work that day, and directed her to go upstairs and put on high heels.

88.    Defendant ROSENBAUM followed Plaintiff up the stairs, and told her that she needed to stop protesting because it was her job to "take care" of him.

89.    Plaintiff put on the shoes as directed, whereupon Defendant ROSENBAUM forced her down onto her bed and vaginally raped her.

90.    Defendant ROSENBAUM then cleaned himself with a towel from Plaintiff's bathroom, and left the house.

91.    Plaintiff immediately disposed of all the clothing she had been wearing, including the high-heeled shoes.

12

92.     On December 19, 2006, Defendant ROSENBAUM took Plaintiff and his female Law Clerk out to lunch and a movie as a holiday gift, then, after they returned to the Hall of Justice, compelled Plaintiff to fellate him to "thank" him.

93.     On January 10, 2007, Plaintiff spoke with Lisa Cammilleri, a Court Clerk who had previously worked for Defendant ROSENBAUM, and who was reassigned away from Defendant ROSENBAUM at that time, about the sexual harassment Plaintiff was enduring.

94.     Ms. Cammilleri advised Plaintiff that there was nothing Plaintiff could do because Defendant ROSENBAUM was a judge, and no one would listen to the Plaintiff.

95.     Ms. Cammilleri's comments reflected Ms. Cammilleri's awareness of the conspiracy alleged in ¶¶ 3-5, 7, and 36-37

96.     In early 2007, Plaintiff spoke to Robert Barnish in Human Resources about being assigned to another position.

97.     Mr. Barnish advised Plaintiff that he would seek out other assignments for her.

98.     In 2010 Mr. Barnish told Plaintiff that he believed no one within Defendant UCS would hire her due to fear of Defendant ROSENBAUM.

99.     Mr. Barnish's comments reflected Mr. Barnish's awareness of the conspiracy alleged in ¶¶ 3-5, 7, and 36-37.

100.     On May 3, 2007, Defendant ROSENBAUM told Plaintiff that the black pin-striped suit she was wearing made her look "hot," and he had always liked it, then grabbed her arm, forced her to touch his penis, and told her he was "falling in love" with her and she should be "honored."

101.     Plaintiff discarded the black suit.

102.     On May 14, 2007, Defendant TADDEO came into Plaintiff's office and told

13

Plaintiff again that TADDEO's door was always open.

103.    Seeing how upset Plaintiff was on May 14, Defendant TADDEO came back at lunch time and took Plaintiff to lunch outside the building.

104.    At lunch on May 14, 2007, Plaintiff described Defendant ROSENBAUM's recent conduct and sexual demands to Defendant TADDEO.

105.    Defendant TADDEO told Plaintiff that there wasn't much she (TADDEO) could do, other than conduct sexual abuse training.

106.    Defendant TADDEO also told Plaintiff that, unfortunately, women had to endure sexual harassment from male judges because there was no way to have them reprimanded.

107.    Defendant TADDEO's advice to Plaintiff set forth in ¶¶ 105 and 106 was given to discourage Plaintiff from seeking to complain to anyone within the Court system about Defendant ROSENBAUM's conduct, and to silence Plaintiff.

108.    Plaintiff did not attempt to complain to anyone other than Defendant TADDEO until later in 2007 (*See* ¶¶ 114-115 and 117-118 below.)

109.    On May 15, 2007, Defendant TADDEO informed Plaintiff that she had spoken to Judge Van Strydonck, then the Chief Administrative Judge for the Seventh Judicial District, and had been granted permission to conduct sexual abuse training.

110.    Defendant TADDEO did not tell Plaintiff whether she had informed Judge Van Strydonck about Defendant ROSENBAUM's treatment of Plaintiff.

111.    Judge Van Strydonck did not cause any report to be submitted to the Commission on Judicial Conduct or to Defendant OIG about Defendant ROSENBAUM's treatment of Plaintiff.

112.    Despite having been authorized to conduct sexual abuse training by Judge Van

14

Strydonck, Defendant TADDEO never conducted such training, nor caused such training to be conducted.

113.    In 2007, Defendant ALLEN frequently met privately with Defendant ROSENBAUM in Defendant ALLEN's office or in Defendant ROSENBAUM'S chambers.

114.    On November 20, 2007, Plaintiff met with Defendant ALLEN, who was then Head of Human Resources at Defendant MONROE COUNTY SUPREME COURT.

115.    Plaintiff told Defendant ALLEN about Defendant ROSENBAUM's conduct, and asked for help.

116.    As a supervisor or manager, Defendant ALLEN was obligated, pursuant to Defendant UCS' sexual harassment policy to provide a copy of Defendant's sexual harassment complaint form, and to send the complaint to the OIG if Plaintiff did not.

117.    Defendant ALLEN did not provide a copy of the complaint form to Plaintiff and did not ensure that Plaintiff's complaint was forwarded to OIG.

118.    Defendant ALLEN told Plaintiff that if Plaintiff was, in fact, complaining about Defendant ROSENBAUM, Defendant ALLEN would have no choice but to fire Plaintiff.

119.    Defendant ALLEN was aware that she lacked authority to fire Plaintiff.

120.    Plaintiff believed Defendant ALLEN's threat that ALLEN would fire Plaintiff if ALLEN learned that Plaintiff wished to complain about Defendant ROSENBAUM's actions.

121.    As Head of Human Resources in SUPREME COURT, MONROE COUNTY, Defendant ALLEN was the linchpin of enforcement of Defendant OCA's and UCS' Sexual Harassment at the time.

122.    Defendant ALLEN was the gatekeeper of employees' access to the Complaint process, and, as a supervisor was obligated to report complaints of sexual harassment to

appropriate authorities even if the employees did not report the harassment on their own behalf.

123.    Rather than fulfilling her legally mandated duties, Defendant ALLEN attempted to thwart Plaintiff's efforts to file a complaint by threatening Plaintiff with termination of employment.

124.    Defendant ALLEN's actions described in ¶¶ 114-115 and 117-118 were undertaken in furtherance of the goals of the conspiracy alleged in ¶¶ 3-5, 7, and 36-37: specifically, by threatening to fire Plaintiff, Defendant ALLEN intended to prevent Plaintiff from complaining about Defendant ROSENBAUM's conduct to Defendant OIG, the Judicial Conduct Commission, or any other agency or entity.

125.    Defendant ALLEN also told Plaintiff that if Plaintiff were merely inquiring about "the process" to help someone else, that Defendant ALLEN would send Plaintiff information.

126.    Plaintiff asked for information about the complaint process.

127.    Defendant ALLEN sent Plaintiff an email with links to information about the Defendant OCA's Workforce Diversity Office, and Defendant OIG.

128.    Based upon Defendant ALLEN's threat described in ¶ 118, Plaintiff never thereafter sought assistance from Defendant ALLEN

129.    On November 21, 2007, Plaintiff completed a complaint of discrimination using the form she had found on the Internet, and mailed it to Defendant OIG.

130.    Plaintiff never received any response to the complaint she mailed on November 21, 2007.

131.    Defendants OIG and GRANT did not investigate Plaintiff's 2007 complaint and did not report her complaint to the appropriate administrative judges.

132.    Defendants OIG's and GRANT's actions described in ¶ 131 were undertaken in

furtherance of the goals of the conspiracy alleged in ¶¶ 3-5, 7, and 36-37: specifically, by "losing" Plaintiff's complaint and failing to properly process it, Defendants OIG and GRANT protected Defendant ROSENBAUM from the possibility of removal from judicial office, and adverse publicity.

133.   Plaintiff did not complain again to Defendant OIG from November of 2007 until January of 2018.

134.   On or about June 1, 2009, Plaintiff refused Defendant ROSENBAUM's demand for oral sex and told him she would no longer comply with his demands for oral sex, nor acquiesce to his threats.

135.   Plaintiff was able to take the action described in ¶ 134 after years of very hard work with her therapist, to whom she had confided the details of Defendants ROSENBAUM's, TADDEO's and ALLEN's conduct set forth herein.

136.   Defendant ROSENBAUM argued with Plaintiff on June 1, 2009, and attempted to cajole her and pressure her for fellatio in his chambers for years thereafter.

137.   In addition to continuing to pressure Plaintiff to resume fellating him, after June of 2009, Defendant ROSENBAUM also continued to engage in other harassing conduct that was unwelcome to Plaintiff as is set forth *above* at ¶¶ 52, 53, 55, 59 and 61.

138.   Plaintiff repeatedly discarded articles of clothing that Defendant ROSENBAUM had commented were "sexy."

139.   Defendant ROSENBAUM often commented to others in Plaintiff's presence that he would "never get rid of Rebecca because she knows too much."

140.   Although Defendant ROSENBAUM's conduct described in ¶¶ 52, 55, 59 and 61 was personally observed by Defendants TADDEO and PAWELCZAK, Defendants

PAWELCZAK and TADDEO did not report Defendant ROSENBAUM's conduct to Defendant OIG or to the Commission on Judicial Conduct, in support of the conspiracy as alleged *above*.

141.    In March of 2011, Defendant ROSENBAUM was appointed the Supervising Judge of the Seventh Judicial District – making him the second-highest judicial administrator in the District.

142.    In October of 2011, Defendant ROSENBAUM was appointed head of the Commercial Division of the Seventh Judicial District, a prestigious and powerful appointment.

143.    Defendant ROSENBAUM remained head of the Commercial Division until the end of 2019, an unprecedented length of time, as other judges had previously served in that position for no more than three years.

144.    Plaintiff continued to seek other positions within the Seventh Judicial District and in the private legal sector without success; she was repeatedly told she was not hired because she worked for Defendant ROSENBAUM.

145.    Plaintiff became increasingly traumatized as the years went by because no one would help her and she felt trapped in a terrible situation from which there could be no escape.

146.    In November 2017, Defendants UCS and OCA issued a revised Sexual Harassment Policy and Procedure, which purports to be a "zero-tolerance policy for any form of sexual harassment."

147.    By its terms, the 2017 Sexual Harassment policy "applies to all judges and court employees."

148.    Pursuant to the 2017 Sexual Harassment Policy, employees who believe they are victims of "sexual behavior in the workplace" are offered the following options among others: "Discuss the problem with a supervisor or manager who does not oversee your work [and] Make

a formal complaint of sexual harassment to the Office of the Managing Inspector for Bias Complaints."

149.    In January of 2018, Plaintiff received Defendant UCS' updated form for filing a complaint of discriminatory treatment.

150.    Plaintiff submitted a second complaint to Defendant OIG on January 8, 2018.

151.    Plaintiff never received a response to the complaint alleged in ¶ 150.

152.    Defendants OIG and GRANT did not investigate Plaintiff's 2018 complaint, and did not report her complaints to the appropriate administrative judges.

153.    Defendants OIG's and GRANT's actions described in ¶ 152 were undertaken in furtherance of the goals of the conspiracy as alleged in ¶ 132.

154.    Beginning in late June 2019, Defendant ROSENBAUM urged Plaintiff to take a leave of absence "to get her head on straight."

155.    Aside from comments such as those alleged in ¶ 154, Defendant ROSENBAUM stopped speaking to Plaintiff altogether in July 2019.

156.    During the first half of 2019, Defendant PAWELCZAK became District Executive for the Seventh Judicial District.

157.    On July 31, 2019, Plaintiff met separately with Defendant TADDEO, Defendant PAWELCZAK and Defendant FIELDS to discuss the sexual harassment she endured from Defendant ROSENBAUM, and to seek assistance.

158.    Each of the Defendants named in ¶ 157 assured Plaintiff their conversations would be kept confidential.

159.    Thereafter Defendants PAWELCZAK and FIELDS discussed their conversations with Plaintiff with Defendant ROSENBAUM.

160.    Defendants PAWELCZAK and FIELDS had a duty to protect Plaintiff from retaliation by Defendant ROSENBAUM.

161.    Instead of protecting Plaintiff from Defendant ROSENBAUM's retaliation, Defendants PAWELCZAK and FIELDS ensured that Defendant ROSENBAUM would retaliate by reporting Plaintiff's complaints to Defendant ROSENBAUM.

162.    Defendant PAWELCZAK, TADDEO and FIELDS did not provide a complaint form to Plaintiff, nor did they ensure that her complaint was forwarded to OIG.

163.    Plaintiff was told separately by Defendant PAWELCZAK and Defendant FIELDS that they could do nothing to help her; each of them recommended that she take time off from work to use up her accrued leave time, and to apply for other jobs.

164.    After learning of Plaintiff's complaints from Defendants PAWELCZAK and FIELDS, in August and September of 2019, Defendant ROSENBAUM became verbally abusive toward Plaintiff in retaliation for her complaints.

165.    Defendant ROSENBAUM repeatedly told Plaintiff to "get [her] head on straight," falsely accused her of not performing her duties, accused her of complaining to "everyone on the building," and on one occasion, on or about August 5, 2019, threw papers onto her desk.

166.    In August and September of 2019, Defendant ROSENBAUM encouraged or directed his staff to stop speaking to Plaintiff.

167.    As a result of Defendant ROSENBAUM's conduct and his directions to his staff, Plaintiff suffered from severe stress and anxiety.

168.    In August 2019, Plaintiff again sought assistance from Defendant FIELDS.

169.    After Defendant FIELDS met with Plaintiff, FIELDS sent Plaintiff a follow-up email, with a copy to Defendant ROSENBAUM, referencing the substance of their discussion.

20

170.     Defendants FIELDS was obligated to protect Plaintiff from retaliation for complaining; instead, she ensured that Defendant ROSENBAUM would retaliate against Plaintiff when Defendant ROSENBAUM learned of Plaintiff's ongoing complaints to Defendant FIELDS about him.

171.     Defendant ROSENBAUM's hostility toward and mistreatment of Plaintiff increased after Defendant FIELDS sent the email alleged in ¶ 169.

172.     Defendants FIELDS told Plaintiff she could not assist Plaintiff, and encouraged Plaintiff to use up her accrued leave time and resign from her position.

173.     Plaintiff was medically excused from work on September 3, 2019 due to stress and anxiety, and upon the advice of her primary care physician, she requested a leave of absence.

174.     Plaintiff was diagnosed with Complex Post Traumatic Stress Disorder arising from the harassment she endured from 2005 through 2019.

175.     On September 5, 2019, Plaintiff met with Defendant FIELDS, and learned that Defendant Fields had prepared paperwork for processing Plaintiff's resignation.

176.     Defendant FIELDS attempted to persuade Plaintiff to sign the resignation paperwork.

177.     Plaintiff refused.

178.     Defendant FIELDS' actions alleged in ¶¶ 175 and 176 were undertaken in furtherance of the conspiracy alleged in ¶¶ 3-5, 7, and 36-37, to prevent Plaintiff from complaining about Defendant ROSENBAUM's conduct, and to remove her from the Court system.

179.     On September 9, 2019, Defendant ROSENBAUM advised Plaintiff he would not approve her request for leave.

21

180.     On or about October 29, 2019, Plaintiff submitted a request for a Family and Medical Leave Act (FMLA) leave directly to Human Resources, based upon a note from Plaintiff's doctor excusing her from work due to physical symptoms arising from stress due to a hostile work environment.

181.     Plaintiff's physician initially approved a leave of absence to end on January 31, 2020.

182.     Plaintiff did not submit her leave request to Defendant ROSENBAUM, and submitted the request to Defendant FIELDS as a request for a medical leave.

183.     Defendant FIELDS again tried to persuade Plaintiff to resign, which Plaintiff refused to do.

184.     Defendant FIELDS submitted Plaintiff's leave request through Human Resources channels for medical leaves; Defendant UCS' Work-Safe office intercepted the leave request because of the "hostile work environment" language.

185.     The Work-Safe office's mission is to ensure the court system promotes and supports a safe work environment for its employees and members of the public.

186.     On November 8, 2019, Plaintiff received a telephone call from Connor Van Everen at Defendant UCS' Work-Safe office.

187.     Mr. Van Everen asked Plaintiff to submit a written description of her experiences working for Defendant ROSENBAUM.

188.     Plaintiff promptly submitted a detailed description of her situation to Mr. Van Everen.

189.     Mr. Van Everen forwarded Plaintiff's statement to Defendants PAWELCZAK and to Defendant OIG.

190.    Defendant PAWELCZAK notified Defendant ROSENBAUM of Plaintiff's complaint.

191.    Defendant OIG's receipt of information from Work-Safe was the third time a complaint about Plaintiff's harassment by Defendant ROSENBAUM was submitted to Defendant OIG.

192.    On December 11, 2019, Defendant GRANT telephoned Plaintiff and told her he would be reviewing her complaint and getting back to her.

193.    Less than four hours later, Defendant GRANT telephoned Plaintiff again, and told her that the complaint was "above" Defendant OIG, and that he would forward it to the Commission on Judicial Conduct.

194.    Defendant OIG and/or the Work-Safe Office forwarded Plaintiff's Complaint to the New York Commission on Judicial Conduct.

195.    On December 19, 2019, Plaintiff was interviewed by the New York State Commission on Judicial Conduct.

196.    On December 28, 2019, Plaintiff was notified by a representative of the New York State Commission on Judicial Conduct that Defendant ROSENBAUM had agreed to resign from his judicial position, and that the resignation would end any further investigation by the Commission on Judicial Conduct.

197.    In December 2019, Plaintiff was notified that her job title was changing from Judicial Secretary to Court Analyst;  however, she was not advised of her new assignment.

198.    On January 13, 2020, Defendant ROSENBAUM entered into a stipulation with the Commission on Judicial Conduct pursuant to which Defendant ROSENBAUM resigned his judicial office, and agreed to never seek judicial office in the future.

199.    On January 15, 2020, Plaintiff was interviewed by Defendant GRANT.

200.    Plaintiff appeared at the interview dressed in conservative business attire.

201.    During the interview, Defendant GRANT initially told Plaintiff that she had never complained about Defendant ROSENBAUM's actions.

202.    Plaintiff responded that she had complained, and provided the dates of her complaints to Defendant OIG.

203.    Defendant GRANT then asserted that Defendant OIG had "lost" Plaintiff's prior complaints.

204.    Also, during the January 15, 2020 interview, Defendant GRANT suggested to Plaintiff that she had "asked for" the treatment she received because of how she dressed.

205.    Defendant GRANT and Plaintiff had never met before January 15, 2020.

206.    Defendant GRANT's comment on Plaintiff's clothing echoed comments regularly made by Defendant ROSENBAUM about Plaintiff's clothing.

207.    Pursuant to the protocols of Defendant OIG, Defendant GRANT should not have interviewed Defendant ROSENBAUM before interviewing Plaintiff and all of her witnesses.

208.    After interviewing Plaintiff, Defendant GRANT interviewed Plaintiff's elderly mother.

209.    Defendant GRANTs demeanor during the interview drove Plaintiff's mother to tears.

210.    Defendant GRANT interviewed Plaintiff's second witness, who reported to Plaintiff that GRANT persisted in twisting the witness' words, and substituting his own version of events for the witness'.

211.    Upon information and belief, Defendant GRANT intended to intimidate and

24

attack Plaintiff for having brought the complaint against a Judge; notwithstanding the stipulation entered into between Defendant ROSENBAUM and the Commission and Judicial Conduct.

212.    On January 23, 2020, the Commission on Judicial Conduct entered an Order making the January 13, 2020 stipulation public, and concluding the investigation of Plaintiff's complaint against Defendant ROSENBAUM.

213.    On January 29, 2020, the Commission on Judicial Conduct issued a press release publicizing the stipulation, and describing the allegations of the complaint against Defendant ROSENBAUM in general terms.

214.    It is not clear from the Stipulation, Order and Press Release whether Plaintiff is the only staff member who complained of Defendant ROSENBAUM's conduct.

215.    Plaintiff was on FMLA leave from October 29, 2019 to March 30, 2020.

216.    At all times while Plaintiff was on FMLA leave, Defendants MONROE COUNTY SUPREME COURT, UCS, OCA, OIG, GRANT, and GRIMALDI had access to Plaintiff's then-current contact information.

217.    Between October 29, 2019 and January 31, 2020, none of the Defendants contacted Plaintiff to advise her of the outcome of the investigation of her complaint, nor of her future assignment in the Court system in light of Defendant ROSENBAUM's resignation.

218.    In February of 2020, Defendant GRIMALDI telephoned Plaintiff.

219.    Defendant GRIMALDI told Plaintiff that she (GRIMALDI) would identify a job to which Plaintiff would be reassigned, and get back to Plaintiff.

220.    Plaintiff heard back from Defendant GRIMALDI twice, in February and March of 2020.

221.    On each of the occasions alleged in ¶¶ 220, Defendant GRIMALDI told Plaintiff

25

that Defendant GRIMALDI had not yet located a specific assignment for Plaintiff.

222.    Defendant GRIMALDI informed Plaintiff that GRIMALDI did not believe

Plaintiff would be "safe" in the Hall of Justice, and initially advised Plaintiff that she was

considering assigning Plaintiff to the Criminal Division of Rochester City Court in the Public

Safety Building.

223.    Plaintiff did not hear back from Defendant GRIMALDI after the second call.

224.    Beginning on March 31, 2020, Plaintiff was placed on sick leave pursuant to her

doctor's direction.

225.    On August 13, 2020, Deputy Chief Administrative Judge Vito Caruso sent

Plaintiff a letter on behalf of Defendant UCS, advising Plaintiff that Defendant OIG "has

completed its investigation concerning your hostile work environment complaint . . . have treated

this matter very seriously and have taken appropriate action."

226.    Plaintiff was not provided any information about what "appropriate action" had

been taken by Defendant UCS.

227.    Defendant GRIMALDI did not advise Plaintiff that a position had been located

for her after Judge Caruso's letter.

228.    No other employee of Defendants advised Plaintiff of her next work assignment

or position after August 13, 2020.

229.    Plaintiff used all of her accrued leave time, and was granted discretionary leave

by Defendants through April 28, 2021.

230.    By letter dated April 28, 2021, Judge Caruso advised Plaintiff that she was placed

on involuntary leave effective April 29, 2021.

231.    On or about April 28, 2021, William Hart, president of Plaintiff's Union advised

Plaintiff that he had learned that there had been a position for her in her new title in Family

Court, Monroe County (located in the Hall of Justice) since March of 2020.

232.    Defendant GRIMALDI had never notified Plaintiff of the existence of the

position in Family Court.

233.    Defendant PAWELCZAK, who had been Chief Clerk of Family Court, and who,

as District Executive was aware of vacancies within the Seventh Judicial District, did not notify

Plaintiff of the position in Family Court between March of 2020 and the end of April 2021.

234.    After being advised of Plaintiff's new job assignment, her doctor prepared a

formal release to return to work, which Plaintiff submitted to Defendants in early May of 2021.

235.    Defendant PAWELCZAK directed Plaintiff not to report to work on May 17,

2021, as she would not be permitted to return to work until she was cleared in an independent

medical exam ("IME")

236.    Plaintiff was scheduled for an IME on June 16 and 21, 2021.

237.    Plaintiff appeared for her IME as scheduled, and was examined.

238.    The original complaint in this action was filed on July 16, 2021, and served on

several of the Defendants on July 28, 2021.  Docket Nos. 1, 7-11.

239.    On Friday, August 6, 2021, Judge Caruso sent Plaintiff a letter directing Plaintiff

to report for work at the Monroe County Family Court on Monday, August 9, 2021.

240.    Plaintiff reported for work as directed by Judge Caruso.

241.    From August 9, 2021 to the present, Plaintiff has been assigned to a position of

Court Analyst in Family Court, Monroe County.

242.    Between 2005 and 2019, all of the Defendants other than Defendant

ROSENBAUM ignored the sexual discrimination against Plaintiff, discouraged her from

complaining about the illegal treatment she endured, and ignored the complaints Plaintiff did submit.

243.    The actions (and inactions) of the Defendants other than Defendant Rosenbaum enabled, condoned and participated in Defendant Rosenbaum's ongoing abuse of Plaintiff, pursuant to a long-standing unwritten policy and practice of Defendants OCA, UCS and Monroe County Supreme Court that acquiesced in the sexual abuse of subordinate employees of judges by judges for the judges' sexual gratification.

244.    In 2019, Defendants OCA, UCS and OIG enabled Defendant ROSENBAUM to retire from his position, and to avoid any further investigation or disciplinary action against him.

245.    In 2019 Defendants PAWELCZAK, and FIELDS attempted to persuade Plaintiff to resign from her position.

246.    From 2019 to August 6, 2021, Defendants MONROE COUNTY SUPREME COURT, UCS, OCA, OIG, GRANT, PAWELCZAK, GRIMALDI and FIELDS delayed acting on Plaintiff's complaints, and failed to inform Plaintiff of the progress of the investigation, and of efforts to remedy her situation.

247.    From March 2020 to August 6, 2021, Defendants MONROE COUNTY SUPREME COURT, UCS, OCA, OIG, PAWELCZAK, GRIMALDI and FIELDS failed to notify Plaintiff of the existence of a position waiting for her in Family Court.

248.    The actions of Defendants MONROE COUNTY SUPREME COURT, UCS, OCA, OIG, GRANT, PAWELCZAK, TADDEO, GRIMALDI, ALLEN, and FIELDS alleged herein, extending from 2005 through August 6, 2021, constitute a continuous, integrated violation of Plaintiff's right to be free from discrimination on the basis of her sex in violation of State and Federal law, and her right to petition the government for redress of grievances.

249.     Alternatively, at all times relevant to this Complaint, Defendants TADDEO, ALLEN, PAWELCZAK, FIELDS and GRANT conspired with Defendant ROSENBAUM to deny Plaintiff the equal protection of the law on the basis of her sex and to deny her right to petition the government for redress of grievances, pursuant to their personal interest in protecting Defendant ROSENBAUM from repercussions as he engaged in sexual abuse and sexual harassment of Plaintiff in violation of state and federal law.

250.     Plaintiff continues to suffer the effects of the Complex Post Traumatic Stress Disorder referenced in Paragraph 174, and to receive treatment for that condition to the present day.

251.     In order to make Plaintiff whole, the Court must examine all of the actions of all of the Defendants alleged herein in context, and address the continuing violation of Plaintiff's rights.

### FIRST CAUSE OF ACTION AGAINST DEFENDANTS MONROE COUNTY SUPREME COURT, UNIFIED COURT SYSTEM OF THE STATE OF NEW YORK, OFFICE OF COURT ADMINISTRATION, OFFICE OF THE MANAGING INSPECTOR GENERAL FOR BIAS MATTERS:  DISCRIMINATION ON THE BASIS OF SEX IN VIOLATION OF TITLE VII

252.     Plaintiff reasserts and realleges the allegations set forth in ¶¶ 1 through 251 as though fully set forth herein.

253.     As an employer, Defendants are responsible for making and enforcing an effective sexual harassment policy in order to protect all UCS and OCA employees from sexual discrimination, and from retaliation for complaining of sexual harassment.

254.     Defendants have established a policy that purports to prevent sexual harassment of employees of Defendants UCS, OCA and MONROE COUNTY SUPREME COURT; a

revision to the policy was issued in 2017. Plaintiff has been unable to locate prior editions of the policy.

255.     Between December 31, 2019 and August 6, 2021, Defendants MONROE COUNTY SUPREME COURT, UNIFIED COURT SYSTEM OF THE STATE OF NEW YORK, OFFICE OF COURT ADMINISTRATION, OFFICE OF THE MANAGING INSPECTOR GENERAL FOR BIAS MATTERS failed to rectify the harm Plaintiff had suffered as a result of the hostile work environment to which she had been subjected by Defendant ROSENBAUM.

256.     Defendants' actions complained of herein were taken pursuant to an unwritten policy or practice designed and implemented to protect judges from discipline or any other adverse action in response to the judges' violation of laws prohibiting sexual harassment and/or sexual discrimination.

257.     Defendants' actions violated Title VII.

258.     As a result of Defendants' illegal actions, Plaintiff has suffered economic loss, loss of enjoyment of life, damage to her reputation, emotional distress and physical injury.

**SECOND CAUSE OF ACTION AGAINST DEFENDANTS MATTHEW ROSENBAUM, COSMAS GRANT, RONALD PAWELCZAK, ANN MARIE TADDEO, CAROLYN GRIMALDI, MARGARET ALLEN, AND AMY FIELDS: DENIAL OF THE RIGHT TO PETITION THE GOVERNMENT FOR REDRESS OF GRIEVANCES IN VIOLATION OF 42 USC § 1983**

259.     Plaintiff reasserts and realleges the allegations set forth in ¶¶ 1 through 258 as though fully set forth herein.

260.     As an employee of Defendant UCS, Plaintiff was entitled to a workplace free of sexual harassment and retaliation.

261.    As a citizen of the United States, Plaintiff is entitled to the protections of the First Amendment to the Constitution.

262.    At all times relevant to this Complaint Defendants ROSENBAUM, GRANT, PAWELCZAK, TADDEO, GRIMALDI, ALLEN and FIELDS, acted under color of state law with respect to the Plaintiff.

263.    Defendants ROSENBAUM, GRANT, PAWELCZAK, TADDEO, GRIMALDI, ALLEN and FIELDS were, at all times relevant to this Complaint, legally obligated to comply with the laws of the United States that prohibit discrimination in the workplace on the basis of sex, and to comply with the Constitution of the United States, including but not limited to the First Amendment to the Constitution.

264.    Defendant ROSENBAUM used his status as a high-ranking person acting under color of state law to coerce Plaintiff to engage in sexual acts with him against her will.

265.    Defendant ROSENBAUM also subjected Plaintiff to unwelcome touching and inappropriate comments and forms of address on the basis of Plaintiff's sex.

266.    Defendant ROSENBAUM's actions as alleged herein rendered him unfit to occupy judicial office at the time of the actions, or at any time in the future.

267.    A judge's fitness to occupy judicial office is a matter of public concern.

268.    Plaintiff's attempts to complain about Defendant ROSENBAUM's conduct to Defendants ALLEN, GRANT, PAWELCZAK, TADDEO and FIELDS are protected by the First Amendment of the United States Constitution because they addressed a matter of public concern, namely Defendant Rosenbaum's fitness for judicial office.

269.    Defendant ALLEN, who was charged with the responsibility to act to prevent sexual harassment in the workplace, threatened to discharge Plaintiff from employment if

Plaintiff complained about Defendant ROSENBAUM's conduct, in retaliation for Plaintiff's complaints, and in an effort to intimidate Plaintiff and prevent Plaintiff from seeking to stop Defendant ROSENBAUM's conduct and from seeking redress under the applicable policies.

270.    Defendants PAWELCZAK, TADDEO, and FIELDS, each of whom was charged with the responsibility to act to prevent sexual harassment in the workplace, discouraged Plaintiff from complaining about Defendant ROSENBAUM's conduct, in an effort to prevent Plaintiff from exercising her right to exercise her First Amendment rights, and from seeking redress under the applicable policies.

271.    In 2019, Defendant ROSENBAUM intensified his efforts to silence Plaintiff by verbally harassing her, throwing papers at her and encouraging his staff to stop speaking to Plaintiff.

272.    Defendants PAWELCZAK, TADDEO, and FIELDS, reported Plaintiff's complaints to Defendant ROSENBAUM in 2019, thereby knowingly ensuring that Defendant ROSENBAUM would engage in further retaliatory action against Plaintiff.

273.    Defendant GRANT, who was charged with the responsibility to act to prevent sexual harassment in the workplace, harassed Plaintiff by commenting inappropriately upon her attire during his first meeting with Plaintiff, and by advising Plaintiff that he believed she had "asked for" Defendant ROSENBAUM's abuse, and further intimidated Plaintiff an effort to compel her to withdraw her complaint, and or resign from her employment.

274.    Defendant GRIMALDI was charged with the responsibility of placing Plaintiff in suitable employment after Defendant ROSENBAUM's resignation from judicial office.

275.    Defendant GRIMALDI deliberately delayed taking any action to place Plaintiff in suitable employment until after the Complaint in this action was filed.

276.    The actions of Defendants ROSENBAUM, GRANT, PAWELCZAK, TADDEO, GRIMALDI, ALLEN, and FIELDS alleged herein were undertaken in retaliation for Plaintiff's complaints against Defendant ROSENBAUM in violation of 42 USC § 1983 and the First Amendment.

277.    As a result of Defendants' illegal actions, Plaintiff has suffered economic loss, loss of enjoyment of life, damage to her reputation, emotional distress and physical injury.

### THIRD CAUSE OF ACTION AGAINST DEFENDANTS MATTHEW ROSENBAUM, RONALD PAWELCZAK, ANN MARIE TADDEO, MARGARET ALLEN, AND AMY FIELDS:  CONSPIRACY IN VIOLATION OF 42 USC § 1985(3)

278.    Plaintiff reasserts and realleges the allegations set forth in ¶¶ 1 through 277 as though fully set forth herein.

279.    Defendants ROSENBAUM, PAWELCZAK, TADDEO, ALLEN and FIELDS engaged in a conspiracy for the purpose of depriving Plaintiff of the equal protection of the laws prohibiting discrimination on the basis of sex, and for the purpose of denying Plaintiff the right to petition the government for the redress of grievances, by denying Plaintiff the opportunity to effectively complain about Defendant ROSENBAUM's sexual harassment of her, and to silence Plaintiff, and to retaliate against her.

280.    In furtherance of the conspiracy alleged in ¶ 279, Defendant ROSENBAUM threatened to fire Plaintiff if she did not cooperate with his demands, Defendant ALLEN threatened to fire Plaintiff if she complained, Defendant TADDEO encouraged Plaintiff to "get away" from Defendant ROSENBAUM in Defendant TADDEO's chambers, rather than assisting Plaintiff in complaining through proper channels, and Defendants PAWELCZAK and FIELDS attempted to persuade Plaintiff to resign from her position.

281.     The goal of the conspiracy alleged in ¶ 279, was personal, and wholly separate from the interests of Defendants OCA, UCS, and MONROE COUNTY SUPREME COURT, as the stated policy of Defendants OCA, UCS, and MONROE COUNTY SUPREME COURT is to prevent sexual harassment of employees and others, and to not tolerate instances of sexual harassment that do occur.

282.     As a result of Defendants' illegal actions, Plaintiff has suffered economic loss, loss of enjoyment of life, damage to her reputation, emotional distress and physical injury.

**FOURTH CAUSE OF ACTION AGAINST DEFENDANTS MATTHEW ROSENBAUM, COSMAS GRANT, RONALD PAWELCZAK, ANN MARIE TADDEO, CAROLYN GRIMALDI, MARGARET ALLEN, AND AMY FIELDS:  DISCRIMINATION ON THE BASIS OF SEX IN VIOLATION OF THE NEW YORK HUMAN RIGHTS LAW**

283.     Plaintiff reasserts and realleges the allegations set forth in ¶¶ 1 through 282 as though fully set forth herein.

284.     As an employee of Defendant ROSENBAUM, Plaintiff was entitled to a workplace free of sexual harassment and retaliation.

285.     Defendants ROSENBAUM, GRANT, PAWELCZAK, TADDEO, GRIMALDI, ALLEN, and FIELDS were, at all times relevant to this Complaint, legally obligated to comply with the provisions of the New York Human Rights Law that prohibit discrimination in the workplace on the basis of sex.

286.     Defendant ROSENBAUM used his status as Plaintiff's employer to coerce Plaintiff to engage in sexual acts with him against her will, under threat of losing her job and losing custody of her minor son.

287.     Defendant ROSENBAUM also subjected Plaintiff to unwelcome touching and inappropriate comments and forms of address on the basis of Plaintiff's sex.

288.    Defendants GRANT, PAWELCZAK, TADDEO, GRIMALDI, ALLEN and FIELDS, each of whom was charged with the responsibility to act to prevent sexual harassment in the workplace, aided and abetted Defendant ROSENBAUM's sexual harassment of Plaintiff by threats, and by preventing Plaintiff from complaining of Defendant ROSENBAUM's actions through proper channels.

289.    Defendants' actions complained of herein were taken pursuant to a policy or practice designed and implemented to protect judges from discipline or any other adverse action in response to the judges' violation of laws prohibiting sexual harassment and/or sexual discrimination.

290.    Defendants' actions violated the New York Human Rights Law.

291.    As a result of Defendants' illegal actions, Plaintiff has suffered economic loss, loss of enjoyment of life, damage to her reputation, emotional distress and physical injury.

### FIFTH CAUSE OF ACTION AGAINST DEFENDANT MATTHEW ROSENBAUM:  RETALIATION IN VIOLATION OF 42 USC § 1983 AND THE NEW YORK HUMAN RIGHTS LAW

292.    Plaintiff reasserts and realleges the allegations set forth in ¶¶ 1 through 291 as though fully set forth herein.

293.    Defendant ROSENBAUM retaliated against Plaintiff when he learned that she had complained of his sexual harassment in 2019, by verbally abusing Plaintiff, physically threatening Plaintiff, directing his staff not to speak to her, and denying her permission to take a leave of absence as ordered by her doctor.

294.    The conduct engaged in by Defendant ROSENBAUM would dissuade a reasonable person from complaining of discrimination.

35

295.     Defendant Rosenbaum's conduct violated 42 USC § 1983 and the New York

Human Rights Law.

296.     As a result of Defendants' illegal actions, Plaintiff has suffered economic loss,

loss of enjoyment of life, damage to her reputation, emotional distress and physical injury.


**SIXTH CAUSE OF ACTION AGAINST DEFENDANT MATTHEW ROSENBAUM:
BATTERY**

297.     Plaintiff reasserts and realleges the allegations set forth in ¶¶ 1 through 296 as

though fully set forth herein.

298.     Defendant ROSENBAUM committed battery against Plaintiff when he compelled

her to perform fellatio upon him more than 80 times between March of 2005 and June of 2009,

and vaginally raped her in November 2006.

299.     Defendant ROSENBAUM, intentionally, and without her consent attacked

Plaintiff to satisfy his own sexual desires.

300.     Defendant ROSENBAUM's physical contact with Plaintiff was offensive and

wrongful under all the circumstances.

301.     Defendant ROSENBAUM repeatedly attacked Plaintiff over a period of four

years engaging in forcible compulsion by threatening Plaintiff with loss of her job and loss of

custody of her minor son, both of which threats Defendant ROSENBAUM was capable of

carrying out.

302.     Defendant ROSENBAUM's conduct was the direct and proximate cause of

Plaintiff's past and future substantial damages, including significant pain and suffering, lasting

psychological and pecuniary harm, loss of dignity and invasion of privacy.

303.     Defendant ROSENBAUM's actions constitute sexual offenses as defined in

36

Article 130 of the New York Penal Law, including, but not limited to rape in the first degree (§ 130.35), rape in the third degree (§ 130.25), criminal sexual act in the first degree (§ 130.50), criminal sexual act in the third degree (§ 130.40), sexual abuse in the first degree (§ 130.65), and sexual abuse in the third degree (§ 130.55).

304.    Plaintiff's claim for battery is thus timely under the Adult Survivors Act, N.Y. CPLR § 214-j.

**SEVENTH CAUSE OF ACTION AGAINST DEFENDANT MATTHEW ROSENBAUM: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

305.    Plaintiff reasserts and realleges the allegations set forth in ¶¶ 1 through 304 as though fully set forth herein.

306.    Defendant ROSENBAUM engaged in extreme and outrageous conduct when he compelled Plaintiff, who was, at the time his judicial secretary, to perform fellatio upon him more than 80 times between March of 2005 and June of 2007, and vaginally raped her in November 2006.

307.    Defendant ROSENBAUM intended to cause Plaintiff severe emotional and/or psychological, and/or other mental health distress, and/or knew that his conduct would result in emotional distress, and did cause severe emotional, psychological, and/or mental health distress to Plaintiff.

308.    As a direct and proximate result of Defendant ROSENBAUM's conduct, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress, anxiety, loss of self-esteem, loss of self-confidence and emotional pain and suffering.

309.    Defendant ROSENBAUM's actions constitute sexual offenses as defined in

Article 130 of the New York Penal Law, including, but not limited to rape in the first degree (§ 130.35), rape in the third degree (§ 130.25), criminal sexual act in the first degree (§ 130.50), criminal sexual act in the third degree (§ 130.40), sexual abuse in the first degree (§ 130.65), and sexual abuse in the third degree (§ 130.55).

310.    Plaintiff's claim for intentional infliction of emotional distress is thus timely under the Adult Survivors Act, N.Y. CPLR § 214-j.


**WHEREFORE**, Plaintiff respectfully requests this Court to enter Judgment:

a.    Holding that Defendants have violated Plaintiff's rights under 42 USC §§2000e, et seq., 42 USC §1983, 42 USC §1985(3), and the New York Human Rights Law and Common Law;

b.    Holding that the Defendants have engaged in a continuing violation of Plaintiff's rights from 2005 to the present as alleged herein;

c.    Awarding Plaintiff her lost backpay, front pay and benefits;

d.    Awarding Plaintiff compensatory damages;

e.    Awarding Plaintiff punitive damages to the maximum amount permitted by law;

f.    Awarding Plaintiff pre-judgment and post-judgment interest to the maximum amount permitted by law;

g.    Awarding Plaintiff reimbursement for lost pension, and Social Security, in an amount to be proved at trial;

h.    Awarding Plaintiff attorney's fees and costs to the maximum amount permitted by law;

i.      Enjoining Defendants from engaging in further discrimination, extortion or

retaliation against the Plaintiff;

j.      Enjoining Defendants to submit for the Court's approval a plan designed to ensure

that the protections described in Defendants' sexual harassment policy are effectively carried

out, and ensuring that no single employee or group of employees can thwart or evade the

protections of the policy; and

k.      Providing such other relief as the Court deems just and proper.

**Plaintiff demands a trial by jury on all matters triable by jury.**


Dated:  September 13, 2023


/s/ Lindy Korn_____          /s/ Anna Marie Richmond _____
LINDY KORN, ESQ.                          ANNA MARIE RICHMOND, ESQ.
The Law Office of Lindy Korn, LLP         2500 Rand Building
535 Washington Street, Ninth Floor        14 Lafayette Square
Buffalo, NY  14203                        Buffalo, NY  14203
716-856-5676                              716-854-1100
lkorn@korn-law.com                        annamarierichmondesq@gmail.com