UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

REBECCA KLYMN,

        Plaintiff,

   v.

MONROE COUNTY SUPREME COURT, UNIFIED
COURT SYSTEM OF THE STATE OF NEW YORK,
OFFICE OF COURT ADMINISTRATION, OFFICE OF
THE MANAGING INSPECTOR GENERAL FOR
BIAS MATTERS, COSMAS GRANT, RONALD
PAWELCZAK, ANN MARIE TADDEO, CAROLYN
GRIMALDI, MARGARET ALLEN, AMY FIELDS, and
MATTHEW ROSENBAUM,

        Defendants.
_____

|  |  |
|---|---|
| | DECISION |
| | and |
| | ORDER |
| | ----------------------------- |
| | REPORT |
| | and |
| | RECOMMENDATION |
| | |
| | 21-CV-6488-JLS-LGF |

APPEARANCES:   ANNA MARIE RICHMOND, ESQ.
          Attorney for Plaintiff
          2500 Rand Building
          14 Lafayette Square
          Buffalo, New York  14203

          LINDY KORN, ESQ.
          Attorney for Plaintiff
          Electric Tower
          535 Washington Street
          9th Floor
          Buffalo, New York  14203

          LETITIA A. JAMES
          ATTORNEY GENERAL, STATE OF NEW YORK
          Attorney for Defendants Monroe County Supreme Court,
           Unified Court System, Office of Court Administration,
           Office of the Managing Inspector General, Grant,
           Pawelczak, Taddeo, Grimaldi, Allen, and Fields
          HEATHER LYNN McKAY, and
          MICHELE ROMANCE CRAIN
          Assistant Attorneys General, of Counsel
          144 Exchange Boulevard
          Rochester, New York  14614
               and

PEDRO MORALES
Assistant Deputy Counsel
Office of Court Administration of the State of New York
25 Beaver Street
11th Floor
New York, New York  10004

ROTHENBERG LAW
Attorneys for Defendant Rosenbaum
DAVID ROTHENBERG, of Counsel
45 Exchange Bouldevard
Suite 800
Rochester, New York  14614


## JURISDICTION

This case was originally referred to the undersigned by Honorable John L. Sinatra, Jr. on November 15, 2022, for all pretrial matters (Dkt. 59), and referred back to the undersigned on August 11, 2023, consistent with the November 12, 2022 referral order (Dkt. 92).  The matter is presently before the court on Plaintiff's motion for pre-answer discovery, filed September 18, 2023 (Dkt. 94), and on State Court Defendants' motion to dismiss the Second Amended Complaint for failure to state a claim, filed September 27, 2023 (Dkt. 97).[1]


## BACKGROUND

Plaintiff Rebecca Klymn ("Plaintiff" or "Klymn"), commenced this employment discrimination action on July 16, 2021 pursuant to Title VII of the Civil Rights Act of 1962, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), 42 U.S.C. § 1983 ("§ 1983"), and the New

---

[1] Although Plaintiff's motion for pre-answer discovery is non-dispositive, and State Court Defendants' motion to dismiss the Second Amended Complaint is dispositive, both motions are addressed in this combined Decision and Order/Report and Recommendation in the interests of clarity and judicial economy.

York State Human Rights Law, N.Y. Exec. L. § 290 *et seq.* ("NYHRL"), asserting claims

against Defendants Monroe County Supreme Court ("the Court"), Unified Court System

of the State of New York ("UCS"), the New York State Office of Court Administration

("OCA"), Office of the Managing Inspector General for Bias Matters ("OIG") (together,

"State Court Defendants"), Cosmas Grant ("Grant"), Ronald Pawelczak ("Pawelczak"),

Ann Marie Taddeo ("Taddeo"), Carolyn Grimaldi ("Grimaldi"), Margaret Allen ("Allen"),

Amy Fields ("Fields") (together, "Individual Defendants"),[2] and Matthew Rosenbaum, a

former New York State Supreme Court Justice ("Rosenbaum").   On July 19, 2021,

Plaintiff filed an amended complaint as of right (Dkt. 2) ("First Amended Complaint").

Motions to dismiss the First Amended Complaint were filed on November 10, 2021 by

State Defendants (Dkt. 17), and on November 12, 2021 both by Rosenbaum (Dkt. 19),

and the Individual Defendants (Dkt. 21).   On August 4, 2022, while the motions to

dismiss were pending, Plaintiff moved for leave to file a further amended complaint,

which was granted by text order entered August 29, 2022 (Dkt. 48), advising the

pending motions to dismiss would be evaluated based on the allegations of the further

amended complaint.   On August 30, 2022, Plaintiff filed the further amended complaint

(Dkt. 49) ("Further Amended Complaint").   In a Decision and Order filed November 15,

2022 (Dkt. 58) ("November 15, 2022 D&O"), District Judge Sinatra denied Rosenbaum's

motion, State Court Defendants' motion was granted in part with the Title VII claims

dismissed as barred by the Elected Official Personal Staff Exemption under 42 U.S.C. §

2000e(f) insofar as such claim arose from Plaintiff's employment as Rosenbaum's

secretary, but otherwise was denied as to Plaintiff's Title VII claims limited to conduct

---

[2] Mary Aufleger, who was named as a defendant in the original complaint, but not named as a defendant in the Second Amended Complaint (Dkt. 93), was dismissed as a defendant on September 14, 2023.

post-dating Rosenbaum's resignation as a New York State judge in 2019, and the Individual Defendants' motion was granted with all official-capacity claims for money damages dismissed as barred by the Eleventh Amendment, Plaintiff's NYHRL claims were permitted to proceed, and Plaintiff's § 1983 claims against the Individual Defendants were dismissed as insufficiently pleaded, but with leave to replead.

On December 21, 2022, Plaintiff filed her second motion for leave to file an amended complaint (Dkt. 65), which the undersigned, in a Decision and Order filed May 30, 2023 (Dkt. 74) ("May 30, 2023 D&O"), granted in part and denied in part.  Objections to the May 30, 2023 D&O were filed on June 23, 2023 by Rosenbaum (Dkt. 78), and on June 26, 2023 by Court Defendants (Dkt. 80), and by Plaintiff (Dkt. 82), while Individual Defendants filed a motion for reconsideration (Dkt. 81).  In a Decision and Order filed August 11, 2023 (Dkt. 92) ("August 11, 2023 D&O"), District Judge Sinatra overruled all pending objections, denied the motion for reconsideration, and referred the matter back to the undersigned for further pretrial proceedings consistent with the original November 15, 2022 referral order.

On September 13, 2023, Plaintiff filed her Second Amended Complaint (Dkt. 93) ("SAC"), asserting seven claims for relief including (1) Title VII sex-based discrimination by State Court Defendants, SAC ¶¶ 252-58 ("First Claim"); (2) violation of the First Amendment right to petition the government for redress of grievances by Individual Defendants and Rosenbaum, *id*. ¶¶ 259-77 ("Second Claim"); (3) conspiracy in violation of 42 U.S.C. § 1985(3) by Individual Defendants and Rosenbaum, *id*. ¶¶ 278-82 ("Third Claim"); (4) sex-based discrimination claim in violation of New York Human Rights Law, N.Y. Exec. Law § 296 *et seq.*, by Individual Defendants and Rosenbaum, *id*. ¶¶ 283-91

("Fourth Claim"); (5) retaliation in violation of 42 U.S.C. § 1983 and New York Human Rights Law by Rosenbaum, *id*. ¶¶ 292-96 ("Fifth Claim"); (6) battery by Rosenbaum, *id*. ¶¶ 297-304 ("Sixth Claim"); and (7) intentional infliction of emotional distress by Rosenbaum, *id*. ¶¶ 305-10 ("Seventh Claim").  On September 18, 2023, Plaintiff filed a motion for leave to conduct pre-answer discovery pursuant to Fed. R. Civ. P. 26(d)(1) (Dkt. 94) ("Plaintiff's motion"), attaching Anna Marie Richmond, Esq.'s Attorney's Affirmation in Support of Motion for Permission to Conduct Limited Pre-Answer Discovery (Dkt. 94-1) ("Richmond Affirmation"), with exhibits A through J (Dkts. 94-2 through 94-11) ("Plaintiff's Exh(s). __").

On September 22, 2023, Defendant Rosenbaum filed an answer to the SAC (Dkt. 96) ("Rosenbaum's answer").  On September 27, 2023, State Court Defendants filed a motion to dismiss the SAC pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim (Dkt. 97) ("State Court Defendants' motion"), attaching the Declaration of [OCA Assistant Deputy Counsel] Pedro Morales[, Esq.][3] in Support of State Court Defendants' Motion to Dismiss the Complaint (Dkt. 97-1) ("Morales Declaration"), with exhibits A through D (Dkts. 97-2 though 97-5) ("State Court Defendants' Exh(s). __"), and the Memorandum of Law in Support of the State Court Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. 97-6) ("State Court Defendants' Memorandum").  Also on September 27, 2023, answers to the SAC were separately filed by each Individual Defendant including Allen (Dkt. 99), Fields (Dkt. 100), Grant (Dkt. 101), Grimaldi (Dkt. 102), Pawelczak (Dkt. 103), and Taddeo (Dkt. 104).

---

[3] Unless otherwise indicated, bracketed material has been added.

In response to Plaintiff's motion, on September 28, 2023, Rosenbaum filed the Affidavit [of David Rothenberg, Esq,] in Opposition to Plaintiff's motion (Dkt. 105) ("Rothenberg Opposing Affidavit"), and on September 29, 2023, Individual Defendants filed the Attorney's Declaration of Assistant Attorney General Heather L. McKay (Dkt. 106) ("McKay Opposing Declaration"), and State Court Defendants filed the Declaration of Pedro Morales[, Esq.] in Opposition to Plaintiff's Motion for Pre-Answer Discovery (Dkt. 107) ("Morales Opposing Declaration"), attaching exhibit A (Dkt. 107-1), and the Memorandum of Law in Opposition to Plaintiff's Motion Pursuant to Fed. R. Civ. P. 26(d)(1) for Pre-Answer Discovery (Dkt. 107-2) ("State Court Defendant's Response"). On October 4, 2023, Plaintiff filed Plaintiff's Reply to Defendants' Response to Plaintiff's Motion for Pre-Answer Discovery (Dkt. 108) ("Plaintiff's Reply").  On October 6, 2023, State Court Defendants filed the State Court Defendants' Sur-Reply Memorandum of Law in Opposition to Plaintiff's Motion Pursuant to Fed. R. Civ. P. 26(d)(1) for Pre-Answer Discovery (Dkt. 109) ("State Court Defendants' Sur-Reply").

On October 31, 2023, Plaintiff filed Plaintiff's Response to the State Court Defendants' Motion to Dismiss the Pleadings (Dkt. 110) ("Plaintiff's Response").  On November 13, 2023, State Court Defendants filed the Reply Memorandum of Law in Further Support of the State Court Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. 111) ("State Court Defendants' Reply").  On November 17, 2023, Plaintiff filed Plaintiff's Surreply to the State Court Defendants' Motion to Dismiss on the

Pleadings (Dkt. 112) ("Plaintiff's Sur-Reply").[4]  Oral argument was deemed unnecessary.

Based on the following, Plaintiff's motion for pre-answer discovery is DENIED; State Court Defendants' motion to dismiss the second amended complaint should be DENIED.


## FACTS[5]

On March 28, 2005, Plaintiff Rebecca Klymn ("Plaintiff" or "Klymn"), commenced working as a judicial secretary to Defendant Matthew Rosenbaum ("Rosenbaum"), upon Rosenbaum's appointment as a Justice of the New York State Supreme Court for the Seventh Judicial District which includes Monroe County, and continued working as Rosenbaum's judicial secretary until his resignation on December 31, 2019.  In addition to Rosenbaum, Defendants to this action include New York Supreme Court, Monroe County ("the Court"),[6] Unified Court system of the State of New York ("UCS"), Office of Court Administration ("OCA"), and Office of the Managing Inspector General for Bias Matters ("OIG") (together, "State Court Defendants").  Also sued in their personal capacity are Ronald Pawelczak ("Pawelczek"), who, as relevant to this action, served as Chief Clerk, Monroe County Family Court ("Family Court') and Executive of the Seventh Judicial District of the State of New York, OIG employee Cosmas Grant ("Grant"), UCS and OCA Human Resources head Carolyn Grimaldi ("Grimaldi"), Human Resources

---

[4] On November 22, 2023, Individual Defendants filed a Suggestion of Death [of Defendant Allen] Upon the Record (Dkt. 113), pursuant to Fed.R.Civ.P. 25(a)(1).  The court notes Defendant Allen's death has no effect on the motions presently before the court.
[5] Taken from the pleadings and motion papers filed in this action.
[6] The Court is incorrectly named as "Monroe County Supreme Court."  The court takes judicial notice that the correct name is New York State Supreme Court for the Seventh Judicial District.  *See* N.Y. Jud. Law § 140 (McKinney 2009).

head for the Court Margaret Allen ("Allen"), the Court's principal court analyst Amy

Fields ("Fields"), and New York State Supreme Court Justice, Monroe County, Ann

Marie Taddeo ("Justice Taddeo") (together, "Individual Defendants").  Plaintiff alleges

that while working as Rosebaum's judicial secretary, she was an employee of the Court,

OCA, and UCS.

Plaintiff alleges that between 2005 and 2009, while working as Rosenbaum's

judicial secretary, she was repeatedly compelled by Rosenbaum to engage in numerous

and unwanted sexual acts including, *inter alia*, fellatio in Rosenbaum's judicial

chambers.  Plaintiff maintains she acquiesced to Rosenbaum's demands because

Rosenbaum insisted it was a condition of Plaintiff's employment and threatened that if

Plaintiff, then engaged in divorce proceedings and seeking custody of her minor son,

did not cooperate, Rosenbaum would arrange for the Family Court judge handling the

custody proceedings to ensure Plaintiff was not granted custody.  Rosenbaum

repeatedly addressed Plaintiff in demeaning terms, commented that Plaintiff's clothing

was inappropriate, touched and hugged Plaintiff, frequently screamed at Plaintiff when

Rosenbaum was dissatisfied with her work, and required Plaintiff perform personal

errands for himself and his family members during work hours, as well as to accompany

Rosenbaum to medical appointments where Plaintiff was required to be in the

examination room with Rosenbaum.  Plaintiff alleges that on November 14, 2006,

Rosenbaum arrived, uninvited, at Plaintiff's home where he coerced Plaintiff to let him

inside and then proceeded to rape Plaintiff.

While Plaintiff worked for Rosenbaum, Rosenbaum frequently met privately in his

chambers with Defendant Justice Taddeo whose chambers were located next to

Rosenbaum's chambers, and Defendant Pawelczak, Chief Clerk of Family Court. Plaintiff maintains that during such meetings, both Justice Taddeo and Pawelczak personally observed Rosenbaum's inappropriate contact with and use of demeaning language toward Plaintiff, as well as Plaintiff's visible discomfort with Rosenbaum's conduct. Because both Justice Taddeo and Pawelczak were supervisors within UCS's organizational structure, they were obligated to provide employees who complained of sexual harassment with UCS's sexual harassment complaint form and to forward the complaint to OIG. Even after Plaintiff spoke with Justice Taddeo about Rosenbaum's unwanted sexual demands and other objectionable behavior, Justice Taddeo, despite holding a supervisory position, did not report Plaintiff's complaint to the OIG, provide Plaintiff with a copy of UCS's sexual harassment complaint form, nor inform Plaintiff of the existence of the Commission on Judicial Conduct, a body charged under New York State law with receiving and investigating complaints against New York State judicial officers; rather, Justice Taddeo only invited Plaintiff to come to Justice Taddeo's chambers to "get away" from Rosenbaum and "to enable Plaintiff to compose herself," SAC ¶¶ 81,[7] ensuring Plaintiff her (Taddeo's) door was "always open." *Id*. ¶ 83.

On January 10, 2007, Plaintiff told one Lisa Cammilleri ("Cammilleri"), who had previously worked for Rosenbaum, about the sexual harassment Plaintiff was enduring as Rosenbaum's secretary, but Cammilleri advised Plaintiff nothing could be done about the harassment because Rosenbaum was a judge and no one would listen to Plaintiff. Also in early 2007, Plaintiff spoke to Robert Barnish ("Barnish"), in Human Resources[8]

---

[7] Specific references to the "SAC" are provided for factual allegations of particular significance.
[8] It is not clear from the pleadings whether Barnish worked for OCA's Human Resources or the Court's Human Resources.

and inquired about the possibility of being transferred to another position within the Court.  Barnish advised he would seek another assignment for Plaintiff, but that he did not believe anyone within UCS would hire Plaintiff out of fear of repercussions by Rosenbaum.

On May 3, 2007, Rosenbaum told Plaintiff the suit she was wearing made Plaintiff look "hot" and then grabbed Plaintiff's arm and forced Plaintiff to touch his penis, telling Plaintiff he was falling in love with her and that Plaintiff should be "honored."  SAC ¶ 100.  On May 14, 2007, Plaintiff described Rosenbaum's recent conduct to Justice Taddeo who responded there was not much that could be done about Rosenbaum's behavior toward her other than conducting sexual abuse training.[9] The next day, Justice Taddeo informed Plaintiff she had received permission from Judge Van Strydonck ("Judge Van Strydonck"), then Chief Administrative Judge for the Seventh Judicial District, to conduct sexual abuse training, but no such training was ever conducted.

As the head of the Court's Human Resources department, Defendant Allen was charged with enforcing the sexual harassment policy of OCA and UCS, and thus was obligated to report complaints of sexual harassment to appropriate authorities even if an employee did not report the harassment on her own behalf.  During 2007, Allen frequently met privately with Rosenbaum either in Allen's office or in Rosenbaum's chambers.  On November 20, 2007, Plaintiff informed Allen of Rosenbaum's conduct, and requested Allen's help, but Allen did not provide Plaintiff with the UCS's sexual harassment complaint form and, thus, Plaintiff did not complete such complaint form to

---

[9] The pleadings fail to indicate the scope of the putative training, i.e., whether directed to Rosenbaum and his staff or courtwide.

be forwarded to the OIG; instead, Allen told Plaintiff that if she was complaining about Rosenbaum, Allen had no choice but to terminate Plaintiff's employment, even though Allen was aware she lacked the authority to fire Plaintiff.  When Plaintiff accepted Allen's offer to provide Plaintiff with information about the complaint process, Allen sent Plaintiff an e-mail with links to information about OCA's Workforce Diversity Office and the OIG.  Plaintiff did not again seek Allen's assistance because Allen had threatened to terminate Plaintiff's employment, but used the information forwarded by Allen to locate on the internet a discrimination complaint form which Plaintiff completed ("first discrimination complaint"), and mailed to OIG on November 21, 2007.  Plaintiff never received any response to the first discrimination complaint which was not investigated by OIG or OIG employee Grant, nor reported to the appropriate administrative judges.

On June 1, 2009, Plaintiff, after years of intense psychological counseling to deal with Rosenbaum's conduct, both refused Rosenbaum's demand for oral sex and informed Rosenbaum she would no longer comply with such demands nor acquiesce to Rosenbaum's threats.  Rosenbaum responded by arguing with Plaintiff and persisting, for years thereafter, in pressuring Plaintiff to perform oral sex in his chambers, and also continued the other harassing conduct, but Plaintiff remained steadfast in her refusal.[10] Rosenbaum often commented to others in Plaintiff's presence that he would "never get rid of" Plaintiff because "she knows too much."  SAC ¶ 139.

In March 2011, Rosenbaum was appointed the Supervising Judge of the Seventh Judicial District ("the District"), and in October 2011, was appointed head of the Commercial Division of the District, a position Plaintiff maintains is prestigious and

---

[10] The pleadings do not definitively state whether Plaintiff acquiesced to Rosenbaum's demands after June 1, 2009.

powerful, and in which Rosenbaum remained until the end of 2019.  Throughout this time, Plaintiff continued to seek other employment positions within the District, but was repeatedly told she would not be hired because she worked for Rosenbaum.

In November 2017, UCS and OCA issued a revised Sexual Harassment Policy and Procedure ("the harassment policy") which provides it is a "zero-tolerance policy for any form of sexual harassment," SAC ¶ 146, and "applies to all judges and court employees."  *Id*. ¶ 147.  In accordance with the harassment policy, on January 8, 2018, Plaintiff completed and submitted to OIG the updated UCS discriminatory treatment complaint form ("second discrimination complaint").  Plaintiff alleges the second discrimination complaint was never investigated or reported by OIG or Grant to the appropriate administrative judges, nor did Plaintiff ever receive a response to the second discrimination complaint.

Sometime during the first half of 2019, Pawelczak became the District Executive. In late June 2019, Rosenbaum urged Plaintiff to take a leave of absence "to get her head on straight," SAC ¶ 154, but Plaintiff did not comply with the request and in July 2019, Rosenbaum stopped speaking to Plaintiff.  On July 31, 2019, Plaintiff separately met with Justice Taddeo, Pawelczak, and Fields to discuss the sexual harassment of her by Rosenbaum, and to seek their assistance, but no further complaint form was provided to  Plaintiff, nor was Plaintiff's second discrimination complaint ever forwarded to OIG.  Instead, Pawelczak and Fields separately advised Plaintiff they could not help her and recommended Plaintiff take time off from work to apply for other jobs.

Although Justice Taddeo, Pawelczak, and Fields each assured Plaintiff their conversations would be kept confidential, in August and September 2019, Rosenbaum

learned from Pawelczak and Fields of Plaintiff's complaints about Rosenbaum's behavior, after which Rosenbaum retaliated by becoming verbally abusive toward Plaintiff, repeatedly telling Plaintiff to "get [her][11] head on straight," accusing Plaintiff of not performing her job duties, complaining about Plaintiff to others in the court building, and on August 5, 2019, threw papers onto Plaintiff's desk.  SAC ¶ 165.  Rosenbaum also directed his staff to cease speaking with Plaintiff.  As a result of Rosenbaum's conduct, Plaintiff suffered severe stress and anxiety.

In August 2019, Plaintiff again sought Field's assistance with Rosenbaum's treatment, and Fields responded with an e-mail ("the e-mail") to Plaintiff referencing the substance of their discussion, copying Rosenbaum on the e-mail, subsequent to which Rosenbaum's hostility toward and mistreatment of Plaintiff increased.  Fields told Plaintiff she could not assist her and encouraged Plaintiff to use up her accrued leave and to resign from her position.

Because of stress and anxiety, on September 3, 2019, Plaintiff was medically excused from work by her primary care physician who recommended Plaintiff request a leave of absence.  Plaintiff was diagnosed with Complex Post Traumatic Stress Disorder ("Complex PTSD"), which was attributed to Rosenbaum's harassment of Plaintiff from 2005 through 2019.  On September 5, 2019, Plaintiff learned that Fields had prepared paperwork for Plaintiff's resignation, which Plaintiff refused to sign.  On September 9, 2019, Rosenbaum advised Plaintiff he would not approve Plaintiff's request for a leave of absence.

---

[11] Brackets in original.

On October 29, 2019, Plaintiff submitted, directly to the Court's Human Resources department a leave request, pursuant to the Family and Medical Leave Act ("FMLA"), ending on January 31, 2020 ("FMLA leave request"), thereby bypassing the need for Rosenbaum's approval.  The FMLA leave request was based on a physician's note excusing Plaintiff from work because of physical symptoms attributed to stress from a hostile work environment.  After again trying, unsuccessfully, to persuade Plaintiff to resign, Fields submitted the FMLA leave request "through Human Resources channels for medical leaves," but the FMLA leave request was "intercepted" by UCS's "Work-Safe office" because of the "hostile work environment" language.  SAC ¶¶ 183-84.  On November 8, 2019, Plaintiff received a telephone call from one Connor Van Everen ("Van Everen") at UCS's Work-Safe office.  In response to Van Everen's request, Plaintiff promptly submitted a detailed description of Rosenbaum's alleged abusive behavior ("Plaintiff's statement"), now considered a complaint ("third discrimination complaint"), which Van Everen forwarded to Pawelczak and OIG.  Pawelczak notified Rosenbaum of the third discrimination complaint and on December 11, 2019, Grant advised Plaintiff he would contact Plaintiff after reviewing the third discrimination complaint.  Several hours later, Grant again called Plaintiff, advising Grant was forwarding the third discrimination complaint to the Commission on Judicial Conduct ("CJC").  On December 19, 2019, Plaintiff was interviewed by CJC regarding the third discrimination complaint.  On December 28, 2019, a CJC representative notified Plaintiff that Rosenbaum had agreed to resign from his judicial position which would end the CJC's investigation.  Also in December 2019, Plaintiff's job title was

changed from Judicial Secretary to Court Analyst, but Plaintiff was not then advised of a new work assignment.

Pursuant to a stipulation with the CJC ("the stipulation"), on January 13, 2020, Rosenbaum resigned his judicial office effective on December 31, 2019, and agreed to never again seek judicial office.  At an interview on January 15, 2020, Grant initially denied that Plaintiff ever complained about Rosenbaum's conduct, but when Plaintiff responded with the dates of her first and second discrimination complaints, Grant asserted OIG "lost" the prior complaints, SAC ¶ 203, and suggested Plaintiff had "asked for" the sexually harassing treatment by Rosenbaum because of the way Plaintiff dressed even though Plaintiff was dressed in conservative business attire and Grant had never previously met Plaintiff.  *Id*. ¶¶ 204-05.  Because Grant's comments about how Plaintiff dressed were similar to the comments Rosenbaum often made, Plaintiff maintains that Grant interviewed Rosenbaum before interviewing Plaintiff in violation of OIG's protocol.  In connection with the third discrimination complaint, Grant also interviewed Plaintiff's elderly mother who was driven to tears by Grant's demeanor during the interview, and a second witness[12] to the abuse who reported to Plaintiff that Grant persisted in twisting the witness's words and substituting his own version of the events of which Plaintiff complained.  Plaintiff maintains Grant was attempting to intimidate and attack Plaintiff in retaliation for bringing the third discrimination complaint against Rosenbaum.

On January 23, 2020, the CJC entered an order making the stipulation public and thereby concluding the investigation of Plaintiff's third discrimination complaint.  On

---

[12] Plaintiff's second witness is not identified.

January 29, 2020, the CJC issued a press release publicizing the stipulation and describing in general terms Plaintiff's allegations against Rosenbaum in the third discrimination complaint.

Meanwhile, since October 29, 2019, Plaintiff remained on leave pursuant to the FMLA until March 30, 2020.  Although State Court Defendants, and Defendants Grant and Grimaldi had access to Plaintiff's contact information, no Defendant contacted Plaintiff either to advise Plaintiff of the status of the investigation into her third discrimination complaint, or Plaintiff's future assignment within the UCS in light of Rosenbaum's resignation.  In February and March 2020, Plaintiff was advised by UCS and OCA Head of Human Resources Grimaldi that Grimaldi would identify a job to which Plaintiff would be assigned, but no specific assignment had yet been identified, advising Grimaldi did not believe Plaintiff would be "safe" working in the Hall of Justice, the building in which the Court is located, and that an assignment to the Criminal Division of Rochester City Court in the Public Safety Building was being considered. Plaintiff did not again hear from Grimaldi or anyone else regarding her new position and on March 31, 2020, Plaintiff's physician placed Plaintiff on sick leave.

On August 13, 2020, Deputy Chief Administrative Judge Vito Caruso ("Judge Caruso") sent Plaintiff a letter on behalf of Defendant UCS advising Plaintiff OIG had completed its investigation of Plaintiff's third discrimination complaint, seriously treated the matter and taken appropriate action, but did not inform Plaintiff what action was taken.  As of April 28, 2021, Plaintiff had exhausted all of her accrued leave time and was granted discretionary unpaid leave.  By letter dated April 28, 2021, Judge Caruso advised Plaintiff she was being placed on involuntary unpaid leave effective April 29,

2021, but that same day, one William Hart ("Hart"), President of Plaintiff's union, advised Plaintiff that Hart had learned that since March 2020, there was a new Court Analyst position available for Plaintiff in Family Court which was located in the Hall of Justice.  Upon learning of the available Court Analyst position, Plaintiff contacted her doctor who provided Plaintiff with a formal release to return to work which Plaintiff submitted to Defendants in early May 2021.  On May 17, 2021, however, Pawelczak directed Plaintiff not to report to work until Plaintiff underwent an independent medical examination ("IME").  Plaintiff underwent the IME on June 16 and 21, 2021.  On July 16, 2021, Plaintiff filed the original complaint in this action which was served on several of the Defendants on July 28, 2021.  On Friday, August 6, 2021, Judge Caruso directed Plaintiff to report to work in Family Court as a Court Analyst on Monday, August 9, 2021.  Since August 9, 2021, Plaintiff has worked as a Court Analyst in Family Court located in the Hall of Justice.

## **DISCUSSION**

As stated, Plaintiff moves for leave to conduct limited pre-answer discovery while State Court Defendants move pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the SAC for failure to state a claim against any of the State Court Defendants.

## 1.   **Motion for Pre-Answer Discovery**

In support of her motion for leave to conduct pre-answer discovery, Plaintiff argues that this matter has been pending for more than two years and anticipates that some of the Defendants will move to dismiss the SAC, which will further delay

discovery.  Richmond Affirmation ¶¶ 13-16.[13]  The only new claim for relief asserted in the SAC is the Second Claim alleging a violation of the First Amendment right to petition the government for redress of grievances by Individual Defendants and Rosenbaum. *Id*. ¶ 17.  Plaintiff also advises she intends to seek leave to file a further amended complaint if the information Plaintiff obtains during discovery warrants it.  *Id*. ¶ 19. Accordingly Plaintiff, "[i]n the interest of judicial economy, preservation of evidence, and in order to move this case forward as expeditiously as possible," seeks to serve limited discovery to ensure all necessary parties are joined, and all available claims and issues are clearly presented to the court.  *Id*. ¶ 20.

Although Defendant Rosenbaum and Individual Defendants responded in opposition to Plaintiff' motion by filing the Rothenberg Opposing Declaration (Dkt. 105), and the McKay Opposing Declaration (Dkt. 106),[14] Rosenbaum's answer to the SAC (Dkt. 96), was filed September 22, 2023, which moots Plaintiff's motion as to him; similarly, separate answers to the SAC were filed by each Individual Defendant on September 27, 2023 (Dkts. 99-104), thereby mooting Plaintiff's motion as to the Individual Defendants.  Accordingly, the court only addresses Plaintiff's motion with

---

[13] The court notes ¶ 15 of the Richmond Affirmation contains no text.

[14] In opposition, Defendant Rosenbaum argues the relief sought by Plaintiff's motion is not contemplated by the Federal Rules of Civil Procedure or the Local Rules of Civil Procedure for the Western District of New York, Rothenberg Opposing Affidavit ¶¶ 4-8, Plaintiff has not demonstrated any special circumstances justifying the departure from the normal procedures, *id*. ¶¶ 4, 9, and the justifications proffered by Plaintiff constitute a fishing expedition to search for additional parties and claims to assert in a new complaint.  *Id*. ¶¶ 4, 10-17.  According to Rosenbaum, Plaintiff has complicated this litigation through her "repeated amendments of an already prolix complaint," which belies Plaintiff's asserted concerns about judicial efficiency.  *Id*. ¶ 18.  The Individual Defendants argue in opposition that Plaintiff has not articulated a valid reason nor identified any issues raised by a pending pre-answer motion supporting pre-answer discovery, McKay Opposing Declaration ¶ 6, nor is Plaintiff's request reasonable in light of the time Plaintiff has expended revising her claims multiple times, *id*. ¶ 7.

regard to the State Court Defendants who have not filed an answer to the SAC but move to dismiss the SAC.

State Court Defendants argue in opposition to Plaintiff's motion that Plaintiff has failed to demonstrate good cause for expedited discovery, State Court Defendants' Response at 6-8, Plaintiff's own actions, including filing multiple amended complaints, and joining with Defendants to defer the filing of a case management order, *see* Dkt. 67, demonstrate Plaintiff will not be prejudiced by the deferral of discovery, *id*. at 8, and State Court Defendants will be prejudiced if required to respond to discovery while their motion to dismiss the SAC is pending. *Id*. at 9.  In further support of pre-answer discovery, Plaintiff acknowledges Plaintiff's motion is moot with regard to Rosenbaum and Individual Defendants based on their filing of answers to the SAC, and asserts she is modifying Plaintiff's motion to request a pretrial conference pursuant to Fed.R.Civ.P. 16(a) ("Rule 16__") with Rosenbaum and Individual Defendants, for whom Plaintiff also requests issuance of a scheduling order pursuant to Rule 16(b), and affirms her request for pre-answer discovery with regard to State Court Defendants.  Plaintiff's Reply at 1-2. Plaintiff maintains her request for pre-answer discovery from State Court Defendants is reasonable given Fed.R.Civ.P. 26(d)(1) ("Rule 26___") permits discovery pursuant to a court order including prior to a Rule 26(f) discovery planning conference.  Plaintiff's Reply at 2 (citing cases supporting the trend among district courts within the Second Circuit is to permit expedited discovery, pursuant to Rule 26(f), where reasonable). Plaintiff argues the fact the action was filed more than two years ago yet remains at the pleading stage establishes permitting pre-answer discovery would reduce additional delay.  *Id*. at 3.  Plaintiff further maintains that once discovery occurs, the possibility of

settlement will increase.  *Id*. at 3-4.  In further opposition, State Court Defendants argue Plaintiff has failed to establish good cause for pre-answer discovery given that State Court Defendants' motion to dismiss the SAC is pending, yet Plaintiff has failed to establish she will be irreparably harmed if discovery is held in abeyance until State Court Defendants' motion is decided, or that discovery is needed before addressing the motion to dismiss the SAC.  State Court Defendants' Sur-Reply at 1-3.

Although "'[t]he Second Circuit has yet to articulate a standard for determining whether to allow expedited discovery [ ,] courts in this circuit have variously applied either the four-part test derived from *Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y. 1982) — the elements of which track the standard for granting a preliminary injunction — or the more flexible standard of reasonableness and good cause. . . .'"  *R.R. Donnelley & Sons Co. v. Marino*, 505 F. Supp. 3d 194, 209 (W.D.N.Y. 2020) (quoting *Schneiderman v. Griepp*, 2017 WL 3129764, at *1 (E.D.N.Y. July 20, 2017) (citations and internal quotations omitted)).  "The majority of courts in the Second Circuit apply the more flexible 'good cause' standard when evaluating motions for expedited discovery."  *Id*. (citing *Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 326-27 (S.D.N.Y. 2005)).  Nevertheless, "in assessing good cause a court may take into account the standard necessary to establish entitlement to a preliminary injunction, including for instance whether there is some connection between the request for expedited discovery and the avoidance of irreparable injury and any burdens associated with the expedited discovery in comparison to the potential injury to the moving party in the absence of expedited discovery."  *Id*.  In the instant case, Plaintiff has not met the burden for expedited, including pre-answer, discovery.

In particular, Plaintiff submits in support of her motion copies of the document requests served on State Court Defendants.  *See* Plaintiff's Exhs. E (Dkt. 94-6 (the Court)), F (Dkt. 94-7 (OCA and UCS)), and G (Dkt. 94-8 (OIG)).  Each of the documents requests essentially the same information including,

> 1.     Policies and procedures governing investigations of complaints of sexual harassment that are submitted to Defendant by employees of the New York Unified Court System;[15]
>
> 2.     All documents and communications concerning Rebecca Klymn's complaints about the conduct of Justice Matthew Rosenbaum alleged in the Second Amended Complaint in this matter that were received, created, and/or maintained by Defendants from 2005 to the present.

Dkts. 94-6 at 3, 94-7 at 3, and 94-8 at 3.

In opposition to Plaintiff's motion, State Court Defendants argue that Plaintiff has failed to show the pre-answer discovery is required to avoid irreparable injury or prejudice to her position in this action, State Court Defendants' Response at 7, which is unlikely given the documents Plaintiff seeks are records maintained by State Court Defendants which consist of the UCS and its various subdivisions, such that regardless of whether the State Court Defendants remain as defendants to this action, the documents will be available to Plaintiff.  *Id*. at 7-8.  State Court Defendants further maintain that Plaintiff, by joining with all Defendants to defer the filing of a case management order until all pleadings are settled, has acquiesced in delaying discovery.  *Id*. at 8.

Plaintiff argues the requested information may "enhance the possibility of settlement," Plaintiff's Reply at 3, but that if the requested expedited discovery is not permitted, discovery must await the outcome of State Court Defendants' pending motion

---

[15] State Court Defendants maintains Defendants Court, OCA, and OIG are subdivisions of Defendant UCS.  State Court Defendants' Memorandum at 7.

to dismiss as well as State Court Defendants' answer should such motion be denied, with no discovery occurring until 2024. *Id*. Plaintiff further maintains that she is merely seeking to "level the playing field" with State Court Defendants who submitted numerous documents outside the pleadings of this action in support of State Court Defendants' motion to dismiss. *Id*. at 3-4. In further opposition to Plaintiff's claim, State Court Defendants argue Plaintiff has failed to show irreparable harm if discovery is held in abeyance pending resolution of State Court Defendants' motion to dismiss, or why State Court Defendants should be burdened with responding to Plaintiff's pre-answer discovery requests before the instant motion to dismiss is decided. State Court Defendants' Sur-Reply at 1-2.

As State Court Defendants argue, Plaintiff has failed to establish she will suffer irreparable injury or be prejudiced by delaying discovery of the requested documents until after State Court Defendants' motion to dismiss is resolved. Significantly, that the documents Plaintiff seeks are court records, it is highly unlikely that the documents will be spoliated or otherwise unavailable to Plaintiff.

Moreover, Plaintiff incorrectly references in support of Plaintiff's motion, Plaintiff's Reply at 3, *International Rehabilitative Services, Inc. v. Government Employees Insurance Company*, 2014 WL 12730481 (W.D.N.Y. 2014) ("*Int'l Rehabilitation*"), on which State Court Defendants rely, State Court Defendants' Memorandum at 6-7. According to Plaintiff, in *Int'l Rehabilitation*, the requested pre-answer discovery that was denied pertained to a claim for which dismissal had been recommended, unlike the instant case where the requested discovery is tailored to claims the court has already held state claims for relief and for which litigation may proceed. A plain reading of *Int'l*

*Rehabilitation* establishes that although some claims were dismissed for failure to state a claim, it was because one of the plaintiff's claims for breach of contract was not subject to dismissal that the court denied the request for pre-answer discovery, explaining that "it would be more prudent and efficient to await resolution of the motion to dismiss and to have the defendant interpose an answer, prior to the engagement in the proposed discovery. *Int'l Rehabilitative*, 2014 WL 12730481, at * 2. *Int'l Rehabilitation* thus does not support Plaintiff's motion.

Plaintiff's motion is, therefore, DENIED.

### 2.    Motion to Dismiss

State Court Defendants move to dismiss the SAC for failure to state a claim which asserts against State Court Defendants only the First Claim for sex-based discrimination and retaliation in violation of Title VII.  A complaint, to survive a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) ("Rule 12(b)(6)"), "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim will have 'facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Sykes v. Bank of America*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678); *see Twombly*, 550 U.S. at 570 (the complaint must plead "enough facts to state a claim to relief that is plausible on its face").  The complaint's factual allegations "must be enough to raise above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 570.  *See Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015)

(reviewing motion to dismiss under 12(b)(6), "accepting as true the factual allegations in the complaint and drawing all references in the plaintiff's favor").

The "plausibility standard" applicable to a Rule 12(b)(6) motion to dismiss "is guided by '[t]wo working principles.'" *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009) (citing *Twombly*, 550 U.S. at 544 (2007), and quoting *Iqbal*, 556 U.S. at 678). "First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Id.* at 72 (quoting *Iqbal*, 556 U.S. at 678). "'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss,' and '[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Iqbal*, 556 U.S. at 679). Unless the plaintiff pleads "enough facts to state a claim that is plausible on its face" so as to "nudge[ ] their claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly,* 550 U.S. at 570.

In support of their motion, State Court Defendants argue the SAC fails to plausibly allege a Title VII sex discrimination claim because UCS's 2017 Sexual Harassment Policy and Procedure provided Plaintiff with a reasonable avenue of complaint, State Court Defendants' Memorandum at 11-12, that UCS responded to Plaintiff's third discrimination complaint by forwarding it to the CJC which resulted in Rosenbaum's removal from office, *id*. at 12-14, that UCS and its divisions do not have any authority to discipline any judges sitting on the constituent courts, *id*. at 12-15, and

24

the facts alleged in the SAC do not support a plausible claim that UCS failed to respond to Plaintiff's complaint of a hostile work environment. *Id*. at 12-16. In opposition, Plaintiff argues State Court Defendants delayed action on Plaintiff's sex discrimination complaints, failed to inform Plaintiff of the investigation that did not commence until January 15, 2020, failed to notify Plaintiff of the existence of the court analyst position in Family Court in March 2020, which Plaintiff did not learn about until her Union President notified Plaintiff on April 28, 2021, yet Plaintiff still was not assigned to the position until August 9, 2021 while Plaintiff was required to exhaust all of her accrued leave to maintain an income between January 2020 and April 2021. Plaintiff's Response at 3-4. Plaintiff further argues that State Court Defendants' argument completely ignores that Plaintiff's SAC alleges a claim for retaliation based on State Court Defendants' failure to rectify the harm Plaintiff suffered as a result of Rosenbaum's sexually harassing conduct, specifically, failing to place Plaintiff in the new court analyst position in Family Court until August 9, 2021, which was three weeks after Plaintiff commenced this action, more than 19 months after Rosenbaum resigned, and 21 months after Plaintiff's third discrimination complaint was submitted to the Work-Safe Office, during which time Plaintiff was required to exhaust her accrued leave time and take unpaid leave. Plaintiff's Response at 5-8. In further support of dismissal, State Court Defendants attribute the failure to assign Plaintiff to her court analyst position in Family Court until August 2021 to the fact that Plaintiff was on an extended medical leave and unable to report to work such that Plaintiff did not suffer any adverse employment action as required for a Title VII retaliation claim. State Court Defendants' Reply at 6-7. In further opposition, Plaintiff clarifies she is not attacking the UCS Sexual Harassment Policy and

25

Procedure, but complains State Court Defendants disregarded and thwarted the policy by not commencing an investigation into Plaintiff's complaints until January 15, 2020, two days after Rosenbaum formally resigned.  Plaintiff's Sur-Reply at 1-2.  Plaintiff also maintains she suffered an adverse employment action when she was required to exhaust all accrued leave while awaiting her new assignment, and was placed on unpaid involuntary leave, which Plaintiff maintains is a precursor to discharge, rather than being notified of the court analyst position in Family Court when the job was first available in March 2020.  Plaintiff's Sur-Reply at 3.

"To state a discrimination claim under Title VII, 'a plaintiff must plausibly allege that (1) the employer took adverse action against [her] and (2) [her] race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Kairam v. West Side GI, LLC*, 793 Fed.Appx. 23, 27 (2d Cir. 2019) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015)).  "An actionable adverse employment action is a ''materially adverse change' in the terms and conditions of employment." *Kairam*, 793 Fed.Appx. at 27 (quoting *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 238 (2d Cir. 2007) (quoting *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000))).  "'Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation.'" *Id.* (quoting *Vega*, 801 F.3d at 85 (internal quotation marks omitted) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003))).  "Although a complaint 'need not give plausible support to the ultimate question of whether the adverse employment action was attributable to

discrimination' to state a Title VII claim, it must offer 'plausible support to a minimal inference of discriminatory motivation.'" *Id.* (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)).

Preliminarily, in the instant case, this court has already held that any Title VII claims against State Court Defendants are barred by the Elected Official Personal Staff Exemption relevant to Plaintiff's employment as Rosenbaum's secretary, but not as to Plaintiff's Title VII claims pertaining to conduct post-dating Rosenbaum's resignation as a judge in 2019.  November 15, 2022 D&O at 47 (citing 42 U.S.C. § 2000e(f)).  The court further found that after Rosenbaum's resignation, Defendants OCA, UCS and OIG "'enabled' Rosenbaum 'to retire from his position, and to avoid any further investigation or disciplinary action against him' and, from '2019 to August 6, 2021, the remaining Defendants delayed acting on Plaintiff's complaints and failed to inform Plaintiff of the progress of the investigation, and of efforts to remedy her situation'" *Id.* (quoting Complaint ¶¶ 156-57).  These allegations that are identical to allegations in the SAC, *see* SAC ¶¶ 244, 246, were found to support a claim for a Title VII claim of sex discrimination.  November 15, 2022 D&O at 47.  Significantly, the court already found such allegations plausibly allege a Title VII claim of sex discrimination in permitting Plaintiff's motion to file the SAC.  *See* May 30, 2023 Decision and Order (Dkt. 74), at 25-29.  District Judge Sinatra affirmed that determination in denying objections filed by State Court Defendants, but allowed State Court Defendant to raise such arguments on a motion to dismiss pursuant to Rule 12(b)(6), August 11, 2023 D&O at 9-10, which State Court Defendants have done.

Fairly read, however, Plaintiff's allegations can be plausibly construed as implying State Court Defendants delayed action in investigating Plaintiff's sexual harassment claims and placing Plaintiff in another position to discriminate against Plaintiff based on her sex.  Significantly, after Plaintiff's FMLA leave ended on March 28, 2020, Plaintiff was required to exhaust her accrued leave to maintain an income, and then took unpaid leave.  Being placed on unpaid leave, as well as having to use accrued leave time to maintain an income resulting in a loss of such benefits constitutes an adverse employment action.  *See Santiago v. Dept. of Transp.*, 50 F.Supp.3d 136, 156 (D.Conn. 2014) (holding placing an employee on unpaid leave thereby requiring the plaintiff to use accrued leave to maintain an income, resulting in a loss of such benefit amounted to an adverse employment action).  Accordingly, Plaintiff has stated a claim for sex discrimination in violation of Title VII.

Plaintiff has also plausibly alleged a Title VII retaliation claim against State Court Defendants.  "Section 704(a) of Title VII includes an anti-retaliation provision that makes it unlawful 'for an employer to discriminate against any . . . employee[ ] . . . because [that individual] opposed any practice' made unlawful by Title VII or 'made a charge, testified, assisted, or participated in' a Title VII investigation or proceeding."  *Littlejohn v. City of New York*, 795 F.3d 297, 315 (2d Cir. 2015) (quoting 42 U.S.C. § 2000e–3(a)) (bracketed material in *Littlejohn*).  "To establish a presumption of retaliation at the initial stage of a Title VII litigation, a plaintiff must present evidence that shows '(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected

activity and the adverse employment action.'" *Id*. at 315-16 (quoting *Hicks v. Baines,* 593 F.3d 159, 164 (2d Cir. 2010)) (internal quotation marks omitted).

Here, the only factor in dispute is whether there is a plausibly alleged causal connection between the protected activity and the adverse employment action with State Court Defendants maintaining they were not required to inform Plaintiff of the available court analyst position upon it becoming available in March 2020 when Plaintiff was on FMLA Leave because Plaintiff was then unable to report to work because of her health.  State Court Defendants' Reply at 6.  This argument, however, overlooks that Plaintiff allegedly remained on discretionary, unpaid, medical leave when Plaintiff was eventually informed of the position by Union President Hart on April 29, 2021.  SAC ¶¶ 229-31.  Upon learning of the position, Plaintiff contacted her physician who provided a formal release to work notice, but on May 17, 2021, Pawelczak required Plaintiff to undergo an IME before reporting to work.  *Id*. ¶¶ 233-37.  That Plaintiff was able to be released to work upon learning of the position undermines State Court Defendants' argument that being on discretionary medical leave prevented State Court Defendants from offering Plaintiff the position.  That the position remained unfilled from March 28, 2020 until August 9, 2021 implies that even if Plaintiff needed a few more weeks or months to recuperate from her complex PTSD, the job could have been offered to Plaintiff to eventually fill the position.  That State Court Defendants did not offer Plaintiff the position suggests the adverse employment action, *i.e.*, requiring Plaintiff exhaust her accrued leave before being placed on unpaid leave, *see Santiago*, 50 F.Supp.3d at 156, plausibly supports the requisite causal connection to Plaintiff's discrimination complaints against Rosenbaum.

State Court Defendants' motion to dismiss the SAC should therefore be DENIED.

## **CONCLUSION**

Based on the foregoing, Plaintiff's motion for pre-answer discovery (Dkt. 94) is

DENIED; State Court Defendants' motion to dismiss the second amended complaint

(Dkt. 97) should be DENIED.

SO ORDERED as to Plaintiff's motion
 for pre-answer discovery.

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

Respectfully submitted, as to State
 Court Defendants' Motion to Dismiss,

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      December 8, 2023
            Buffalo, New York

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.</u>**

*Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.


/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


DATED:       December 8, 2023
                   Buffalo, New York

31